**MCDERMOTT WILL & EMERY LLP**
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        mhelt@mwe.com
              jhaake@mwe.com
              gwilliams@mwe.com

*Proposed Counsel for the Debtors and
Debtors-in-Possession*

**MCDERMOTT WILL & EMERY LLP**
Daniel M. Simon (*pro hac vice* pending)
Emily C. Keil (*pro hac vice* pending)
William A. Guerrieri (*pro hac vice* pending)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        dsimon@mwe.com
              ekeil@mwe.com
              wguerrieri@mwe.com

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) | Case No. 25-80185 (SGJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |
| | ) | |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO (A) HONOR AND INCUR OBLIGATIONS TO
PROFESSIONAL CORPORATIONS AND (B) OBTAIN NEW PROFESSIONAL
CORPORATIONS CONTRACTS, (II) EXTENDING THE AUTOMATIC STAY
TO CERTAIN NON-DEBTORS, AND (III) GRANTING RELATED RELIEF**

---

[1]   The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755.  There are 299 Debtors in these chapter 11 cases, for which the Debtors have requested joint administration.  A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Genesis.   The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:30 A.M. (CT) ON JULY 11, 2025.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A VIRTUAL HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 11, 2025 AT 9:30 A.M. (CT) AT THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, 14TH FLOOR, COURTROOM 1, DALLAS, TEXAS, 75242.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1-650-479-3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE JERNIGAN'S HOME PAGE. THE MEETING CODE IS 2304 154 2638. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JERNIGAN'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Genesis Healthcare, Inc. ("Genesis") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"), granting the relief described below. In support thereof, the Debtors rely upon the *Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of the Motion, the Debtors respectfully represent as follows:

---

[2]   Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

1.      By the Motion, the Debtors respectfully request entry of the Interim Order and Final Order (a) authorizing, but not directing, the Debtors to (i) honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations incurred in relation to the Professional Corporations (as defined herein), including obligations pursuant to this Existing PC Contracts (as defined herein) and (ii) enter into and honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations related to attracting, seeking, entering into, and maintaining New PC Contracts (as defined herein), (b) extending the automatic stay to the Professional Corporations under the limited circumstances discussed herein, and (c) granting related relief.

2.      The Debtors also request that the Interim Order and Final Order authorize the Debtors' banks and other financial institutions (collectively, the "Banks") to receive, process, honor, and pay any and all checks and other forms of payment drawn on the Debtors' bank accounts, including fund transfers and electronic payment requests, to the extent they relate to any of the foregoing and to rely on the Debtors' direction to pay amounts authorized under the Motion, provided that sufficient funds are available in the applicable accounts to make such payments.

**JURISDICTION AND VENUE**

3.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief requested herein are sections 105(a), 362(a), 363, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and

6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-1(f) of

the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of*

*Texas* (the "Local Rules"), and Section B.8(k) of the *Procedures for Complex Cases in the*

*Northern District of Texas*, effective February 6, 2023 (the "Complex Case Procedures").

### **BACKGROUND**

**I.      The Chapter 11 Cases**

5.      On July 9, 2025 (the "Petition Date"), each Debtor commenced a case by filing a

petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases")

in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

(the "Court").  Contemporaneously herewith, the Debtors have requested procedural consolidation

and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  The

Debtors continue to operate their businesses and manage their properties as debtors and debtors-

in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      To date, the Office of the United States Trustee for Region 6 (the "U.S. Trustee")

has not appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner

been appointed.

7.      Additional information regarding the Debtors and these Chapter 11 Cases,

including the Debtors' business operations, capital structure, financial condition, and the reasons

for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration.

**II.     The Professional Corporations**

8.      The Debtors provide short-term post-acute, rehabilitation, skilled-nursing, and

long-term-care services, operating approximately 175 skilled nursing, assisted, and senior living

facilities (each, a "Facility" and collectively, the "Facilities") across 18 states.  A portion of the

Debtors' revenue is derived from providing management and administrative services to various

4

affiliated entities that in turn provide medical services to patients.  Because the Debtors operate nationwide, they are subject to a variety of state laws regulating entities that administratively support medical providers or practice medicine or both, referred to colloquially as the "corporate practice of medicine" laws.  Such laws typically require that corporate entities providing medical services must be solely owned by the physicians providing such services, meaning that subsidiaries of companies like Genesis must utilize a different corporate structure in certain states for entities providing medical services to their facilities.

9.      To comply with such laws, certain of the Debtors, including Genesis Eldercare Physicians Services, LLC, Post-Acute Innovations, LLC, and Powerback Rehabilitation, LLC (collectively, the "Debtor PC Managers"), contract with and provide various management and administrative services to various professional entities (collectively, the "Professional Corporations")[3] that are owned exclusively by licensed physicians (collectively, the "PC Physicians") in accordance with applicable requirements.  But for the "corporate practice of medicine" requirements, these entities would be wholly-owned subsidiaries of the Debtors.

