IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) ) ) | Case No. 25-80185 (SGJ) |
| Debtors. | ) ) | (Joint Administration Requested) |

**DECLARATION OF JASPINDER KANWAL IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A
FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, Jaspinder Kanwal, hereby declare under penalty of perjury:

1. I am a Senior Vice President at Jefferies LLC ("Jefferies"), a global investment banking and financial advisory firm with its principal office located at 520 Madison Avenue, New York, New York 10022. Jefferies is the proposed investment banker to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Cases").

2. I submit this declaration (this "Declaration") in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing,*

---

[1] The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, for which the Debtors have requested joint administration. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

*and (V) Granting Related Relief* (the "Motion"),[2] which seeks approval of, among other things, the Debtors' $30 million proposed postpetition DIP Facility and the postpetition use of Cash Collateral.[3]

3. Although Jefferies is being compensated for its work as the investment banker proposed to be retained by the Debtors, I am not being compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by Jefferies professionals involved in advising the Debtors in these Chapter 11 Cases, or information provided to me by the Debtors or their other advisors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and authorized to submit this Declaration.

## BACKGROUND AND QUALIFICATIONS

4. Since joining Jefferies in 2011, and as a member of the Debt Advisory & Restructuring Group, I have raised capital for troubled companies, including debtor-in-possession financing facilities, advised both companies and creditors in financial restructurings and distressed mergers and acquisitions, and represented both debtor and creditor constituencies in bankruptcy proceedings across a variety of sectors, including healthcare.

5. I received my B.S. in cell biology/biochemistry from Bucknell University, where I also completed a dual major in economics with a concentration in finance.

---

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

[3] The material terms of the proposed DIP Facility are set forth in detail in the Motion. For the avoidance of doubt, any description of the proposed terms of the DIP Facility herein or in the Motion is qualified in its entirety by reference to the DIP Term Sheet.

6. Jefferies is a full-service, global investment banking and financial advisory firm with thousands of employees around the world that provides a broad range of services to its clients including, without limitation, services relating to: (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings. Jefferies has advised debtors, creditors, equity constituencies, and purchasers in connection with many reorganizations. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings.

## THE RETENTION OF JEFFERIES

7. Jefferies has been engaged as investment banker to the Debtors since May 2025. Since being engaged, Jefferies has rendered investment banking advisory services to the Debtors in connection with the Debtors' evaluation of their strategic alternatives. Additionally, Jefferies has worked with the Debtors' management and other professionals retained by the Debtors, and has become familiar with the Debtors' capital structure, financial condition and business operations.

## THE DEBTORS' EFFORTS TO OBTAIN POSTPETITION FINANCING

8. The First Day Declaration, filed contemporaneously herewith, provides an overview of the Debtors' businesses, pre-petition capital structure, and the developments leading up to these Chapter 11 Cases. As explained in the First Day Declaration, the Debtors have an immediate need to access liquidity. Specifically, as noted in the Motion, the Debtors need the DIP Facility and access to cash collateral to fund, among other things, working capital, payroll obligations, overhead costs, and make any other payments that are essential for the continued

management and preservation of the Debtors' business and continuity of care for the residents of the Debtors' Facilities.

9. Prior to commencing these Chapter 11 Cases, the Debtors, with the assistance of Jefferies, sought to solicit and secure the best available DIP financing. In connection therewith, Jefferies commenced an outreach to potential third party financing sources. At the same time, the Debtors, with the assistance of Jefferies and their other advisors, also engaged in discussions with various Prepetition Secured Parties regarding potential DIP financing.

10. Specifically, on May 28, 2025, Jefferies launched a formal outreach to potential third party lenders. In total, Jefferies contacted and provided twelve (12) potential third party financing sources, including banks and credit funds, with an overview of the financing opportunity. These parties were selected based on, among other things, their experience with financing transactions and their experience with the Debtors' industry. Nine (9) of these parties entered into non-disclosure agreements with the Debtors and were thereafter given confidential marketing materials and access to a virtual data room in connection with their evaluation of a potential financing transaction with the Debtors.

