**MCDERMOTT WILL & EMERY LLP**

Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:    mhelt@mwe.com
    jhaake@mwe.com
    gwilliams@mwe.com

*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*

**MCDERMOTT WILL & EMERY LLP**

Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Catherine T. Lee (admitted *pro hac vice*)
Landon W. Foody (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:    dsimon@mwe.com
    ekeil@mwe.com
    wguerrieri@mwe.com
    clee@mwe.com
    lfoody@mwe.com

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) Case No. 25-80185 (SGJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' APPLICATION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTORS TO RETAIN ANKURA CONSULTING GROUP, LLC AS RESTRUCTURING ADVISOR, (II) DESIGNATING LOUIS E. ROBICHAUX IV AND RUSSELL A. PERRY AS CO-CHIEF RESTRUCTURING OFFICERS FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE, AND (III) APPROVING THE ENGAGEMENT LETTER RELATED THERETO

---

[1]    The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Genesis Healthcare, Inc. ("Genesis") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the relief described below.  In support of this application (the "Application"), the Debtors submit the *Declaration of Russell A. Perry in Support of Debtors' Application for Entry of Order (I) Authorizing Debtors to Retain Ankura Consulting Group, LLC, as Restructuring Advisors, (II) Designating Louis E. Robichaux IV and Russell A. Perry as Co-Chief Restructuring Officers for the Debtors, in Each Case Effective as of the Petition Date, and (III) Approving the Engagement Letter Related Thereto* (the "Perry Declaration"), attached hereto as **Exhibit B**.  In further support of the Application, the Debtors respectfully represent as follows:

## RELIEF REQUESTED

1.      By the Application, the Debtors respectfully request entry of the Proposed Order, authorizing, but not directing, the Debtors to (a) retain and employ Ankura Consulting Group, LLC ("Ankura") as their restructuring advisor and (b) designate Louis E. Robichaux IV ("Mr. Robichaux") and Russell A. Perry ("Mr. Perry") as Co-Chief Restructuring Officers (the "Co-CROs") and employ additional individuals (the "Additional Personnel" and together with the Co-CROs, the "Engagement Personnel") pursuant to the terms of the Engagement Letter (as defined

below) entered into by and between the Debtors and Ankura, in each case effective as of the

Petition Date (as defined below).

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Northern District of Texas, Dallas

Division (the "Court") has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157

and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated

August 3, 1984, entered by the United States District Court for the Northern District of Texas.

This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the

Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The legal predicates for the relief requested herein are sections 105(a) and 363(b)

of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the *Local

Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas* (the

"Local Rules"), and Section F of the *Procedures for Complex Cases in the Northern District of

Texas*, effective February 6, 2023 (the "Complex Case Procedures").

## BACKGROUND

### I.      The Chapter 11 Cases

4.      Beginning on July 9, 2025 (the "Petition Date"), each Debtor commenced a case

by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter

11 Cases") in this Court.  The Debtors continue to operate their businesses and manage their

properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and

1108.  To date, the Office of the United States Trustee for Region 6 (the "U.S. Trustee") has not

appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner been
appointed.

5.      Additional information regarding the Debtors and these Chapter 11 Cases,
including the Debtors' business operations, capital structure, financial condition, and the reasons
for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Louis E. Robichaux
IV in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 18] (the "First Day
Declaration").

## II.      The Need for and Terms of Ankura's Services

6.      In consideration of the size and complexity of their businesses, as well as the
exigencies of the circumstances, the Debtors have determined that the services of experienced
restructuring managers will substantially enhance their attempts to maximize the value of their
estates.

7.      The terms of Ankura's proposed retention are set forth in that certain engagement
letter, dated August 1, 2020 (the "August 2020 Engagement Letter"), as amended by that certain
first amendment dated November 17, 2020 (the "November 2020 Engagement Addendum") and
that certain second amendment dated July 9, 2025 (the "July 2025 Engagement Addendum" and
together with the August 2020 Engagement Letter and the November 2020 Engagement
Addendum, the "Engagement Letter").  Under the August 2020 Engagement Letter, Ankura was
engaged to provide certain financial and restructuring advisory services to Genesis and certain of
its affiliates and subsidiaries, including the Debtors.  A copy of the Engagement Letter (including
both amendments) is attached hereto as **Exhibit C**.

8.      Pursuant to the Engagement Letter, Mr. Robichaux and Mr. Perry will serve as the
Co-CROs to assist the Debtors with their prosecution of the Chapter 11 Cases.  In addition, as

further described below, Ankura will provide Additional Personnel as necessary to assist the Co-CROs in the execution of their duties.

## ANKURA'S QUALIFICATIONS

9.      Since 2016, Ankura has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas.  Ankura's debtor advisory services include a wide range of activities targeted at stabilizing and improving a company's financial position.   Ankura's expertise relevant to the Chapter 11 Cases includes: (a) turnaround and restructuring consulting; (b) interim management, including serving in executive and other managerial roles; (c) managing communications with lenders, board members, employees, investors, and creditor constituencies, (d) cash management and liquidity enhancement, (e) financial modeling and forecasting, (f) operational oversight and improvement, (g) strategic business plan development, (h) customer and vendor management; and (i) bankruptcy services, including contingency planning, preparing schedules and statements, preference analysis, claims resolution, and executory contract analysis.

10.     The Debtors are familiar with the professional standing and reputation of Ankura and its professionals. The Debtors understand that Ankura's professionals have a wealth of experience in providing restructuring advisory services and enjoy an excellent reputation for services rendered in large and complex chapter 11 cases throughout the United States.

11.     Ankura's professionals have advised management and boards of directors in numerous recent restructurings and turnarounds including, amongst others: *In re Azzur Grp. Holdings LLC*, Case No. 25-10342 (KBO) (Bankr. D. Del. April 8, 2025) [Docket No. 359]; *In re Wynne Transp. Holdings, LLC*, Case No. 25-10027 (KBO) (Bankr. D. Del. Feb. 26, 2025) [Docket No. 113]; *In re Glob. Wound Care Med. Grp.*, Case No. 24-34908 (CML) (Bankr. S.D. Tex. Jan.

14, 2025) [Docket No. 104]; *In re CarePoint Health Sys. Inc.*, Case No. 24-12534 (JKS) (Bankr. D. Del. Dec. 10, 2024) [Docket No. 269]; *In re LaVie Care Ctrs., LLC*, Case No. 24-55507 (PMB) (Bankr. N.D. Ga. June 28, 2024) [Docket No. 186]; *In re South Hills Operations, LLC*, Case No. 24-21217 (CMB) (Bankr. W.D. Pa. June 27, 2024) [Docket No. 299]; *In re Anagram Holdings, LLC*, No. 23-90901 (MI) (Bankr. S.D. Tex. Dec. 26, 2023) [Docket No. 294]; *In re Grupo HIMA San Pablo, Inc.*, No. 23-02510 (ESL) (Bankr. D. P.R. Dec. 1, 2023) [Docket No. 512]; *In re Amyris, Inc.*, No. 23-11131 (TMH) (Bankr. D. Del. Sept. 14, 2023) [Docket No. 281]; *In re Tehum Care Servs., Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. Apr. 11, 2023) [Docket No. 340]; *In re FB Debt Fin. Guarantor, LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Feb. 6, 2023) [Docket No. 222]; *In re DCL Holdings (USA), Inc.*, No. 22-11319 (JKS) (Bankr. D. Del. Jan. 23, 2023) [Docket No. 140]; *In re Pipeline Health Sys., LLC*, No. 22-90291 (Bankr. S.D. Tex. Nov. 30, 2022) [Docket No. 602]; *In re Black News Channel, LLC*, No. 22-40087 (KKS) (Bankr. N.D. Fla. May 5, 2022) [Docket No. 186]; *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Dec. 16, 2021) [Docket No. 579]; *In re GBG USA Inc.*, No. 21-11368 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 229]; *In re Country Fresh Holding Co. Inc.*, Case No. 21-30574 (MI) (Bankr. S.D. Tex. Mar. 31, 2021) [Docket No. 451]; *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del. Feb. 26, 2020) [Docket No. 663]; *In re Furie Operating Alaska, LLC*, Case No. 19-11781 (LSS) (Bankr. D. Del. Nov. 1, 2019) [Docket No. 251]; *In re Emerge Energy Servs. LP*, Case No. 19-11563 (KBO) (Bankr. D. Del. Aug. 13, 2019) [Docket No. 200]; *In re 4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. Apr. 18, 2018) [Docket No. 263]; *In re Foundation Healthcare, Inc.,* Case No. 17-42571 (RFN) (Bankr. N.D. Tex. Jul. 20, 2017) [Docket No. 68].[2]

---

[2]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to the Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

12.     Mr. Perry is a Senior Managing Director at Ankura with over 20 years of financial restructuring, interim management, turnaround, and industry experience, with a significant emphasis on the U.S. healthcare industry.  He has advised and assisted distressed companies across various complex financial, operational, and strategic situations, including serving as interim management, chief transformation officer, chief restructuring officer, strategic restructuring advisor, and independent manager of such entities and assisting with, among other things, financial statement analysis, financial projection development, liquidity and cash management, M&A support, stakeholder negotiations, balance sheet recapitalization and restructurings, postpetition financing and sourcing, and bankruptcy preparation and administration.

13.     Mr. Perry has played a key role in many successful chapter 11 restructurings, including *In re LaVie Care Ctrs., LLC*, No. 24-55507 (PMB) (Bankr. N.D. Ga. June 2, 2024); *In re Grupo HIMA San Pablo, Inc.*, No. 23-02510 (ESL) (Bankr. D. P.R. Aug. 15, 2023) (serving as restructuring officer); *In re Tehum Care Services, Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. Feb. 13, 2023) (served as chief restructuring officer); *In re Pipeline Health Sys., LLC*, No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022) (served as chief transformation officer); *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Oct. 14, 2021) (served as assistant chief restructuring officer); *In re MQ Coco Plum, LLC*, No. 20-30974 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); *In re MQ Pretty Pond, LLC,* No. 20-30973 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); *In re Waters Retail TPA LLC*, No. 20-30644 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); *In re SQLC Senior Living Ctr. at Corpus Christi Inc.*, No. 19-20063 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2019); *In re Tarrant County Senior Living Ctr., Inc. d/b/a The Stayton at Museum Way*, No. 19-337756 (SGJ) (Bankr. N.D. Tex. Nov. 5, 2019); and *In re Trident Holding Co., LLC*, No. 19-10384

(SHL) (Bankr. S.D.N.Y. Feb. 10, 2019).   He also served as restructuring advisor, strategic restructuring advisor, and in interim management roles in other confidential, out-of-court matters. Mr. Perry holds a B.S. in Agribusiness, an M.B.A. from Mays Business School at Texas A&M University and is a CFA® Charterholder.

14.     Mr. Robichaux is a Senior Managing Director at Ankura Consulting with over 30 years of experience in the interim management, restructuring, and insolvency industry, with a significant emphasis on the U.S. healthcare industry.   He has advised and assisted distressed companies with numerous complex financial, operational, and strategic situations, including serving as interim management, chief restructuring officer, and strategic restructuring advisor of such entities and assisting with, among other things, financial statement analysis, expert witness services, financial projection development, liquidity and cash management, M&A support, stakeholder negotiations, balance sheet recapitalization and restructurings, postpetition financing and sourcing, and bankruptcy preparation and administration.   He also has extensive healthcare sector experience and has advised hospitals, HMO/managed care organizations, outpatient rehabilitation facilities, skilled nursing care facilities, and continuing care retirement communities.

15.     Mr. Robichaux has played a key role in many successful chapter 11 restructurings, including *In re South Hills Operations, LLC*, Case No. 24-21217 (CMB) (Bankr. W.D. Pa. May 17, 2024) (served as chief restructuring officer); *In re Tarrant County Senior Living Ctr., Inc.*, Case No. 19-33756 (SGJ) (Bankr. N.D. Tex. Nov. 5, 2019) (served as chief restructuring officer); *In re Mayflower Communities, Inc.*, Case No. 19-30283 (HDH) (Bankr. N.D. Tex. Jan. 31, 2019) (served as chief restructuring officer); *In re 4 West Holdings, Inc.*, Case No. 18-30777 (Bankr. N.D. Tex. Mar. 7, 2018) (HDH) (served as chief restructuring officer); and *St. Francis' Hospital in Poughkeepsie, New York*, Case No. 13-37725 (Bankr. S.D.N.Y. Dec. 17, 2013).   He has also

served in numerous chief restructuring officer and similar roles out-of-court, including ProMedica

Health System (served as interim chief financial officer), Tuomey Healthcare System (served as

chief restructuring officer), Quorum Health (served as interim chief financial officer), Healthcare

Partners Investment LLC (served as interim chief financial officer and restructuring advisor),

Medicalodges Inc., Senior Living Properties LLC (served as chief restructuring officer),

Orthodontic Centers of America, and MMH Medical Holdings Inc.  Mr. Robichaux holds a B.B.A.

from Austin Peay State University, an M.B.A. from Mays Business School at Texas A&M

University and is a CFA® Charterholder.  He also holds an inactive license in Texas as a Licensed

Nursing Facility Administrator and various professional credentials relevant to the restructuring

industry.

16.     The Debtors respectfully submit that Mr. Robichaux and Mr. Perry are highly

qualified to serve as Co-CROs with the support of the Additional Personnel.  The Debtors also

submit that the Additional Personnel have substantial expertise in the areas discussed above, and,

if approved, will provide services to the Debtors under an order approving this Application.  The

Additional Personnel will work closely with the Debtors' management and professionals under the

supervision of the Co-CROS during the pendency of the Chapter 11 Cases.  By virtue of the

expertise of its restructuring personnel, Ankura is well qualified to provide services to and

represent the Debtors' interests in these Chapter 11 Cases.

17.     Through the services Ankura has provided to the Debtors since its initial

engagement in August 2020, Ankura, generally, and Mr. Robichaux and Mr. Perry, specifically,

are intimately familiar with the Debtors' businesses, financial affairs, and capital structure, and

have worked closely with the Debtors' management and other professionals for almost five years.

Consequently, the Debtors believe that the Engagement Personnel have developed significant

relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of the Chapter 11 Cases.

18.     For these reasons, the Engagement Personnel are both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of the Chapter 11 Cases.  Accordingly, the Debtors submit that the retention of Ankura, the designation of Mr. Robichaux and Mr. Perry as Co-CROs and the engagement of the Additional Personnel, on the terms and conditions set forth herein, is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties-in-interest, and should be granted in all respects.

## **SERVICES TO BE PROVIDED BY ANKURA**

19.     The terms and conditions of the Engagement Letter were negotiated between the Debtors and Ankura on an arm's length basis and reflect the parties' mutual agreement as to the substantial efforts that will be required under this engagement.

20.     Subject to approval by the Court, the Debtors propose to retain Ankura to provide Mr. Robichaux and Mr. Perry as Co-CROs and to provide the Additional Personnel on the terms and conditions set forth in the Engagement Letter, except as otherwise explicitly set forth herein or in any order granting the Application.  Ankura, including Mr. Robichaux, Mr. Perry, and the Additional Personnel, shall generally perform activities and services to assist the Debtors throughout the Debtors' chapter 11 process.

21.     Among other things, the Engagement Personnel will support the Debtors with respect to the following (collectively, the "Services"):[3]

---

[3]     The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in the Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.  Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

10

(a)     advise and assist the Debtors and its other advisors in connection with the Debtors' identification, evaluation, development, and implementation of restructuring strategies and tactics;

(b)     perform general due diligence on the Debtors in order to gain an understanding of the Debtors' capital structure, contractual commitments and current situation;

(c)     review the Debtors' existing cash flow forecasts, and to the extent necessary, assist management in updating or refining cash flow forecasting models and methodologies, including reviewing any liquidity improvement plans;

(d)     assist the Debtors in managing liquidity, including the monitoring of actual cash flow versus projections and evaluating liquidity under a variety of operating and restructuring scenarios;

(e)     advise and assist the Debtors with developing strategic business plans including, if necessary, assistance with development of multi-year financial projection scenarios and related debt service capacity models;

(f)     advise and assist the Debtors with communications and negotiations with its stakeholders, including, but not limited to, landlords, secured creditors, unsecured creditors, customers, suppliers, and other parties in interest;

(g)     advise and assist management regarding responding to the information requests from the Debtors stakeholders and potential capital sources;

(h)     direct and oversee Ankura's provision of restructuring-related services and administration of the Chapter 11 Cases;

(i)     assist the Debtors and its other retained professionals in preparing for a filing under chapter 11 of the Bankruptcy Code, including all support necessary related to petitions, first day motions and other filings;

(j)     assist the Debtors and its other retained professionals in securing financing necessary to administer the case, including supporting the Debtors' development of a budget satisfactory to a debtor-in-possession ("DIP") lender and negotiation of a DIP credit facility, interim and final DIP orders and/or cash collateral orders;

(k)     assist in the formulation, development, negotiation and approval of any Disclosure Statement and Chapter 11 Plan filed in the Chapter 11 Cases;

(l)     assist the Company with respect to bankruptcy-related claims estimation management and reconciliation processes;

(m)    engage with the Debtors' creditors, any official committee appointed in the Chapter 11 Cases, and any other constituencies in the case and assist in the preparation of reports to and negotiations with such constituencies;

(n)    assist the Debtors in preparing reporting required during the Bankruptcy restructuring process including, but not limited to, Monthly Operating Reports, creditor matrices, Statements of Financial Affairs, and Schedules of Assets and Liabilities; and

(o)    perform other professional services as requested by the Debtors that are directly related to the Debtors' preparation for entrance into or administration of a bankruptcy restructuring proceeding.

The foregoing services are necessary to enable the Debtors to maximize the value of their estates and conduct an orderly reorganization in the Chapter 11 Cases.

## NO DUPLICATION OF SERVICES

22.    The services provided by Ankura are distinct and specific financial advising and consulting services, and such services will complement and not duplicate the services rendered by any other professional retained in these Chapter 11 Cases.  The Engagement Letter reflects Ankura's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request, Ankura will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  As set forth in the Perry Declaration, Ankura understands that the Debtors have retained and may retain additional professionals during the term of the engagement and Ankura agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## TERMS OF RETENTION

23.    In consideration of the services to be provided by Ankura pursuant to the terms of the Engagement Letter and subject to Court approval, the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules, the Debtors have agreed to the following fee and expense structure (the "Fee and Expense Structure") to: (a) compensate Ankura on a monthly fee for the Co-CROs in the amount of $250,000; (b) compensate Ankura on an hourly basis for the Services provided by the Engagement Personnel in accordance with Ankura's ordinary and customary rates in effect on the date such services are rendered; and (c) reimburse reasonable allocated and direct expenses incurred by Ankura in connection with all services performed on behalf of the Debtors.

