**HOLLAND & KNIGHT LLP**
Brent R. McIlwain
Texas Bar No. 24013140
Christopher A. Bailey
Texas Bar No. 24104598
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 964-9500
Facsimile: (214) 964-9501
Email: brent.mcilwain@hklaw.com
  chris.bailey@hklaw.com

**HOLLAND & KNIGHT LLP**
Tyler N. Layne (*pro hac vice* pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: tyler.layne@hklaw.com

Nicholas R. Miller (*pro hac vice* pending)
98 San Jacinto Boulevard, Suite 1900
Austin, TX 78701
Telephone: (512) 472-1081
Facsimile: (512) 472-7473
Email: nick.miller@hklaw.com

*Attorneys for First-Citizens Bank & Trust Company,*
*as Administrative Agent*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | § | Case No. 25-80185 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**FIRST-CITIZENS BANK & TRUST COMPANY'S**
**OBJECTION TO DEBTORS' EMERGENCY MOTION**
**FOR ENTRY OF ORDER (I) RESTATING AND ENFORCING**
**THE AUTOMATIC STAY, (II) APPROVING THE FORM AND MANNER**
**OF NOTICE, AND (III) GRANTING RELATED RELIEF AND TO DEBTORS'**
**EMERGENCY MOTION FOR ENTRY OF ORDER EXTENDING**
**THE AUTOMATIC STAY TO JV ENTITIES**

First-Citizens Bank & Trust Company, as administrative agent (the "***Bold Quail Agent***")

for the lenders (the "***Bold Quail Lenders***") under that certain Credit Agreement dated as of January

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, for which the Debtors have requested joint administration. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

31, 2020 (as amended by that certain First Omnibus Joinder Agreement and First Amendment to Credit Agreement dated as of August 17, 2021, that certain Amendment dated as of March 15, 2023, that certain Third Amendment to and Waiver Under Credit Agreement dated as of January 31, 2025, and as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "***Bold Quail Credit Agreement***"), hereby files this objection (the "**Objection**") to *Debtors' Emergency Motion for Entry of Order (I) Restating and Enforcing the Automatic Stay, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief* [Doc. No. 15] (the "**Stay Motion**") and to the additional or alternative emergency relief requested in *Debtors' (I) Response to Seafire NEMA Holdings, LLC's Objection to Debtors' Emergency Motion for Entry of Order Restating and Enforcing the Automatic Stay and, in the Alternative (II) Emergency Motion for Entry of Order Extending the Automatic Stay to JV Entities* [Doc. No. 198] (the "**Response**"), and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. In the Stay Motion and Response, the Debtors[2] seek to extend the automatic stay to, among other actions, the exercise of remedies against non-Debtor Bold Quail Holdings LLC ("**Bold Quail**"), among other JV Entities, resulting from the insolvency or financial condition of the Debtors or the commencement of the Chapter 11 Cases. Bold Quail is obligated to the Bold Quail Agent and Bold Quail Lenders under the Bold Quail Credit Agreement as a Guarantor.

2. The Debtors' state that their request amounts to a "limited extension" of the automatic stay to cover these JV Entities, and it appears based on the wording of the Proposed Final Order that the Debtors seek only to prevent actions taken directly as a result of the Debtors'

---

[2] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Objection.

2

#525229597_v4

financial condition or insolvency or the commencement of the Chapter 11 Cases.³ However, the relief requested by the Debtors leaves too much room for a more expansive interpretation that would upset the Bold Quail Agent's and Bold Quail Lenders' bargained-for protections, is improper both legally and procedurally, and should be denied or, at a minimum, limited insofar as the request relates to the Bold Quail Agent's and the Bold Quail Lenders' rights and remedies against Bold Quail or under contracts to which Bold Quail is a party or signatory that ***do not*** relate ***solely*** to the Debtors' insolvency or financial condition or to the commencement of the Chapter 11 Cases.

