**ANTHONY AND PARTNERS, LLC**
John A. Anthony, Esq. (pro hac vice pending)
Nicholas Lafalce, Esq. (pro hac vice pending)
Julia G. Traina, Esq. (pro hac vice pending)
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Tel.: (813) 273 5616
Fax: (813) 221 4113
Email: janthony@anthonyandpartners.com
Email: nlafalce@anthonyandpartners.com
Email: jtraina@anthonyandpartners.com

Proposed Counsel for the Settlement Claimants

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | |
| GENESIS HEALTHCARE INC. et. al.[1], | Chapter 11 |
| Debtors. | Case No. 25-80185 (SGJ) |
| _____/ | (Jointly Administered) |

**SETTLEMENT CLAIMANTS' LIMITED
OBJECTION TO (A) DEBTORS' STAY MOTION [DOC. 15][2], (B)
DEBTORS' POST-PETITION FINANCING MOTION [DOC. 17[3]], AND
(C) DEBTORS' BIDDING PROCEDURES MOTION [DOC. 117[4]], AND
REQUEST FOR ENLARGEMENT OF TIME PERTAINING TO SAME**

---

[1] The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

[2] The "Debtors' Emergency Motion For Entry Of Order (I) Restating And Enforcing The Automatic Stay, (II) Approving The Form And Manner Of Notice, And (III) Granting Related Relief" filed on July 10, 2025, is hereinafter referred to as the "Stay Motion." [Doc. 15].

[3] The "Debtors' Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To (A) Obtain Post-petition Financing And (B) Utilize Cash Collateral, (II) Granting Adequate Protection To Prepetition Secured Parties, (III) Modifying The Automatic Stay, (IV) Scheduling A Final Hearing, And (V) Granting Related Relief" [Doc. 17] filed on July 10, 2025, is hereinafter referred to as the "Post-Petition Financing Motion."

[4] The "Debtors' Motion For Entry Of An Order (I) Approving Bidding Procedures And Expense Reimbursement, (II) Approving The Debtors' Entry Into The Stalking Horse Apa, (III) Scheduling Certain Dates And Deadlines, (IV) Approving The Form And Manner Of Notice Thereof, (V) Establishing Notice And Procedures For The Assumption And Assignment Of Contracts And Leases, (VI) Authorizing The Assumption And Assignment Of Assumed Contracts, And (VII) Authorizing The Sale Of Assets" [Doc. 117] filed on July 15, 2025 is hereinafter referred to as the "Bidding Procedures Motion."

Pursuant to Bankruptcy Code ("Bankruptcy Code") 11 U.S. C. §§362, 363, 364, and 365, Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 9006(b)(1), 2002, 4001, 6003, 6004, and 9014, Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas ("Local Rules") 2002-1, 4001-1. 5005-1, and 9013-1, and Sections B.8(k), C and D of the Procedures for Complex Cases in the Northern District of Texas, effective February 6, 2023 (the "Complex Case Procedures"), and other applicable law, the Settlement Claimants[5], hereby file these limited objections (this "Objection"), and object on the following grounds to the relief requested by the Debtors in the Stay Motion, the Post-Petition Financing Motion, and the Bidding Procedures Motion (collectively, the "Debtor Motions"):

A.    **OVERVIEW OF THE SETTLEMENT CLAIMANTS**

1.    The Settlement Claimants are a set of no less than 125 creditors in the above-captioned reorganizations (the "Reorganizations"), represented by a de facto consortium of 44 healthcare negligence plaintiff firms (collectively, the "Plaintiffs Firms"), throughout 14 states, whose claims all arise from systemic healthcare negligence of one or more of the Debtors at a set of skilled nursing facilities (collectively, the "Facilities") owned and operated by the Debtors and other related business entities that have chosen not to seek chapter 11 relief including multiple joint venture entities (collectively, the "JV Entities").

2.    In connection with the systemic negligence giving rise to the claims of the Settlement Claimants, each of the Settlement Claimants and their corresponding Plaintiffs Firms executed pre-petition settlement agreements (collectively, the "Settlement Agreements") with applicable Debtors, to liquidate their claims and provide "prompt" payment terms for the undisputed portions thereof. Unfortunately, the Settlement Claimants did not receive the true

---

[5] List of Settlement Claimants is attached hereto as Exhibit "A."