10.      As of the Petition Date, the Debtor PC Managers provide management and administrative services to approximately 38 Professional Corporations.  The PC Physicians and

---

[3]    The "Professional Corporations" include AlignMed Medical Group, P.C.; AlignMed Medical Group IL SC; AlignMed Medical Group MA, P.C.; AlignMed Medical Group NC, P.C.; AlignMed Medical Group NJ, PC (f/k/a PAI Participant 26, P.C.); AlignMed Medical Group WV, Professional Corporation; AlignMed Partners, P.C. (f/k/a GPS Physician Group, P.C.); Enjati/Johnson Occupational and Physical Therapy, PS; GEPS Physician Group of New Jersey, P.C.; GEPS Physician Group of New Mexico, P.C.; GEPS Physician Group of North Carolina, P.C.; GEPS Physician Group of Pennsylvania, P.C.; GEPS Physician Group of West Virginia, Professional Corporation; GPS Physician Group of New Jersey, P.C.; GPS Physician Group of Rhode Island, P.C.; GPS Physician Group of Texas, PLLC; Leland Wheeler Speech and Language P.A.; Nancy Johnson Speech & Language, PS; NV LTC Physicians - Shariff, P.C.; NY Long-Term Care Physician Services, P.C.; PAI Participant 6, P.C.; PAI Participant 8, P.C.; PAI Participant 10, P.A.; PAI Participant 11, P.C.; PAI Participant 12, P.C.; PAI Participant 13, P.C.; PAI Participant 15, P.A.; PAI Participant 18, P.C.; PAI Participant 23, S.C.; PAI Participant 25, P.C.; PAI Participant 27, P.C.; PAI Participant 29, P.C.; PAI Participant 5, P.C.; PAI Participant 7, P.C.; PAI Participant 9, P.A.; PAI Participant MA, PC; Powerback Rehabilitation of MA, PC (f/k/a Genesis Rehab Services, PC); and Tidd/Krafft Occupational and Physical Therapy, P.A.

PC Employees provide services to, or are employed directly by, the Professional Corporations and deliver various clinical services to patients and residents of the Facilities.

**A.      The PC Contracts**

11.      The relationship between the Debtor PC Managers and the Professional Corporations is contractual in nature.  Pursuant to certain management services agreements entered into with the Professional Corporations (collectively, the "PC MSAs"), the Debtor PC Managers provide various non-clinical management services to the Professional Corporations, including, but not limited to: (a) coordinating the day-to-day non-medical operations of the applicable Professional Corporation's practice; (b) recruiting and evaluating prospective clinicians for affiliation with the Professional Corporation; (c) negotiating and executing contracts on behalf of the Professional Corporation; (d) providing monthly accounting and related financial support services, including, but not limited to, budgeting, financial record keeping, accounts receivable, and preparation of revenue reports, financial statements, and tax returns; (e) providing management, consultation, and other non-medical advice to the Professional Corporations; (f) providing procurement services for products, supplies, and other services necessary for the Professional Corporations; (g) managing the procurement of billing, collection, and claims submission services on behalf of the Professional Corporation; (h) opening and managing bank accounts in the name of the Professional Corporations, including disbursing professional fees owed to PC Physicians and such Professional Corporations' other medical staff and employees (collectively, the "PC Employees") for services rendered, fees, and amounts owed to the Debtor PC Managers for compensation under the PC MSAs; (i) maintaining a comprehensive system of records, books, and accounts for the Professional Corporations; (j) assisting the Professional Corporations in designing and implementing a public relations program; (k) providing the Professional Corporations with the use of such offices and facilities as the Professional

6

Corporations require; and (l) other day-to-day non-medical administrative needs (such services, the "PC Management Services").  This structure allows the PC Physicians as well as the PC Employees to focus on providing high-quality medical services to patients rather than managing the non-clinical business management and administrative functions of the Professional Corporations that such entities may not have the infrastructure or capacity to support.  For the avoidance of doubt, the medical and physician services provided by the PC Physicians and the PC Employees, as applicable, are exclusively within the purview of the Professional Corporations, and the Debtor PC Managers neither have nor exercise any control or direction over the methods by which Professional Corporations practice medicine.

12.     On behalf of the applicable Professional Corporation, each Debtor PC Manager contracts with CompMed ("CompMed"), a third-party medical billing company, to bill patients and collect all professional fees for medical and ancillary services rendered by the Professional Corporation through the PC Physicians.  The Debtor PC Managers also open bank account(s) in the name of the Professional Corporation to be used solely for depositing revenue collected by CompMed.  Pursuant to the MSA, each Professional Corporation authorizes the Debtor PC Manager to disburse out of such bank account(s) all professional fees owed to the PC Physicians and PC Employees, as well as all amounts owed to the Debtor PC Manager, as discussed below.

13.     In exchange for the Management Services, the applicable Professional Corporation pays the applicable Debtor PC Manager a management fee (the "Management Fee") equal to (a) the collections of the Professional Corporation during each calendar month minus (b) the expenses of the Professional Corporation incurred during the same period.  The Management Fee is intended to compensate the Debtor PC Manager for all costs associated with the Management Services, meaning that no Debtor funds are independently used to fund the Management Services

owed to the Professional Corporations and is not intended to permit Debtor PC Manager to share in or split the Professional Corporation's fees for professional services.

14.     In addition to the Management Services, the Debtors also provide corporate-like indemnity to the PC Physicians for liability arising from the PC Physicians' role as a shareholder, director, or officer of the Professional Corporations pursuant to separate indemnity agreements (the "Indemnity Agreements," and together with the PC MSAs, the "PC Contracts").