11. Notwithstanding the foregoing outreach, only one party provided indicative terms with respect to financing on a senior secured priming basis. Certain of the Prepetition Secured Parties, however, had informed the Debtors that they would not consent to any third party priming liens. Thus, to obtain third-party DIP financing, the Debtors would have had to engage in a "priming" fight with prepetition lenders, and the prospect of such fight would challenge any efforts to obtain postpetition financing. Further, to date, none of the remaining parties contacted have expressed a willingness to provide financing on an unsecured or junior secured basis.

12. Certain of the Prepetition Secured Parties, however, had informed the Debtors that they would not consent to any third party priming liens. *Id.* Accordingly, the Debtors and their advisors focused their efforts on DIP financing from certain of the Prepetition Secured Lenders and ultimately agreed to the terms of the DIP Term Sheet with the DIP Lenders, avoiding potentially extensive and costly litigation associated with a third party priming debtor-in-possession facility.

## THE PROPOSED DIP FACILITY

13. As noted in the Motion, the proposed DIP Facility is an approximately $30 million junior secured priority loan facility, of which $12 million will be made available following entry of the Interim Order and the remaining $18 million will be made available following entry of the Final Order.

14. In connection with the DIP Facility, the Debtors have agreed, subject to Court approval, to grant liens as set forth in the DIP Loan Documents and pay interest and certain fees. Specifically, as described in the Motion, the Debtors have agreed to pay:

    a) an upfront fee, payable-in-kind (i.e., by adding such fee to the aggregate principal amount of the DIP Loans) equal to 2% of such DIP Lender's DIP Commitment under the DIP Facility, which shall be fully earned, non-refundable, and due and payable upon the Closing Date; and

    b) a payable-in-cash exit fee (the "Exit Fee") equal to 4% of such DIP Lender's initial DIP Commitment, which shall be fully earned and non-refundable on the Closing Date, and payable on the DIP Termination Date.

15. Based on my experience with debtor-in-possession financing transactions as well as my involvement in the efforts to secure post-petition financing for the Debtors, I believe that the proposed DIP Facility, taken as a whole, is the best financing presently available to Debtors under the circumstances of these Chapter 11 Cases.

16. First, the proposed DIP Facility is expected to provide the Debtors with access to the amount of capital that the Debtors believe is necessary to administer these Chapter 11 Cases.

17. Second, the Debtors, with the assistance of Jefferies, solicited other sources of post-petition financing. As noted above, however, none of these potential sources of post-petition financing have offered to make available financing facilities on an unsecured or junior secured basis. Additionally, although one party has expressed willingness to provide financing on a senior secured basis, certain of the Prepetition Secured Parties would not consent to any such priming liens. Notwithstanding the foregoing, the Debtors would consider an alternative DIP financing proposal, prior to the Final Order, to the extent such proposal is on terms more attractive to the Debtors than the DIP Term Sheet.

18. Third, I believe that the principal economic terms proposed under the DIP Facility, such as the contemplated pricing, fees, interest rate, and default rate, are customary and usual for debtor-in-possession financings of this type. In my view, based on the discussions I participated in, such economic terms were negotiated in good faith and at arm's length and are, in the aggregate, generally consistent with the overall cost of debtor-in-possession financings in comparable circumstances.

19. Negotiations around the proposed DIP Facility and its terms extended for a period of time leading up to the Petition Date. In my view, based on the discussions I observed and participated in during the course of these negotiations, and my experience negotiating other debtor-in possession financings, these negotiations were conducted in good faith and at arm's length.

## CONCLUSION

20. In sum, based on my experience and my involvement in assisting the Debtors with the marketing and negotiation of the DIP Facility, I believe that the proposed DIP Facility, taken

6

as a whole, offers the best presently available financing option for the Debtors under the facts and circumstances of these Chapter 11 Cases. Additionally, I believe that the principal economic terms proposed under the DIP Facility are customary and usual for DIP financings of this type, were negotiated in good faith and at arm's length, and are, in the aggregate, generally consistent with terms of DIP financings in comparable circumstances.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Dated: July 10, 2025 | By:  */s/ Jaspinder Kanwal*<br>Name: Jaspinder Kanwal<br>Title: Senior Vice President<br>Jefferies LLC |