24.    The current standard U.S. hourly rates[4] (expressed in USD), subject to annual adjustments, that Ankura professionals will charge pursuant to the Engagement Letter are as follows:

| Professional | Standard Rate |
|---|---|
| Senior Managing Director | $1,300 – $1,455 |
| Managing Director | $1,075 – $1,205 |
| Director/Senior Director | $740 – $1,020 |
| Associate/Senior Associate | $495 – $680 |
| Paraprofessionals | $380 – $440 |

25.    These hourly rates reflect Ankura's ordinary and customary billing practices for engagements of this complexity and magnitude.

26.    In addition, Ankura will seek reimbursement for its reasonable, necessary and direct out-of-pocket expenses incurred in connection with the services provided under the Engagement Letter, including, among other things, overnight mail, messenger, travel, meals, and

---

[4]    Rates included in the Application are current Ankura Consulting hourly rates, effective as of January 1, 2025, and have been approved by the Debtors in accordance with the Engagement Letter.

accommodations, fees and expenses for outside legal counsel and other third-party advisors, and other expenses specifically related to this engagement.

27.     The Debtors believe that the Fee and Expense Structure is reasonable and comparable to those generally charged by comparable firms that render similar services under similar circumstances.  The Fee and Expense Structure summarized above and described more fully in the Engagement Letter is consistent with Ankura's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Chapter 11 Cases.  The Debtors believe that the Fee and Expense Structure is reasonable and market competitive.

## **FEES AND REPORTING**

28.     If the Court approves the relief requested herein, Ankura will be retained to provide the Debtors with the Engagement Personnel pursuant to Bankruptcy Code section 363.  Because Ankura is not being retained as a professional under Bankruptcy Code section 327, Ankura will not be required to submit fee applications pursuant to Bankruptcy Code sections 330 and 331 and the interim compensation procedures proposed in the *Debtors' Motion for Entry of Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* will not apply to Ankura.  Rather, all fees and expenses due to Ankura will be invoiced and paid by the Debtors in the ordinary course of business on a monthly basis, or, at Ankura's discretion, more frequently, subject to the terms of the Proposed Order.

29.     Nevertheless, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code (sometimes referred to as the *J. Alix Protocol*), Ankura will file with the Court, and provide notice

to the U.S. Trustee, counsel to the DIP Lenders, and counsel to any official committee appointed in these Chapter 11 Cases (collectively, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis (each, a "Quarterly Report").[5] Such reports will (a) summarize the services provided to the Debtors by project category, (b) summarize the compensation earned by each of the Ankura personnel, (c) summarize the time expended by Ankura personnel, by project category, reported in tenth of an hour increments for Additional Personnel and half hour increments for fixed fee personnel (including the Co-CROs), and (d) itemize the expenses incurred. The Notice Parties shall have fourteen (14) days to object to the Quarterly Reports. The compensation and expenses set forth in the Quarterly Reports shall be subject to Court review solely in the event that an objection is filed.

30.     In addition, Ankura will file with the Court and provide the Notice Parties a monthly report on staffing (the "Monthly Staffing Report") by the 20th of each month for the previous month, which report will include the names and tasks filled by all Engagement Personnel involved in this matter. The Monthly Staffing Report (and Ankura's staffing for this matter) will be subject to review by the Court only in the event so requested by any of the Notice Parties. Ankura will file its first Monthly Staffing Report by September 20, 2025, for the period covering the Petition Date through August 31, 2025.

31.     In connection with the August 2020 Engagement Letter, Ankura received an initial advance retainer from the Debtors in the amount of $300,000 (the "Retainer"), which the Debtors subsequently replenished upon request by Ankura. According to Ankura's books and records,

---

[5]     Such reports will contain summary charts which describe the services provided, identify the compensation earned by the Engagement Personnel, and itemize the expenses incurred. In addition, Ankura Consulting will append to such reports fee summaries for the relevant periods identifying the number of hours worked by each Co-CRO and Additional Personnel, each such person's rate, and each such person's total fees and expenses for the period. For the Additional Personnel, fee summaries will also categorize such hours to include a breakout of the relevant tasks involved in the engagement, such as restructuring, bankruptcy reporting, treasury management, claims management, tax consulting, litigation support services, and other relevant activities.

during the 90-day period prior to the Petition Date, the Debtors paid Ankura $3,518,927.09 in aggregate for professional services performed and expenses incurred.  A disclosure of the actual amount of Retainer held by Ankura, if any, as of the Petition Date will be provided in Ankura's first Quarterly Report.[6]

32.    The Debtors and Ankura have agreed that any portion of the Retainer not used to compensate Ankura for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final post-petition billing and will not be placed in a separate account.

33.    Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, Ankura may have incurred, but not billed, fees and reimbursable expenses that relate to the pre-petition period.  Approval is sought from this Court for Ankura to apply the Retainer to any such amounts.  Upon entry of an Order approving the relief requested herein, the Debtors will not owe Ankura any sums for pre-petition services.

## **INDEMNIFICATION**

34.    Subject to the approval of the Court and as more fully described in the August 2020 Engagement Letter, the Debtors have agreed to indemnify Ankura and certain "Indemnified Persons" as set forth in Schedule I to the August 2020 Engagement Letter (the "Indemnification Agreement").[7]  The rights to indemnification shall survive the termination of the Chapter 11 Cases

---

[6]    Based on Ankura Consulting's preliminary accounting, the amount of unused Retainer is believed to be between $400,000 - $500,000.

[7]    The Indemnification Agreement generally provides that the Debtors shall defend, indemnify, and hold harmless Ankura Consulting and its affiliates and their respective directors, officers, employees, attorneys, and other agents appointed by any of the foregoing and each other person, if any, controlling Ankura Consulting or any of its affiliates (Ankura Consulting and each such person and entity being referred to as an "Indemnified Person"), from and against any losses, claims, damages, judgments, assessments, costs, and other liabilities, and will reimburse each Indemnified Person for all reasonable fees and expenses (including the reasonable fees and expenses of

or any cases into which they may be converted.  In no event shall the Debtors be obligated to indemnify Ankura for its gross negligence or willful misconduct.

35.     The Debtors believe the indemnity provisions are a reasonable term and condition of Ankura's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and Ankura at arm's-length and in good faith.  Ankura and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to Ankura and for comparable engagements, both in- and out-of-court.   The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of Ankura's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Ankura's services to successfully prosecute the Chapter 11 Cases.

**ANKURA'S DISINTERESTEDNESS**

36.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Perry Declaration, Ankura: (a) has no connection with the Debtors, their creditors, other parties-in-interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; (b) does not hold an interest adverse to the Debtors' estates; (c) is not a creditor, equity security holder or insider of the Debtors; and (d) is a "disinterested person" as defined by Bankruptcy Code section 101(14).

37.     Although the Debtors respectfully submit that the retention of Ankura is not

---

counsel) as they are incurred in investigating, preparing, pursuing, or defending any claim, action, proceeding, or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party, in each case, related to or arising out of or in connection with the services rendered or to be rendered by an Indemnified Person pursuant to the August 2020 Engagement Letter or any Indemnified Persons' actions or inactions in connection with any such services.

governed by Bankruptcy Code section 327, the Perry Declaration discloses certain connections with creditors, equity security holders, and other parties-in-interest in these Chapter 11 Cases. Ankura does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases. Therefore, the Debtors submit that Ankura is a "disinterested person" as that term is defined by Bankruptcy Code section 101(14).

38.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Ankura's retention are communicated to or discovered by Ankura, the Debtors submit that Ankura will use reasonable efforts to file promptly a supplemental declaration.

## BASIS FOR RELIEF REQUESTED

39.     The Debtors seek to employ and retain Ankura and designate Mr. Robichaux and Mr. Perry as Co-CROs pursuant to Bankruptcy Code sections 105 and 363, effective as of the Petition Date. Bankruptcy Code section 363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to Bankruptcy Code section 105(a), the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

40.     Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to Bankruptcy Code section 363(b) represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business

18

justification for using, selling, or leasing the property outside the ordinary course of business."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

41.     The retention of the Engagement Personnel is a sound exercise of the Debtors' business judgment.   As set forth above, Mr. Robichaux and Mr. Perry both have extensive experience serving as senior officers and in comparable advisory roles for many troubled companies.  The Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors.  In light of the foregoing, the Debtors believe that the retention of the Engagement Personnel, including the Co-CROs, is appropriate and in the best interests of all parties-in-interest in these Chapter 11 Cases.

42.     Further, courts in this district have routinely granted relief similar to the relief requested herein.  *See, e.g.*, *In re Prospect Medical Holdings, Inc.*, Case No. 25-80002 (SGJ) (Bankr. N.D. Tex. Feb. 12, 2025) [Docket No. 613]; *In re TGI Friday's Inc.*, Case No. 24-80069 (SGJ) (Bankr. N.D. Tex. Dec. 31, 2024) [Docket No. 409]; *In re Sunland Medical Found.,* Case No. 23-80000 (MVL) (Bankr. N.D. Tex. Oct. 19, 2023) [Docket No. 252]; *In re Christian Care Ctrs., Inc.*, Case No. 22-80000 (SGJ) (Bankr. N.D. Tex. Aug. 1, 2022) [Docket No. 284]; *In re Studio Movie Grill Holdings, LLC*, Case No. 20-32633 (SGJ) (Bankr. N.D. Tex. Dec. 10, 2020) [Docket No. 328]; *In re Senior Care Ctrs., LLC, et.al.*, Case No. 18-33967 (BJH) (Bankr. N.D.

Tex. Mar. 1, 2019) [Docket No. 605]; *4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr.

N.D. Tex. Apr. 18, 2018) [Docket No. 263].

43.     Based upon the foregoing, the Debtors submit that the retention of the Engagement

Personnel, including the designation of Mr. Robichaux and Mr. Perry as Co-CROs on the terms

set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interests of

the Debtors' estates, creditors, and other parties-in-interest and should be granted in the Chapter

11 Cases.

## RELIEF AS OF THE PETITION DATE IS APPROPRIATE

44.     In accordance with the Debtors' request, Ankura agreed to provide services to the

Debtors on and after the Petition Date with assurances that the Debtors would seek approval of its

employment and retention, effective as of the Petition Date, so that Ankura can be compensated

for services rendered before approval of the Application.  The Debtors believe that no party-in-

interest will be prejudiced by the granting of relief as of the Petition Date as proposed in the

Application because Ankura and Mr. Perry and Mr. Robichaux have provided, and continue to

provide, valuable services to the Debtors' estates during the interim period.  The Local Rules

empower courts in this district to approve *nunc pro tunc* employment, and the Debtors submit that

such approval is justified here.  *See, e.g.*, Local Rule 2014-1(b).  Further, as noted above, courts in

this district have routinely approved employment similar to that requested herein in matters

comparable to this matter.

45.     Accordingly, to assist the Debtors through the complexities involved in these

Chapter 11 Cases, the Debtors respectfully request entry of the Proposed Order authorizing the

Debtors to (a) retain and employ Ankura and (b) designate Mr. Robichaux and Mr. Perry as Co-

CROs and employ the Additional Personnel, effective as of the Petition Date.

## NOTICE

46.     The Debtors will provide notice of the Application to the Complex Service List (as defined in the Creditor Matrix Order [Docket No. 54]).  The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

47.     No previous request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: July 29, 2025

*/s/ William K. Snyder*
William K. Snyder
Independent Director
Genesis Healthcare, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a true and correct copy of the foregoing Application was

served by the Court's CM/ECF system on all counsel of record registered in these Chapter 11

Cases through CM/ECF.  The Debtors' claims and noticing agent will be filing a supplemental

certificate of service on the docket to reflect any additional service of the foregoing Application.

Dated: July 29, 2025          **MCDERMOTT WILL & EMERY LLP**
      Dallas, Texas

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         mhelt@mwe.com
               jhaake@mwe.com
               gwilliams@mwe.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Catherine T. Lee (admitted *pro hac vice*)
Landon W. Foody (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:         dsimon@mwe.com
               ekeil@mwe.com
               wguerrieri@mwe.com
               clee@mwe.com
               lfoody@mwe.com

*Proposed Counsel for the Debtors and
Debtors-in-Possession*

**EXHIBIT A**

**<u>Proposed Order</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |
|  | **Related to Docket No. ___** |

## ORDER (I) AUTHORIZING DEBTORS TO RETAIN
## ANKURA CONSULTING GROUP, LLC AS RESTRUCTURING ADVISOR,
## (II) DESIGNATING LOUIS E. ROBICHAUX IV AND RUSSELL A. PERRY
## AS CO-CHIEF RESTRUCTURING OFFICERS FOR THE DEBTORS,
## IN EACH CASE EFFECTIVE AS OF THE PETITION DATE, AND
## (III) APPROVING THE ENGAGEMENT LETTER RELATED THERETO

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

Upon the application (the "Application")[2] of the Debtors for entry of an order (this "Order"), authorizing, but not directing, the Debtors, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), to (a) retain and employ Ankura as their restructuring advisor and (b) designate Louis E. Robichaux IV and Russell A. Perry as Co-Chief Restructuring Officers (each, a "Co-CRO") and employ the Additional Personnel pursuant to the terms of the Engagement Letter, in each case effective as of the Petition Date, all as more fully set forth in the Application; and the Court being satisfied that (a) Ankura has the capability and experience to provide the services described in the Application, (b) Ankura does not hold or represent an interest adverse to the Debtors or their estates related to any matter for which it will be employed, and (c) Ankura is a "disinterested person" as defined in Bankruptcy Code section 101(14); and upon consideration of the Perry Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Application in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Application having been given under the particular circumstances; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Application is in the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

2

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after

due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Application is granted as set forth herein.

2.      Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtors are

authorized, but not directed, to (a) retain and employ Ankura as their restructuring advisor; (b)

designate Louis E. Robichaux IV and Russell A. Perry as Co-CROs; and (c) employ the Additional

Personnel pursuant to the terms of the Engagement Letter, in each case effective as of the Petition

Date.

3.      The terms of the Engagement Letter, attached to the Application as Exhibit C, are

approved in all respects (including, without limitation, the compensation provisions and the

indemnification provisions), subject to the following terms, which apply notwithstanding anything

in the Engagement Letter or the Application to the contrary:

(a)     Ankura and its controlled affiliates shall not act in any other capacity (for
example, and without limitation, as a financial advisor, claims agent/claims
administrator, or investor/acquirer) in connection with these chapter 11
cases.

(b)     In the event the Debtors seek to have Ankura personnel assume executive
officer positions that are different than the positions disclosed in the
Application, or to materially change the terms of the engagement by either
(i) modifying the functions of personnel, (ii) adding new personnel, or (iii)
altering or expanding the scope of the engagement, a motion to modify the
retention shall be filed.

(c)     No principal, employee or independent contractor of Ankura or its
subsidiaries shall serve as a director of any of the above-captioned Debtors
during the pendency of the above-captioned cases.

(d)     The Debtors are permitted to indemnify those persons serving as executive
officers on the same terms as provided to the Debtors' other officers and
directors under the corporate bylaws and applicable state law, along with
insurance coverage under the Debtors' directors and officers insurance

policy.

(e)     For a period of three years after the conclusion of the engagement, neither Ankura nor any of its subsidiaries shall make any investments in the Debtors or the reorganized Debtors.

(f)     Ankura shall disclose all facts that may have a bearing on whether the firm, its controlled affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.

4.     Ankura shall be compensated for its services and reimbursed for any related expenses in accordance with the Fee and Expense Structure set forth in the Application, the Perry Declaration, and the Engagement Letter.  Ankura and its personnel shall conform to the Fee and Expense Structure outlined in the Application and the Engagement Letter.

5.     Ankura shall file with the Court, and provide notice of the same to the United States Trustee (the "U.S. Trustee"), counsel to the DIP Lenders, and counsel to any official committee appointed in these Chapter 11 Cases (collectively, the "Notice Parties"), a monthly report of staffing for the engagement (each, a "Monthly Staffing Report") by the 20th of each month for the previous month, which report will include the names and tasks filled by all Engagement Personnel involved in this matter.  The Monthly Staffing Report (and Ankura's staffing for this matter) will be subject to review by the Court only in the event so requested by any of the Notice Parties.  For the avoidance of doubt, the Co-CROs will provide aggregate time in half-hour segments, irrespective of category.  Ankura will file its first Monthly Staffing Report by September 20, 2025, for the period covering the Petition Date through August 31, 2025.

6.     Ankura shall file with the Court, and provide notice of the same to the Notice Parties, reports of compensation earned and expenses incurred on a quarterly basis (each, a "Quarterly Report").  Each Quarterly Report will (a) summarize the services provided to the

Debtors by project category, (b) summarize the compensation earned by each of the Ankura personnel, (c) identify the time expended by Ankura personnel, by project category, reported in tenth of an hour increments for Additional Personnel and half-hour increments for fixed fee personnel (including the Co-CROs), and (d) itemize the expenses incurred.  The Notice Parties shall have fourteen (14) days to object to the Quarterly Reports.  The compensation and expenses set forth in the Quarterly Reports shall be subject to Court review solely in the event that an objection is filed.

7.      Notwithstanding the requirements of paragraphs 5 and 6 above, Ankura is not required to submit interim or final fee applications pursuant to Bankruptcy Code sections 330 and 331 and the interim compensation procedures set forth in the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* entered in these Chapter 11 Cases shall not apply to Ankura.  Instead, Ankura will submit monthly invoices (or, at Ankura's discretion, more frequently) to the Debtors, and the Debtors are hereby authorized, but not directed, to pay, in the ordinary course of business, all reasonable amounts invoiced by Ankura for fees and expenses incurred in connection with Ankura's retention.

8.      Ankura shall use reasonable efforts to avoid any unnecessary duplication of services provided by any retained professionals in these Chapter 11 Cases.

9.      Ankura is authorized to apply the Retainer to satisfy any unbilled or other remaining prepetition fees and expenses that Ankura becomes aware of during its ordinary course billing review and reconciliation.