3.  *First*, it is black-letter law that the automatic stay does not apply to non-debtor third parties absent unusual circumstances, which courts have found where there is such identity between the debtor and the third party that an action against the third party may be said to be an action against the debtor. This is not the case here. Bold Quail maintains a status separate and independent from the Debtors, which status the Bold Quail Lenders relied upon in extending credit under the Bold Quail Credit Agreement. The Debtors argue that their equity interests in the JV Entities, the value of which they assert could be harmed by actions taken against the JV Entities as a result of the Chapter 11 Cases, are sufficient to bring the JV Entities within the scope of the automatic stay. This is incorrect, as courts both within and outside of the Fifth Circuit have held on numerous occasions that a debtor's equity interests in a non-debtor third party are insufficient to extend the automatic stay's protections to that third party. This is true even where actions against

---

³ To that end, the Proposed Final Order appears to largely track the language of section 365(e) of the Bankruptcy Code, which prevents taking certain actions under executory contracts or unexpired leases "***solely*** because of a provision in such contract or lease that is conditioned on" the insolvency or financial condition of the debtor or the commencement of a bankruptcy case. 11 U.S.C. § 365(e)(1) (emphasis added). However, the language in the Proposed Final Order leaves out the word "solely," and thus excludes an important limitation on section 365(e)'s scope.

the non-debtor third party may harm the value of the debtor's equity interests but where the equity interests themselves are left unaffected and intact.

4. *Second*, to the extent the Debtors request that the Court extend the automatic stay to the JV Entities by way of an injunction pursuant to section 105 of the Bankruptcy Code, the Stay Motion and Response are not the proper means of doing so. The Debtors have requested this relief for the first time in a Response to the Seafire Objection to the Stay Motion. However, such an injunction under section 105 may only properly be granted through an adversary proceeding and only upon a showing that the legal requirements for an injunction against specified defendants have been met. The Debtors have not cleared either of these hurdles.

5. The Debtors' requested relief expands the automatic stay beyond the protections the Bankruptcy Code affords to debtors. Despite the fact that the Bold Quail Lenders did not extend any credit to any of the Debtors and did not rely on any Debtor for credit or collateral support, the Debtors' relief, as proposed, would restrain rights and remedies available to the Bold Quail Agent and the Bold Quail Lenders under applicable law on the sole basis that a single upstream entity, which happens to be a Debtor, holds a 50% ownership interest in a single Guarantor under the Bold Quail Credit Agreement.

6. For these reasons, the Bold Quail Agent requests that the Court deny the Stay Motion and the additional relief requested in the Response and limit the automatic stay to its statutory scope, which does not extend to Bold Quail, or, at a minimum, to actions resulting ***solely*** from the insolvency or financial condition of the Debtors or the commencement of the Chapter 11 Cases.

#525229597_v4

**BACKGROUND**

7. Pursuant to the Bold Quail Credit Agreement, the Bold Quail Lenders have provided a term loan to the borrowers thereunder (the "***Borrowers***"). None of the Borrowers or other parties or signatories to the Bold Quail Credit Agreement, including the guarantors thereunder (the "***Guarantors***"), are debtors (the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

8. One of the Guarantors under the Bold Quail Credit Agreement is Bold Quail, of which Debtor Gen BQ JV Holdings, LLC ("***Gen BQ JV***") is a 50% owner. Bold Quail, however, is not a Debtor, and Gen BQ JV is neither a party nor a signatory to the Bold Quail Credit Agreement nor a Guarantor under the Bold Quail Credit Agreement.

9. On July 10, 2025, the Debtors filed the Stay Motion, which sought to stay all persons from: (a) terminating, modifying, or otherwise exercising remedies with respect to any and all operating agreements, contracts, leases, financing agreements, or other agreements to which the Genesis JV Members (as defined in the Stay Motion) and the JV Entities (as defined in the Stay Motion) are party or signatory at any time after the commencement of the Chapter 11 Cases; and (b) continuing, commencing, or employing any judicial, administrative, or other action or proceeding against the Genesis JV Members and the JV Entities that asserts allegations or causes of action relating to any and all contracts and leases to which the Genesis JV Members and the JV Entities are party or signatory. The JV Entities include Bold Quail, and as such, the Debtors' requested relief would prevent the Bold Quail Agent and the Bold Quail Lenders from exercising any remedies they may have under the Bold Quail Credit Agreement notwithstanding the fact that no Debtor is a party or signatory to the Bold Quail Credit Agreement. Despite this broad application of the automatic stay to protect non-Debtor entities, the Stay Motion did not request

5

extension of the automatic stay, nor did the Debtors attempt to meet the legal standard for extension of the automatic stay.