2

benefit of the bargain, because the Debtors appeared to have negotiated the Settlement Agreements with a premeditated business plan to avoid honoring them.

3. On the petition dates of the Debtors, an aggregate sum of no less than $33,897,770.34 was due and owing to all of the Settlement Claimants pursuant to their respective Settlement Agreements. It now appears that the Debtors anticipate treating the Settlement Claimants as general unsecured creditors in these Reorganizations, and inoculating co-obligors from any liability in connection with the underlying negligence or events leading up to the bankruptcy filings.

4. The Settlement Claimants necessarily rely upon the Plaintiffs Firms for information relating to the handling of litigation against the relevant Debtors, and the Plaintiffs Firms do not specialize in complex chapter 11 cases. Acting with all deliberate speed, the Plaintiffs Firms coalesced for purposes of comparing the underlying facts, coordinating efforts, and retaining the undersigned for purposes of participating in these Reorganizations.

### B. RELEVANT PROCEDURAL BACKGROUND

5. On July 9, 2025 (the "Petition Date"), each Debtor commenced a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petitions") in the United States Bankruptcy Court of the Northern District of Texas, Dallas Division (this "Court").

6. On July 10, 2025, the Debtors filed a series of documents and pleadings with this Court, including the Stay Motion [Doc. 15] and the Post-Petition Financing Motion [Doc. 17].

7. In support of the relief requested, the Debtors also filed the following declarations (together, the "Debtor Declarations"):

    a. the "Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petitions and First Day Pleadings" [Doc. 18]; and

3

  b. the "Declaration of Jaspinder Kanwal in Support of Debtors [Post-Petition Financing Motion]" [Doc. 19].

The Debtor Declarations broadly overview a tremendously large and complex business and financial matrix. The Debtor Declarations reflect that financial advisors for the Debtors first having been retained five (5) years ago, and have presumably been very well managed from a financial point of view.

  8. Although the Debtors currently operate 175 Facilities, they operated approximately 300 as recently as 2021. The Settlement Claimants are currently attempting to ascertain where the other 125 Facilities went.

  9. The Debtor Declarations seem to indicate that the Facilities would be very profitable were it not for the fact that business operations are impacted by healthcare negligence lawsuits. See Doc. 18 at 46, ¶98 ("…the Company's liquidity profile has worsened, as available cash flow is quickly depleted by, among other things… Litigation Claim settlements and defense costs (nearly $100 million annually)…"). However, this premise is tautological, because the profitability of the business revolves around substandard care for residents, such as the victims whose claims were reduced to the Settlement Agreements.

  10. On July 11, 2025, the Bankruptcy Court entered the "Order (I) Directing Joint Administration of Debtors' Chapter 11 Cases and (II) Granting Related Relief") [Doc. 51] ("Joint Administration Order"). The Joint Administration Order authorized the Debtors chapter 11 cases to be consolidated for procedural purposes only and jointly administered by the Bankruptcy Court under Case No. 25-80185 (SGJ) (the "Main Case") [Doc. 51, ¶2].

  11. Also on July 11, 2025, the Bankruptcy Court, among other orders, further entered:

4

    a. the "Order Granting Complex Chapter 11 Bankruptcy Case Treatment" ("Complex Case Order") [Doc. 52] applying the Complex Case Procedures to govern the above-captioned Reorganization;

    b. the "Order (I) Extending Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) 2015.3 Reports, and (II) Granting Related Relief" ("Schedules Extension Order") [Doc. 55] extending the deadline by which the Debtors must file (i) the Schedules and Statements through and including Monday, September 8, 2025, and (ii) the 2015.3 Reports through and including Monday, August 11, 2025; and

    c. the "Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granted Related Relief" (the "Deadline Order") [Doc. 57] setting the Final Hearing to occur on August 5, 2025 at 9:30 A.M.

12. On July 14, 2025, the "Notice of Final Hearing on First Day Motions" (the "July 14 Notice") scheduling a hearing to occur before this Court on a heavy docket including the Debtor Motions, for August 5, 2025. The July 14 Notice also required that all objections/responses to the relief sought in the Debtor Motions be filed with the Court no later than July 29, 2025, at 4:00 p.m. (CST). However, on even date of these Objections, the hearing was rescheduled to August 18, 2025.