### B.     The Debtors' Obligations Under the PC Contracts

15.     The Debtors have various ongoing obligations and incur certain costs under the PC Contracts (collectively, the "PC Operating Costs").  For instance, the Debtors maintain general liability insurance for medical malpractice and tort liabilities arising from the Debtors' obligations under the PC MSAs.  The Debtors also may be required, pursuant to the PC MSAs, to pay certain tax obligations and vendor payables on behalf of the Professional Corporations.  Additionally, CompMed may collect a Professional Corporation's accounts receivable, including from governmental and commercial payors, as permitted, and deposit the collections into such Professional Corporation's bank account.  Given the importance of maintaining the relationships with the Professional Corporations, the Debtors seek authority to pay accrued and outstanding PC Operating Costs and to continue to pay all PC Operating Costs as they become due and in the ordinary course of business, including any prepetition amounts.  The Debtors are seeking authority to pay certain of the PC Operating Costs pursuant to various first-day motions filed contemporaneously herewith, including the Taxes Motion,[4] the Insurance Motion,[5] and the Wages

---

[4]     *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Taxes, Fees, and Related Obligations and (II) Granting Related Relief* (the "Taxes Motion"), filed contemporaneously herewith.

[5]     *See Debtors' Emergency Motion for Entry of Order Authorizing Debtors to (I) Maintain Existing Insurance Policies, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder; (II) Renew, Revise,*

Motion,[6] as applicable.  The Debtors also request authority, pursuant to the Cash Management

Motion,[7] to utilize the Debtors' existing cash management system to account for any such PC

Operating Costs in the ordinary course of business.  For the avoidance of doubt, the relief that the

Debtors seek through this Motion is not duplicative of the relief sought in such motions and is

limited to accrued and outstanding PC Operating Costs, if any, that are not otherwise covered in

the orders approving such motions.

16.     In addition to the PC Operating Costs, the Debtors are also required, pursuant to

the PC MSAs, to pay the Professional Corporation's legal expenses and indemnify the Professional

Corporations from certain losses, including, to the extent applicable, losses caused by the Debtors'

provision of the management services (together with the Debtors' indemnification obligations to

PC Physicians pursuant to the Indemnity Agreements, the "PC Indemnity and Legal Expense

Obligations").  The Debtors seek the authority to pay prepetition PC Indemnity and Legal Expense

Obligations, continue to honor any PC Indemnity and Legal Expense Obligations in the ordinary

course of business and consistent with historical practice, and to honor all PC Indemnity and Legal

Expense Obligations related to any new Professional Corporation contracts (the "New PC

Contracts") entered into during these Chapter 11 Cases.

---

*Extend, Supplement, Change, or Enter into New Insurance Policies, Surety Bonds, and Letters of Credit; and (III) Granting Related Relief* (the "Insurance Motion"), filed contemporaneously herewith.

[6]   *See Debtors' Emergency Motion for Entry of Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Compensation, and Employee Benefits and (B) Continue Certain Employee Benefit Programs in the Ordinary Course, and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

[7]   *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Existing Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related to the Use Thereof, (C) Maintain Purchasing Card Programs and Honor Prepetition Obligations Related Thereto, and (D) Continue to Perform Intercompany Transactions; (II) Extending the Time for the Debtors to Comply with 11 U.S.C. § 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief* (the "Cash Management Motion"), filed contemporaneously herewith.

### C.      Existing and New PC Contracts

17.     The Debtors' operating revenues are in part dependent on their ability to continue to provide management and administrative services to Professional Corporations during these Chapter 11 Cases.  As of the Petition Date, the Debtors provide services to the Professional Corporations and are party to the PC Contracts under which they are currently performing services or performance is set to commence in the future (collectively, the "Existing PC Contracts").  The Debtors' relationships with the PC Physicians and the Professional Corporations generate substantial revenue and are essential to the Debtors' continued operations.  In the aggregate, the Existing PC Contracts provided the Debtors with over $75 million in revenue in 2024, and future collections are dependent on underlying business conditions.

18.     The Debtors' ability to (a) maintain Existing PC Contracts in the ordinary course and execute extension options thereto and (b) attract, seek, enter into, and secure New PC Contracts is critical to the Debtors' long-term success and viability.  The inability to maintain the existing relationships or develop new relationships with PC Physicians, PC Employees, and Professional Corporations would greatly inhibit the Debtors' ability to support the PC Physicians in providing high-quality care to their patients and residents and fulfill their contractual obligations with their Facilities.  The expiration, default, termination, or cancellation of Existing PC Contracts or the failure to execute New PC Contracts would immediately impact the ability of the Debtors to provide high-quality patient care through the PC Physicians.  The Debtors are likely to lose the critical relationships they have with the PC Physicians if the Debtors are unable to continue meeting their obligations to both the PC Physicians and the Professional Corporations they owe under the Existing PC Contracts.  In particular, the Debtors' obligations to indemnify the PC Physicians and make certain payments on behalf of the Professional Corporations pursuant to the Existing PC Contracts throughout the duration of these Chapter 11 Cases is critical to maintaining

the Debtors' relationships with the PC Physicians, who are vital to the Debtors' ongoing business and continuity of care at the Facilities. Even short-term interruptions to the Debtors' performance under the Existing PC Contracts could cause PC Physicians to end their relationships with the Debtors, which would threaten the Debtors' ability to continue operating portions of their businesses, to the detriment of all of their stakeholders. Further, the harm to the Debtors' reputation that would result from an inability to perform under the Existing PC Contracts would likely inhibit the Debtors' ability to obtain New PC Contracts, to the detriment of the Debtors' operations in chapter 11.