10.     To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

11.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # # END OF ORDER # # #

Prepared and presented by:

/s/ *Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Grayson Williams (TX 24124561)
**MCDERMOTT WILL & EMERY LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        mhelt@mwe.com
              jhaake@mwe.com
              gwilliams@mwe.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Catherine T. Lee (admitted *pro hac vice*)
Landon W. Foody (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        dsimon@mwe.com
              ekeil@mwe.com
              wguerrieri@mwe.com
              clee@mwe.com
              lfoody@mwe.com

*Proposed Counsel for the Debtors and
Debtors-in-Possession*

**EXHIBIT B**

**<u>Perry Declaration</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) | Case No. 25-80185 (SGJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF RUSSELL A. PERRY IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTORS TO RETAIN**
**ANKURA CONSULTING GROUP, LLC AS RESTRUCTURING ADVISOR,**
**(II) DESIGNATING LOUIS E. ROBICHAUX IV AND RUSSELL A. PERRY AS CO-**
**CHIEF RESTRUCTURING OFFICERS FOR THE DEBTORS, IN EACH CASE**
**EFFECTIVE AS OF THE PETITION DATE, AND (III) APPROVING**
**THE ENGAGEMENT LETTER RELATED THERETO**

I, Russell A. Perry, being duly sworn, hereby state as follows:

1.      I am a Senior Managing Director at Ankura Consulting Group, LLC ("Ankura"),

an interim management and financial services advisory firm, with numerous offices throughout

the country.

2.      I submit this Declaration (the "Declaration") in support of the application

(the "Application")[2] of the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors") for an order authorizing the Debtors to (a) retain and employ Ankura as their

restructuring advisor, (b) designate Louis E. Robichaux IV ("Mr. Robichaux") and Russell A.

Perry ("Mr. Perry") as Co-Chief Restructuring Officers (the "Co-CROs"), and (c) employ

---

[1]     The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755.  There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only.  A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis.  The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

additional individuals (the "Additional Personnel" and together with the Co-CROs, the "Engagement Personnel") pursuant to the terms of the engagement letter entered into by and between the Debtors and Ankura, dated as of August 1, 2020, as subsequently amended by November 17, 2020 and July 9, 2025 (collectively, the "Engagement Letter"),[3] in each case effective as of July 9, 2025 (the "Petition Date").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[4]

## ANKURA'S QUALIFICATIONS

3.      Since 2016, Ankura has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas.  Ankura's debtor advisory services include a wide range of activities targeted at stabilizing and improving a company's financial position.  Ankura's expertise relevant to these chapter 11 cases includes: (a) turnaround and restructuring consulting; (b) interim management, including serving in executive and other managerial roles; (c) managing communications with lenders, board members, employees, investors, and creditor constituencies, (d) cash management and liquidity enhancement, (e) financial modeling and forecasting, (f) operational oversight and improvement, (g) strategic business plan development, (h) customer and vendor management; and (i) bankruptcy services, including contingency planning, preparing schedules and statements, preference analysis, claims resolution, and executory contract analysis.

4.      Ankura's professionals have advised management and boards of directors in numerous recent restructurings and turnarounds including, amongst others: *In re Azzur Grp.*

---

[3]     As set forth in the Application, the Engagement Letter consists of that certain engagement letter, dated August 1, 2020 (the "August 2020 Engagement Letter"), as amended by that certain first amendment dated November 17, 2020 (the "November 2020 Engagement Letter") and that certain second amendment dated July 9, 2025 (the "July 2025 Engagement Letter").

[4]     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Ankura and are based on information provided by them.

*Holdings LLC*, Case No. 25-10342 (KBO) (Bankr. D. Del. April 8, 2025) [Docket No. 359]; *In re*

*Wynne Transp. Holdings, LLC*, Case No. 25-10027 (KBO) (Bankr. D. Del. Feb. 26, 2025) [Docket

No. 113]; *In re Glob. Wound Care Med. Grp.*, Case No. 24-34908 (CML) (Bankr. S.D. Tex. Jan.

14, 2025) [Docket No. 104]; *In re CarePoint Health Sys. Inc.*, Case No. 24-12534 (JKS) (Bankr.

D. Del. Dec. 10, 2024) [Docket No. 269]; *In re LaVie Care Ctrs., LLC*, Case No. 24-55507 (PMB)

(Bankr. N.D. Ga. June 28, 2024) [Docket No. 186]; *In re South Hills Operations, LLC*, Case No.

24-21217 (CMB) (Bankr. W.D. Pa. June 27, 2024) [Docket No. 299]; *In re Anagram Holdings,*

*LLC*, No. 23-90901 (MI) (Bankr. S.D. Tex. Dec. 26, 2023) [Docket No. 294]; *In re Grupo HIMA*

*San Pablo, Inc.*, No. 23-02510 (ESL) (Bankr. D. P.R. Dec. 1, 2023) [Docket No. 512]; *In re*

*Amyris, Inc.*, No. 23-11131 (TMH) (Bankr. D. Del. Sept. 14, 2023) [Docket No. 281]; *In re Tehum*

*Care Servs., Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. Apr. 11, 2023) [Docket No. 340]; *In re*

*FB Debt Fin. Guarantor, LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Feb. 6, 2023) [Docket No.

222]; *In re DCL Holdings (USA), Inc.*, No. 22-11319 (JKS) (Bankr. D. Del. Jan. 23, 2023) [Docket

No. 140]; *In re Pipeline Health Sys., LLC*, No. 22-90291 (Bankr. S.D. Tex. Nov. 30, 2022) [Docket

No. 602]; *In re Black News Channel, LLC*, No. 22-40087 (KKS) (Bankr. N.D. Fla. May 5, 2022)

[Docket No. 186]; *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Dec.

16, 2021) [Docket No. 579]; *In re GBG USA Inc.*, No. 21-11368 (MEW) (Bankr. S.D.N.Y. Sept.

22, 2021) [Docket No. 229]; *In re Country Fresh Holding Co. Inc.*, Case No. 21-30574 (MI)

(Bankr. S.D. Tex. Mar. 31, 2021) [Docket No. 451]; *In re MTE Holdings LLC*, Case No. 19-12269

(CSS) (Bankr. D. Del. Feb. 26, 2020) [Docket No. 663]; *In re Furie Operating Alaska, LLC*, Case

No. 19-11781 (LSS) (Bankr. D. Del. Nov. 1, 2019) [Docket No. 251]; *In re Emerge Energy Servs.*

*LP*, No. 19-11563 (KBO) (Bankr. D. Del. Aug. 13, 2019) [Docket No. 200]; *In re 4 West*

*Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. Apr. 18, 2018) [Docket No. 263]; *In*

*re Foundation Healthcare, Inc.,* Case No. 17-42571 (RFN) (Bankr. N.D. Tex. Jul. 20, 2017)

[Docket No. 68].[5]

5.    I have over 20 years of financial restructuring, interim management, turnaround, and industry experience, with a significant emphasis on the U.S. healthcare industry.  During that time, I have advised and assisted distressed companies across various complex financial, operational, and strategic situations, including serving as interim management, chief transformation officer, chief restructuring officer, strategic restructuring advisor, restructuring advisor and independent manager of such entities and assisting with, among other things, financial statement analysis, financial projection development, liquidity and cash management, M&A support, stakeholder negotiations, balance sheet recapitalization and restructurings, postpetition financing and sourcing, and bankruptcy preparation, administration and negotiation.

6.    I have played a key role in many successful chapter 11 restructurings, including *In re LaVie Care Ctrs., LLC*, No. 24-55507 (PMB) (Bankr. N.D. Ga. June 2, 2024); *In re Grupo HIMA San Pablo, Inc.*, No. 23-02510 (ESL) (Bankr. D. P.R. Aug. 15, 2023) (serving as restructuring officer); *In re Tehum Care Servs., Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. Feb. 13, 2023) (served as chief restructuring officer); *In re Pipeline Health Sys., LLC*, No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022) (served as chief transformation officer); *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Oct. 14, 2021) (served as assistant chief restructuring officer); *In re SQLC Senior Living Ctr. at Corpus Christi Inc.*, No. 19-20063 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2019); *In re Tarrant County Senior Living Ctr., Inc. d/b/a The Stayton at Museum Way*, No. 19-337756 (SGJ) (Bankr. N.D. Tex. Nov. 5, 2019); *In re MQ Coco Plum, LLC*, No. 20-30974 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); *In*

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to the Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

*re MQ Pretty Pond, LLC,* No. 20-30973 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); *In re Waters Retail TPA LLC*, No. 20-30644 (SGJ) (Bankr. N.D. Tex. Mar. 30, 2020) (served as independent director); and *In re Trident Holding Co., LLC*, No. 19-10384 (SHL) (Bankr. S.D.N.Y. Feb. 10, 2019). I hold a B.S. in Agribusiness, an M.B.A. from Texas A&M University and am a CFA® Charterholder.

7.      Since August 2020, Ankura and I have provided services to the Debtors in connection with their restructuring efforts. In providing such prepetition professional services to the Debtors, Ankura and I have become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked closely with the Debtors' management and their other advisors, Ankura and I have developed relevant experience and expertise regarding the Debtors that will assist us in providing effective and efficient services in these chapter 11 cases. Accordingly, I believe that Ankura is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED BY ANKURA

8.      Subject to approval by the Court, the Debtors anticipate that Ankura will provide Mr. Robichaux and Mr. Perry as Co-CROs and will provide the Additional Personnel (together, the "Engagement Personnel") on the terms and conditions set forth in the Engagement Letter. Ankura, including myself, Mr. Robichaux, and the Additional Personnel, shall generally perform activities and services to assist the Debtors throughout the Debtors' chapter 11 process.

9.      Among other things, the Engagement Personnel will support the Debtors with respect to the following (collectively, the "Services"):[6]

---

[6]     The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in the Declaration are provided for purposes of convenience only. In the event of any inconsistency between the

(a)     advise and assist the Debtors and its other advisors in connection with the Debtors' identification, evaluation, development, and implementation of restructuring strategies and tactics;

(b)     perform general due diligence on the Debtors in order to gain an understanding of the Debtors' capital structure, contractual commitments and current situation;

(c)     review the Debtors' existing cash flow forecasts, and to the extent necessary, assist management in updating or refining cash flow forecasting models and methodologies, including reviewing any liquidity improvement plans;

(d)     assist the Debtors in managing liquidity, including the monitoring of actual cash flow versus projections and evaluating liquidity under a variety of operating and restructuring scenarios;

(e)     advise and assist the Debtors with developing strategic business plans including, if necessary, assistance with development of multi-year financial projection scenarios and related debt service capacity models;

(f)     advise and assist the Debtors with communications and negotiations with its stakeholders, including, but not limited to, landlords, secured creditors, unsecured creditors, customers, suppliers, and other parties in interest;

(g)     advise and assist management regarding responding to the information requests from the Debtors stakeholders and potential capital sources;

(h)     direct and oversee Ankura's provision of restructuring-related services and administration of the Chapter 11 Cases;

(i)     assist the Debtors and its other retained professionals in preparing for a filing under chapter 11 of the Bankruptcy Code, including all support necessary related to petitions, first day motions and other filings;

(j)     assist the Debtors and its other retained professionals in securing financing necessary to administer the case, including supporting the Debtors' development of a budget satisfactory to a debtor-in-possession ("DIP") lender and negotiation of a DIP credit facility, interim and final DIP orders and/or cash collateral orders;

(k)     assist in the formulation, development, negotiation and approval of any Disclosure Statement and Chapter 11 Plan filed in the Chapter 11 Cases;

---

summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.  Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

6

(l)    assist the Company with respect to bankruptcy-related claims estimation management and reconciliation processes;

(m)    engage with the Debtors' creditors, any official committee appointed in the Chapter 11 Cases, and any other constituencies in the case and assist in the preparation of reports to and negotiations with such constituencies;

(n)    assist the Debtors in preparing reporting required during the Bankruptcy restructuring process including, but not limited to, Monthly Operating Reports, creditor matrices, Statements of Financial Affairs, and Schedules of Assets and Liabilities; and

(o)    perform other professional services as requested by the Debtors that are directly related to the Debtors' preparation for entrance into or administration of a bankruptcy restructuring proceeding.

10.    I understand that the foregoing services are necessary to enable the Debtors to maximize the value of their estates and conduct an orderly reorganization in these Chapter 11 Cases.  When necessary, the individuals working on this matter will be assisted by or replaced by various professionals at various levels.

11.    The terms and conditions of the Engagement Letter were heavily negotiated and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in connection with Ankura's engagement.

12.    I understand that the Debtors have retained and may retain additional professionals during the term of Ankura's engagement.  Ankura will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  The services provided by Ankura will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases.

## PROFESSIONAL COMPENSATION

13.    In consideration of the services to be provided by Ankura, as set forth more fully in Engagement Letter, the Debtors have agreed to the following fee and expense structure ("Fee

and Expense Structure") to: (a) compensate Ankura on a monthly fee for the Co-CROs in the amount of $250,000; (b) compensate Ankura on an hourly basis for the Services provided by the Engagement Personnel in accordance with Ankura's ordinary and customary rates in effect on the date such services are rendered; and (c) reimburse reasonable allocated and direct expenses incurred by Ankura in connection with all services performed on behalf of the Debtors.

14.     The current standard U.S. hourly rates[7] (expressed in USD), subject to periodic adjustments, that Ankura professionals will charge pursuant to the Engagement Letter are as follows:

| Professional | Standard Rate |
|---|---|
| Senior Managing Director | $1,300 – $1,455 |
| Managing Director | $1,075 – $1,205 |
| Director/Senior Director | $740 – $1,020 |
| Associate/Senior Associate | $495 – $680 |
| Paraprofessionals | $380 – $440 |

15.     These hourly rates reflect Ankura's normal and customary billing practices for engagements of this complexity and magnitude.

16.     In addition, Ankura will seek reimbursement for its reasonable and direct out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Letter (including for Ankura's reasonable out-of-pocket fees and expenses for outside legal counsel and other third-party advisors).  Ankura will invoice the Debtors for their reasonable and direct out-of-pocket expenses charged during these Chapter 11 Cases, which include, among other

---

[7]     Rates included in the Application are current Ankura Consulting hourly rates, effective as of January 1, 2025, and have been approved by the Debtors in accordance with the Engagement Letter.

things, overnight mail, messenger, travel, meals, and accommodations and other expenses specifically related to this engagement.

17.      Subject to the Court's approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and any applicable orders of the Court, Ankura will seek from the Debtors payment for services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases consistent with the Fee and Expense Structure.

18.      I believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate Ankura fairly for its work and to cover fixed and routine overhead expenses.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Ankura and the fee structures typically utilized by leading financial advisory firms of similar stature to Ankura for comparable engagements, with respect to both in- and out-of-court restructurings. The Fee and Expense Structure is consistent with Ankura's normal and customary billing practices for cases of this size and complexity and that require the level and scope of services outlined herein.

19.      In connection with the August 2020 Engagement Letter, Ankura received an initial advance retainer from the Debtors in the amount of $300,000 (the "Retainer"), which the Debtors subsequently replenished upon request by Ankura.  According to Ankura's books and records, during the 90-day period prior to the Petition Date, the Debtors paid Ankura $3,518,927.09 in aggregate for professional services performed and expenses incurred.  A disclosure of the actual amount of Retainer held by Ankura, if any, as of the Petition Date will be provided in Ankura's first Quarterly Report.[8]

---

[8]      Based on Ankura Consulting's preliminary accounting, the amount of unused Retainer is believed to be between $400,000 - $500,000, subject to a final accounting and reconciliation.

20.     The Debtors and Ankura have agreed that any portion of the Retainer not used to compensate Ankura for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final post-petition billing and will not be placed in a separate account.

21.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, Ankura may have incurred, but not billed, fees and reimbursable expenses that relate to the pre-petition period.  Approval is sought from this Court for Ankura to apply the Retainer to any such amounts.  Upon entry of an Order approving the relief requested herein, the Debtors will not owe Ankura any sums for pre-petition services.

## INDEMNIFICATION

22.     The Engagement Letter contains standard indemnification language with respect to Ankura's services, whereby the Debtors have agreed to indemnify Ankura and certain "Indemnified Persons" as set forth in Schedule I to the August 2020 Engagement Letter (the "Indemnification Agreement").[9]  The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.  In no event shall the Debtors be obligated to indemnify Ankura for its gross negligence or willful misconduct.

---

[9]     The Indemnification Agreement generally provides that the Debtors shall defend, indemnify, and hold harmless Ankura Consulting and its affiliates and their respective directors, officers, employees, attorneys, and other agents appointed by any of the foregoing and each other person, if any, controlling Ankura Consulting or any of its affiliates (Ankura Consulting and each such person and entity being referred to as an "Indemnified Person"), from and against any losses, claims, damages, judgments, assessments, costs, and other liabilities, and will reimburse each Indemnified Person for all reasonable fees and expenses (including the reasonable fees and expenses of counsel) as they are incurred in investigating, preparing, pursuing, or defending any claim, action, proceeding, or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party, in each case, related to or arising out of or in connection with the services rendered or to be rendered by an Indemnified Person pursuant to the August 2020 Engagement Letter or any Indemnified Persons' actions or inactions in connection with any such services.

23.     I believe that the Indemnification Agreement is customary and reasonable for Ankura and comparable firms providing financial advisory services and an important component of the structure of Ankura's engagement.  The Debtors and Ankura negotiated the terms of the Engagement Letter and Indemnification Agreement at arms'-length and in good faith.

## ANKURA'S DISINTERESTEDNESS

24.     Ankura utilizes certain procedures ("Firm Procedures") to determine its relationships, if any, to parties that may have a connection to any of the Debtors in the Chapter 11 Cases.  In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors, and Ankura's relationship with such parties:

(a)     Ankura requested and obtained from the Debtors extensive lists of interested parties and significant creditors (the "Potential Parties-in-Interest").[10]  The list of Potential Parties-in-Interest that Ankura reviewed is annexed hereto as **Schedule 1**.  The Potential Parties-in-Interest reviewed include, among others, the Debtors and non-Debtor affiliates, current and former officers, bankruptcy professionals, judges for the United States Bankruptcy Court for the Northern District of Texas, banks, lenders, contract counterparties, governmental/regulatory agencies, insurance carriers, top 100 unsecured creditors, landlords, U.S. Trustee personnel for the Northern District of Texas, and vendors.