10. On July 11, 2025, Seafire NEMA Holdings, LLC ("**Seafire**") filed *Seafire NEMA Holdings, LLC's Objection to Debtors' Emergency Motion for Entry of Order (I) Restating and Enforcing the Automatic Stay, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief* [Doc. No. 50] (the "**Seafire Objection**"). The Seafire Objection recognized that the Stay Motion sought relief beyond mere restatement and enforcement of the automatic stay and instead sought an expansion or extension of the automatic stay without adhering to the proper procedures for requesting such relief.

11. On July 11, 2025, this Court entered its *Interim Order (I) Restating and Enforcing the Automatic Stay, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief* [Doc. No. 66] (the "**Interim Stay Order**"). The Interim Stay Order, which was modified slightly from its original proposed form in light of the Seafire Objection, provided:

> to the fullest extent permitted by Bankruptcy Code section 362 and section 541, all persons . . . are hereby stayed, restrained, and enjoined from: terminating, modifying, or otherwise exercising remedies with respect to any and all operating agreements, contracts, leases, financing agreements, or other agreements to which the Genesis JV Members and the JV Entities are party or signatory at any time resulting from the commencement of the Chapter 11 Cases. For the avoidance of doubt, this Order does not expand or enlarge the rights afforded to the Debtors under the Bankruptcy Code and remains subject to Bankruptcy Code section 362, including its exceptions.

Interim Stay Order ¶¶ 4–5. As noted above, the JV Entities include Bold Quail.

12. On July 23, 2025, the Debtors filed their Response to the Seafire Objection. Perhaps recognizing that the relief requested in the Stay Motion went beyond restating or enforcing the scope of the automatic stay, the Response includes an additional request for entry of an order

6

#525229597_v4

extending the automatic stay to the JV Entities.[4] As presented in the Proposed Final Order, the Debtors request, via the Stay Motion and the Response, to stay, restrain, and enjoin all persons from:

> terminating, modifying, or otherwise exercising remedies with respect to any and all operating agreements, contracts, leases, financing agreements, or other agreements to which the JV Entities are party or signatory at any time resulting from the insolvency or financial condition of the Debtors or the commencement of the Chapter 11 Cases; *provided however*, that to the extent necessary, the automatic stay under section 362 is hereby extended to the JV Entities for the limited purpose of effectuating the foregoing.

Resp. Ex. A ¶ 3. Additionally, the Proposed Final Order would stay, restrain, and enjoin all persons from:

> (a) taking any action to obtain possession or control of property of the Debtors' estates, including the JV Equity Interests, and (b) terminating, modifying, or otherwise exercising remedies resulting from the Debtors' financial condition or the commencement of the Chapter 11 Cases with respect to any and all operating agreements, contracts, leases, financing agreements, or other agreements to which the JV Entities are party or signatory.

*Id.* ¶ 4.

## OBJECTION

13.     As drafted, the relief requested through the Stay Motion and Response and presented in the Proposed Final Order is an improper expansion of the automatic stay that does not comport with the requirements of the Bankruptcy Code and to which the Debtors have not adequately demonstrated that they are entitled. The scope of the automatic stay does not extend to non-debtors such as Bold Quail, and the connection between the Debtors and Bold Quail is not sufficient to warrant an extension of the automatic stay.

---

[4] The Debtors present this request for relief as an alternative; however, the Proposed Final Order (as defined in the Response) includes language extending the stay to the JV Entities "to the extent necessary." Resp. Ex. A ¶ 3.