C. **OBJECTIONS TO THE RELIEF REQUESTED IN THE DEBTOR MOTIONS**

13. Each of the Settlement Agreements was negotiated by the Plaintiffs Firms with the Debtors' bench of medical malpractice defense firms on the premise that settlement in short order for a low but feasible settlement amount would enable the parties to achieve a fair result. But that is not how things turned out. Instead, it now appears that the Debtors were planning all along for the maximum number of Settlement Agreements to be executed, with no good faith intention to honor any of them.

14. The Settlement Claimants all have similar stories of heartbreak and disappointment, having first lost a loved one due to the Debtors' healthcare negligence, and then effectively being cheated out of the benefit of their bargain in terms of settling cheap for a short-term payoff. One instructive example is presented by the case of Rita Sultemeier, who was raped by another resident at a Facility managed by one of the Debtors. This is no isolated instance of sexual violence within the Debtors' footprint. The case was settled by this Settlement Claimant on May 13, 2025, one month prior to trial, for $925,000. Under the governing Settlement Agreement, the Debtors were required to make two (2) payments of $462,500, the first on June 30, and the second on July 31, 2025. Neither payment was made, and the Debtors have instead sought relief under Bankruptcy Code § 301.

15. Large skilled nursing and assisted living facility businesses periodically shed accumulated tort liability through cyclical chapter 11 filings. The owners, landlords, and operators change title periodically; however, undercapitalization, lack of insurance coverage, and substandard care remain unchanged. The result in terms of nursing home neglect and liability recur with each reincarnation of corporate ownership. While the owners and operators of these ever-changing nursing home corporate mazes enrich themselves with Medicare tax dollars, the

elderly and vulnerable residents continue to suffer with no recourse or protection. The Debtors' robust array of initial filings in the Reorganizations leave little doubt that the Debtors' only goal in these Reorganizations is to discharge tort liabilities, while otherwise maintaining operations in the same manner conducted prepetition, and obtaining releases for insiders seeking the benefits of bankruptcy without having to file themselves.

16. In these Reorganizations, ReGen Healthcare, LLC ("ReGen"), a company identified as holding convertible notes that if converted to equity would provide ReGen with a 93% voting interest in Genesis Healthcare Inc. [see Doc. 18 at pg.14, ¶30], is attempting to use the reorganization process to acquire the Debtors' assets—which it already controls—free and clear of all tort liabilities. The proposed stalking horse bidder under the Bidding Procedures Motion is an affiliate of ReGen. See Doc. 18 at pg.48, ¶103. Notably, ReGen is affiliated with Pinta Capital Partners, which was founded by Joel Landau, who appears to be on both sides of the transaction contemplated under the Bidding Procedures Motion.

17. The Debtors' initial filings reflect a plan to finance their operations through the point of a sale of substantially all of their assets, and moving forward with confirmation of a liquidating plan that will be a fait accompli by the time a confirmation hearing occurs. For a sale of substantially all assets outside of a confirmed plan of reorganization, as contemplated in the Debtor Motions, the Debtors should be held to a high standard analogous to that required under Bankruptcy Code § 1125(a).

18. In the Schedules Extension Order, this Court has extended the deadline for the Debtors to file their schedules until September 8, 2025, even though they would already be required as of the date of these Objections. The Settlement Claimants would have more information about the Debtors' business and financial dealings, and perhaps less a reason to object

to the paucity of information in the Debtor Motions, if schedules had already been filed. Because the Debtors have understandably received relief under Rule 9006 relating to the deadlines for filing schedules, they should have no legitimate basis to object to the Settlement Claimants' late filing of limited objections to the Debtor Motions in light of the absence of information that should have been included.