19.     As of the Petition Date, the Debtors believe that no prepetition amounts are due and payable under the Existing PC Contracts, as all such amounts are financed through the Management Fee on a monthly basis or paid out of receivables earned by the Professional Corporations. Nonetheless, the Debtors seek authority to honor any PC Operating Costs out of an abundance of caution (only to the extent not covered by separate order of this Court) and the PC Indemnity and Legal Expense Obligations in an effort to assure the PC Physicians and Professional Corporations of the Debtors' ability to perform all obligations under the Existing PC Contracts and enter into New PC Contracts in the ordinary course of business consistent with historical practice notwithstanding the commencement of these Chapter 11 Cases.

20.     Additionally, out of an abundance of caution, subject to entry of a final order, the Debtors seek to extend the automatic stay to the Professional Corporations on a limited basis, solely with respect to actions against the Professional Corporations that may be triggered as a result of the commencement of these Chapter 11 Cases, to ensure that the Professional Corporations will not be harmed by contract counterparties refusing to honor their obligations under their contracts with the Professional Corporations due to the Chapter 11 Cases.

**BASIS FOR RELIEF REQUESTED**

I.    **The Court Should Authorize the Debtors to Honor Prepetition and Postpetition Obligations in Connection with Existing PC Contracts and to Attract and Enter into New PC Contracts with the Professional Corporations.**

21.    Bankruptcy Code section 363(c) authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing.  *See* 11 U.S.C. § 363(c). The Debtors believe their activities in connection with Professional Corporations—related to both honoring existing obligations and entry into New PC Contracts—are ordinary course transactions authorized by Bankruptcy Code section 363(c).  Out of an abundance of caution, however, the Debtors request the relief described herein, seeking to clarify rights and obligations to all PC Physicians and Professional Corporations.

22.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (acknowledging section 105(a) of the Bankruptcy Code as a statutory basis for paying prepetition claims).  Certain courts have therefore authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay certain prepetition claims); *see also In re Windstream Holdings Inc.*, 614 B.R. 441, 456–57 (S.D.N.Y. 2020) (same); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  In addition, under Bankruptcy Code section 1107(a), a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *Coserv*, 273 B.R. at 497).

23.     The Court may also authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under Bankruptcy Code section 105(a), bankruptcy courts may "authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor."  *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999); *see also In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business).  Specifically, a bankruptcy court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See Ionosphere*, 98 B.R. at 175–76 ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

24.     Courts have long recognized the "doctrine of necessity" or the "necessity of payment" rule.  *See id.*  Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor's reorganization case—is "the paramount policy and goal of [c]hapter 11."  *Id.* at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately").

25.     This flexible approach is particularly critical where prepetition creditors—here, the Professional Corporations—are vital to the continued operation of a debtor's business.  In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the court stated that "a bankruptcy court may exercise its equity powers under [Bankruptcy Code] section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" *Id.* (quoting *Chateaugay*, 80 B.R. at 287).  The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code."  *Id.* at 932.  Further, courts in this circuit have granted relief similar to the relief requested herein.  *See, e.g.*, *In re Wellpath Holdings, Inc.,* Case No. 24-90522 (ARP) (Bankr. S.D. Tex. Jan. 14, 2025) [Docket No. 963]; *In re Envision Healthcare Corp.*, Case No. 23-90342 (CML) (Bankr. S.D. Tex. May 5, 2023) [Docket No. 106].

26.     The Debtors are seeking authority to honor any prepetition obligations and perform existing obligations to the Professional Corporations under the Existing PC Contracts or otherwise, to ensure that their operations continue without interruption during the pendency of these Chapter 11 Cases.  The Debtors' estates and their creditors will significantly benefit by the Debtors' continued ability to honor their obligations to the Professional Corporations, but the Debtors' failure to honor such obligations could lead to the loss of satisfaction and goodwill, resulting in potential efforts to terminate the Existing PC Contracts for a breach of such contracts or the Debtors' inability to secure New PC Contracts on favorable terms in the future.  *See CoServ*, 273 B.R. at 497 (recognizing instances where the debtor in possession "can only . . . fulfill[]" its fiduciary duty by "pre-plan satisfaction of prepetition claims" of "customers which, if not honored, could so harm the debtor's good will as to destroy its going concern value"); *see also In re Equalnet*

*Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (noting that the continuance of even insignificant customer business transactions can be "critical to the survival of the business," and failure to continue such transactions risks eroding the business's customer base and going concern value).

27.     The Debtors' ability to reorganize and implement their restructuring is dependent upon the continued relationship with the Professional Corporations.  These relationships are at the core of the Debtors' business, and any interruption in the Debtors' ability to continue meeting their obligations to such parties in the ordinary course would jeopardize the continued viability of the Debtors' business and their ability to successfully restructure through these Chapter 11 Cases, as well as the PC Physicians' continued ability to provide high-quality care to patients.  The expiration, termination, or cancellation of Existing PC Contracts or the failure to execute New PC Contracts would immediately and dramatically reduce revenue.  Even short-term interruptions to the Debtors' performance under Existing PC Contracts could leave the Debtors with lost revenue or give rise to termination of the Existing PC Contracts and related damages, thereby threatening the Debtors' ability to afford current and future businesses expenses.  Further, the harm to the Debtors' reputation that would result from an inability to perform under the Existing PC Contracts would likely inhibit the Debtors' ability to obtain New PC Contracts.  Therefore, the Debtors submit that the relief requested herein is necessary and appropriate under the circumstances.