(b)     Ankura then compared the names of each of the Potential Parties-in-Interest to the names in its master electronic database of the Ankura Entities' clients and vendors (the "Database").[11]  For clients, the Database generally includes the name of each client of the Ankura Entities, the name of each party that has, or had, a substantial role with regard to the subject matter of the Ankura Entity's retention, and the names of the Ankura Entity

---

[10]     As may be necessary, Ankura Consulting will supplement the Declaration if additional Potential Parties-in-Interest are provided to it and Ankura Consulting becomes aware of any relationship that may adversely affect Ankura Consulting's retention in the Chapter 11 Cases or would otherwise require disclosure.

[11]     Ankura Consulting is affiliated with certain other Ankura-branded entities, including its affiliates, subsidiaries, and parent entities, which entities are managed by the same executive team (such entities the "Ankura Entities"). The Database maintained by the Ankura Entities includes information for all of the Ankura Entities. For companies and businesses acquired by any Ankura Entity, the Database captures engagements that were active at the time of such acquisition, as well as any post-acquisition engagements. For purposes of relationship disclosure, a three-year lookback period is used.  The Ankura Entities include a trust company (Ankura Trust Company, LLC) and a broker-dealer (Ankura Capital Advisors, LLC). Neither of these entities hold or trade securities for their own account and, as with the other Ankura Entities, the clients of the trust company and broker-dealer entities are included in the Database.

11

professionals who are, or were, primarily responsible for matters for such clients. For vendors, the Database generally includes the name of the vendor.

(c)     An email was sent to all of the Ankura Entities' Senior Managing Directors, Managing Directors, and all Turnaround & Restructuring practice professionals requesting disclosure of information regarding: (i) any known personal connections between the respondent and/or the Ankura Entities on the one hand, and the Potential Parties-in-Interest, on the other hand,[12] (ii) any known connections or representation by the respondent and/or Ankura of any of those Potential Parties-in-Interest in matters relating to the Debtors; and (iii) any other conflict or reason why Ankura may be unable to represent the Debtors.

(d)     Known connections between former or recent clients and vendors of the Ankura Entities and the Potential Parties-in-Interest were compiled for purposes of preparing this Declaration.  These connections are listed in **Schedule 2** annexed hereto.

25.     To provide further detail on the Database and the Firm Procedures, I note that Ankura is a portfolio company of private funds affiliated with Madison Dearborn Partners, LLC ("MDP" and such funds together with MDP, the "MDP Entities").  As such, the Firm Procedures include a review of MDP and its affiliated funds that have an ownership interest in Ankura, as well as MDP's other portfolio companies (the "Portfolio Companies") as of July 18, 2025 to determine if such entities appear on the list of Potential Parties-in-Interest.

26.     The Portfolio Companies are under separate managerial control from the Ankura Entities and do not share any internal systems with any Ankura Entity.  The Ankura Entities have no ability to access the Portfolio Companies' or MDP Entities' systems or confidential

---

[12] In reviewing its records and the relationships of its professionals, Ankura Consulting did not seek information as to whether any Ankura Entity professional or member of such professional's immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain Ankura Entity professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors, or any other party-in-interest; or (b) has engaged in any ordinary course consumer transaction with any party-in-interest.  If any such relationship does exist, I do not believe it would impact Ankura Consulting's disinterestedness or otherwise give rise to a finding that Ankura Consulting holds or represents an interest adverse to the Debtors' estates.

information,[13] nor do the Portfolio Companies or the MDP Entities have the ability to access the Ankura Entities' systems or confidential information. Certain MDP personnel serve as members of the Ankura Entities' board of directors (the "MDP Directors") and the MDP Directors serve on boards of directors for certain of the Portfolio Companies. However, the MDP Directors are subject to confidentiality obligations and fiduciary duties, which prohibit and prevent the sharing of confidential information between companies for which they have board of director responsibilities. Despite the separation between the Ankura Entities and the Portfolio Companies, the Portfolio Companies and MDP Entities are included in the Database and reviewed as part of the Firm Procedures and any connections to the Potential Parties-in-Interest are disclosed on **Schedule 2**. [14]

27.     HPS Investment Partners, LLC ("HPS"), through certain investment funds, has a minority, non-controlling interest in Ankura. The Database therefore includes HPS and the above-referenced investment funds, and any connections to the Potential Parties-in-Interest are disclosed on **Schedule 2**. HPS has one board seat and one board observer seat on the Ankura Entities' board of directors. These board participants are subject to confidentiality obligations and fiduciary duties, and information walls exist to prevent the sharing of confidential information among HPS' investments. Further, the Ankura Entities have no access to HPS' or its investments' systems or

---

[13]   To the extent an Ankura Entity is engaged by another MDP portfolio company to perform services for such company, the Ankura Entities will have access to information from such company applicable to the work being performed. Such information will be subject to confidentiality agreements.

[14]   MDP may have other funds that do not have an ownership interest in the Ankura Entities. As these potential other funds are not connected to the Ankura Entities and the Ankura Entities have no access to non-public information related to such potential funds, these potential funds are not part of the Database and Firm Procedures. Similarly, MDP may use certain non-operating holding companies to hold the equity of the Portfolio Companies ("HoldCos"). Information regarding such HoldCos is not shared with the Ankura Entities and the Ankura Entities have no access to systems or confidential information related to such HoldCos. As such, these HoldCos are not part of the Database or Firm Procedures. As noted above, however, all Portfolio Companies are part of the Database and Firm Procedures, regardless of ownership structure.

confidential information. As such, while HPS is included in the Database and reviewed as part of the Firm Procedures, HPS' affiliates and the entities in which they invest are not.

28.    As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, Ankura:

(a)    is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtors;

(b)    is not, and has not been, within two years before the Petition Date, a director, officer (other than by virtue of Ankura employees serving in the roles as Engagement Personnel (pre- and post-petition) as described in the Application), or an employee of the Debtors; and

(c)    does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

29.    Ankura was similarly retained by the debtors (collectively, the "LaVie Debtors") to provide a chief restructuring officer and additional financial advisory personnel in connection with the chapter 11 cases captioned *In re LaVie Care Centers, LLC* (Case No. 24-55507) (PMB), which were filed on June 2, 2024 in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (collectively, the "LaVie Bankruptcy Cases"). The LaVie Debtors' liquidating chapter 11 plan in the LaVie Bankruptcy Cases was confirmed on November 14, 2024, and the plan went effective on June 1, 2025. One of the Debtors, Powerback Rehabilitation, LLC ("Powerback"), was a contract counterparty with the LaVie Debtors and one of their top unsecured creditors. As of the Petition Date, Ankura has no ongoing engagement with the LaVie Debtors or its liquidating estate and is not owed any outstanding fees or reimbursements.

30.    Ankura currently provides winddown consulting services and an Ankura professional serves as Winddown Officer for RCP Encore Holdings, LLC ("Encore"). Encore is a creditor in these Chapter 11 cases which the Debtors believe is owed approximately $20,000.

14

31.     Ankura professionals have previously provided and continue to provide consulting services unrelated to these Chapter 11 Cases to ProMedica Health System, Inc. and certain of its subsidiaries and affiliates (collectively "ProMedica").    Further, Mr. Robichaux served as ProMedica's interim chief financial officer from May 2022 through May 2023 and since July 2023 has provided no services to ProMedica.  ProMedica is a creditor in these Chapter 11 cases which the Debtors believe are owed less than $500,000.

32.     Further, as part of its diverse practice, Ankura appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Chapter 11 Cases.  Ankura has performed in the past, and may perform in the future, advisory consulting services for various attorneys, law firms, and investors, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  Based on our current knowledge of the relationships, individuals and professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which Ankura is to be employed, and none are in connection with the Chapter 11 Cases.

33.     Various current or former directors or officers of the Debtors may have served, or may from time to time serve, in various officer and director capacities of certain Ankura clients or affiliates thereof.  I do not believe that Ankura's current or prior work for clients, for which any current or former officers or directors of the Debtors serve or have served in such officer and/or director capacities precludes Ankura from meeting the disinterestedness standard under the Bankruptcy Code.

34.     If additional Potential Parties-in-Interest are provided to Ankura and any new material relevant facts or relationships are discovered or identified, Ankura will promptly file a supplemental declaration.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in

the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: July 29, 2025

/s/ Russell A. Perry
Russell A. Perry
Senior Managing Director
Ankura Consulting Group, LLC

## SCHEDULE 1

### Potential Parties-in-Interest

| Schedules | Category |
|---|---|
| 1(a) | Debtors and Non-Debtor Affiliates; Non-Debtor Joint Ventures; Non-Debtor Professional Corporations |
| 1(b) | Current and Former Directors and Officers |
| 1(c) | Equity Holders (More than 5%) |
| 1(d) | Bankruptcy Judges and Staff for the United States Bankruptcy Court for the Northern District of Texas, and U.S. Trustee Personnel for the Northern District of Texas |
| 1(e) | Banks, Lenders, Lien Parties, and Administrative Agents |
| 1(f) | Top 100 Unsecured Creditors |
| 1(g) | Chapter 11 Professionals |
| 1(h) | Insurance Providers and Agents |
| 1(i) | Landlords |
| 1(j) | Unions & Benefit Providers |
| 1(k) | Potential Sale Parties |
| 1(l) | Governmental Agencies / Regulators / Billing Agencies |

**SCHEDULE 1(a)**

**Debtors and Non-Debtor Affiliates;**
**Non-Debtor Joint Ventures; Non-Debtor Professional Corporations**

***Debtors***

Genesis Healthcare, Inc.
1 Glen Hill Road Operations LLC
1 Sutphin Drive Operations LLC
10 Woodland Drive Operations LLC
100 Abbeyville Road Operations LLC
100 Chambers Street Operations LLC
100 W. Queen Street Operations LLC
105 Chester Road Operations LLC
1000 Lincoln Drive Operations LLC
1008 Thompson Street Operations LLC
101 13th Street Operations LLC
101 Development Group, LLC
1020 South Main Street Operations LLC
106 Tyree Street Operations LLC
1070 Stouffer Avenue Operations LLC
11 Dairy Lane Operations LLC
1100 Norman Eskridge Highway Operations LLC
1104 Welsh Road Operations LLC
1105 Perry Highway Operations LLC
113 W. McMurray Road Operations LLC
115 S. Providence Road Operations LLC
12-15 Saddle River Road Operations LLC
1245 Church Road Operations LLC
1248 Hospital Drive Operations LLC
125 Holly Road Operations LLC
128 East State Street Associates, LLC
136 Donahoe Manor Road Operations LLC
1361 Route 72 West Operations LLC
1539 Country Club Road Operations LLC
1543 Country Club Road Manor Operations LLC
161 Bakers Ridge Road Operations LLC
1631 Ritter Drive Operations LLC
1650 Galisteo Street Operations LLC
1680 Spring Creek Road Operations LLC
1700 Market Street Operations LLC
1700 Pine Street Operations LLC
175 Blueberry Lane Operations LLC
1770 Barley Road Operations LLC

1848 Greentree Road Operations LLC
191 Hackett Hill Road Operations LLC
2 Blackberry Lane Operations LLC
20 Maitland Street Operations LLC
200 Pauline Drive Operations LLC
200 Reynolds Avenue Operations LLC
200 South Ritchie Avenue Operations LLC
201 Wood Street Operations LLC
2021 Westgate Drive Operations LLC
2029 Westgate Drive Operations LLC
2101 Fairland Road Operations LLC
211-213 Ana Drive Operations LLC
2125 Elizabeth Avenue Operations LLC
22 Tuck Road Operations LLC
225 Evergreen Road Operations LLC
227 Evergreen Road Operations LLC
23 Fair Street Operations LLC
23 Fair Street Property, LLC
24 Old Etna Road Operations LLC
2400 Kingston Court Operations LLC
25 East Lindsley Road Operations LLC
25 Ridgewood Road Operations LLC
2507 Chestnut Street Operations LLC
2600 Northampton Street Operations LLC
262 Toll Gate Road Operations LLC
2720 Charles Town Road Operations LLC
279 Cabot Street Operations LLC
279 Cabot Street Property LLC
2800 Palo Parkway Operations LLC
290 Hanover Street Operations LLC
292 Applegarth Road Operations LLC
3 Industrial Way East Operations LLC
30 West Avenue Operations LLC
300 Pearl Street Operations LLC
3000 Windmill Road Operations LLC
302 Cedar Ridge Road Operations LLC
330 Franklin Turnpike Operations LLC
333 Green End Avenue Operations LLC
3430 Huntingdon Pike Operations LLC
3485 Davisville Road Operations II LLC
3514 Fowler Avenue Operations LLC

3590 Washington Pike Operations LLC
3720 Church Rock Street Operations LLC
390 Red School Lane Operations LLC
40 Crosby Street Operations LLC
40 Whitehall Road Operations LLC
40 Whitehall Road Property LLC
400 McKinley Avenue Operations LLC
4140 Old Washington Highway Operations
LLC
419 Harding Street Operations LLC
422 23rd Street Operations LLC
425 Buttonwood Street Operations LLC
450 East Philadelphia Avenue Operations
LLC
462 Main Street Operations LLC
50 Mulberry Tree Street Operations LLC
50 Pheasant Road Operations LLC
500 East Philadelphia Avenue Operations
LLC
501 Thomas Jones Way Operations LLC
505 Weyman Road Operations LLC
530 Macoby Street Operations LLC
54 Sharp Street Operations LLC
5485 Perkiomen Avenue Operations LLC
550 South Negley Avenue Operations LLC
5609 Fifth Avenue Operations LLC
590 North Poplar Fork Road Operations
LLC
60 Highland Road Operations LLC
600 Paoli Pointe Drive Operations LLC
600 W. Valley Forge Road Operations LLC
613 Hammonds Lane Operations LLC
624 N. Converse Street Property, LLC
640 Bethlehem Pike Operations LLC
642 Metacom Avenue Operations LLC
660 Commonwealth Avenue Operations
LLC
677 Court Street Operations LLC
7 Baldwin Street Operations LLC
700 Marvel Road Operations LLC
700 Town Bank Road Operations LLC
715 East King Street Operations LLC
723 Summers Street Operations LLC
724 N. Charlotte Street Operations LLC
735 Putnam Pike Operations LLC
75 Hickle Street Operations LLC

777 Lafayette Road Operations LLC
8 Rose Street Operations LLC
8 Snow Road Operations LLC
80 Maddex Drive Operations LLC
800 Court Street Circle Operations LLC
803 Hacienda Lane Operations LLC
885 MacBeth Drive Operations LLC
8100 Washington Lane Operations LLC
825 SUMMIT STREET OPERATIONS
LLC
84 Cold Hill Road Operations LLC
840 Lee Road Operations LLC
850 12th Avenue Property, LLC
867 York Road Operations LLC
900 Tuck Street Operations LLC
91 Country Village Road Operations LLC
940 Walnut Bottom Road Operations LLC
98 Hospitality Drive Operations LLC
Albuquerque Heights Healthcare and
Rehabilitation Center, LLC
Albuquerque Heights Property, LLC
Belen Meadows Healthcare and
Rehabilitation Center, LLC
Belfast Operations, LLC
Brier Oak on Sunset, LLC
Camden Operations, LLC
Canyon Albuquerque Property, LLC
Canyon Transitional Rehabilitation Center,
LLC
Clovis Healthcare and Rehabilitation Center,
LLC
Courtyard JV LLC
Encore GC Acquisition LLC
Encore Pediatrics, LLC
Encore Preakness, LLC
Encore Rehabilitation Services, LLC
Falmouth Operations, LLC
Farmington Operations, LLC
FC-GEN Operations Investment, LLC
Five Ninety Six Sheldon Road Operations
LLC
Forty Six Nichols Street Operations LLC
Fountain Holdco, LLC
Franklin Woods JV LLC
GEN BQ JV Holdings LLC
GEN CCG JV Holdings LLC

GEN Operations I, LLC
GEN Operations II, LLC
GEN SF JV Holdings, LLC
GEN-CCG WO Master Tenant LLC
GEN-Next Holdco I LLC
Genesis Administrative Services LLC
Genesis CT Holdings LLC
Genesis CT XCL Operations LLC
Genesis DE Holdings LLC
Genesis Dynasty Operations LLC
Genesis Eldercare Network Services, LLC
Genesis ElderCare Physician Services, LLC
Genesis HealthCare LLC
Genesis HealthCare of Maine, LLC
Genesis Holdings LLC
Genesis MA Holdings LLC
Genesis MD Holdings LLC
Genesis Midwest II Operations LLC
Genesis NH Holdings LLC
Genesis NHG Operations LLC
Genesis NHG-GEN Operations LLC
Genesis NJ Holdings LLC
Genesis OMG Operations LLC
Genesis Operations III LLC
Genesis Operations IV LLC
Genesis Operations LLC
Genesis Operations V LLC
Genesis Operations VI LLC
Genesis Orion Operations LLC
Genesis PA Holdings LLC
Genesis Partnership LLC
Genesis Physician Services MSO, LLC
Genesis PM CO Operations LLC
Genesis PM NJ Operations LLC
Genesis PM PA Operations LLC
Genesis RI Holdings LLC
Genesis SNI Operations LLC
Genesis Tang Operations LLC
Genesis VA Holdings LLC
Genesis VT Holdings LLC
Genesis WV Holdings LLC
GHC Holdings LLC
GHC JV Holdings LLC
GHC Payroll LLC
GHC TX Operations LLC
Granite Ledges JV LLC

Harborside Danbury Limited Partnership
Harborside Health I LLC
Harborside Healthcare Advisors Limited
Partnership
Harborside Healthcare Limited Partnership
Harborside Healthcare, LLC
Harborside New Hampshire Limited
Partnership
Harborside Rhode Island Limited
Partnership
Harborside Toledo Business LLC
HBR Kentucky, LLC
HBR Trumbull, LLC
HC 63 Operations LLC
Kansas City Transitional Care Center, LLC
Kennebunk Operations, LLC
Kennett Center, L.P.
KHI LLC
Leasehold Resource Group, LLC
Lewiston Operations, LLC
LTC ACO, LLC
Magnolia JV LLC
Maryland Harborside, LLC
Metro Therapy, Inc.
Nine Haywood Avenue Operations LLC
Odd Lot LLC
Orono Operations, LLC
PAI Participant 1, LLC
PAI Participant 2, LLC
PAI Participant 3, LLC
PAI Participant 4, LLC
PBR Intermediate Holdings, LLC
PDDTSE, LLC
Peak Medical Assisted Living, LLC
Peak Medical Las Cruces No. 2, LLC
Peak Medical Las Cruces, LLC
Peak Medical New Mexico No. 3, LLC
Peak Medical Roswell, LLC
Peak Medical, LLC
Pine Tree Villa LLC
Post-Acute Innovations, LLC
Powerback Pediatrics of Arkansas, LLC
Powerback Pediatrics of Georgia, LLC
Powerback Pediatrics of Missouri, LLC
Powerback Pediatrics of Nebraska, LLC