#525229597_v4

14. It is well established that the automatic stay generally does not apply to non-debtor third parties. *See, e.g.*, *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012) ("The automatic stay does not generally apply to third parties . . . ." (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 166 (2009) (Stevens, J., dissenting))); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors." (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983))).

15. Bold Quail is not a Debtor and should not receive the protections of the automatic stay except in "unusual circumstances." *See Feline Instincts, LLC v. Feline Future Cat Food Co.*, No. 4:09-CV-644-Y, 2010 WL 11530787, at *2 n.1 (Bankr. N.D. Tex. Dec. 2, 2010) ("[N]ondebtors . . . do not receive the protections of the stay except in unusual circumstances." (citing *Everitt v. Pneumo Abex, LLC*, 703 F. Supp. 2d 630, 637 (S.D. Miss. 2009))). Such unusual circumstances exist where there is such identity between the debtor and the third party that an action against the third party may be said to be an action against the debtor. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 359 F.3d 816, 825 (5th Cir. 2003) (noting that a bankruptcy court may stay an action against a nondebtor where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986))).

16. The Debtors have not shown that such unusual circumstances exist here. The only rationale that the Debtors have presented for extending the automatic stay to protect Bold Quail is the Debtors' equity interests in Bold Quail.

17. Courts have consistently held that the assets of a non-debtor third party are not property of the estate merely by virtue of a debtor's ownership interests in that non-debtor third

8

party. *See, e.g.*, *Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007) ("The fact that a parent corporation has an ownership interest in a subsidiary, however, does not give the parent any direct interest in the *assets* of the subsidiary."); *In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("Even where one hundred percent of a subsidiary's stock is owned by the shareholder in question, that shareholder has not acquired, and has no property interest in, specific assets of the subsidiary." (citing *In re Murchison*, 54 B.R. 721 (Bankr. N.D. Tex. 1985))).

18.  Additionally, the fact that an act against such a non-debtor third party may affect the value of the debtor's interest in that entity is likewise insufficient to bring the non-debtor under the automatic stay's protection. *See, e.g.*, *Kreisler*, 478 F.3d at 215 (holding that because a non-debtor's loss of property affected only the value of the debtor's interests, the automatic stay did not apply to action against the non-debtor); *In re HSM Kennewick*, 347 B.R. at 571 (agreeing with the argument that "the automatic stay does not extend to protect a member in a limited liability company from an action that would adversely affect the value of the member's interest"); *Park W. Real Estate Corp. v. Calvert (In re Calvert)*, 135 B.R. 398, 402 (Bankr. S.D. Cal. 1991) (adopting the rule that the automatic stay does not apply to actions affecting a non-debtor third party "even though those actions may have an effect on the value of shares of stock held by the estates of debtors").

19.  In reaching this decision, courts reasoned that even though an action against a non-debtor third party may hypothetically affect the value of the debtor's interest, the interest itself will remain unaffected. *See, e.g.*, *Kreisler*, 478 F.3d at 214 ("The fact that [the debtor's] interest in [a non-debtor] may lose value, however, is not dispositive. The nature and extent of [the debtor's] interest in [the non-debtor] remains unchanged by [the non-debtor's] loss of the property."); *In re HSM Kennewick*, 347 B.R. at 572 (holding that an action "will not affect [the debtor's] interest, as

its interest in the property will remain intact"); *In re Cardinal Indus., Inc.*, 105 B.R. 834, 849 (Bankr. S.D. Ohio 1989) ("While the Debtors' Partnership Interests may lose value if the Partnership Properties, which may be the sole source for any income or distribution from the Partnerships, are taken away, each partner's rights to its designated shares remains. The Partnerships may acquire new properties or embark upon new enterprises for which the Debtors' shares of profits, losses and distributions remain unchanged.").