    i.    **Objection to the Stay Motion**

    19.    In the Stay Motion, Debtors filed an emergency motion seeking an order to restate and enforce the automatic stay under Bankruptcy Code §362(a). The Stay Motion emphasizes that the equity interests held by certain of the Debtors in various joint ventures, are property of the Debtors' estates under Bankruptcy Code §541(a), and thus protected from any actions by creditors or partners that could diminish their value. The Debtors argue that the automatic stay is crucial to prevent value-destructive actions by third parties, such as the exercise of ipso facto clauses in certain agreements. Bankruptcy Code §362 "is rarely, however, a valid basis on which to stay actions against non-debtors. Arnold v. Garlock, Inc., 278 F.3d 426, 436 (5th Cir. 2001) (citing Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544 (5th Cir.1983). The Settlement Claimants object to the Stay Motion on grounds that it lacks sufficient justification for the broad protections sought and fails to adequately consider the rights of the Settlement Claimants to pursue their claims against non-debtor entities. See In re Divine Ripe, L.L.C., 538 B.R. 300, 309 (Bankr. S.D. Tex. 2015) (quoting Wedgeworth, 706 F.2d 541, 544 (5th Cir.1983)) ("In order to extend the Automatic Stay to a non-debtor, a court must find an identity of interest between the debtor and the non-debtor, and then evaluate whether the circumstances warrant exercising the 'general discretionary power ... to stay proceedings in the interest of justice and in control of their dockets.'").

### ii. Objection to the Post-Petition Finance Motion

20. In the Post-Petition Finance Motion, the Debtors make oblique references to releases, that lack adequate information required for this Court or the Settlement Claimants to reasonably evaluate who will be released, what claims they will be released from, why they will be released, and whether the estates will receive anything in return. See Doc. 17 at pg.85-86. Accordingly, any relief in favor of the Debtors under Bankruptcy Code §364 and other applicable law should not include the vague potpourri of releases alluded to in the Post-Petition Finance Motion.

### iii. Objection to the Bidding Procedures Motion

21. In the Bidding Procedures Motion, the Debtors use circumlocutory language to vaguely describe sales of claims, conditional releases, and other consideration for contemplated transactions, without providing adequate information required for this Court or the Settlement Claimants to reasonably understand what claims are being sold or released, what those claims could be worth, why such claims are being sold or released rather than reserved to the estates, and why anyone interested in acquiring the Debtors' business footprint would pay reasonably equivalent value to acquire claims that are not core to the business. See Doc. 117 at pg. 27, 29.

22. Notably, the Bidding Procedures Motion seeks to obtain releases for non-debtors that would otherwise be unavailable outside of bankruptcy court and includes releases for ReGen, Pinta Capital Partners, and their officers, directors, partners, equity holders, which includes Mr. Landau. What is clear is that the Debtors are attempting to obtain releases that are precluded as part of the plan confirmation process under the United States Supreme Court's decision in Harrington v. Purdue Pharma L.P. ("In re Purdue Pharma"), 603 U.S. 204 (2024) through the sale process. However, when "the court order approving the sale expands to affect creditors and other

9

parties in interest in a significant way, when it effectively 'short circuits the requirements of Chapter 11 ... by establishing the terms of the plan *sub rosa* ...', or when it includes unauthorized releases, the transactions cannot be authorized under § 363(b)." In re Gulf Coast Oil Corp., 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009).

23. Moreover, "an entity that the debtor controls, or that the debtor's principal controls, must not benefit from the sale of the asset." In re 9 Houston LLC, 578 B.R. 600, 615 (Bankr. S.D. Tex. 2017) (citing Gulf Coast, 404 B.R. at 424); see also In re Flour City Bagels, LLC, 557 B.R. 53, 82 (Bankr. W.D.N.Y. 2016). Here, ReGen and its principals including Mr. Landau, would benefit from the sale having acquired the Debtors' assets free and clear of tort liability without having to compensate the victims.

24. Accordingly, any relief in favor of the Debtors under Bankruptcy Code §363 should not include the sale or assignment of claims and releases alluded to in the Bidding Procedures Motion.

25. For reasons described above, the undersigned has been logistically unable to appear for the Settlement Claimants prior to the date of this filing, and has lacked both the authorization and the relevant information to confidently object to the Debtor Motions. Moreover, none of the objections articulated above should come as a surprise to the Debtors, or create any other unfair prejudice to any other party in interest as that term is utilized under Bankruptcy Code §1109. Moreover, the hearing on the Debtor Motions was continued to August 18, 2025, providing the Debtors with ample time to consider these Objections. Accordingly, it is appropriate for this Court to grant the Settlement Claimants relief under Federal Rule of Bankruptcy Procedure 9006(b), deeming this filing to be timely.