**II.     The Automatic Stay Should Be Extended to the Professional Corporations, the PC Physicians, and the PC Employees Pursuant to Bankruptcy Code Sections 105 and 362.**

28.     Pursuant to Bankruptcy Code section 362, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate.  *See* 11 U.S.C. § 362(a)(3).  Though the automatic stay usually only applies to the debtors, the Fifth Circuit has recognized that "an exception to this

general rule does exist, and a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt co-defendants where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).   Courts have extended Bankruptcy Code section 362 to non-debtors through the equitable powers of Bankruptcy Code section 105. *See A.H. Robins Co.*, 788 F.2d at 1003; *see also In re Wellpath Holdings, Inc.,* Case No. 24-90522 (ARP) (Bankr. S.D. Tex. Feb. 20, 2025) [Docket No. 1480].

29.     The Fifth Circuit has also recognized that extending the automatic stay is appropriate when the non-debtor co-defendants (as is the case here) are indemnified by the debtor. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001).   Furthermore, the automatic stay can be extended when "actions against non-debtors . . . involve property of the estate or would have a significant impact on the debtor's ability to reorganize." *Carway v. Progressive Cnty. Mut. Ins. Co.*, 183 B.R. 769, 775 (S.D. Tex. 1995) (citing *In re Kelton Motors Inc.*, 121 B.R. 166, 193 (Bankr. D. Vt. 1990)).   Such "party's interest must be so intertwined that it is considered to be the real party in interest." *Id.* (quoting *A.H. Robins Co.*, 788 F.2d at 1001); *see also Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *2, *6 (S.D. Tex. May 9, 2013).

30.     The Debtors are seeking to extend the automatic stay to the Professional Corporations on a limited basis solely with respect to actions against the Professional Corporations that may be triggered under the PC Contracts or organizational documents, as applicable, as a result of the commencement of these Chapter 11 Cases.   Furthermore, the Professional Corporations compose a significant part of the Debtors' business.   The Debtors rely on the revenue

stream pursuant to the Debtors' management of the Professional Corporations. The ability of the

Professional Corporations, the PC Physicians, and the PC Employees to operate normally without

the threat of creditor intrusion is critical to the restructuring efforts of the Debtors. Limitations on

the Professional Corporations' normal operations would have an outsized impact on the property

of the estates and the success of the Debtors' proposed sale efforts during the Chapter 11 Cases.

31.     The Debtors also seek this relief due to the indemnification obligations owed by

the Debtors to the Professional Corporations and the PC Physicians and to preserve the value of

the estate. The Debtors both owe formal PC Indemnity and Legal Expense Obligations to the

Professional Corporations and also frequently defend and settle certain disputes arising from the

PC MSAs pursuant to their business judgment. Such indemnification obligations effectively

render the Debtors the real defendant in these disputes. Thus, a judgment against the Professional

Corporation effectively becomes a judgment against the Debtor PC Manager, meriting extension

of the automatic stay.

### EMERGENCY CONSIDERATION

32.     The Debtors respectfully request emergency consideration of this Motion pursuant

to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the

commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and

irreparable harm." Fed. R. Bankr. P. 6003. Here, the Debtors believe an immediate and orderly

transition into chapter 11 is critical to the viability of their operations and that any delay in granting

the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore,

the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would

severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit

that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003

and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## <u>WAIVER OF ANY APPLICABLE STAY</u>

33.     The Debtors seek a waiver of any stay of the effectiveness of the order granting this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## <u>RESERVATION OF RIGHTS</u>

34.     Nothing contained in this Motion nor any actions taken pursuant to the relief requested herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to dispute the amount of, basis for, or validity of any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to

assume or reject any executory contract or unexpired lease; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an implication or admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute the extent, perfection, priority, validity, or amount of such claim.

## **NOTICE**

35.     The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Attorney for the Northern District of Texas; (d) the Attorney General for the State of Texas; (e) State Comptroller of Public Accounts; (f) the Centers for Medicare and Medicaid Services; (g) the Attorneys General for the states in which the Debtors conduct business; (h) the parties included on the Debtors' list of their 30 largest unsecured creditors; (i) counsel to the Debtors' prepetition lenders; (j) counsel to the proposed DIP Lenders; (k) the Professional Corporations; (l) the parties to active litigation against the Professional Corporations; and (m) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

36.     No previous request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively,

granting the relief requested herein and such other and further relief as may be just and proper.

Dated: July 10, 2025
       Dallas, Texas

**MCDERMOTT WILL & EMERY LLP**

/s/ Marcus A. Helt
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:    mhelt@mwe.com
    jhaake@mwe.com
    gwilliams@mwe.com

- and -

Daniel M. Simon (*pro hac vice* pending)
Emily C. Keil (*pro hac vice* pending)
William A. Guerrieri (*pro hac vice* pending)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:    dsimon@mwe.com
    ekeil@mwe.com
    wguerrieri@mwe.com

*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Motion was served by the Court's CM/ECF system on all counsel of record registered in these Chapter 11 Cases through CM/ECF.  Subject to the Court's approval of their retention and access to filing privileges, the Debtors' proposed claims and noticing agent will be filing a supplemental certificate of service on the docket to reflect any additional service of the foregoing Motion.