Powerback Pediatrics of South Carolina, LLC
Powerback Pediatrics of Vermont, LLC
Powerback Rehabilitation, LLC
PRMC/GEC at Salisbury Center, LLC
Property Resource Holdings, LLC
Regency Health Services, LLC
Respiratory Health Services LLC
Romney Health Care Center Limited Partnership
Route 92 Operations LLC
Saddle Shop Road Operations LLC
Salisbury JV LLC
Scarborough Operations, LLC
SHG Partnership, LLC
SHG Resources, LLC
Skies Healthcare and Rehabilitation Center, LLC
Skiles Avenue and Sterling Drive Urban Renewal Operations LLC
Skilled Healthcare, LLC
Skowhegan SNF Operations, LLC
St. Anthony Healthcare and Rehabilitation Center, LLC
St. Catherine Healthcare and Rehabilitation Center, LLC
St. John Healthcare and Rehabilitation Center, LLC
St. Theresa Healthcare and Rehabilitation Center, LLC
State Street Associates, L.P.
State Street Kennett Square, LLC
Stillwell Road Operations LLC
Summit Care Parent, LLC
Summit Care, LLC
Sun Healthcare Group, Inc.
SunBridge Beckley Health Care LLC
SunBridge Care Enterprises, LLC
SunBridge Clipper Home of North Conway, LLC
SunBridge Clipper Home of Wolfeboro, LLC
SunBridge Dunbar Health Care LLC
SunBridge Gardendale Health Care Center, LLC
SunBridge Goodwin Nursing Home, LLC

SunBridge Healthcare, LLC (f/k/a SunBridge Healthcare Corporation)
SunBridge Nursing Home, LLC
SunBridge Putnam Health Care LLC
SunBridge Regency-North Carolina, LLC
SunBridge Regency-Tennessee, LLC
SunBridge Retirement Care Associates, LLC
SunBridge Salem Health Care LLC
SunDance Rehabilitation Agency, LLC
SunDance Rehabilitation Holdco, Inc.
SunDance Rehabilitation, LLC
The Rehabilitation Center of Albuquerque, LLC
Thirty Five Bel-Aire Drive SNF Operations LLC
Three Mile Curve Operations LLC
Waterville SNF Operations LLC
Westbrook Operations, LLC
Westwood Medical Park Operations LLC

### *Non-Debtor Affiliates*
AttainCare Consulting Services LLC
AttainCare LLC
Careerstaff Unlimited, LLC
Fountain View Reinsurance, Ltd.
GHS International Inc.
GRS Asia Limited
Liberty Health Corporation, Ltd.
Moriah Consulting Services LLC
Moriah Healthcare Partners, LLC
Pinnacle Health Partners LLC
Pinnacle HP Consulting Services LLC

### *Non-Debtor Joint Ventures*
Bold Quail 4 LLC
Bold Quail Holdings LLC
Bowie Center Limited Partnership
Capital/Region Genesis ElderCare L.L.C.
CCGEN Holdings, LLC
Courtyard Nursing Care Cener Partnership
Franklin Square/Meridian Healthcare Nursing Home Limited Partnership
Magnolia Gardens Limited Liability Company
Magnolia Gardens Real Estate LLC

NEXTGEN INVESTORS, LLC
Seafire NEMA Investment, LLC

***Non-Debtor Non-Genesis JV Members***
Capital Region Health Services Corporation
CCGEN Holdings Member, LLC
Doctors Community Health Ventures, Inc.
Lawrence Memorial Hospital of Medford, Inc.
Madison Manor, Inc.
New Generation Health, LLC
NextGen Investors Holdings, LLC
Parkway Ventures, Inc.
Seafire NEMA Holdings, LLC

***Non-Debtor Non-Genesis Professional Corporations***
AlignMed Medical Group IL SC
AlignMed Medical Group MA, P.C.
AlignMed Medical Group NC, P.C.
AlignMed Medical Group NJ, P.C. (f/k/a PAI Participant 26, P.C.)
AlignMed Medical Group WV, P.C.
AlignMed Medical Group, P.C.
AlignMed Partners, P.C. (f/k/a GPA Physician Group, P.C.)
Enjati/Johnson Occupational and Physical Therapy, PS
GEPS Physician Group of New Jersey, P.C.
GEPS Physician Group of New Mexico, P.C.
GEPS Physician Group of North Carolina, P.C.

GEPS Physician Group of Pennsylvania, P.C.
GEPS Physician Group of West Virginia, P.C.
GPS Physician Group of New Jersey, P.C.
GPS Physician Group of Rhode Island, P.C.
GPS Physician Group of Texas, PLLC
Leland Wheeler Speech and Language P.A.
Nancy Johnson Speech & Language, PS
NV LTC Physicians – Shariff, P.C.
NY Long-Term Care Physician Services, P.C.
PAI Participant 10, P.A.
PAI Participant 11, P.C.
PAI Participant 12, P.C.
PAI Participant 13, P.C.
PAI Participant 15, P.A.
PAI Participant 18, P.C.
PAI Participant 23, S.C.
PAI Participant 25, P.C.
PAI Participant 27, P.C.
PAI Participant 29, P.C.
PAI Participant 5, P.C.
PAI Participant 6, P.C.
PAI Participant 7, P.C.
PAI Participant 8, P.C.
PAI Participant 9, P.A.
PAI Participant MA, PC
Powerback Rehabilitation of MA, PA (f/k/a Genesis Rehab Services, PC)
Tidd/Krafft Occupational and Physical Therapy, P.A.

6

## SCHEDULE 1(b)

### Current and Former Directors and Officers

***Current Directors and Officers***

Alexander Shaine
Avi Mendelson
Carlye Reese
David Harrington
Elizabeth LaPuma
Erin Reed
Gary Siegel
Gerry Adest
Ian Oppel
Jake Komin
James Chow
John Loome, M.D.
John Randazzo
Jonathan Foster
Jonathan Kirschner
Juan Vallarino
Keith Nause
Kristen Krzyzewski
Laura Bridgeford
Laura Slack
Lauren Murray
Michael Berg
Paul Cass, M.D.
Walter Lin, M.D.
William Snyder

***Former Directors and Officers***

Arnold Whitman
Carl Shrom
Greg Bogdan
Isaac Lefkowitz
Jason Feuerman
Mark Sulecki
Tim Davis

## SCHEDULE 1(c)

### Equity Holders (More than 5%)

Arnold Whitman
Isaac M. Neuberger
Steven E. Fishman
Welltower OP LLC

**SCHEDULE 1(d)**

**Bankruptcy Judges and Staff for the United States Bankruptcy Court for the Northern District of Texas, and U.S. Trustee Personnel for the Northern District of Texas**

***Bankruptcy Judges***
Honorable Judge Brad W. Odell
Honorable Judge Edward L. Morris
Honorable Judge Mark X. Mullin
Honorable Judge Michelle V. Larson
Honorable Judge Robert L. Jones
Honorable Judge Scott W. Everett
Honorable Judge Stacey G.C. Jernigan

***Bankruptcy Court Staff***
Dawn Harden
Hawaii Jeng
Jenni Bergreen
Jennifer Calfee
Jennifer Speer
Karyn Rueter
Shelby Wimberley
Stephen Manz
Traci Ellison

***U.S. Trustee Personnel***
Aamer Javed
Alexandria Hughes
Asher Bublick
C. Marie Goodier
Cheryl H. Wilcoxson
Elizabeth Young
Erin Schmidt
Felicia P. Palos
Fernando Garnica
Jason Russell
Kara Croop
Kendra M. Rust
Lisa L. Lambert
Meredyth Kippes
Rafay Suchedina
Reinhard Freimuth
Susan Hersh

## SCHEDULE 1(e)

### Banks, Lenders, Lien Parties, and Administrative Agents

***Debtors' Secured Lenders and Administrative Agents***
Berkadia Commercial Mortgage LLC
Cambridge Realty Capital Ltd. of Illinois
CPE 88988 LLC
Heartland Bank
Keybank National Association
MAO 22322 LLC
Markglen, LLC
OHI Mezz Lender LLC
Oxford Finance
ReGen Healthcare, LLC
WAX Dynasty Partners LLC
Welltower OP LLC (f/k/a Welltower Inc.)
White Oak Healthcare Finance, LLC
WO Healthcare Operating Partners, LLC
WO Healthco-MCM LLC

***Additional Lien Parties***
Department of Treasury – Internal Revenue Service
Secretary of Housing & Urban Development – Office of Residential Care Facilities

***Banks***

| | |
|---|---|
| Bank of America | First National Bank of Romney |
| Bank of the Midwest | FirstBank of Franklin |
| Builtwell | Key Bank, N.A. |
| Burke & Herbert Bank | Manufacturers and Trust Bank |
| Camden National Bank | Old National Bank |
| Capital One Bank | Passumpsic Bank |
| CIBC | PNC Bank |
| Citibank | Regions Bank |
| Citizens Bank | Southside Bank |
| City National Bank of West Virginia | TD Bank, N.A. |
| Commercial Bank | Truist Financial |
| Crossfirst Bank | United Bank |
| Fifth Third Bank | U.S. Bank |
| First Bank | Wells Fargo Bank, N.A. |
| First Citizens Bank & Trust Company | WesBanco |
| First Financial Bank | West Union Bank |

**SCHEDULE 1(f)**

**Top 100 Unsecured Creditors**

1199 New England Health Care Employees
    Pension Fund
1970 Group Inc.
ACS Pro Global Solutions
Agile Premium Finance
Arrington, Don
Aspire
Atlas
Barboan, Lorraine
Betancourt, Nellie
Bland, Joseph
Blea, Rosalina
Blue Cross Blue Shield of Idaho
Blue Cross Blue Shield of New Mexico
Bodie Dolina Hobbs Friddell & Grenzer PC
Brown, Alma
Busch, Joel
Byndas, James
CareerStaff Unlimited LLC
Cerbie, Maryann
Change Healthcare Operations, LLC
Change Healthcare Technologies LLC
Charles, Lorna
Chavis, James
Clark, Aleene
Commonwealth of Pennsylvania
Complete Care
Dages, Pauline
Dechert LLP
DiLabbio, Harry
Direct Supply Inc.
Eckhardt, James
Ecolab Inc.
Encore
Englehart, Judith
G-Radar LLC
HD Supply Facilities Maintenance
Healthcare Services Group Inc.
Hugar, Jessica
Hunt, Nancy
ICIMS Inc.
Ilco, George

Integra Scripts LLC
Internal Revenue Service
Kam, Phan
Kelly, April
LaFortune, Stephanie
Lincare Inc.
Lucero, Stella
MAO 22322 LLC
Mark, Bessie
Marquez, Cointa
Martinez, Candido
Medina, Eloy
Medline Industries Inc.
Medlock, Linda
Miles, Barbara
Miller, Mary
MobilexUSA
Monje, Esther
Montoya, Ruben
Net Health Systems Inc.
Omnicare
OmniPro LLC
Pennington, Sandra
PharMerica
PointClickCare Technologies Inc.
Porter, Alvertia
Presbyterian Healthcare Services
Quintana, Gloria
Rainbow Real Estate Partners
Ramirez-Tellez, Yvonne
Recover Care
Romero, Edwin
Romero, Georgia
SADA Systems Inc.
Salaiz, Manuel
Serna, Luisita
Serrano, Ted
Snowden, Marilyn
State of Maryland
State of New Hampshire
State of New Jersey
State of New Mexico

| | |
|---|---|
| State of North Carolina | Tinkham, Faustina |
| State of Rhode Island | Tracy, Darlene |
| State of West Virginia | Treasurer of State of New Jersey |
| Stotler Hayes Group LLC | Twomagnets Inc. |
| Swartz Culleton PC | Unitex Textile Rental |
| Synergi Partners | UNM Hospitals |
| Sysco | Vaccaro, Anna |
| Target Building Construction Inc. | Wolderufael, Selome |
| Taylor Communications | Young, Paul |

# SCHEDULE 1(g)

## Chapter 11 Professionals

***Debtor Professionals***
Ankura Consulting Group LLC
Epiq Corporate Restructuring, LLC
Jefferies LLC
Katten Muchin Rosenman LLP
McDermott Will & Emery LLP

***Committee Professionals***
TBD.[1]

***Patient Care Ombudsman***
TBD.[2]

***Ordinary Course Professionals***
Anderson Kill
Bradley Arant Boult Cummings LLP
Buchanan Ingersoll & Rooney
Carolina Advocacy Group LLC
Casey & Chapman
CBIZ
Cherry Petersen Landry Albert LLP
Coleman & Sons Appraisal Group
Constangy Brooks, Smith & Prophete LLP
Cozen O'Connor PC
Davis Malm & D'Agostine PC
Dechert LLP
Deloitte Tax LLP
Dietrich Law Firm
Dinse P.C.
Dorsi & Dorsi
Flaherty Sensabaugh & Bonasso PLLC
Fultz Maddox Dickens PLC
Genova Burns LLC
Global Tax Management
Goldsmith & Grout

Gordon & Rees LLP
Grant Thornton LLP
Gregory Richters
Harris Beach Murtha Cullina PLLC
Hiring Incentives, Inc.
Holloway & Sullivan LLC
Hooper Lundy & Bookman
J McHale & Associates Inc.
Jackson Lewis LLP
Jarrard, Inc.
Klasko Immigration Law Partners, LLP
Law Offices of Robert M. McCarthy
Littler Mendelson P.C.
Lowenstein Sandler LLP
McNees Wallace & Nurick LLC
Morgan Lewis & Bockius LLP
Ogletree Deakins LLP
Property Valuation Services
Quatro Tax LLC
Richards, Layton & Finger, P.A.
Ryan LLC
Saxton & Stump LLC
Seegel Lipshutz & Lo
Senior Care Valuation LLC
Skoloff & Wolfe PC
SOHO Legal Services Ltd.
Stevens & Lee
Stotler Hayes Group LLC
T Scott Basik PA
The Albano Group LLC
The Webb Law Firm
Unidas Case Management, Inc.
Williams Mullen Clark & Dobbins PC
Winston & Strawn LLP
Zipp & Tannenbaum LLC

---

[1]   To be updated following appointment of any committee.

[2]   To be updated following appointment of any PCO.

## SCHEDULE 1(h)

### Insurance Providers and Agents

ACE American Insurance Company
AIG
American Bankers Insurance Company of
Florida
American National Group, Inc.
American Zurich Insurance Company
AmTrust Financial Company
Arch Specialty Insurance Company
Arrowpoint Capital
Associated Industries Insurance Company
Inc.
AXIS Insurance Company
Balance Partners, LLC (Archer)
C&F
Capitol Specialty Insurance Corporation
Chubb Insurance
Continental Insurance Company
Coverys Specialty Insurance Company
Evanston
Fair American Insurance
Federal Insurance Company
Hiscox Inc. (TRIA)
Houston Specialty Insurance Company
Hudson Insurance Company (Euclid)
Ironshore Specialty Insurance Company
Kinsale Insurance Company
Labor and Industries Washington State
Lancashire Insurance (US) LLC
Landmark American Insurance Company
Lexington Insurance Company
Liberty Mutual (B&M)
Lloyds of London
Marsh
Midwest Insurance Group
Mitsui
National Fire & Marine Insurance Company
National Union Fire Insurance Company of
Pittsburgh, PA (AIG)
Notting Hill Risk Retention Group, LLC
NY State Disability Plan
Ohio Bureau of Workers' Compensation
QBE Specialty Insurance Co.