20. The Debtors attempt to distinguish *Kreisler* and similar cases by stating that, while in *Kreisler* the non-debtor's nonpayment of rent was the underlying cause of the action brought against the non-debtor, here any hypothetical actions against the JV Entities, including Bold Quail, would be those resulting solely from the Debtors' insolvency or the filing of the Chapter 11 Cases. *See* Resp. ¶ 18. It is unclear why this distinction makes a difference, however, given that the automatic stay does not extend to actions taken against non-debtor third parties regardless of the underlying cause of that action. It is also unclear whether this is even true, given that the hypothetical actions against Bold Quail, may result from circumstances entirely independent of the Debtors' insolvency and the filing of the Chapter 11 Cases (such as the upcoming maturity under the Bold Quail Credit Agreement on November 30, 2025).

21. The Debtors also try to argue that *In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir. 1991), is a more analogous situation. *See id.* ¶ 20. As the Debtors point out, *Prudential Lines* relates to a debtor's right to carry forward a tax deduction due to prepetition net-operating losses. *Id.* (citing *Prudential Lines*, 928 F.2d at 573). Again, it is unclear why a case involving a debtor's rights related to non-operating losses is more analogous to the case at hand than cases that involve the exact same interests as those at issue here, i.e., a debtor's ownership interests in non-debtor third parties. While some courts may hold that an action that would eliminate valuable non-

10

#525229597_v4

operating losses would violate the automatic stay, this should matter little when courts have addressed the specific issue at hand by holding that an action against a non-debtor third party does not violate the automatic stay merely by virtue of the debtor's interest in the non-debtor or the possible diminution of that interest. *See, e.g.*, *Kreisler*, 478 F.3d at 15 ("Accordingly, because [the non-debtor's] loss of the property affected only the *value* of the [debtor's] interests, we agree with the district court that § 362(a)(3) does not apply to the ejectment action against [the non-debtor]."); *In re Ojiegbe*, 512 B.R. 513, 521 (Bankr. D. Md. 2014) ("As established by *Kreisler*, merely owning 100% of a company, without more, is insufficient to extend the automatic stay to a non-debtor company."); *In re HSM Kennewick*, 347 B.R. at 572 ("[The debtor] does not possess an interest to specific assets or property of [the non-debtor], as it is only a member of the LLC; thus the automatic stay does not apply to protect it.").

22.    To the extent the Debtors seek to extend the automatic stay to the JV Entities via an injunction under section 105 of the Bankruptcy Code, a Response to an objection to the Stay Motion that purports to double as its own emergency motion is not the proper procedural avenue to do so. An injunction issued under section 105 of the Bankruptcy Code is proper only through an adversary proceeding and after a showing that the requisite elements for an injunction have been met. *See* FED. R. BANKR. P. 7001(g) (providing that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 764–65 (5th Cir. 1995) (finding that the issuance of an injunction under section 105 was improper where no adversary proceeding was conducted, the parties did not fully litigate the issues, and the court did not conduct the proper analysis or make the requisite findings for entry of a preliminary injunction). Despite the Debtors' assertions that the procedural protections of the Stay Motion and Response satisfy due process requirements and that an adversary proceeding is thus

unnecessary, an adversary proceeding would provide important additional protections that have not been provided here. Specifically, an adversary proceeding would require that the Debtors identify the parties subject to the injunction and the scope of the injunction with specificity and would afford parties in interest an opportunity to conduct discovery.

23. In addition to the procedural deficiencies of seeking an emergency extension of the automatic stay via the Response, the Debtors have also not even attempted to satisfy the legal requirements for a preliminary injunction. To obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest." *Crystal Clear Special Util. Dist. v. Jackson*, 142 F.4th 351, 361 (5th Cir. 2025) (quoting *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017)). The Debtors should be required to address and meet these factors before they can receive the extraordinary relief they request, especially when that relief would upset protections that the Bold Quail Agent and the Bold Quail Lenders bargained for. When they agreed to extend credit under the Bold Quail Credit Agreement, the Bold Quail Agent and the Bold Quail Lenders relied upon the separate and independent status of Bold Quail and the protections that its nature as a joint venture and the specific governance mechanisms inherent to such a structure provided.