WHEREFORE, the Settlement Claimants respectfully request the order of this Court that will:

a. grant relief with respect to the Deadline Order, deeming these Objections to be timely filed;

b. sustain objections to the Stay Motion to the extent required;

c. sustain objections to the Post-Petition Finance Motion to the extent required to prevent or condition the granting of releases or assignment of claims as part of any refinancing package;

d. sustain objections to the Bidding Procedures Motion to the extent required to prevent or condition the granting of releases or sale of claims as part of any bidding procedures package; and

e. provide for such other relief as this Court determines to be necessary and appropriate under the circumstances.

Dated this 5th day of August, 2025.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**NICHOLAS LAFALCE, ESQUIRE**
Florida Bar Number: 0119250
nlafalce@anthonyandpartners.com
**JULIA G. TRAINA, ESQUIRE**
Florida Bar Number: 1042604
jtraina@anthonyandpartners.com
**ANTHONY & PARTNERS, LLC**
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Tel.: (813) 273-5616
Fax: (813) 221-4113

Attorneys for the Settlement Claimants

## CERTIFICATE OF CONFERRAL

On August 4, 2025, John A. Anthony, Esquire, corresponded via telephone with Daniel M. Simon, Esquire, counsel for the Debtors regarding the subject matter of the foregoing objections, and confirmed that the Debtors are opposed to the sum and substance of the limited objections to the Debtor Motions set forth above.

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2025, a true and correct copy of the foregoing document was electronically filed in the above captioned case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system and a copy was served on the parties who receive notice via the Court's ECF notification system.

| | |
|---|---|
| Genesis Healthcare, Inc.,<br>c/o Ankura Consulting Group, LLC,<br>2021 McKinney Ave. Suite 340,<br>Dallas, TX 75201<br>Attn:<br>Louis E. Robichaux IV<br>louis.robichaux@ankura.com<br>Russell A. Perry<br>russell.perry@ankura.com | Marcus A. Helt, Esq.<br>mhelt@mwe.com<br>Jack G. Haake, Esq.<br>jhaake@mwe.com<br>MCDERMOTT WILL & EMERY LLP,<br>2501 North Harwood Street, Suite 1900,<br>Dallas, TX 75201<br><br>Daniel M. Simon, Esq.<br>dsimon@mwe.com<br>MCDERMOTT WILL & EMERY LLP,<br>1180 Peachtree St. NE, Suite 3350,<br>Atlanta, GA 30309<br><br>William A. Guerrieri, Esq.<br>wguerrieri@mwe.com<br>Emily C. Keil, Esq.<br>ekeil@mwe.com<br>MCDERMOTT WILL & EMERY LLP,<br>444 West Lake Street, Suite 4000,<br>Chicago, IL 60606<br><br>Counsel to the Debtors |
| Meredyth Kippes, Esq.<br>meredyth.kippes@usdoj.gov<br>OFFICE OF THE UNITED STATES TRUSTEE | Kenneth J. Ottaviano, Esq.<br>ken.ottaviano@blankrome.com<br>Paige Barr Tinkham, Esq. |

Region 6,
1100 Commerce Street, Room 976,
Dallas, TX 75242

paige.tinkham@blankrome.com
Blank Rome LLP,
444 West Lake Street, Suite 4000,
Chicago, IL 60606

Counsel to White Oak Healthcare Finance LLC

Leighton Aiken, Esq.
laiken@fbfk.law
FERGUSON BRASWELL FRASER KUBASTA PC
2500 Dallas Parkway, Suite 600,
Plano, TX 75093

and

Robert J. Lemons, Esq.
rlemons@goodwinlaw.com
GOODWIN PROCTOR LLP,
The New York Times Building,
620 Eighth Avenue, New York, NY 10018

Counsel to OHI Mezz Lender LLC

James Muenker, Esq.
james.muenker@us.dlapiper.com
Piper LLP
1900 N. Pearl St., Suite 2200,
Dallas, TX 75201