Dated: July 10, 2025
Dallas, Texas

**MCDERMOTT WILL & EMERY LLP**

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:             mhelt@mwe.com
                        jhaake@mwe.com
                        gwilliams@mwe.com

- and -

Daniel M. Simon (*pro hac vice* pending)
Emily C. Keil (*pro hac vice* pending)
William A. Guerrieri (*pro hac vice* pending)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:             dsimon@mwe.com
                        ekeil@mwe.com
                        wguerrieri@mwe.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

**EXHIBIT A**

**<u>Proposed Interim Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) | Case No. 25-80185 (SGJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Related to Docket No. ___** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) HONOR AND INCUR OBLIGATIONS TO PROFESSIONAL CORPORATIONS AND (B) OBTAIN NEW PROFESSIONAL CORPORATIONS CONTRACTS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Order")

and a final order (the "Final Order") (i) authorizing, but not directing, the Debtors to (a) honor,

---

[1]   The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pay, or otherwise satisfy any and all prepetition and postpetition obligations incurred in relation to the Professional Corporations,[3] including obligations pursuant to this Existing PC Contracts and (b) enter into and honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations related to attracting, seeking, entering into, and maintaining New PC Contracts, (ii) extending the automatic stay to the Professional Corporations, and (iii) granting related relief, in each case as more fully set forth in the Motion and this Order; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the

---

[3]    The "Professional Corporations" include AlignMed Medical Group, P.C.; AlignMed Medical Group IL SC; AlignMed Medical Group MA, P.C.; AlignMed Medical Group NC, P.C.; AlignMed Medical Group NJ, PC (f/k/a PAI Participant 26, P.C.); AlignMed Medical Group WV, Professional Corporation; AlignMed Partners, P.C. (f/k/a GPS Physician Group, P.C.); Enjati/Johnson Occupational and Physical Therapy, PS; GEPS Physician Group of New Jersey, P.C.; GEPS Physician Group of New Mexico, P.C.; GEPS Physician Group of North Carolina, P.C.; GEPS Physician Group of Pennsylvania, P.C.; GEPS Physician Group of West Virginia, Professional Corporation; GPS Physician Group of New Jersey, P.C.; GPS Physician Group of Rhode Island, P.C.; GPS Physician Group of Texas, PLLC; Leland Wheeler Speech and Language P.A.; Nancy Johnson Speech & Language, PS; NV LTC Physicians - Shariff, P.C.; NY Long-Term Care Physician Services, P.C.; PAI Participant 6, P.C.; PAI Participant 8, P.C.; PAI Participant 10, P.A.; PAI Participant 11, P.C.; PAI Participant 12, P.C.; PAI Participant 13, P.C.; PAI Participant 15, P.A.; PAI Participant 18, P.C.; PAI Participant 23, S.C.; PAI Participant 25, P.C.; PAI Participant 27, P.C.; PAI Participant 29, P.C.; PAI Participant 5, P.C.; PAI Participant 7, P.C.; PAI Participant 9, P.A.; PAI Participant MA, PC; Powerback Rehabilitation of MA, PC (f/k/a Genesis Rehab Services, PC); and Tidd/Krafft Occupational and Physical Therapy, P.A.

Hearing establish just cause for the relief granted herein; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.     The Motion is granted on an interim basis as set forth herein.

2.     The final hearing (the "Final Hearing") on the Motion shall be held on August 5, 2025, at 9:30 a.m. (prevailing Central Time). Any objections or responses to the entry of the proposed Final Order shall be filed with the Court and served on the following no later 4:00 p.m. (prevailing Central Time) on July 29, 2025: (a) Genesis Healthcare, Inc., c/o Ankura Consulting Group, LLC, 2021 McKinney Ave. Suite 340, Dallas, TX 75201 (Attn: Louis E. Robichaux IV (louis.robichaux@ankura.com) and Russell A. Perry (russell.perry@ankura.com)); (b) proposed counsel to the Debtors, McDermott Will & Emery LLP, 2501 North Harwood Street, Suite 1900, Dallas, TX 75201 (Attn: Marcus A. Helt (mhelt@mwe.com) and Jack G. Haake (jhaake@mwe.com)), and 1180 Peachtree St. NE, Suite 3350, Atlanta, GA 30309 (Attn: Daniel M. Simon (dsimon@mwe.com)), and 444 West Lake Street, Suite 4000, Chicago, IL 60606 (Attn: William A. Guerrieri (wguerrieri@mwe.com) and Emily C. Keil (ekeil@mwe.com)); (c) counsel to OHI Mezz Lender LLC, Ferguson Braswell Fraser Kubasta PC, 2500 Dallas Parkway, Suite 600, Plano, TX 75093 (Attn: Leighton Aiken (laiken@fbfk.law)) and Goodwin Proctor LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018 (Attn: Robert J. Lemons (rlemons@goodwinlaw.com)); (d) counsel to White Oak Healthcare Finance, LLC, Blank Rome LLP, 444 West Lake Street, Suite 4000, Chicago, IL 60606 (Attn: Kenneth J. Ottaviano (ken.ottaviano@blankrome.com) and Paige Barr Tinkham (paige.tinkham@blankrome.com));

3

(e) counsel to Welltower, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071 (Attn: Jeffrey C. Krause (jkrause@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), and Michael G. Farag (mfarag@gibsondunn.com)); (f) counsel to ReGen Healthcare LLC, DLA Piper LLP, 1900 N. Pearl St., Suite 2200, Dallas, TX 75201 (Attn: James Muenker (james.muenker@us.dlapiper.com)); (g) the Office of the United States Trustee for Region 6, 1100 Commerce Street, Room 976, Dallas, TX 75242 (Attn: Meredyth Kippes (meredyth.kippes@usdoj.gov); (h) counsel to the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  If no objections to entry of the Final Order are filed and served, the Court may enter such Final Order without further notice or hearing.