RLI
Sedgewick Claims Management Services,
Inc.
Selective
Sentry Insurance
Sompo International Insurance
Starr Surplus Lines Insurance Company
Technology Insurance Company (AmTrust)
Travelers Insurance
Trisura Specialty Insurance Company
U.S. Specialty Insurance Company
Velocity Specialty Insurance Company
Wesco Insurance Company
Westchester Fire Insurance Company
Wright National Flood Insurance Company
Zurich American Insurance Company

## SCHEDULE 1(i)

### Landlords

33-35 Water Street Nominee Trust,
   Newburyport Manager LLC
3200 Mission Arch Drive, LLC
3399 Peachtreet, LLC
885 3rd Avenue Realty Owner LLC
A.L.E. Partners
Albuquerque Health Care, Ltd.
Albuquerque Real Estate Investments, Inc.
Belen Health Care, Ltd.
BFW, LLC
Bottled Lightning, LP
Cascade Capital Group
Cindat Best Years Welltower JV LLC
Cindat Capital Management Limited
Crest Hauppage
Edward and Diane Egazarian
Elaine Manor Limited Partnership
FC-Gen Real Estate, LLC
FPA 1350 King Associates, LLC
Fund IV/Ratio Park, LLC
Glenwood Realty, LLC
GMF Capital
Green Power Developers LLC
Imperial Realty
Integra Health Properties LLC
LTD Properties, Inc.
Next Healthcare Group
Omega Healthcare Investors, Inc.
Palmcrest Associates, Ltd.
Pemberton Place, Inc.
Presbyterian Healthcare Services
Rainbow Real Estate Partners II, LLC
Ralph Hazelbaker
RDB-NJR Office Holdings
Sabra Health Care REIT, Inc.
Sanatoga RE, LLC
Sandy River Health Systems LLC
Siebar Windor, LLC
The County Commission of Hampshire
   County, West Virginia
Troy 1997 LLC
Troy NH, LLC

Upchurch Living Trust
Vantage Point Capital, LLC
Ventas, Inc.
WNG, LLC

## SCHEDULE 1(j)

## Unions & Benefit Providers

*Unions*
AFSCME, AFL-CIO
Chauffeurs, Teamsters, and Helpers Local Union
Jersey Nurses Economic Security Organization
New England Health Care Employee Union
Office & Professional Employees International Union
Retail Wholesale and Department Store Union
Rhode Island Laborers' District Council
Service Employees International Union
United Brotherhood of Carpenters and Joiners of America and Carpenters Industrial Council
United Food & Commercial Workers Union
United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service
    Workers International Union

*Benefit Providers*
Aetna Dental
Aflac
Anthem Blue Cross Blue Shield
ArmadaCare
Automatic Data Processing, Inc.
Brian Patten Associates
CapTrust
ConnectYourCare, LLC
Divvy
EmpiRx Health
Empower
EyeMed
First Stop Health
Health Advocate
Kaiser Permanente
Leading Edge Administrators
Liberty Mutual
MetLife
Optum Financial
PeopleSoft

## SCHEDULE 1(k)

## **Potential Sale Parties**

WAX Dynasty Partners LLC

## SCHEDULE 1(*l*)

### Governmental Agencies / Regulators / Billing Agencies

***Governmental Agencies / Regulators***
Alabama Department of Public Health
Alabama Medicaid
Alabama State Health Planning and Development Agency
California Department of Health Services – Provider Enrollment Division
California Department of Public Health
Centers for Medicare & Medicaid Services
Connecticut Certificate of Need
Connecticut Department of Public Health
Connecticut Department of Social Services – Medical Assistance Program
Delaware Health and Social Services: Division of Health Care Quality
Delaware Health and Social Services: Division of Medicaid & Medical Assistance
Department of Health for the State of New Jersey
Department of Health of the Commonwealth of Pennsylvania
Department of Human Services – NJ FamilyCare/Medicaid
Department of Human Services (Medicaid) of the Commonwealth of Pennsylvania
Department of Vermont Health Access – Medicaid
Maine Department of Health and Human Services
Maine Department of Health and Human Services – Office of MaineCare Services
Maine Department of Public Health
Maryland Department of Health – Maryland Medicaid
Maryland Department of Health and Mental Hygiene – Division of Long Term Care Services
Maryland Nursing Home Licensure Program – Office of Health Quality
Massachusetts Department of Public Health – Determination of Need Program
Massachusetts Department of Public Health – Division of Health Care Facility Licensure &
Certification
NC Medicaid
New Hampshire Department of Health and Human Services – Health Facilities Administration-
Licensing
New Mexico Department of Health – Division of Health Improvement
New Mexico Health Care Authority
New Mexico Medicaid – Provider Enrollment
NH Department of Health & Human Services – Office of Medicaid Business & Policy
North Carolina Department of Health and Human Services – Division of Health Service
Regulation
North Carolina Department of Health and Human Services – Medicaid
Office of Health and Human Services of Massachusetts
Rhode Island Department of Health – Center for Health Systems Policy and Regulations
Rhode Island Department of Health – Licensing Unit
Rhode Island Department of Human Services – Medicaid / Medicare
Rhode Island Executive Office of Health & Human Services
TennCare Provider Services

Tennessee Department of Health – Division of Health Licensure and Regulation
Tennessee Health Services and Development Agency
U.S. Department of Health and Human Services
U.S. Department of Justice
Vermont Agency of Human Services – Disabilities, Aging and Independent Living
Virginia Agency of Human Services – Disability, Aging and Independent Living
Virginia Department of Health – Office of Licensure and Certification
Virginia Department of Medical Assistance Services
Washington State Department of Health – Certificate of Need
Washington State Department of Social and Health Services
Washington State Department of Social and Health Services – Medicaid Provider Enrollment
Wast Virginia Health Care Authority – Certificate of Need Program
West Virginia Department of Health and Human Resources – Medicaid Provider Services
West Virginia Department of Health and Human Resources – Office of Health Facility Licensure
& Certification

***Medicare/Medicaid Billing Agencies***
Gainwell Technologies
General Dynamics Information Technology
National Government Services, Inc.
Noridian
Novitas Solutions, Inc.
Palmetto GBA

## SCHEDULE 2

### Potential Connections or Related Parties

| Party Details | Description |
| --- | --- |
| ACE American Insurance Company | Past Client |
| Aetna Dental | Current Client |
| Air Products & Chemicals Inc | Current Client |
| Airgas USA LLC | Ankura Vendor |
| AmTrust Financial Company | Current Client, Past Client |
| Anderson Kill | Past Client |
| Anthem Blue Cross Blue Shield | Current Client, Past Client |
| Arlington County, VA | Current Client |
| Arnall Golden | Current Client, Past Client |
| AT&T | Current Client, Past Client, Ankura Vendor |
| AT&T Mobility | Ankura Vendor |
| Aurora Health Network | Past Client |
| Automatic Data Processing, Inc. | Past Client, Ankura Payroll Services Provider |
| AXIS Insurance Company | Past Client |
| Baker & McKenzie LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Baker Donelson Bearman Caldwell & | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Ballard Spahr LLP | Current Client, Past Client |
| Bank of America | Current Client, Past Client, Ankura service provider, Ankura Lender |
| Benesch, Friedlander, Coplan & Aronoff LLP | Current Client, Past Client |
| Black Box Network Services | Ankura Vendor |
| Blue Cross Blue Shield of Idaho | Past Client |
| Bradley Arant Boult Cummings LLP | Current Client, Past Client |
| Buchanan Ingersoll & Rooney | Current Client, Past Client, Ankura Vendor |
| Burns White LLC | Ankura Vendor |
| California Department of Tax and Fee Administration | Ankura Vendor |
| California Franchise Tax Board | Ankura Vendor |
| CA-Los Angeles County | Past Client |
| Camden National Bank | Past Client |
| CA-Orange County | Ankura Vendor |
| Capital One Bank | Past Client |
| CA-San Diego County | Past Client |
| CA-San Mateo County | Current Client |

| Party Details | Description |
|---|---|
| CBIZ | Past Client |
| CBIZ (formerly Marcum) | Current Client, Past Client |
| Central Maine Power Company | Past Client |
| Certain Underwriters at Lloyds | Current Client, Past Client |
| Change Healthcare Operations, LLC | Past Client |
| Change Healthcare Technologies LLC | Ankura Vendor |
| Chubb | Current Client, Past Client, Ankura Vendor |
| Chubb European Group SE | Past Client |
| CIBC | Current Client, Past Client |
| Citibank | Past Client |
| City of Covington | Current Client |
| City of Los Angeles | Past Client |
| Clark Hill | Current Client, Past Client, Ankura Vendor |
| CNA Insurance | Past Client, Ankura Vendor |
| Cole Scott & Kissane PA | Current Client, Past Client |
| Comcast | Current Client, Past Client, Ankura Vendor |
| Commonwealth of Massachusetts | Past Client, Ankura Vendor |
| Commonwealth of Pennsylvania | Past Client |
| Connecticut Department of Revenue Services | Ankura Vendor |
| ConnectYourCare, LLC | Past Client |
| Constangy Brooks, Smith & Prophete LLP | Current Client, Past Client |
| Consumers Energy | Current Client |
| County of Fairfax - VA | Ankura Vendor |
| Covington & Burling LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Cox Communications | Past Client |
| Cozen O'Connor PC | Current Client, Past Client |
| Crowley Fleck | Current Client |
| CT Corporation System | Ankura Vendor |
| Culligan | Ankura Vendor |
| Davis Malm & D'Agostine PC | Past Client |
| DC Office of Tax and Revenue | Ankura Vendor |
| Dechert LLP | Current Client, Past Client, Ankura Vendor |
| Delaware Division of Corporations | Ankura Vendor |
| Delaware Division of Revenue | Ankura Vendor |
| Department of Health of the Commonwealth of Pennsylvania | Past Client |
| Department of Treasury – Internal Revenue Service | Ankura Vendor |
| DirecTV Inc | Ankura Vendor |
| Divvy | Past Client |

| Party Details | Description |
|---|---|
| DLA Piper LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| DTBA LLP Deloitte Transactions and Business Analytics LLP | Current Client, Past Client |
| Duke Energy | Current Client |
| Encore Rehabilitation Services, LLC | Current Client |
| Everest Indemnity Insurance Company | Past Client |
| Eversource | Current Client, Past Client |
| Fifth Third Bank | Current Client, Past Client |
| First Bank | Current Client, Past Client |
| First Citizens Bank & Trust Company | Current Client, Past Client |
| First Financial Bank | Current Client, Past Client |
| FIRST Insurance Funding | Ankura Vendor |
| Fisher & Phillips LLP | Current Client, Past Client |
| Flaherty Sensabaugh & Bonasso | Current Client, Past Client |
| Florida Department of Revenue | Ankura Vendor |
| Freeman Mathis & Gary, LLP | Current Client, Past Client |
| Genova Burns LLC | Past Client |
| Gordon & Rees LLP | Current Client, Past Client |
| GRANITE INVESTMENTS | Current Client |
| Grant Thornton LLP | Current Client, Past Client, Ankura Vendor |
| HDI Global Specialty | Current Client, Past Client |
| Heartland Bank | Past Client |
| Hinckley Allen & Snyder | Current Client, Past Client |
| Hinkle Shanor LLP | Past Client |
| Hiscox Inc. | Current Client |
| Holland and Hart | Current Client, Past Client |
| Hooper Lundy & Bookman Inc | Current Client, Past Client |
| Hudson Insurance Company (Euclid) | Current Client |
| Ice Miller LLP | Current Client, Past Client |
| Illinois Department of Revenue | Ankura Vendor |
| Indian Harbor Insurance Company | Current Client, Past Client |
| Internal Revenue Service | Ankura Vendor |
| Jackson Lewis LLP | Current Client, Past Client |
| Jefferies LLC | Past Client, Ankura Lender |
| Jonathan Foster | Current Client |
| Kaiser Permanente | Past Client |
| Katten Muchin Rosenman LLP | Current Client, Past Client |
| Kentucky State Treasurer | Ankura Vendor |
| Key Bank | Current Client, Past Client |
| Latham & Watkins LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Lewis Brisbois | Current Client, Past Client |

| Party Details | Description |
| --- | --- |
| Lexington Insurance Company | Current Client, Past Client |
| Liberty Mutual | Past Client |
| Liberty Mutual Fire Insurance Company | Past Client |
| Liberty Mutual Insurance Company | Past Client |
| Liberty Utilities | Current Client, Past Client |
| Linde Gas | Past Client |
| Littler Mendelson PC | Current Client, Past Client, Ankura Vendor |
| Lockton Companies | Ankura Vendor |
| Los Angeles County Tax Collector | Ankura Vendor |
| Lowenstein Sandler | Current Client, Past Client, Ankura Legal Advisor |
| Marsh | Current Client, Past Client |
| Marshall Dennehey Warner Coleman | Current Client, Past Client |
| Massachusetts Department of Public Health | Past Client |
| Massachusetts Department of Revenue | Ankura Vendor |
| McDermott Will & Emery LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Medline Industries Inc | Current Client, Past Client |
| MetLife | Current Client |
| Minnesota Department of Revenue | Ankura Vendor |
| Mitsui | Current Client, Past Client |
| Moore & Lee LLP | Current Client, Past Client |
| Morgan Lewis & Bockius LLP | Current Client, Past Client |
| Morris Nichols Arsht & Tunnel LLP | Current Client, Past Client, Ankura Vendor, Ankura Legal Advisor |
| Morrison Mahoney LLP | Past Client |
| Murtha Cullina LLP | Current Client, Past Client |
| National Fire & Marine Insurance Company | Past Client |
| National Grid | Current Client, Past Client |
| Ogletree Deakins LLP | Current Client, Past Client |
| Ogletree Deakins Nash Smoak & Stewart PC | Current Client, Past Client |
| Ohio Bureau of Workers' Compensation | Ankura Vendor |
| Old National Bank | Current Client, Past Client |
| Olshan Frome Wolosky | Past Client |
| Omnicare | Current Client, Past Client |
| Peabody & Arnold LLP | Current Client, Past Client |
| Peoples (Peoples Gas Light & Coke) | Current Client, Past Client |
| Pepco | Current Client |
| Phoenix, AZ | Current Client, Past Client |
| Piedmont Natural Gas Co | Ankura Vendor |
| Pierce Atwood | Current Client, Past Client |
| PNC Bank | Current Client |

| Party Details | Description |
| --- | --- |
| Potter Anderson & Co. | Current Client, Past Client, Ankura Vendor |
| Presbyterian Healthcare Services | Current Client, Past Client |
| Preti Flaherty, Beliveau & Pachios LLP | Current Client, Past Client |
| Promedica | Current Client, Past Client |
| Puget Sound Energy | Past Client |
| QBE Specialty Insurance Co. | Current Client, Past Client |
| Ready Refresh | Ankura Vendor |
| Recover Care | Current Client, Past Client |
| Recover-Care | Current Client, Past Client |
| Regions Bank | Current Client, Past Client |
| Republic Services Inc | Current Client |
| Rhode Island Division of Taxation | Ankura Vendor |
| Richards, Layton & Finger, P.A. | Past Client, Ankura Vendor, Ankura Service Provider |
| Ryan Swanson & Cleveland PLLC | Past Client |
| SADA Systems Inc | Ankura Vendor |
| Sedgwick Claims Management Services, Inc. | Current Client, Past Client |
| Selective | Current Client |
| Skadden Arps Slate Meagher & Flom LLP | Current Client, Past Client, Ankura Vendor |
| Sompo International | Past Client |
| Sompo International Insurance | Past Client |
| South Carolina Department of Revenue | Ankura Vendor |
| Southside Bank | Current Client |
| State of Maryland | Past Client |
| State of New Hampshire | Ankura Vendor |
| State of New Jersey | Past Client, Ankura Vendor |
| State of Vermont | Past Client |
| State of West Virginia | Past Client |
| Steadfast Insurance Company | Current Client |
| Steptoe Johnson PLLC | Current Client, Past Client |
| Stericycle Inc | Past Client, Ankura Vendor |
| Stevens & Lee | Past Client |
| Sysco | Past Client |
| T Mobile | Current Client, Past Client |
| TD Bank, N.A. | Current Client, Past Client |
| Tennessee Department of Revenue | Ankura Vendor |
| The Webb Law Firm | Past Client |
| TierPoint | Ankura Vendor |
| Tokio Marine HCC | Current Client, Past Client |
| Trisura Specialty Insurance Company | Past Client |
| Troutman Pepper Locke LLP | Current Client, Past Client |
| U.S. Department of Justice | Current Client, Past Client |

| Party Details | Description |
|---|---|
| Ulmer Berne LLP | Current Client |
| United Illuminating Company | Past Client |
| United Specialty Insurance Company | Current Client, Past Client |
| Unitil | Past Client |
| Verizon | Past Client, Ankura Vendor |
| Vermont Department of Taxes | Ankura Vendor |
| Virginia Department Of Taxation | Ankura Vendor |
| Washington State Department of Revenue | Ankura Vendor |
| Waste Management | Ankura Vendor |
| Weber Gallagher Simpson Stapleton Fires | Current Client |
| Wells Fargo Bank, N.A. | Current Client, Past Client |
| WesBanco | Current Client, Past Client |
| Williams Mullen Clark & Dobbins | Current Client, Past Client |
| Wilson Elser Moskowitz Edelman | Current Client, Past Client |
| Windstream | Past Client, Ankura Vendor |
| Winston & Strawn LLP | Current Client, Past Client, Ankura Legal Advisor |
| Wyatt, Tarrant & Combs, LLP | Past Client |
| Xcel Energy | Ankura Vendor |
| Zurich American Insurance Company | Past Client |

**EXHIBIT C**

**<u>Engagement Letter</u>**

![ankura logo] **ankura** COLLABORATION DRIVES RESULTS

**Private and Confidential**

August 1, 2020

Mr. George Hager
Chief Executive Officer
Genesis Healthcare
101 East State Street
Kennett Square, PA 19348

### Re: Retention of Ankura as Restructuring Advisor

Dear Mr. Hager:

This letter agreement (the "***Agreement***"), entered into as of August 1, 2020 (the "***Effective Date***"), confirms the terms of the agreement among Ankura Consulting Group, LLC ("***Ankura***") and Genesis Healthcare, Inc. (collectively, with all of its subsidiaries and affiliates, the "***Company***") pursuant to which Ankura has been engaged to act as the advisor to Company to provide financial and restructuring advisory services as set forth below.

1. <u>Scope of Engagement</u>: On the terms and subject to the conditions of this Agreement, Ankura will provide to the Company the following services (the "***Services***"), as requested by the Company and agreed to by Ankura:

    (a) Perform general due diligence on the Company in order to gain an understanding of the Company and the situation;

    (b) Review the Company's existing cash flow forecasts, and to the extent necessary, assist management in updating or refining cash flow forecasting models and methodologies, including reviewing any liquidity improvement plans;

    (c) If requested, assist the Company in managing liquidity, including the monitoring of actual cash flow versus projections and evaluating liquidity under a variety of operating and restructuring scenarios;

    (d) Work with management to understand existing portfolio analyses of certain of the Company's facilities and, to the extent necessary, assist in the preparation of additional facility portfolio analyses based on priorities agreed to with the Company and utilizing existing Company materials when possible;

    (e) Advise and assist the Company with developing and presenting the go-forward business plan including, if necessary, assistance with development of multi-year financial projection scenarios and related debt service capacity models;

    (f) Advise and assist the Company with respect to various *ad hoc* financial analyses and financial modeling activities, as requested;

    (g) Advise and assist the Company and its other advisors in connection with the Company's identification, evaluation, development, and implementation of restructuring strategies and tactics;



**Private and Confidential**

(h) Analyze the Company's corporate overhead cost in support restructuring negotiations, utilizing existing Company materials when possible;

(i) Advise and assist the Company with communications and negotiations with its stakeholders, including, but not limited to, landlords, secured creditors, unsecured creditors, customers, suppliers, and other parties in interest;

(j) Advise and assist management regarding responding to the information requests from the Company's stakeholders and potential capital sources;

(k) In the event the Company elects to prepare for a court-assisted restructuring process, the Services will include the following:

    i) Assist the Company and its other retained professionals in preparing for a filing under chapter 11 of the United States Bankruptcy Code, including all support necessary related to petitions, first day motions and other required filings;

    ii) Assist the Company and its other retained professionals in securing financing necessary to administer the case, including the development of a budget satisfactory to Debtor-in-Possession ("**DIP**") lender and negotiation of a DIP credit facility, interim and final DIP orders and/or cash collateral orders;

    iii) Assist the Company in obtaining court approval of any DIP financing facility and/or cash collateral order, as necessary, including developing forecasts and reporting as required by the lender and assisting with monitoring and compliance reporting during the pendency of the chapter 11 cases;

    iv) Assist the Company in developing and implementing contingency communication plans for its stakeholders, including, but not limited to, residents, suppliers, landlords, lenders, unsecured creditors and other parties in interest;

    i) Testify on behalf of the Company, to the extent requested by the Company's counsel, in connection with any bankruptcy or other court proceeding;

    ii) Engage with the Company's creditors, the creditors committee and other constituencies in the case and assist in the preparation of due diligence information, reports to and negotiations with such constituencies;

    iii) Assist in the formulation, development, negotiation and approval of any Disclosure Statement and Plan of Reorganization filed in the chapter 11 cases;

    iv) Assist the Company with respect to bankruptcy-related claims estimation, management and reconciliation processes;

    v) Assist the Company in preparing reporting required during the Bankruptcy restructuring process including, but not limited to, Monthly Operating Reports, creditor matrices, Statements of Financial Affairs, and Schedules of Assets and Liabilities; and

    vi) Provide other financial and/or restructuring advisory services as requested by the Company and agreed to by Ankura.