24. The language in the Proposed Final Order that would stay actions "resulting from the insolvency or financial condition of the Debtors or the commencement of the Chapter 11 Cases" largely tracks the language of section 365(e)(1) of the Bankruptcy Code, which prohibits certain actions under executory contracts or unexpired leases taken "***solely*** because of a provision in such contract or lease that is conditioned on" the insolvency or financial condition of the debtor

12

or the commencement of a bankruptcy case. 11 U.S.C. § 365(e)(1) (emphasis added). It appears, then, that the Debtors intend only to prevent actions taken as a result of their insolvency or financial condition or the commencement of the Chapter 11 Cases. However, the Proposed Final Order leaves out the word "solely" from section 365(e) and thus fails to incorporate an important limitation on the protections provided by that section. As such, the Proposed Final Order is open to an interpretation that would circumvent these bargained-for protections and would potentially prevent the Bold Quail Agent and the Bold Quail Lenders from exercising their rights and remedies against Bold Quail—even rights and remedies that do not result solely from or directly relate to the Debtors' financial condition or insolvency or the commencement of the Chapter 11 Cases—despite the fact that the credit extended under the Bold Quail Credit Agreement is only connected to these Chapter 11 Cases by one Debtor having a 50% ownership interest in the joint venture.

25. The Debtors are not entitled to relief that could have such an expansive impact without satisfying the procedural and legal requirements for extension of the automatic stay or to obtain an injunction under section 105 of the Bankruptcy Code. Accordingly, as proposed, the relief requested in the Stay Motion and Response should be denied or, at a minimum, limited to prevent only acts taken solely and directly as a result of the Debtors' insolvency or financial condition or the commencement of the Chapter 11 Cases.

## CONCLUSION

26. It is black-letter law that the automatic stay does not apply to non-debtor entities absent unusual circumstances. No such unusual circumstances exist here. While the Debtors argue that their equity interests in the JV Entities, including Bold Quail, are such unusual circumstances, courts make clear that such interests are not sufficient to extend the automatic stay's protection to non-debtor third parties regardless of any risk of harm to the value of those interests. Finally, to

13

#525229597_v4

the extent the Debtors seek their requested relief pursuant to section 105, such relief would require the Debtors both to file an adversary proceeding and satisfy the legal and factual requirements for an injunction against specified parties and with a specified scope. Though the Debtors' state that they seek only a "limited extension" of the automatic stay, their requested relief, as proposed, could expand well beyond what the Debtors purportedly request.

**WHEREFORE**, based on the foregoing, the Bold Quail Agent respectfully requests that the Court deny the relief requested in the Stay Motion and the affirmative relief requested in the Response, or, at a minimum, limit said relief only to stay acts taken solely as a result of the Debtors' insolvency or financial condition or the commencement of the Chapter 11 Cases, and grant the Bold Quail Agent such other relief as it may deem proper.

*[Remainder of page left intentionally blank]*

Dated: August 4, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Christopher A. Bailey*
    Brent R. McIlwain
    Texas Bar No. 24013140
    Christopher A. Bailey
    Texas Bar No. 24104598
    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    Telephone: (214) 964-9500
    Facsimile: (214) 964-9501
    Email: brent.mcilwain@hklaw.com
           chris.bailey@hklaw.com

    Tyler N. Layne (*pro hac vice* pending)
    511 Union Street, Suite 2700
    Nashville, TN 37219
    Telephone: (615) 244-6380
    Facsimile: (615) 244-6804
    Email: tyler.layne@hklaw.com

    Nicholas R. Miller (*pro hac vice* pending)
    98 San Jacinto Boulevard, Suite 1900
    Austin, TX 78701
    Telephone: (512) 472-1081
    Facsimile: (512) 472-7473
    Email: nick.miller@hklaw.com

*Attorneys for First-Citizens Bank & Trust Company, as Administrative Agent*

## CERTIFICATE OF SERVICE

    The undersigned certifies that, on August 4, 2025, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) System on all parties registered to receive electronic notice in this case.

                                      */s/ Christopher A. Bailey*
                                      Christopher A. Bailey