Counsel to ReGen Healthcare LLC DLA

Jeffrey C. Krause, Esq.
jkrause@gibsondunn.com
Francis Petrie, Esq.
fpetrie@gibsondunn.com
Michael G. Farag, Esq.
mfarag@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071

Counsel to Welltower

/s/ John A. Anthony
**ATTORNEY**

13

Exhibit "A"

Settlement Claimants

| # | Claimant |
|---|---|
| 1. | Adam Hoffman, as Power of Attorney of Rita Hoffman |
| 2. | Addie Logan as the Administratrix of the Estate of Cheryl Lynn Logan |
| 3. | Albert Robinson, Individually and as Administrator Ad Prosequendum and General Administrator of the Estate of Mary Robinson |
| 4. | Alice Sultemeier as Power of Attorney for Rita Sultemeier |
| 5. | Amanda Stover, as Administratrix of the Estate of William Dale Stulter |
| 6. | Ameena Collier, on behalf of the Estate of Thurman Kirby |
| 7. | Angela Rivera Cornish, on behalf of the Estate of Nicholas R. Rivera, Sr. |
| 8. | Anita Fay Tekman, as Administratrix of the Estate of Lucy Gail Long |
| 9. | Ann S. Kelley, on behalf of the Estate of Lawrence F. Kelley |
| 10. | Anthony Wilson, on behalf of Jullian Murray |
| 11. | Aretha Caldwell, Administrator Ad Prosequendum of the Estate of Isabel Loatman |
| 12. | Ashley Johnson, on behalf of Virginia Graham |
| 13. | Barbara A. Clark, as Administrator of the Estate of Louise Andrews |
| 14. | Barbara J. Milton, on behalf of the Estate of Abdul Baa'Ith Muwwakkil |
| 15. | Barry Green, as Personal Representative of the Wrongful Death Estate of Lila Gonzales |
| 16. | Barry Green, as the Personal Representative to the Wrongful Death Estate of Urah Lee Hodge |
| 17. | Barry Green, Esq., as Personal Representative of the Wrongful Death Estate of Rosalina Blea |
| 18. | Barry Green, Esq., as Personal Representative of the Wrongful Death Estate of Cordelia Weseman |
| 19. | Barry Green, Esq., as Personal Representative to the Wrongful Death Estate of Edwin Romero |

| 20. | Beverly Reed, as Executrix of the Estate of Thelma Reed, and on behalf of any wrongful death beneficiaries |
| --- | --- |
| 21. | Brenda Howard, on behalf of the Estate of Mildred Lewis |
| 22. | Bridget Y. Hannibal and Anita Maria Butler, as Co-Executors of the Estate of Jean Butler |
| 23. | Carol McKnight, on behalf of the Estate of Nancy Randall |
| 24. | Carroll Cagle, as Personal Representative of the Wrongful Death Estate of Stephanie La Fortune |
| 25. | Cassandra Williams, Individually and on behalf of the Estate of Linda Williams |
| 26. | Charles V. DiLabbio, Administrator of the Estate of Harry J. DiLabbio |
| 27. | Christina Brown-Hudson, as Administratrix of the Estat of Dell'l Bown |
| 28. | Christina Civils, as Power of Attorney and Next Friend of James Civils, incapacitated |
| 29. | Christine Kattermann, as Executrix of the Estate of Eleanor Bretzger |
| 30. | Contricia Scutching, Individually and as Executrix of the Estate of Willie Triplet, Deceased |
| 31. | Cornelia Joiner, on behalf of the Estate of Christa Bridge and in her own right |
| 32. | Dean McMurphy, Individually and as Administrator of the Estate of Tracey D. McMurphy |
| 33. | Dianne Smith, on behalf of Mary Jane Smith |
| 34. | Dominic Mannella, as Executor for the Estate of Sally Mannella |
| 35. | Donald Berry, Individually |
| 36. | Donna Arera, individually and as Administrator of the Estate of Helen Stalgaitis |
| 37. | Donna Brownstein, on behalf of the Estate of Steven Brownstein |
| 38. | Douglas Cerbie, Executor of the Estate of Mary Ann Cerbie |
| 39. | Edward Clark, Richard Clark, Elizabeth Sparr, Individually, and Edward Clark on behalf of the Estate of Aleene Clark |