3.      The Debtors are authorized to honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations incurred in relation to the Professional Corporations, including obligations pursuant to the Existing PC Contracts in the ordinary course of business consistent with historical practice.  The Debtors are authorized to enter into New PC Contracts in the ordinary course of business consistent with historical practice, without further order of the Court and without notice or hearing; *provided*, *however*, the Debtors shall provide counsel to the DIP Lenders at least three (3) business days' advance notice prior to entering into any New PC Contract.

4.      The Debtors' contractual relationships with and ownership interests in, as applicable, the Professional Corporations and the PC Physicians, as described in the Motion, are entitled to the protections set forth in Bankruptcy Code sections 365(e) and 541(c) to the maximum extent permitted by law.

5.      Subject to entry of the Final Order, pursuant to Bankruptcy Code sections 105 and 362, the automatic stay is hereby extended to apply to the Professional Corporations and shall continue to apply until the earlier of conversion or dismissal of the Chapter 11 Cases or confirmation of any chapter 11 plan proposed by the Debtors.

6.      Subject to entry of the Final Order, notwithstanding a provision in a contract or lease or any applicable law, all persons are hereby stayed, restrained, and enjoined from (a) terminating or modifying any and all contracts and leases to which the Professional Corporations or the PC Physicians are party or signatory, at any time after the commencement of the Chapter 11 Cases because of a provision in such contract or lease that is conditioned on such commencement; and (b) continuing, commencing, or employing any judicial, administrative, or other action or proceeding against the Professional Corporations, the PC Physicians, and the PC Employees that asserts allegations or causes of action relating to any and all contracts and leases to which the Professional Corporations or the PC Physicians are party or signatory.  Accordingly, all such persons are required to continue to perform their obligations under such leases and contracts during the postpetition period.

7.      Subject to entry of the Final Order, pursuant to Bankruptcy Code section 525, all governmental units and other regulatory authorities are prohibited and enjoined from: (a) denying, revoking, suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to the Professional Corporations; (b) placing conditions upon such a grant to the Professional Corporations; or (c) discriminating against the Professional Corporations with respect to such a grant, solely because the Debtors are debtors under the Bankruptcy Code, may have been insolvent before the commencement of these chapter 11 cases, or are insolvent during the pendency of these chapter 11 cases.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made for payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to the relief granted herein.

10.     Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "DIP Order"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

11.     Nothing contained in the Motion or this Order nor any actions taken pursuant to the relief granted herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to dispute the amount of, basis for, or validity of any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in

6

the Motion, or in this Order granting the relief requested by the Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an implication or admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Order are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute the extent, perfection, priority, validity, or amount of such claim.

12.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

15.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

17.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### # # # END OF ORDER # # #

Prepared and presented by:

/s/ *Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
**MCDERMOTT WILL & EMERY LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        mhelt@mwe.com
              jhaake@mwe.com
              gwilliams@mwe.com

- and -

Daniel M. Simon (*pro hac vice* pending)
Emily C. Keil (*pro hac vice* pending)
William A. Guerrieri (*pro hac vice* pending)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        dsimon@mwe.com
              ekeil@mwe.com
              wguerrieri@mwe.com

*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*

## **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) | Case No. 25-80185 (SGJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Related to Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) HONOR AND INCUR OBLIGATIONS TO**
**PROFESSIONAL CORPORATIONS AND (B) OBTAIN NEW PROFESSIONAL**
**CORPORATIONS CONTRACTS, (II) EXTENDING THE AUTOMATIC STAY**
**TO CERTAIN NON-DEBTORS, AND (III) GRANTING RELATED RELIEF**

---

[1] The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (the "interim Order") and a final order (this "Order") (i) authorizing, but not directing, the Debtors to (a) honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations incurred in relation to the Professional Corporations,[3] including obligations pursuant to this Existing PC Contracts and (b) enter into and honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations related to attracting, seeking, entering into, and maintaining New PC Contracts, (ii) extending the automatic stay to the Professional Corporations, and (iii) granting related relief, in each case as more fully set forth in the Motion and this Order; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[3]  The "Professional Corporations" include AlignMed Medical Group, P.C.; AlignMed Medical Group IL SC; AlignMed Medical Group MA, P.C.; AlignMed Medical Group NC, P.C.; AlignMed Medical Group NJ, PC (f/k/a PAI Participant 26, P.C.); AlignMed Medical Group WV, Professional Corporation; AlignMed Partners, P.C. (f/k/a GPS Physician Group, P.C.); Enjati/Johnson Occupational and Physical Therapy, PS; GEPS Physician Group of New Jersey, P.C.; GEPS Physician Group of New Mexico, P.C.; GEPS Physician Group of North Carolina, P.C.; GEPS Physician Group of Pennsylvania, P.C.; GEPS Physician Group of West Virginia, Professional Corporation; GPS Physician Group of New Jersey, P.C.; GPS Physician Group of Rhode Island, P.C.; GPS Physician Group of Texas, PLLC; Leland Wheeler Speech and Language P.A.; Nancy Johnson Speech & Language, PS; NV LTC Physicians - Shariff, P.C.; NY Long-Term Care Physician Services, P.C.; PAI Participant 6, P.C.; PAI Participant 8, P.C.; PAI Participant 10, P.A.; PAI Participant 11, P.C.; PAI Participant 12, P.C.; PAI Participant 13, P.C.; PAI Participant 15, P.A.; PAI Participant 18, P.C.; PAI Participant 23, S.C.; PAI Participant 25, P.C.; PAI Participant 27, P.C.; PAI Participant 29, P.C.; PAI Participant 5, P.C.; PAI Participant 7, P.C.; PAI Participant 9, P.A.; PAI Participant MA, PC; Powerback Rehabilitation of MA, PC (f/k/a Genesis Rehab Services, PC); and Tidd/Krafft Occupational and Physical Therapy, P.A.