Overall engagement leadership will be provided by Russell Perry (SMD – Turnaround & Restructuring). Ben Jones (SMD – Turnaround & Restructuring) and Louis Robichaux (SMD – Turnaround & Restructuring) will provide engagement support. Ankura will utilize other professional staff based upon the specific needs of the engagement. Where possible, Ankura will assign tasks to lower billing rate professionals (*i.e.*, leverage down) who possess the appropriate skills and experience to deliver the required support.

As part of the Services, Ankura may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not Ankura or its employees.

It is Ankura's intention to work closely with the Company's management throughout the course of the engagement. Ankura and the Company will engage in frequent discussions regarding Ankura's progress and scope in order to provide the Company with an opportunity to confirm or request that Ankura modify the scope of its engagement to best serve the Company's needs. Each week, Ankura will provide the Company with a summary of incurred hours by professional or billing group.

The Services and compensation arrangements set forth herein do not encompass other financial advisory services not set forth in this Section 1. If the Company and Ankura later determine to expand the scope of Services to include other services not otherwise set forth herein, such future agreement will be the subject of a further and separate written agreement of the parties.

2.  Fees and Expenses: For Ankura's Services hereunder, the Company agrees to pay to Ankura the non-refundable fees (the "***Fee***") based on the actual hours expended at our standard hourly rates that are in effect when the Services are rendered, subject to an initial monthly fee credit of $100,000 which shall automatically be applied against Ankura's first monthly invoice. Our rates generally are revised annually. Our current hourly rates are as follows:

| Professional | Hourly Rate |
|---|---|
| Senior Managing Director & Managing Director | $900 - $1,100 |
| Senior Director & Director | $610 - $870 |
| Senior Associate & Associate | $410 - $575 |
| Paraprofessionals | $275 - $330 |

(a)  Expense Reimbursement: Ankura shall be entitled to reimbursement of actual, reasonable, documented, out-of-pocket and direct expenses incurred in connection with the Services to be provided under this Agreement (including for Ankura's reasonable, documented, out-of-pocket fees and expenses for outside legal counsel and other third-party advisors) incurred in connection with this Agreement, including the negotiation and performance of this Agreement and the matters contemplated hereby) (collectively, "***Expenses***").

(b)  Reasonableness of Fees: The Company acknowledges that it believes that Ankura's general restructuring experience and expertise will inure to the benefit of the parties hereto, that the value to the parties hereto of Ankura's Services derives in substantial part from that experience and expertise and that, accordingly, the structure and amount of the Fees to be paid to Ankura hereunder are reasonable. The Company acknowledges that a substantial professional commitment of time



**Private and Confidential**

and effort will be required of Ankura and its professionals hereunder, and that such commitment may foreclose other opportunities for Ankura. Given the numerous issues that may arise in engagements such as this, Ankura's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Ankura that will be required in this engagement, and the market rate for Ankura's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Ankura, and provides the requisite certainty to the parties hereto.

(c) <u>Testimony; Subpoena Requests</u>. If Ankura is requested or required to appear as a witness in any action that is brought by, on behalf of, or against you or that otherwise relates to this Agreement or the Services rendered by Ankura hereunder, the Company agrees to (i) compensate Ankura for its associated time charges at our regular rates in effect at the time and (ii) reimburse Ankura for all documented, actual out-of-pocket expenses incurred by Ankura in connection with such appearance or preparing to appear as a witness, including without limitation, the fees and disbursements of legal counsel of Ankura's choosing. In addition, Ankura will be compensated and reimbursed for any time and expense (including without limitation, fees and expenses of legal counsel of Ankura's choosing) that Ankura may incur in considering or responding to discovery requests or other formal information requests for documents or information made in connection with any action or in connection with the Services.

3. <u>Retainer</u>

(a) In connection with the foregoing, it is Ankura's policy to receive an advance retainer for the Fees and Expenses. Upon execution of this Agreement, the Company shall provide Ankura with such retainer in the amount of $300,000 (the "***Retainer***") and the Company agrees to replenish the Retainer upon the request of Ankura. The Company understands and acknowledges that any Retainer becomes the property of Ankura when it is earned and the Company no longer has a property interest in any Retainer upon Ankura's earning of the Retainer, any Retainer will be placed in Ankura's general account and will not be held in a client trust account, and the Company will not earn any interest on any Retainer; provided, however, that at the conclusion of the Services, if the amount of any Retainer held by Ankura is in excess of the amount of Ankura's outstanding and estimated Fees and Expenses, any such excess Retainer amount will be returned to the Company.

(b) If any of the Company's entities files a petition or has commenced against it any proceeding under Title 11 of the United States Code (the "***Bankruptcy Code***"), some Fees and Expenses (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Retainer will be applied to any such unpaid pre-petition Fees and Expenses. Ankura will then hold any portion of the Retainer not otherwise properly applied for payment of any such unpaid pre-filing Fees and Expenses (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

4. <u>Invoices and Payment</u>: The obligations of the Company under this Agreement (including the indemnification, reimbursement and contribution obligations described in <u>Schedule I</u>) shall be joint and several obligations. The payment of the Fees and Expenses hereunder are the exclusive obligations of the Company. Prior to commencing any proceedings under any insolvency regime, the Company shall pay all invoiced amounts, whether for Fees or Expenses or otherwise, to Ankura by wire transfer of immediately available funds. The Company agrees to pay all Fees and Expenses immediately upon receipt of an invoice for all Services rendered and Expenses incurred. In the event that the Company does not pay Ankura's



invoices in accordance with their terms, Ankura has the discretion to (i) terminate or suspend the engagement and the performance of Services, and (ii) deduct any outstanding amounts owed from monies held on the Company's behalf. Under these circumstances, the Company will also be responsible for any costs, including legal fees, associated with the collection of outstanding and overdue fees and expenses.

5.   Billing:  Ankura will submit invoices for its Fees and Expenses on a monthly basis.  In addition to the Retainer, the Company agrees to pay all Fees and Expenses immediately upon receipt of an invoice to the Company for all Services rendered and Expenses incurred.  Payment of the Fees, Expenses and Retainer (including any additional amounts to replenish the Retainer) shall be made via wire transfer to the following account:

| | |
|---|---|
| Bank: | Bank of America, N.A. |
| | 222 Broadway |
| | New York, NY  10038 |
| Routing Number: | 026009593 |
| Account Number: | 226005697768 |
| Account Holder: | Ankura Consulting Group, LLC |

For ACH, use ABA# 054001204 and SWIFT code BOFAUS3N

6.   Term of Agreement:  Unless terminated earlier as set forth below, this engagement shall terminate upon completion of the Services.  This Agreement may be terminated at any time by Ankura or Company upon written notice to the other party.  Any termination of this Agreement shall not affect any provisions that survive the termination hereof, including, (i) the indemnification, reimbursement, contribution and other obligations set forth in this Agreement, including Schedule I, and (ii) Ankura's right to receive payment of Fees earned and Expenses incurred by Ankura through the date of termination, and the Company shall immediately pay or cause to be paid all such reasonable Fees and Expenses due and owing.  If the Agreement is terminated, the parties hereto agree that Ankura may pursue, advise and/or provide services to any third party(ies) relating to or involving the Company.

7.   Court Approval: In the event that a filing under the Bankruptcy Code is necessary or required, the Company will use its reasonable best efforts to ensure that the court authorizes the Company to continue to honor its obligations under this Agreement, including all indemnification obligations hereunder (including Schedule I) and payment by the Company of all Fees and Expenses in accordance with the terms hereunder (including Ankura's counsel's fees and expenses) and, if necessary, approves this Agreement, *nunc pro tunc* to the date the insolvency proceeding was commenced.

8.   Nature of Services; Use of Advice:

(a)   Ankura shall act as an independent contractor under this Agreement, and not in any other capacity including as a fiduciary, and any obligations arising out of its engagement shall be owed solely to the Company.  The Services, including the deliverables and reports, are provided solely for your use for the purposes set forth herein.  You may not disclose or discuss the Services or any deliverable or report or make the benefit of the Services available to anyone else or refer to the contents of a deliverable or report or the findings of our work except (i) as specifically stated herein, (ii) with our prior written consent on terms to be agreed in writing, or (iii) where required by law or regulation. The Services and all deliverables are not for a third party's use, benefit or reliance and Ankura disclaims any contractual or other responsibility or duty of care to any third party based upon the Services or deliverables. Client will indemnify and hold Ankura harmless from any and all claims asserted by a third party as a result of such unauthorized release of the any deliverables



**Private and Confidential**

or reliance on the Services.  Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Persons (as such term is defined in <u>Schedule I</u>) and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Ankura hereunder.

(b) At the direction of legal counsel, certain communications and correspondence between Ankura and reports and analyses prepared by Ankura, in connection with this Agreement and the matters contemplated hereby, will be considered in preparation for litigation, and accordingly, will be subject to the attorney-client privilege and work-product privilege between Ankura and the Company.

(c) The Services and any deliverables, including any oral advice or comments, should not be associated with, referred to or quoted in any manner in any financial statements or any offering memorandum, prospectus, registration statement, public filing, loan or other agreements.

9.  <u>Intellectual Property</u>:  Ankura owns the intellectual property rights in the deliverables and reports and any materials created under this Agreement.  Ankura agrees that upon payment in full for the Services, the Company will have a non-exclusive, non-transferable license to use the deliverables for your own internal use in accordance with the terms of this Agreement.  Notwithstanding the foregoing, (i) any patent, copyright, trademark and other intellectual property rights of Ankura contained in any deliverable or report shall remain the sole and exclusive property of Ankura, and (ii) all methodologies, processes, techniques, ideas, concepts, trade secrets and know-how and other intellectual property embedded in the deliverable or reports that Ankura may develop or supply in connection with our Services shall remain the sole and exclusive property of Ankura.

10.  <u>Confidentiality</u>:

(a) <u>Generally</u>.  In connection with this engagement, either party (the "***Receiving Party***") may come into the possession, whether orally or in writing, of Confidential Information (as defined below) of the other party (the "***Disclosing Party***").  The Receiving Party hereby agrees that it will not disclose, publish or distribute such Confidential Information to any third party without the Disclosing Party's consent, which consent shall not be unreasonably withheld other than (i) to the Receiving Party's affiliates and its and their employees, officers, directors, auditors, and advisors; (ii) if such disclosure is requested or required by a governmental agency having regulatory authority or other authority over the Receiving Party; (iii) pursuant to court order, subpoena or legal process requiring disclosure, provided that Receiving Party shall use its best efforts to promptly give Disclosing Party written prior notice (if legally permissible) of any disclosure under this clause (iii) so that Disclosing Party can seek a protective order; or (iv) to tax advisors regarding the tax treatment or tax structure of any transaction; provided that such advisors are informed of the confidential obligations hereunder.

(b) <u>Definition of Confidential Information</u>.  "***Confidential Information***" means any and all non-public, confidential or proprietary knowledge, data, or information of or concerning the Disclosing Party.  For the avoidance of doubt, Confidential Information includes without limitation, research, analyses, names, business plans, valuations, databases and management systems.  Confidential Information shall not include information that:  (i) was publicly known and made generally available in the public domain prior to the time of disclosure; (ii) is already in the lawful possession of the Receiving Party at the time of disclosure; (iii) is lawfully obtained from a third party lawfully



in possession of such information and without a breach of such third party's obligations of confidentiality; or (iv) is independently developed without use of or reference to any Confidential Information.

11. <u>Company Information and Reports</u>:

In order to fulfill the Services under this Agreement, it will be necessary for Ankura personnel to have access to the Company's facilities and certain books, records and reports of the Company.  In addition, Ankura will need to have discussions with the Company's management and certain other personnel. Ankura will perform the Services in a manner that will permit the business operations of the Company to proceed in an orderly fashion, subject to the requirements of this engagement. We understand that the Company has agreed it will furnish Ankura with such information as Ankura believes appropriate to its assignment (all such information so furnished being the "***Information***"). The Company recognizes and confirms that Ankura (i) will use and rely on the accuracy and completeness of the Information and on Information available from generally recognized public sources without independently verifying the same, (ii) does not assume responsibility for the accuracy, completeness or reasonableness of the Information and such other Information, and (iii) will not make an appraisal of any assets or liabilities (contingent or otherwise) of the Company.  The Company shall advise Ankura promptly upon obtaining any actual knowledge of the occurrence of any event or any other change in fact or circumstance upon which Ankura formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.  To the best of the Company's knowledge, the Information to be furnished by or on behalf of the Company, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.

Ankura will submit oral reports highlighting our findings and observations based upon the Services we perform pursuant to this Agreement.  Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. The depth of our analyses and extent of our authentication of the information on which our advice to you will be based may be limited in some respects due to the extent and sufficiency of available Information, time constraints dictated by the circumstances of our engagement, and other factors.  We do not contemplate examining any such Information in accordance with generally accepted auditing or attestation standards.  It is understood that, in general, we are to rely on Information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of their accuracy and validity. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the Information used in our analyses and on which our findings and advice to you may be based.  In addition, we will state that we have no obligation to, and will not update our reports or extend our activities beyond the scope set forth herein unless you request and we agree to do so.

12. <u>Indemnification and Limitation of Liability</u>: The Company shall provide indemnification, contribution and reimbursement as set forth in <u>Schedule I</u> hereto. The terms and provisions of <u>Schedule I</u> are an integral part hereof, are hereby incorporated by reference, are subject in all respects to the provisions hereof and shall survive any termination or expiration of this Agreement.  Further, if an Indemnified Person (as defined in <u>Schedule I</u>) is requested or required to appear as a witness in any Action (as defined in <u>Schedule I</u>) that is brought by or on behalf of or against the Company or that otherwise relates to this Agreement or the Services rendered by Ankura hereunder, the Company shall, jointly and severally, reimburse Ankura and the Indemnified Person for all reasonable, documented, actual out of pocket expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness, including without limitation, the fees and disbursements of legal counsel.  Neither the Company nor any other party acting on its behalf shall hold Ankura liable for any matter in connection with this engagement, the Services



**Private and Confidential**

or the Agreement, absent gross negligence, willful misconduct or bad faith as finally determined by a judgment of a court of competent jurisdiction. In no event shall Ankura be liable (i) for loss or corruption of data from the Company's systems; or (ii) for any claim whatsoever for any loss of profit, goodwill, business opportunity, anticipated savings or benefits, special, consequential, exemplary, incidental, punitive or indirect damages of any kind.

13. Entire Agreement; Amendments: This Agreement (including Schedule I) represents the entire agreement between the parties in relation to the Services, supersedes all previous agreements relating to the subject matter hereof (should they exist) and may not be modified or amended except in writing signed by all of the parties hereto.

14. Counterparts: This Agreement may be executed in counterparts (and by facsimile or other electronic means), each of which shall constitute an original and all of which together will be deemed to be one and the same document.

15. Severability: The invalidity or unenforceability of any provision of this Agreement (including Schedule I) shall not affect the validity or enforceability of any other provision.

16. Announcements: Ankura shall be entitled to identify the Company and use the Company's name and logo in connection with marketing and pitch materials upon conclusion of the Services.  In addition, if requested by Ankura, the Company agrees that in any press release related to the Services or outcome of the Services provided hereunder, the Company will include in such press release a mutually acceptable reference to Ankura's role as advisor to the Company.

17. GOVERNING LAW; JURY TRIAL WAIVER; JURISDICTION: THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE.   ANKURA AND THE COMPANY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF OR IN CONNECTION WITH THE ENGAGEMENT OF ANKURA PURSUANT TO, OR THE PERFORMANCE BY ANKURA OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.   REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN ANY FEDERAL OF COMPETENT JURISDICTION SITTING IN THE SOUTHERN JURISDICTION OF NEW YORK, NEW YORK OR, IF SUCH COURTS DO NOT HAVE JURISDICTION, THEN THE COMMERCIAL DIVISION OF THE STATE COURTS SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; PROVIDED HOWEVER, THAT IF ANY ENTITY COMPRISING THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AND IF A COMPANY ENTITY IS A PARTY TO SUCH DISPUTE WITH RESPECT TO THIS AGREEMENT, ANKURA AND THE COMPANY IRREVOCABLY AGREE TO SUBMIT TO THE EXCLUSIVE JURISDICTION AND FORUM OF THE BANKRUPTCY COURT IN WHICH SUCH CHAPTER 11 CASE IS PENDING.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HERETO FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY



**Private and Confidential**

WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION THAT IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS. EACH PARTY HERETO AGREES THAT A FINAL NON-APPEALABLE JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURT(S) HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE NOTICE ADDRESS FOR EACH SUCH PERSON AS SET FORTH IN THIS AGREEMENT. EACH OF THE PARTIES HERETO HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF ANY OTHER PARTY HERETO HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS WAIVER. EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY AND IN RELIANCE UPON, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION.

18. <u>Notices</u>: Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (including via email so long as the recipient acknowledges receipt) at the address set forth in the signature blocks of each such person below. Notices shall be deemed provided on the date sent.