| 40. | Erin Pearson, as Personal Representative of the Wrongful Death Estate of James Sanderson |
|---|---|
| 41. | Estate of Barbara Louise Matalucci, through Barbara Schlager, Executrix |
| 42. | Estate of Barbara Sligh |
| 43. | Estate of Jean F. Miller, through Sherrie A. Martinez, Administrator |
| 44. | Estate of Richard Ford |
| 45. | Estate of Roy Gaskins |
| 46. | Estate of Sheila J. Craig Mitchell, through Kimberly Lucky, Administrator |
| 47. | Eunice Fuentes Marquez, as personal representative of the wrongful death estate of Cointa Marquez Aragon |
| 48. | Faith Marietta Boose, as Administratrix of the Estate of Earl Morris |
| 49. | Franchesca Rodriguez, Individually |
| 50. | Frank C. Taylor, Administrator of the Estate of Maria A. Taylor, Deceased |
| 51. | Frank Jordan, Jr., as Administrator of the Estate of Mary Kathleen Jordan |
| 52. | Frauline Wolfe, as Representative of the Estate of Bryan Wolfe |
| 53. | Gabe Betancourt, Individually, and Vanessa Betancourt, as the Personal Representative of the Wrongful Death Estate of Nellie Betancourt |
| 54. | Glenn Howard, as Successor Administrator of the Estate of Joseph T. Bland, deceased |
| 55. | Gloria Cabrera and Francisco Ramirez, Co-Personal Representatives of the Estate of Ramona Ramirez, on behalf of the Estate of Ramona Ramirez |
| 56. | Greg L. Hunt, as Administrator of the Estate of Nancy R. Hunt |
| 57. | Guy Morra, Wayne Morra, Albert Morra, the Estate of Roberta Furnier and Robert C. Collins, II, as Administrator of the Estate of Maryanna Morra |
| 58. | Helen Laura Lopez, as Personal Representative of the Estate of Tom Pearl |
| 59. | Holly Hampton |
| 60. | Jacqueline Redmond |

| 61. | James E. Novak, Individually and as Personal Representative of the Estate of Janice C. Novak |
|---|---|
| 62. | James M. Saxon, Jr., on behalf of the Estate of Joyce Barber |
| 63. | James Williams, as Personal Representative of the Wrongful Death Estate of Josephine Garcia |
| 64. | Janet Katinowsky, Administratrix of the Estate of Jennie A. Katinowsky |
| 65. | Jennifer M. Palumbo and Laura A. Good, on behalf of the Estate of George Ilco |
| 66. | Jessica Hugar, Individually |
| 67. | Jo Harp, Executrix of the Estate of Nona Walker |
| 68. | Joan Birmingham on behalf of the Estate of Melady Siegfried |
| 69. | Joan K. Shayer |
| 70. | Joann Parlett, Individually and as Personal Representative of the Estate of Shirley Boulin, Debbie Durling, Bryan Howlin, and Ronald Howlin |
| 71. | Joe F. Byers, by and through his Successor-in-Interest, Courtland Byers; Courtland Byers, Individually; Armond Byers, Individually; and Joe Byers, Jr., Individually |
| 72. | Joetta McDowney, on behalf of the Estate of Thomasine Jones |
| 73. | Joleen Youngers, as Personal Representative of the Wrongful Death Estate of Presciliana Sanchez |
| 74. | Joseph Y. Sweeney as Administrator DBN/CTA of the Estate of Joseph A. Sweeney |
| 75. | Karen Peterson, as Administratrix of the Estate of Gladys Straight |
| 76. | Kathleen Phipps on behalf of the Estate of Rose Russell |
| 77. | Kathryn Williamson, on behalf of Gina Thiel |
| 78. | Kelvin Arrington, Individually, and as the Personal Representative of the Estate of Alma Page |
| 79. | Larrice Harris, individually |
| 80. | Larry B. Kline, on behalf of the Estate of David W. Kline, Sr. |
| 81. | Laurie Ann Bright on behalf of Kay A. Bright |

| | |
|---|---|
| 82. | Lawrence Zukowski, on behalf of the Estate of Frances Zukowski |
| 83. | Louis Rossignol, as Administrator of the Estate of Carlotta W. Elkins, deceased |
| 84. | Maria Dematteo, on behalf of the Estate of Gerard Berrigan |
| 85. | Maria L. Ayala, as Administratrix for the Estate of Oscar Rene Martinez |
| 86. | Mark Moss, Administrator of the Estate of Billy M. Moss |
| 87. | Mark Musso, on behalf of the Estate of Opal O. Musso |
| 88. | Mark Salfi, as Executor of the Estate of Salvatore Salfi |
| 89. | Marleen Chrzanowski, Individually |
| 90. | Martha Bennett-Ryder, Administratrix of the Estate of Virginia Smith |
| 91. | Mary Martinez, as Personal Representative of the Wrongful Death Estate of Candido Martinez |
| 92. | Melissa Devericks, as Personal Representative of the Estate of Charles Everett Devericks, Sr. |
| 93. | Melody Blake, on behalf of Arthur M. Blake |
| 94. | Merla Graves, as Administratrix of the Estate of Christal Graves |
| 95. | Michael Burdine, as Administrator of the Estate of Judy Burdine |
| 96. | Michelle Hoffmaster, on behalf of the Estate of Rita Bommarito |
| 97. | Michelle Sturtz, Individually and as Administratrix of the Estate of Jocelyn L. Wilson |
| 98. | Nicole Abramson, Personal Representative of the Estate of Aery Lawson, on behalf of the Estate of Aery Lawson |
| 99. | Nina Devito, on behalf of the Estate of Vincent Devito |
| 100. | Patricia A. Clifford, as Administratrix of the Estate of John Thomas Baker |
| 101. | Patricia Hanna, as Administratrix of the Estate of Jo Ann Robinson |
| 102. | Penny Raff, as Administratrix of the Estate of Tami Michelle Jennings |
| 103. | Randall H. Altar, on behalf of the Estate of James Thompson Alter, IV |
| 104. | Richard D. Schibell, on behalf of the Estate of Dolores Schibell-Tomaine |

| | |
|---|---|
| 105. | Richard James Kirk, Individually, and as Personal Representative of the Estate of Helen Marie Kirk; and Thomas Edward Kirk, Individually, and as Personal Representative of the Estate of Helen Marie Kirk |
| 106. | Robert M. Brown, Jr. as Administrator of the Estate of Robert M. Brown, Sr. |
| 107. | Romeo Ralph |
| 108. | Rosemarie Bucciarelli, on behalf of the Estate of Joseph Bucciarelli |
| 109. | Russell Barnes, on behalf of Carrie Barnes |
| 110. | Samantha Ritter, on behalf of the Estate of Michelle M. Coquet |
| 111. | Scott Wabals, on behalf of the Estate of Sally Martin |
| 112. | Sharifah Bell and Joel Belcher as Co-Guardians of Antoinette Bell |
| 113. | Stephanie Claudio, as Power of Attorney for Cheryl Kulis |
| 114. | Steven S. Tucker and Amir L. Tucker, as Administrators of the Estate of Steven Seals |
| 115. | Sylvester McElhaney |
| 116. | Tammy Riemenschnitter, on behalf of Heinrich Riemenschnitter |
| 117. | Teresa Fowler, as Administratrix of the Estate of Reva L. Buckbee |
| 118. | Teresa Thompson, as Personal Representative of the Estate of Orencle Barlow, deceased |
| 119. | Tiffany Diane Wiggins, as Personal Representative of the Estate of Diane McDonald Wiggins |
| 120. | Tommy Wayne White, Personal Representative of the Estate of Pauline White |
| 121. | Valerie Bess, Administrator of the Estate of Mark Bess, Deceased |
| 122. | Vicki Ann Miller, individually and as Personal Representative of the Estate of Brian Michael Miller, Joshua Miller, Nicolas Miller, and Analisa Miller |
| 123. | William Brown, Individually |
| 124. | William Chadwell, as Next Friend and Power of Attorney of Patsy Chadwell |
| 125. | William P. Watson, on behalf of the Estate of Joanne M. Watson |