2

the particular circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized to honor, pay, or otherwise satisfy any and all prepetition and postpetition obligations incurred in relation to the Professional Corporations, including obligations pursuant to the Existing PC Contracts in the ordinary course of business consistent with historical practice.  The Debtors are authorized to enter into New PC Contracts in the ordinary course of business consistent with historical practice, without further order of the Court and without notice or hearing; *provided*, *however*, the Debtors shall provide counsel to the DIP Lenders at least three (3) business days' advance notice prior to entering into any New PC Contract.

3.      The Debtors' contractual relationships with and ownership interests in, as applicable, the Professional Corporations and the PC Physicians, as described in the Motion, are entitled to the protections set forth in Bankruptcy Code sections 365(e) and 541(c) to the maximum extent permitted by law.

4.      Pursuant to Bankruptcy Code sections 105 and 362, the automatic stay is hereby extended to apply to the Professional Corporations and shall continue to apply until the earlier of

conversion or dismissal of the Chapter 11 Cases or confirmation of any chapter 11 plan proposed by the Debtors.

5.      Notwithstanding a provision in a contract or lease or any applicable law, all persons are hereby stayed, restrained, and enjoined from (a) terminating or modifying any and all contracts and leases to which the Professional Corporations or the PC Physicians are party or signatory, at any time after the commencement of the Chapter 11 Cases because of a provision in such contract or lease that is conditioned on such commencement; and (b) continuing, commencing, or employing any judicial, administrative, or other action or proceeding against the Professional Corporations, the PC Physicians, and the PC Employees that asserts allegations or causes of action relating to any and all contracts and leases to which the Professional Corporations or the PC Physicians are party or signatory.  Accordingly, all such persons are required to continue to perform their obligations under such leases and contracts during the postpetition period.

6.      Pursuant to Bankruptcy Code section 525, all governmental units and other regulatory authorities are prohibited and enjoined from: (a) denying, revoking, suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to the Professional Corporations; (b) placing conditions upon such a grant to the Professional Corporations; or (c) discriminating against the Professional Corporations with respect to such a grant, solely because the Debtors are debtors under the Bankruptcy Code, may have been insolvent before the commencement of these chapter 11 cases, or are insolvent during the pendency of these chapter 11 cases.

7.      The banks and financial institutions on which checks were drawn or electronic payment requests made for payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented

4

for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

designation of any particular check or electronic payment request as approved by this Order

without any duty of further inquiry and without liability for following the Debtors' instructions.

8.      The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of the Chapter 11 Cases with respect to the relief granted herein.

9.      Notwithstanding anything to the contrary contained herein, any payment to be made

hereunder, and any authorization contained herein, shall be subject to any interim and final orders,

as applicable, approving the use of cash collateral and/or the Debtors' entry into any postpetition

financing facilities or credit agreements, and any budgets in connection therewith governing any

such postpetition financing and/or use of cash collateral (each such order, a "DIP Order"). To the

extent there is any inconsistency between the terms of the DIP Order and any action taken or

proposed to be taken hereunder, the terms of the DIP Order shall control.

10.     Nothing contained in the Motion or this Order nor any actions taken pursuant to the

relief granted herein is intended or shall be construed as: (a) an implication or admission as to the

amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code

or other applicable non-bankruptcy law; (b) an impairment or waiver of the Debtors' or any other

party in interest's rights to dispute the amount of, basis for, or validity of any claim against, or

interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to

pay any claim; (d) an implication or admission that any claim is of a type specified or defined in

the Motion, or in this Order granting the relief requested by the Motion, or a finding that any

particular claim is an administrative expense claim or other priority claim; (e) a waiver of any

claim or cause of action that may exist against any creditor or interest holder; (f) a request or

authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an implication or admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Order are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute the extent, perfection, priority, validity, or amount of such claim.

11.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

14.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

16.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # # END OF ORDER # # #

Prepared and presented by:

/s/ *Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
**MCDERMOTT WILL & EMERY LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         mhelt@mwe.com
               jhaake@mwe.com
               gwilliams@mwe.com

- and -

Daniel M. Simon (*pro hac vice* pending)
Emily C. Keil (*pro hac vice* pending)
William A. Guerrieri (*pro hac vice* pending)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:         dsimon@mwe.com
               ekeil@mwe.com
               wguerrieri@mwe.com

*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*