19. <u>Miscellaneous</u>:

   (a) <u>Conflicts</u>:

      i)   Ankura is involved in a wide range of other activities from which conflicting interests, or duties, may arise. Ankura has undertaken an inquiry of its records in accordance with its standard business practices based on the parties identified to it and has determined that it may proceed. Due to the diversity of Ankura's experts and advisory services, Ankura cannot be certain all relationships have or will come to light. Should an actual conflict come to the attention of Ankura during the course of this engagement, Ankura will notify the Company immediately and take appropriate actions, as necessary. The Company represents and warrants that it has informed Ankura of the parties-in-interest to this matter and agrees that it will inform Ankura of additions to, or name changes for, those parties-in-interest. Ankura is not restricted from working on other engagements involving the parties in this matter; however, during the course of this engagement, services of the nature described in this Agreement that are directly adverse to the Company shall not be provided by personnel working on this engagement without prior written consent of the Company.

      ii)  The Company acknowledges that Ankura and its affiliates may have provided professional services to, may currently provide professional services to, or may in the future provide such services to other parties-in-interest. The Company agrees that Ankura, its affiliates, subsidiaries, subcontractors and their respective personnel will have no responsibility to the Company in relation to such professional services, nor any responsibility to use or disclose information Ankura possesses by reason of such services, whether or not such information might be considered material to the Company.  Information that is held elsewhere within Ankura but is not publicly available will not for any purpose be taken into account in determining Ankura's responsibilities to the Company under this engagement.  Ankura will not have any duty to disclose to the Company or any other party or utilize for the benefit of any such party's or any other party any non-public information, or the fact that Ankura is in possession of such information, acquired in the course of providing services to any other



**Private and Confidential**

person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.

(b) Exculpation:  The Company agrees not to bring any claim against a direct or indirect holder of any equity interests or securities of Ankura whether such holder is a limited or general partner, member, stockholder or otherwise, affiliate of Ankura, or director, officer, employee, representative, or agent of Ankura, or of an affiliate of Ankura or of any such direct or indirect holder of any equity interests or securities of Ankura (collectively, the "***Party Affiliates***").  The Company further agrees that no Party Affiliate shall have any liability or obligation of any nature whatsoever in connection with or under this Agreement or the Services contemplated thereby, and the Company waives and releases all claims against such Party Affiliates related to any such liability or obligation.

(c) Authority; Due Authorization; Enforceability: Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder.  Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each such party and constitutes the legal, valid and binding agreement of each such party, enforceable in accordance with its terms.

(d) Independent Contractors: In connection with the Services, Ankura may utilize employees, agents or independent contractors or its own affiliates (each of which is a separate and independent legal entity) or its own agents or independent contractors.  References in this Agreement to Ankura personnel shall apply equally to employees, agents or independent contractors of Ankura and its affiliates. Ankura shall act as an independent contractor under this Agreement, and not in any other capacity including as a fiduciary, and any obligations arising out of its engagement shall be owed solely to you.  As an independent contractor, Ankura will have complete and exclusive charge of the management and operations of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operations of its business.  Ankura will remain solely responsible for the Services.

(e) Limitations of Engagement: The Company acknowledges that Ankura is being retained solely to assist the Company as described in this Agreement.  The Company agrees that it will be solely responsible implementing any advice or recommendations and for ensuring that any such implementation complies with applicable law.  The Company understands that Ankura is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.  This engagement shall not constitute an audit or review, or any other type of financial statement reporting engagement.  It is expressly agreed that, other than as set forth above, Ankura will not evaluate or attest to the Company's internal controls, financial reporting, illegal acts or disclosure deficiencies and Ankura shall be under no obligation to provide formal fairness or solvency opinions with respect to any bankruptcy case or otherwise, or any transaction contemplated thereby or incidental thereto.  In rendering its Services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Ankura is not assuming any responsibility for any decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction.  Ankura shall not have any obligation or responsibility to provide legal, regulatory, accounting, tax, audit, "crisis management" or business consultant advice or services hereunder and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements. Our engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we



**Private and Confidential**

anticipate that in the course of the engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

(f) <u>Limitations on Actions</u>.  No action, regardless of form, relating to this engagement, the Services provided hereunder or this Agreement, may be brought by either party more than one (1) year after the cause of action has accrued, except than an action for nonpayment may be brought no later than one (1) year following the due date of the last payment owing to the party bringing such action.

(g) <u>Counsel Representation</u>: The terms of this Agreement have been negotiated by the parties hereto, who have each been represented by counsel, there shall be no presumption that any of the provisions of this Agreement shall be construed adverse to any party as "drafter" in the event of a contention of ambiguity in this Agreement, and the parties waive any statute or rule of law to such effect.

(h) <u>Assignment</u>: This Agreement may not be assigned by any party hereto without the prior written consent of the other parties.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning parties.  This Agreement shall be binding on the parties hereto and their successors and permitted assigns. Notwithstanding the forgoing, Ankura may assign or novate this Agreement to a transferee of all or part of its business upon written notice.  Ankura may also transfer or deal with our rights in any unpaid invoice without notice.

(i) <u>Headings</u>: Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

(j) <u>Survival.</u>  Those provisions that by their nature are intended to survive termination or expiration of this Agreement and any right or obligation of the parties in this Agreement that, by its express terms of nature and context is intended to survive termination or expiration of this Agreement, shall so survive any such termination or expiration. For the avoidance of doubt, upon any termination of this Agreement, Section 2-12, 14-18 and <u>Schedule I</u> hereto shall survive such termination and shall remain in effect.  Notwithstanding the foregoing, the obligations under Section 9 shall survive for two (2) years after termination of this Agreement.

(k) <u>Force Majeure</u>:  Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including but not limited to, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

(l) <u>Non-Solicitation</u>:  The Company will not, during the term of the engagement or for twelve (12) months thereafter, solicit (directly or indirectly) any employee of Ankura or attempt to induce or cooperate with any other firm in an attempt to induce any employee to leave the employ of Ankura; <u>provided</u> that the foregoing shall not be violated by general advertising not targeted at Ankura employees.

(m) <u>Money Laundering</u>.  Ankura may, in addition to making searches of appropriate databases, request from you, your affiliates or your advisors, certain information and documentation for the purposes of verifying your identity in order to comply with our obligations under applicable money-laundering regulation, legislation and our internal policies. When you are acting on behalf of a third-party client, we may request from you, copies of any documentation you have obtained in relation to your client.  If satisfactory evidence of identity is not provided within a reasonable time, it may be necessary for us to cease work. Where we believe that there are circumstances which may



**Private and Confidential**

give rise to a money laundering offence under applicable legislation, we may consider it necessary to make a report to the appropriate authorities. We may not be able to discuss such reports with you and we will not be liable to you for any loss or damage which you may suffer or incur as a result of our making such a report, including, without limitation, as a result of any delay to any stage of a matter or as a result of completion being prohibited by such authorities.

[Signature pages follow.]



If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

If you have any questions, please call Russell Perry at 817-797-3943.  We look forward to working with you on this important matter.

Very truly yours,

**Ankura Consulting Group, LLC**

By: _____

     Mr. Russell A. Perry
     Senior Managing Director
     15950 Dallas Parkway, Suite 750
     Dallas, TX 75248
     russell.perry@ankura.com

     With a copy to:
     485 Lexington Avenue, 10th Floor
     New York, NY 10017
     Attn.: General Counsel

Accepted to and Agreed by:

**Genesis Healthcare, Inc.**

By: _____

     Mr. George Hager
     Chief Executive Officer
     101 East State Street,
     Kennett Square, PA 19348
     g.hager@genesishcc.com



**Private and Confidential**

## Schedule I

This <u>Schedule I</u> is a part of and incorporated into the letter agreement (the "***Agreement***"), dated as of August 1, 2020 between Ankura and the Company. Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

As a material part of the consideration for the agreement of Ankura to furnish its Services under the Agreement, the Company, jointly and severally, agrees that it shall defend, indemnify and hold harmless Ankura and its affiliates and their respective directors, officers, employees, attorneys and other agents appointed by any of the foregoing and each other person, if any, controlling Ankura or any of its affiliates (Ankura and each such person and entity being referred to as an "***Indemnified Person***"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***"), and will reimburse each Indemnified Person for all reasonable fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "***Indemnified Expenses***") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "***Actions***"), in each case, related to or arising out of or in connection with the Services rendered or to be rendered by an Indemnified Person pursuant to the Agreement or any Indemnified Persons' actions or inactions in connection with any such Services; <u>provided</u> that the Company will not be responsible for any Liabilities or Indemnified Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appear or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with any of the Services.  The Company shall also reimburse such Indemnified Person for all Indemnified Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this <u>Schedule I</u>).  Such Indemnified Person shall reasonably cooperate with the defense of any Actions.

The Company shall, if requested by Ankura, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Ankura. The Company will not, without prior written consent of Ankura (which shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination (i) includes an unconditional release of such Indemnified Person from all Liabilities arising out of such Action and (ii) does not include any admission or assumption of fault or culpability on the part of any Indemnified Person.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Ankura in writing thereof, if not previously so notified, and shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions reasonably satisfactory to Ankura.

These indemnification, contribution and other provisions of this <u>Schedule I</u> shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Ankura; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.

**ankura**
COLLABORATION DRIVES RESULTS

**Private and Confidential**

November 17, 2020

Mr. Robert H. Fish
Chairman of the Board of Directors
Genesis Healthcare, Inc.
101 East State Street
Kennett Square, PA 19348

    **Re: Amendment to Agreement**

Dear Mr. Fish:

Reference is made to that certain letter agreement dated August 1, 2020 between Ankura Consulting Group, LLC ("***Ankura***") and Genesis Healthcare, Inc. (collectively, with all of its subsidiaries and affiliates, the "***Company***") (the "***Agreement***"). This letter agreement, effective as of November 17, 2020, effectuates certain additions to the Services set forth in the Agreement to which the Company and Ankura have agreed.

**Section 1. Amendment of Agreement.**  Section 1 of the Agreement shall be amended to add the following Services at the end of subsection (k):

    i)  Provide M. Benjamin Jones and Russell Perry to serve as Strategic Restructuring Advisors ("***SRA Representatives***") of the Company, with the following scope of authority:

        (1)  Subject to the supervision of the Strategic Committee of the Company, and working collaboratively with the senior management team, assist the Company to develop one or more strategic business plans;

        (2)  Direct all actions related to the restructuring; *provided*, *however*, that, for the avoidance of doubt, the SRA Representatives shall have no authority to approve any definitive action or to otherwise bind the Company with respect to any other party;

        (3)  Coordinate with and ensure effective communications among the Company's officers and other senior management and the professionals who are assisting the Company in the restructuring, or who are working for the Company's various stakeholders, to improve the effectiveness of their efforts consistent with the Company's overall restructuring goals;

        (4)  Consult with the Company's directors (including, for the avoidance of doubt, those directors that are not members of the Strategic Committee) and the Company's CEO concerning the restructuring;

    ii)  Coordinate any communications (i.e. in-person, telephone, email or virtual meetings, etc.) with any senior representative of any of the Company's significant landlords or creditors; and

    iii)  Provide periodic reports and recommendations to the Strategic Committee with respect to the foregoing resolutions at such times as shall be determined by the Strategic Committee.



**Private and Confidential**

## Section 2. Miscellaneous Provisions

(a) **Continuing Effectiveness.** All terms and provisions of the Agreement, except as expressly modified herein, shall continue in full force and effect.

(b) **Effect of Amendment.** This Amendment shall form a part of the Agreement for all purposes, and each of the Company and Ankura shall be bound hereby. From and after the execution of this Amendment by the parties hereto, any references to the Agreement shall be deemed a reference to the Agreement as amended hereby. To the extent there is a conflict between the terms of this Amendment and the Agreement, the terms of this Amendment shall govern.

(c) **Entire Agreement.** This Amendment constitutes the entire agreement between the parties hereto, and supersedes previous agreement, communication, expectation, negotiation, representation or understanding, whether oral or written, express or implied, statutory or otherwise between the parties hereto with respect to the subject matter of this Amendment. Nothing in this section will limit or restrict the effectiveness and validity of any document with respect to the subject matter of this Amendment that is executed and delivered contemporaneously with or pursuant to this Amendment.

(d) **Counterparts.** This Amendment may be executed in any number of counterparts, in original form or by electronic means, each of which will together, for all purposes, constitute on and the same instrument, binding on the parties hereto, and each of which will together be deemed to be an original, notwithstanding that each party hereto is not a signatory to the same counterpart.

(e) **Governing Law.** This Amendment shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to principles of conflicts of law.



**Private and Confidential**

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Amendment and your acceptance shall constitute a binding agreement between Ankura and the Company effective as of the date first written above.  By signing this Amendment, the Company represents and warrants that its signatory below has the authority to enter into this Agreement on behalf of the all Company entities that are parties to this important matter.

If you have any questions, please call Russell Perry at 817-797-3943 or Ben Jones at 917-273-9748.

Very truly yours,

**Ankura Consulting Group, LLC**

By: _____
    Mr. Russell A. Perry
    Senior Managing Director
    15950 Dallas Parkway, Suite 750
    Dallas, TX 75248
    russell.perry@ankura.com

    With a copy to:
    485 Lexington Avenue, 10th Floor
    New York, NY 10017
    Attn.: General Counsel

Accepted to and Agreed by:

**Genesis Healthcare, Inc.**

By: _____
    Mr. Robert H. Fish
    Chairman of the Board of Directors
    Genesis Healthcare, Inc.
    101 East State Street
    Kennett Square, PA 19348



Private and Confidential

July 9, 2025

Mr. Michael Berg, General Counsel
Genesis Healthcare, Inc.
101 East State Street
Kennett Square, PA 19348

**Re: Second Amendment to Agreement**

Dear Mr. Berg:

Reference is made to that certain letter agreement dated August 1, 2020 between Ankura Consulting Group, LLC ("***Ankura***") and Genesis Healthcare, Inc. (collectively, with all of its subsidiaries and affiliates, the "***Company***"), amended November 17, 2020 (as amended, the "***Agreement***").  This letter agreement ("***Second Amendment***"), effective as of the date hereof, modifies the Agreement as set forth herein.

**Section 1. Amendment of Agreement**.

(A) Section 1 of the Agreement shall be amended to add the following Services as new subsection (l):

"(l) Provide the services of Russell A. Perry and Louis E. Robichaux IV as Co-Chief Restructuring Officers of the Company (each a "***Co-CRO***"), reporting to and subject to the supervision of the Restructuring Committee upon its formation."

(B) The introductory portion of Section 2 of the Agreement shall be deleted and replaced in its entirety with the following:

"2.  Fees and Expenses: For Ankura's Services hereunder, the Company agrees to pay to Ankura the non-refundable fees (the "***Fee***") based on the actual hours expended at our standard hourly rates that are in effect when the Services are rendered.  Our rates generally are revised annually.  Our current hourly rates are as follows:

| Professional | Hourly Rate |
|---|---|
| Senior Managing Director & Managing Director | $1,075 - $1,455 |
| Senior Director & Director | $740 - $1,020 |
| Senior Associate & Associate | $495 - $680 |
| Paraprofessionals | $380 - $440 |

Notwithstanding the foregoing, Ankura's compensation for the Chief Restructuring Officer services provided by Russell A. Perry and Louis E. Robichaux IV (as Co-CROs) shall be a fixed monthly fee of $250,000 (the "***CRO Fixed Monthly Fee***")."

For the avoidance of doubt, Sections 2(a), 2(b) and 2(c) remain unchanged.

(C) Add a new Section 20 to the Agreement as follows:

"20.  Insurance.  Company shall maintain directors, officers and corporate liability insurance policy (the "***Policy***"), with at least $5 million dedicated solely to executives, to cover the Co-Chief Restructuring Officers in addition to the existing officers and



Private and Confidential

directors serving in such positions.  The Company shall cause its insurance broker to send copies of all documentation and other communications regarding the Policy, including without limitation any renewal or cancellation thereof to the attention of the Co-Chief Restructuring Officers. Upon any cancellation or nonrenewal of the Policy, the Company shall exercise its rights to extend the claim period to a six-year "discovery period" and shall pay the premium required thereunder."

### Section 2. Miscellaneous Provisions

(a) **Continuing Effectiveness**. All terms and provisions of the Agreement, except as expressly modified herein, shall continue in full force and effect.

(b) **Effect of Amendment**. This Amendment shall form a part of the Agreement for all purposes, and each of the Company and Ankura shall be bound hereby. From and after the execution of this Amendment by the parties hereto, any references to the Agreement shall be deemed a reference to the Agreement as amended hereby. To the extent there is a conflict between the terms of this Amendment and the Agreement, the terms of this Amendment shall govern.

(c) **Entire Agreement**. This Amendment constitutes the entire agreement between the parties hereto, and supersedes previous agreement, communication, expectation, negotiation, representation or understanding, whether oral or written, express or implied, statutory or otherwise between the parties hereto with respect to the subject matter of this Amendment. Nothing in this section will limit or restrict the effectiveness and validity of any document with respect to the subject matter of this Amendment that is executed and delivered contemporaneously with or pursuant to this Amendment.

(d) **Counterparts**. This Amendment may be executed in any number of counterparts, in original form or by electronic means, each of which will together, for all purposes, constitute on and the same instrument, binding on the parties hereto, and each of which will together be deemed to be an original, notwithstanding that each party hereto is not a signatory to the same counterpart.

(e) **Governing Law**. This Amendment shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to principles of conflicts of law.

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Second Amendment and your acceptance shall constitute a binding agreement between Ankura and the Company effective as of the date first written above.  By signing this Amendment, the Company represents and warrants that its signatory below has the authority to enter into this Agreement on behalf of all Company entities that are parties to the Agreement.

If you have any questions, please call Russell Perry at 817-797-3943 or Louis E. Robichaux IV at 214-924-1575.

***** Signature Page Follows *****

ankura.com



_Private and Confidential_

Very truly yours,

**Ankura Consulting Group, LLC**

By: _____

Name: Louis E. Robichaux IV
Title: Senior Managing Director
Email: louis.robichaux@ankura.com
Address: 2021 McKinney Ave., Suite 340
        Dallas, TX 75201
With a copy to:
        485 Lexington Avenue, 10th Floor
        New York, NY 10017
        Attn.: General Counsel


Accepted and agreed:

**Genesis Healthcare, Inc.**

By: _____

        Mr. Michael Berg, Esq.
        General Counsel
        Genesis Healthcare, Inc.
        101 East State Street
        Kennett Square, PA 19348

Date: