**ANTHONY AND PARTNERS, LLC**
John A. Anthony, Esq.
Nicholas Lafalce, Esq. (pro hac vice pending)
Julia G. Traina, Esq. (pro hac vice pending)
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Tel.: (813) 273 5616
Fax: (813) 221 4113
Email: janthony@anthonyandpartners.com
Email: nlafalce@anthonyandpartners.com
Email: jtraina@anthonyandpartners.com

Counsel for the Settlement Claimants

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

In re:

GENESIS HEALTHCARE INC. et. al.[1],

    Debtors.

_____/

Chapter 11

Case No. 25-80185 (SGJ)

(Jointly Administered)

**HEALTHCARE NEGLIGENCE CLAIMANTS' QUALIFIED**
**OBJECTION TO COMMITTEE PACKING MOTION [DOC. 424]**

Pursuant to Bankruptcy Code § 1102, Federal Rule of Bankruptcy Procedure 2020, Local

Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas ("Local

Rules") 2002-1, 4001-1. 5005-1, and 9013-1, and Sections B.8(k), C and D of the Procedures for

Complex Cases in the Northern District of Texas, effective February 6, 2023, and other applicable

law, a set of 273 healthcare negligence tort claimants[2] (collectively, the "Healthcare Negligence

Claimants"), hereby file this qualified objection in response to "PharMerica Corporations'

---

[1] The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755.  There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only.  A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis.  The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.
[2] The full list of Healthcare Negligence Claimants appears in the attached Schedule A.

Emergency Motion to Reconstitute the Official Committee of Unsecured Creditors" (the "Committee Packing Motion") [Doc 424] filed by PharMerica Corporation ("PharMerica"), on August 12, 2025:

### A.     OVERVIEW OF THE HEALTHCARE NEGLIGENCE CLAIMANTS

1.      On July 9 and 10, 2025 (the "Petition Dates"), each of the above-referenced Debtors commenced a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code (the "Petitions").  This produced a set of 299 reorganizations (the "Reorganizations"), that have been jointly administered by order of this Court dated July 11, 2025[3] [Doc. 51 at ¶ 2], and these Reorganizations have been designated as complex cases under applicable law.[4]

2.      The Healthcare Negligence Claimants are a set of creditors whose claims are the result of systemic healthcare negligence by the business entities that have operated under the name "Genesis Healthcare," or some derivation of the same.

3.      In all instances, medical negligence claims against the Debtors arose in connection with systemic healthcare negligence of one or more of the Debtors at a set of skilled nursing facilities (collectively, the "Facilities") owned and operated by the Debtors.  Although the conglomerate initially owned and operated 350 Facilities, this number was cut precisely in half between 2021 and the Petition Dates.

4.      The Healthcare Negligence Claimants are based in 17 states where the Debtors operate or have operated, and have been represented by a total of 56 medical malpractice firms (collectively, the "Plaintiffs Firms") located across the United States.  Broadly speaking, the

---

[3] "Order (I) Directing Joint Administration of Debtors' Chapter 11 Cases and (II) Granting Related Relief" authorized the Debtors chapter 11 cases to be consolidated for procedural purposes only and jointly administered by the Bankruptcy Court under Case No. 25-80185 (SGJ).

[4] See "Order Granting Complex Chapter 11 Bankruptcy Case Treatment" ("Complex Case Order") [Doc. 52], dated July 11, 2025.

management behind the Debtors has espoused a corporate strategy that places profits over people, by (a) treating skilled nursing facility residents as income generators, (b) reducing healthcare expense wherever possible, (c) carrying minimal insurance, and (d) anticipating healthcare negligence suits in rendering itself organically judgment-proof.

5.      The Healthcare Negligence Claimants are broken down into two (2) broad categories, the first of which are referred to as the "Settlement Healthcare Claimants" and the second of which are referred to as the "Unliquidated Healthcare Claimants."

a.   The Settlement Healthcare Claimants are a set of 138 Healthcare Negligence Claimants that settled unliquidated healthcare negligence claims against one or more of the Debtors prepetition, at a point in time during which management of the Debtors seems to have been likely aware that a mega-bankruptcy filing would be imminent.  The Debtors' settlements with the Settlement Healthcare Claimants were obtained based upon assurances that the applicable Debtors would be able to make timed payments, even though the Debtors appear to have already engaged bankruptcy counsel when many of these claims were settled.  In all, the claims of the Settlement Healthcare Claimants amount to $36,594,555.34; however, there are other claimants being added to this consortium almost daily, and the number and dollar amount is likely to increase.

b.   The Unliquidated Healthcare Claimants are a set of 135 Healthcare Negligence Claimants with healthcare negligence claims against one or more of the Debtors prepetition that remained unliquidated as of the Petition Dates.  Because these claims have not been liquidated, it is difficult to aggregate the amount of all such claims.  However, the estimated claims of the Unliquidated Healthcare Claimants

would seem to be at least double that of the Settlement Healthcare Claimants.

Moreover, the number of claimants in this consortium increases almost daily.

In sum, the Healthcare Negligence Claimants would seem to have aggregate claims exceeding

$100,000,000.  It is noteworthy that while the undersigned represents a large constituency of

victims of the Debtors' policy of systematic disregard for resident rights, numerous other similarly

situated creditors exist as part of the profile of general unsecured creditors in these

Reorganizations.

6.      The Healthcare Negligence Claimants necessarily rely upon the Plaintiffs Firms for

information relating to the handling of litigation against the relevant Debtors, and the Plaintiffs

Firms do not specialize in complex chapter 11 cases.  Acting with all deliberate speed, the Plaintiffs

Firms have coalesced for purposes of preparing proofs of claim for all of them.

## B.      RELEVANT PROCEDURAL BACKGROUND

7.      On July 31, 2025, the Office of the United States Trustee (the "U.S. Trustee") filed

of record its notice of appointment of the Official Committee of General Unsecured Creditors in

these Reorganizations (the "Committee") [Doc. 262].  After constituting, the Committee retained

counsel who appeared on August 4, 2025. See Doc. 319.

8.      On July 10 and 15, 2025, the Debtors filed three (3) interrelated requests for relief

from this Court, including the Stay Motion[5] [Doc. 15], the DIP Finance Motion[6] [Doc. 17], and

the Bidding Procedures Motion [Doc. 117],[7] collectively referred to herein as the "Exit Strategy

---

[5] "Debtors' Emergency Motion for Entry of Order (I) Restating and Enforcing the Automatic Stay, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief" filed on July 10, 2025.
[6] Debtors' Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To (A) Obtain Post-petition Financing And (B) Utilize Cash Collateral, (II) Granting Adequate Protection To Prepetition Secured Parties, (III) Modifying The Automatic Stay, (IV) Scheduling A Final Hearing, And (V) Granting Related Relief" filed on July 10, 2025.
[7] "Debtors' Motion For Entry Of An Order (I) Approving Bidding Procedures And Expense Reimbursement, (II) Approving The Debtors' Entry Into The Stalking Horse Apa, (III) Scheduling Certain Dates And Deadlines, (IV) Approving The Form And Manner Of Notice Thereof, (V) Establishing Notice And Procedures For The Assumption

Motions." The Healthcare Negligence Claimants broadly contend that the Exit Strategy Motions are objectionable because:

a. **Stay Motion:** The Healthcare Negligence Claimants object to the Stay Motion on grounds that it lacks sufficient justification for the broad protections sought and fails to adequately consider the rights of the Healthcare Negligence Claimants to pursue their claims against non-debtor entities.[8]

b. **DIP Finance Motion:** The Debtors make oblique references to releases, that lack adequate information required for this Court or the Healthcare Negligence Claimants to reasonably evaluate who will be released, what claims they will be released from, why they will be released, and whether the estates will receive anything in return.[9] Accordingly, any relief in favor of the Debtors under Bankruptcy Code § 364 should not include the vague potpourri of releases alluded to in the DIP Finance Motion.

c. **Bidding Procedures Motion:** The Debtors use circumlocutory language to vaguely describe sales of claims, conditional releases, and other consideration for contemplated transactions, without providing adequate information required for this Court or the Healthcare Negligence Claimants to reasonably understand what claims are being sold or released, what those claims could be worth, why such claims are being sold or released rather than reserved to the estates, and why anyone interested in acquiring the Debtors' business footprint would pay reasonably

---

And Assignment Of Contracts And Leases, (VI) Authorizing The Assumption And Assignment Of Assumed Contracts, And (VII) Authorizing The Sale Of Assets" filed on July 15, 2025.
[8] See In re Divine Ripe, L.L.C., 538 B.R. 300, 309 (Bankr. S.D. Tex. 2015) (quoting Wedgeworth, 706 F.2d 541, 544 (5th Cir.1983)) ("In order to extend the Automatic Stay to a non-debtor, a court must find an identity of interest between the debtor and the non-debtor, and then evaluate whether the circumstances warrant exercising the 'general discretionary power ... to stay proceedings in the interest of justice and in control of their dockets.'").
[9] See Doc. 17 at pg.85-86.

equivalent value to acquire claims that are not core to the business. <u>See</u> Doc. 117 at pg. 27, 29.

Moreover, the Debtors obvious strategy as reflected in the Exit Strategy Motions runs afoul of the United States Supreme Court's decision in <u>Harrington v. Purdue Pharma L.P. ("In re Purdue Pharma")</u>, 603 U.S. 204 (2024) as the Debtors are trying to obtain through the financing and sale processes in terms of broad releases what is precluded through the plan confirmation process. However, where "the court order approving the sale expands to affect creditors and other parties in interest in a significant way, when it effectively 'short circuits the requirements of Chapter 11 ... by establishing the terms of the plan *sub rosa* ...', or when it includes unauthorized releases, the transactions [also] cannot be authorized under § 363(b)."[10]  For the foregoing reasons, an original group of the Healthcare Negligence Claimants filed their Omnibus Objections to the Exit Strategy Motions (the "Omnibus Objections") [Doc. 330].

9.      In support of the Exit Strategy Motions, the Debtors also filed the following declarations (together, the "Debtor Declarations"):

   a.   the "Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petitions and First Day Pleadings" [Doc. 18]; and

   b.   the "Declaration of Jaspinder Kanwal in Support of Debtors [Post-Petition Financing Motion]" [Doc. 19].

The Debtor Declarations broadly overview a tremendously large and complex business and financial matrix.  The Debtor Declarations reflect that financial advisors for the Debtors first having been retained five (5) years ago and as a result the Debtors have presumably been very well managed from a financial point of view.

---

[10] <u>In re Gulf Coast Oil Corp.</u>, 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009).

10.     The Debtor Declarations seem to indicate that the Facilities would be very profitable were it not for the fact that business operations are impacted by healthcare negligence lawsuits. <u>See</u> Doc. 18 at 46, ¶98 ("…the Company's liquidity profile has worsened, as available cash flow is quickly depleted by, among other things… Litigation Claim settlements and defense costs (nearly $100 million annually)…").  However, this premise is tautological, because the profitability of the business revolves around substandard care for residents, such as the victims whose claims were reduced to the Settlement Agreements.

11.     The Healthcare Negligence Claimants were not the only ones to object to one or more of the Exit Strategy Motions.  There are seven (7) objections to the Stay Motion, five (5) objections to the DIP Finance Motion, and eight (8) objections to the Bidding Procedures Motion, all of which are collectively referred to herein as the "Pending Objections."

12.     Among the objections filed to the Exit Strategy Motions were those of the Committee [Docs 412, 413, 414] (collectively, the "Committee Objections").  The Committee Objections represent the only significant filings to date on behalf of the Committee.  Based upon the sum and substance of the Committee Objections, read alongside the Pending Objections, it would seem that the Committee's work seems consistent with the tenor of the creditor body as a whole.

13.     In the Committee Packing Motion, PharMerica takes the position that the U.S. Trustee has basically made an error in constituting the Committee, by omitting PharMerica. However, whether PharMerica believes it should have been included in the Committee or not, the standard for reconstituting the Committee is higher than simply missing a creditor who might have been helpful.  Moreover, PharMerica failed to establish that is necessary or would even be useful to the Committee and its deliberations.

14.     PharMerica actually seeks two new seats on the Committee but wants them both reserved for trade creditors.  PharMerica seeks one seat for itself and one for some other trade creditor.  This would make the Committee completely lopsided, and this is obviously PharMerica's intention.  And that intention is not only improper, but without any basis in law to effectuate.

15.     Just as tort claimants can be sub-compartmentalized, so can trade creditors. Typically, in a large nursing home chapter 11 case, there are trade creditors that will not be doing business with the facilities going forward, and trade creditors who are laser-focused on servicing the facilities going forward, no matter who owns them.  One cannot tell from the Committee Packing Motion whether PharMerica seeks to do business with the Facilities going forward, or is intent on maximizing its distribution as a general unsecured creditor.  Either way, membership on the Committee of another trade creditor is not indicated, regardless of whether PharMerica appreciates positions recently taken by the Committee.

16.     PharMerica places great emphasis in its bid to be added to the Committee on the <u>In re Dana Corp.</u> opinion, even though a close analysis of the case and the current facts suggests otherwise. Bracketing the legal analysis, which would indicate no basis for reconstituting or altering the Committee, the Healthcare Negligence Claimants have a far more compelling basis to have one of their members represented on the Committee than PharMerica:  So, the Healthcare Negligence Claimants oppose the relief requested by PharMerica, unless this Court is also prepared to create a new seat for one of the Healthcare Negligence Claimants.

## C.     <u>MEMORANDUM OF LAW</u>

17.     Under the Bankruptcy Code, this Court may order the U.S. Trustee to change the membership of the Committee if it determines that the change is necessary to ensure adequate representation of creditors.  Bankruptcy Code §1102(a)(4).  Because the Bankruptcy Code does

not provide a concrete definition for "adequate representation," bankruptcy courts are left with the

discretion to determine if alterations of the committee are warranted on a case-by-case basis. In re

Dow Corning Corp., 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), rev'd, 212 B.R. 258 (E.D. Mich.

1997); In re Hills Stores Co., 137 B.R. 4, 5 (Bankr. S.D.N.Y. 1992).  In general, courts consider

several factors when analyzing the adequacy of representation of an official committee of

unsecured creditors, including:

1.    The ability of the committee to function;

2.    The nature of the case;

3.    The standing and desires of the various constituencies;

4.    The ability of creditors to participate in the case without an official committee;

5.    The delay and additional cost that would result if the court grants the motion;

6.    The tasks that a committee or separate committee is to perform; and

7.    Other factors relevant to the adequate representation issue.

In re Roman Cath. Church of Archdiocese of New Orleans, No. 20-10846, 2021 WL 454220, at

*9–*10 (Bankr. E.D. La. Feb. 8, 2021) (citing In re Dana Corp., 344 B.R. 35, 38 (Bankr. S.D.N.Y.

2006)).  No single factor is dispositive, and the amount of due consideration given to each will

depend on the circumstances of the particular chapter 11 case. Id. at *10.

18.    PharMerica's requested alteration of the Committee to give themselves

membership is not necessary to ensure adequate representation of all creditors.  Mainly,

PharMerica's assertions of inadequate representation for trade creditors are conclusory:

PharMerica has not affirmatively shown, under the Dana Corp. factors, that reconstitution is

warranted here given the circumstances.  Five of these seven factors weigh against reconstitution,

considerations 5. and 6. being inapplicable.

19.    **Ability of the Committee to Function**:    First, PharMerica has provided no
evidence that the ability of the Committee has been impaired by its current composition.  Courts
have noted that out of all the factors, a creditor committee's ability to function is a particularly
strong indicator of whether it adequately represents constituent creditors. In re Enron Corp., 279
B.R. 671, 686 (Bankr. S.D.N.Y. 2002).  In the Committee Packing Motion, PharMerica states that
this factor weighs in its favor because there is only one trade creditor currently represented on the
Committee – but that is based upon PharMerica drawing an artificial distinction between
Omnicare, LLC ("Omnicare")—a trade creditor—and Healthcare Services Group, Inc.—a second
trade creditor—merely as a result of Omnicare purportedly engaging in litigation against the
Debtors prepetition.   However, PharMerica offers no evidence in support of its claim that
Omnicare's priorities in these Reorganizations are somehow contrary to its own. See In re Vital
Pharm., Inc., No. 22-17842-PDR, 2022 WL 17968889, at *4 (Bankr. S.D. Fla. Dec. 27, 2022) ("it
is difficult to cleanly distinguish Trade Creditors from Litigation Creditors….  In other words,
attempting to predict a particular commercial creditor's motivation is a dubious exercise.").
Considering that there are already two trade creditors on the Committee, PharMerica's argument
for additional trade creditors on the Committee is unconvincing.

20.    Moreover, PharMerica does not cite any instance of the Committee's inability to
properly carry out its duties.  Further, while PharMerica raises concerns about trade creditors being
underrepresented, the Bankruptcy Code does not require that a committee comprise the "exact
complexion of the creditor body." In re Roman Cath. Church, 2021 WL 454220, at *11; In re Hills
Stores, 137 B.R. at 7; In re Dow Corning Corp., 194 B.R. at 141; In re Vital Pharm., 2022 WL
17968889, at *5 ("mere fact that the Committee does not perfectly mirror the unsecured creditor
body, or that the Litigation Creditors may potentially be outvoted by the Trade Creditors does not

mean they are not adequately represented").  Instead, conflicting groups of creditors need only

have a voice via representation on the committee. In re Hills Stores, 137 B.R. at 7.  Thus, the

assertion that trade creditor representation is inadequate solely looking at the amount of claims

asserted by trade creditors in relation to the total amount of other claims is misplaced.  Even

assuming arguendo that an argument could be made that Omnicare should be viewed differently

from other trade creditors—which PharMerica has utterly failed to establish—trade creditors

representation on the Committee via Healthcare Services Group is sufficient. See In re Roman

Cath. Church, 2021 WL 454220, at *12 (explaining that conflicting interests can be adequately

represented by a single committee when both kinds of creditor groups have participated in the

committee).  PharMerica cites In re Roman Cath. Church as supporting its position for additional

trade creditors being added to the Committee. 2021 WL 454220.  However, that case was

distinguished by the learned Honorable Peter D. Russin in In re Vital Pharm., in which he noted

that a second committee was appointed because the original "committee included *only* abuse

claimants and had *no* members who shared the interests of the commercial creditors." 2022 WL

17968889 at *4 (emphasis in original).  Here, commercial creditors are adequately represented on

the Committee through its two representatives, Omnicare and Healthcare Services Group.

21.     **Nature of the Case:**  In "SNF cases," trade creditors are largely interested in the

"going forward relationship" with whoever will be running the facilities after the case is over:

Trade creditors are focused on the repeat business, not the distribution on account of unsecured

claims.  But for the resident harmed or killed as a result of nursing home negligence, there is no

"repeat business."  They won't be back.  And because chapter 11 can give owners the ability to

scrub assets with no accountability for deplorable healthcare standards, they will be replaced by

new victims in the next cycle of shifting shell games.  This is the nature of the case, where

PharMerica seeks to dilute the voice of the Healthcare Negligence Claimants, and others like them. It is apparent that what is driving these Reorganizations is the Debtors' collective desire to shed the tort liabilities that they have accumulated and to otherwise continue business as usual.

22.    **Standing And Desires Of The Various Constituencies:**    Additionally, PharMerica opines that trade creditors will be "drowned out" by the various litigation claimants – resulting in the Committee not acting in the best interest of all creditors.  However, while trade creditors will likely continue to do business through the conclusion of the case, the voices of the numerous nursing home residents and employees have been effectively silenced by the negligence of the debtors.  The heart of this case is that the debtors were driven into bankruptcy by the magnitude of the claims brought against them by victims of nursing home neglect and employees owed unpaid wages and retirement benefits. See In re Dana Corp., 344 B.R. at 40 (ruling against movants on this factor when their claims were ancillary to the main reasons for the bankruptcy filing).  Accordingly, the nature of this case necessitates that the Healthcare Negligence Claimants remain well represented on the Committee.

23.    **Ability to Continue Participating in the Case:**  Under this factor, courts have held against movants when they can continue to participate in the case, are represented by sophisticated counsel, and can consequently continue to have their voices heard.  In re Dana Corp., 344 B.R. at 39–40; In re Enron Corp., 279 B.R. at 693.  Similarly, here, PharMerica has admitted in the Committee Packing Motion that it will be able to actively continue participating in the case even without being on the Committee.  Additionally, PharMerica is represented by sophisticated counsel that will likely ensure that its concerns are voiced and heard by the Committee.

24.    **Motivation of the Movants:**  Next, while PharMerica asserts that the interests of the litigation and trade creditors are completely different, conflicts among creditors do not

automatically warrant an alteration of the Committee.  In re Sharon Steel Corp., 100 B.R. 767, 779

(Bankr. W.D. Pa 1989); In re Pierce, 237 B.R. 748, 758 (Bankr. E.D. Cal. 1999).  The Committee

Packing Motion speculates that trade claims will likely be treated differently than litigation claims

under a chapter 11 plan.  However, so far there has been no evidence that both types of claims will

not receive due attention and consideration by the Committee. See In re Pierce, 237 B.R. at 758

("'Tension among creditors is inherent in all cases and is necessary for the case to move

forward.'").

### D.    CONCLUSION

25.    PharMerica and the other trade creditors are more than adequately represented on

the Committee by Healthcare Services Group and Omnicare.  PharMerica has utterly failed to

establish any basis to believe that it and the other trade creditors' interests are somehow at odds

with that of Omnicare, much less that PharMerica is entitled to the extraordinary relief of

reconstituting the Committee:

> In the absence of some concrete reason to believe the [Committee members] will
> not carry out their fiduciary duties… there is simply no reason to send the U.S.
> Trustee back to the drawing board.  Nothing in section 1102 or in the concept of
> 'adequate representation' requires that committees be formulated even to reflect the
> exact composition of the creditor body… much less that a committee achieve some
> sort of perfect equilibrium of creditor interests.  Would a committee with the
> membership [PharMerica] suggest[s] be more 'balanced' than the current
> committee?  Probably.  Is a more balanced committee necessary to achieve
> 'adequate representation of creditors' in this case?  No—not, at least, at this
> juncture in the case and on the current record.

In re ShoreBank Corp., 467 B.R. 156, 164 (Bankr. N.D. Ill. 2012).  As much as the Healthcare

Negligence Claimants want to be represented on the Committee, and believe they would greatly

contribute to the success of the same (far more than PharMerica could possibly contribute) the

Healthcare Negligence Claimants recognize that there is no basis in the law to reconstitute the

Committee on the record before the Court.  Accordingly, the Committee Packing Motion should

be denied.

WHEREFORE, the Healthcare Negligence Claimants respectfully request the order of this Court that will:

    a.   deny relief requested by PharMerica in the Committee Packing Motion; or

    b.   condition membership by PharMerica on the Committee upon the U.S. Trustee's selection of one of the Healthcare Negligence Claimants to serve on the Committee in order to enable it to retain its balance; and

    c.   provide for such other relief as this Court determines to be necessary and appropriate under the circumstances.

Dated this 15th day of August, 2025.

                          /s/ John A. Anthony
                          **JOHN A. ANTHONY, ESQUIRE**
                          Florida Bar Number: 0731013
                          janthony@anthonyandpartners.com
                          **NICHOLAS LAFALCE, ESQUIRE**
                          Florida Bar Number: 0119250
                          nlafalce@anthonyandpartners.com
                          **JULIA G. TRAINA, ESQUIRE**
                          Florida Bar Number: 1042604
                          jtraina@anthonyandpartners.com
                          **ANTHONY & PARTNERS, LLC**
                          100 S. Ashley Drive, Suite 1600
                          Tampa, Florida 33602
                          Tel.: (813) 273-5616
                          Fax: (813) 221-4113
                          Attorneys for the Healthcare Negligence Claimants

## CERTIFICATE OF CONFERRAL

On August 15, 2025, John A. Anthony, Esquire, corresponded with Daniel M. Simon, Esquire, counsel for the Debtors, and Jason S. Brookner, Esquire, representing PharMerica, neither of which took a position regarding the Healthcare Negligence Claimants being added to the Committee as a condition of PharMerica being added to the Committee. The undersigned

attempted to reach Meredyth Kippes, Esquire on behalf of the U.S. Trustee, and Ehud Barak, Esquire, and Daniel Desatnik, Esquire, counsel for the Committee, but was unable to obtain their position on the subject matter of this objection in advance of filing the same.

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2025, a true and correct copy of the foregoing document was electronically filed in the above captioned case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system and a copy was served on the parties who receive notice via the Court's ECF notification system.

Marcus A. Helt, Esq.
Jack G. Haake, Esq.
MCDERMOTT WILL & EMERY LLP,
2501 North Harwood Street, Suite 1900,
Dallas, TX 75201
mhelt@mwe.com
jhaake@mwe.com

Daniel M. Simon, Esq.
MCDERMOTT WILL & EMERY LLP,
1180 Peachtree St. NE, Suite 3350,
Atlanta, GA 30309
dsimon@mwe.com

William A. Guerrieri, Esq.
Emily C. Keil, Esq.
MCDERMOTT WILL & EMERY LLP,
444 West Lake Street, Suite 4000,
Chicago, IL 60606
wguerrieri@mwe.com
ekeil@mwe.com
Counsel to the Debtors

Nicholas Zluticky, Esq.
Zachary Hemenway, Esq.
Miranda Swift, Esq.
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com
miranda.swift@stinson.com

Brian S. Rosen, Esq.
Ehud Barak, Esq.
Timothy Q. Karcher, Esq.
Daniel S. Desatnik, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
brosen@proskauer.com
ebarak@proskauer.com
tkarcher@proskauer.com
ddesatnik@proskauer.com

W. Grant DuBois, Esq.
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
grant.dubois@stinson.com

Paul V. Possinger, Esq.
PROSKAUER ROSE LLP

Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3570
ppossinger@proskauer.com
Counsel to the Committee

Meredyth Kippes, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
Region 6
1100 Commerce Street, Room 976
Dallas, TX 75242
meredyth.kippes@usdoj.gov

Jason S. Brookner, Esq.
Lydia R. Webb, Esq.
GRAY REED
1601 Elm Street, Suite 4600
Dallas, TX 75201
jbrookner@grayreed.com
lwebb@grayreed.com
Counsel to PharMerica Corporation

Leighton Aiken, Esq.
FERGUSON BRASWELL FRASER KUBASTA PC
2500 Dallas Parkway, Suite 600,
Plano, TX 75093
laiken@fbfk.law

and

Robert J. Lemons, Esq.
GOODWIN PROCTOR LLP,
The New York Times Building
620 Eighth Avenue
New York, NY 10018
rlemons@goodwinlaw.com
Counsel to OHI Mezz Lender LLC

Jeffrey C. Krause, Esq.
Francis Petrie, Esq.
Michael G. Farag, Esq.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
jkrause@gibsondunn.com
fpetrie@gibsondunn.com
mfarag@gibsondunn.com
Counsel to Welltower

James Muenker, Esq.
PIPER LLP
1900 N. Pearl St., Suite 2200,
Dallas, TX 75201
james.muenker@us.dlapiper.com
Counsel to ReGen Healthcare LLC DLA

Kenneth J. Ottaviano, Esq.
Paige Barr Tinkham, Esq.
BLANK ROME LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
ken.ottaviano@blankrome.com
paige.tinkham@blankrome.com
Counsel to White Oak Healthcare Finance LLC

/s/ John A. Anthony
**ATTORNEY**

Schedule "A"

Healthcare Negligence Claimants

| # | Claimant |
|---|----------|
| 1. | Adam Hoffman, as Power of Attorney of Rita Hoffman |
| 2. | Addie Logan as the Administratrix of the Estate of Cheryl Lynn Logan |
| 3. | Albert Robinson, Individually and as Administrator Ad Prosequendum and General Administrator of the Estate of Mary Robinson |
| 4. | Alice Sultemeier as Power of Attorney for Rita Sultemeier |
| 5. | Amanda Stover, as Administratrix of the Estate of William Dale Stulter |
| 6. | Ameena Collier, on behalf of the Estate of Thurman Kirby |
| 7. | Angela Rivera Cornish, on behalf of the Estate of Nicholas R. Rivera, Sr. |
| 8. | Anita Fay Tekman, as Administratrix of the Estate of Lucy Gail Long |
| 9. | Ann S. Kelley, on behalf of the Estate of Lawrence F. Kelley |
| 10. | Anthony Wilson, on behalf of Jullian Murray |
| 11. | Aretha Caldwell, Administrator Ad Prosequendum of the Estate of Isabel Loatman |
| 12. | Ashley Johnson, on behalf of Virginia Graham |
| 13. | Barbara A. Clark, as Administrator of the Estate of Louise Andrews |
| 14. | Barbara J. Milton, on behalf of the Estate of Abdul Baa'Ith Muwwakkil |
| 15. | Barry Green, as Personal Representative of the Wrongful Death Estate of Lila Gonzales |
| 16. | Barry Green, as the Personal Representative to the Wrongful Death Estate of Urah Lee Hodge |
| 17. | Barry Green, Esq., as Personal Representative of the Wrongful Death Estate of Rosalina Blea |
| 18. | Barry Green, Esq., as Personal Representative of the Wrongful Death Estate of Cordelia Weseman |
| 19. | Barry Green, Esq., as Personal Representative to the Wrongful Death Estate of Edwin Romero |

| 20. | Beverly Reed, as Executrix of the Estate of Thelma Reed, and on behalf of any wrongful death beneficiaries |
| --- | --- |
| 21. | Brenda Howard, on behalf of the Estate of Mildred Lewis |
| 22. | Bridget Y. Hannibal and Anita Maria Butler, as Co-Executors of the Estate of Jean Butler |
| 23. | Carol McKnight, on behalf of the Estate of Nancy Randall |
| 24. | Carroll Cagle, as Personal Representative of the Wrongful Death Estate of Stephanie La Fortune |
| 25. | Cassandra Williams, Individually and on behalf of the Estate of Linda Williams |
| 26. | Charles V. DiLabbio, Administrator of the Estate of Harry J. DiLabbio |
| 27. | Christina Brown-Hudson, as Administratrix of the Estat of Dell'l Bown |
| 28. | Christina Civils, as Power of Attorney and Next Friend of James Civils, incapacitated |
| 29. | Christine Kattermann, as Executrix of the Estate of Eleanor Bretzger |
| 30. | Contricia Scutching, Individually and as Executrix of the Estate of Willie Triplet, Deceased |
| 31. | Cornelia Joiner, on behalf of the Estate of Christa Bridge and in her own right |
| 32. | Dean McMurphy, Individually and as Administrator of the Estate of Tracey D. McMurphy |
| 33. | Dianne Smith, on behalf of Mary Jane Smith |
| 34. | Dominic Mannella, as Executor for the Estate of Sally Mannella |
| 35. | Donald Berry, Individually |
| 36. | Donna Arera, individually and as Administrator of the Estate of Helen Stalgaitis |
| 37. | Donna Brownstein, on behalf of the Estate of Steven Brownstein |
| 38. | Douglas Cerbie, Executor of the Estate of Mary Ann Cerbie |
| 39. | Edward Clark, Richard Clark, Elizabeth Sparr, Individually, and Edward Clark on behalf of the Estate of Aleene Clark |

| 40. | Erin Pearson, as Personal Representative of the Wrongful Death Estate of James Sanderson |
| 41. | Estate of Barbara Louise Matalucci, through Barbara Schlager, Executrix |
| 42. | Estate of Barbara Sligh |
| 43. | Estate of Jean F. Miller, through Sherrie A. Martinez, Administrator |
| 44. | Estate of Richard Ford |
| 45. | Estate of Roy Gaskins |
| 46. | Estate of Sheila J. Craig Mitchell, through Kimberly Lucky, Administrator |
| 47. | Eunice Fuentes Marquez, as personal representative of the wrongful death estate of Cointa Marquez Aragon |
| 48. | Faith Marietta Boose, as Administratrix of the Estate of Earl Morris |
| 49. | Franchesca Rodriguez, Individually |
| 50. | Frank C. Taylor, Administrator of the Estate of Maria A. Taylor, Deceased |
| 51. | Frank Jordan, Jr., as Administrator of the Estate of Mary Kathleen Jordan |
| 52. | Frauline Wolfe, as Representative of the Estate of Bryan Wolfe |
| 53. | Gabe Betancourt, Individually, and Vanessa Betancourt, as the Personal Representative of the Wrongful Death Estate of Nellie Betancourt |
| 54. | Glenn Howard, as Successor Administrator of the Estate of Joseph T. Bland, deceased |
| 55. | Gloria Cabrera and Francisco Ramirez, Co-Personal Representatives of the Estate of Ramona Ramirez, on behalf of the Estate of Ramona Ramirez |
| 56. | Greg L. Hunt, as Administrator of the Estate of Nancy R. Hunt |
| 57. | Guy Morra, Wayne Morra, Albert Morra, the Estate of Roberta Furnier and Robert C. Collins, II, as Administrator of the Estate of Maryanna Morra |
| 58. | Helen Laura Lopez, as Personal Representative of the Estate of Tom Pearl |
| 59. | Holly Hampton |
| 60. | Jacqueline Redmond |

| 61. | James E. Novak, Individually and as Personal Representative of the Estate of Janice C. Novak |
|-----|-----|
| 62. | James M. Saxon, Jr., on behalf of the Estate of Joyce Barber |
| 63. | James Williams, as Personal Representative of the Wrongful Death Estate of Josephine Garcia |
| 64. | Janet Katinowsky, Administratrix of the Estate of Jennie A. Katinowsky |
| 65. | Jennifer M. Palumbo and Laura A. Good, on behalf of the Estate of George Ilco |
| 66. | Jessica Hugar, Individually |
| 67. | Jo Harp, Executrix of the Estate of Nona Walker |
| 68. | Joan Birmingham on behalf of the Estate of Melady Siegfried |
| 69. | Joan K. Shayer |
| 70. | Joann Parlett, Individually and as Personal Representative of the Estate of Shirley Boulin, Debbie Durling, Bryan Howlin, and Ronald Howlin |
| 71. | Joe F. Byers, by and through his Successor-in-Interest, Courtland Byers; Courtland Byers, Individually; Armond Byers, Individually; and Joe Byers, Jr., Individually |
| 72. | Joetta McDowney, on behalf of the Estate of Thomasine Jones |
| 73. | Joleen Youngers, as Personal Representative of the Wrongful Death Estate of Presciliana Sanchez |
| 74. | Joseph Y. Sweeney as Administrator DBN/CTA of the Estate of Joseph A. Sweeney |
| 75. | Karen Peterson, as Administratrix of the Estate of Gladys Straight |
| 76. | Kathleen Phipps on behalf of the Estate of Rose Russell |
| 77. | Kathryn Williamson, on behalf of Gina Thiel |
| 78. | Kelvin Arrington, Individually, and as the Personal Representative of the Estate of Alma Page |
| 79. | Larrice Harris, individually |
| 80. | Larry B. Kline, on behalf of the Estate of David W. Kline, Sr. |
| 81. | Laurie Ann Bright on behalf of Kay A. Bright |

| 82. | Lawrence Zukowski, on behalf of the Estate of Frances Zukowski |
|-----|---------------------------------------------------------------|
| 83. | Louis Rossignol, as Administrator of the Estate of Carlotta W. Elkins, deceased |
| 84. | Maria Dematteo, on behalf of the Estate of Gerard Berrigan |
| 85. | Maria L. Ayala, as Administratrix for the Estate of Oscar Rene Martinez |
| 86. | Mark Moss, Administrator of the Estate of Billy M. Moss |
| 87. | Mark Musso, on behalf of the Estate of Opal O. Musso |
| 88. | Mark Salfi, as Executor of the Estate of Salvatore Salfi |
| 89. | Marleen Chrzanowski, Individually |
| 90. | Martha Bennett-Ryder, Administratrix of the Estate of Virginia Smith |
| 91. | Mary Martinez, as Personal Representative of the Wrongful Death Estate of Candido Martinez |
| 92. | Melissa Devericks, as Personal Representative of the Estate of Charles Everett Devericks, Sr. |
| 93. | Melody Blake, on behalf of Arthur M. Blake |
| 94. | Merla Graves, as Administratrix of the Estate of Christal Graves |
| 95. | Michael Burdine, as Administrator of the Estate of Judy Burdine |
| 96. | Michelle Hoffmaster, on behalf of the Estate of Rita Bommarito |
| 97. | Michelle Sturtz, Individually and as Administratrix of the Estate of Jocelyn L. Wilson |
| 98. | Nicole Abramson, Personal Representative of the Estate of Aery Lawson, on behalf of the Estate of Aery Lawson |
| 99. | Nina Devito, on behalf of the Estate of Vincent Devito |
| 100. | Patricia A. Clifford, as Administratrix of the Estate of John Thomas Baker |
| 101. | Patricia Hanna, as Administratrix of the Estate of Jo Ann Robinson |
| 102. | Penny Raff, as Administratrix of the Estate of Tami Michelle Jennings |
| 103. | Randall H. Altar, on behalf of the Estate of James Thompson Alter, IV |
| 104. | Richard D. Schibell, on behalf of the Estate of Dolores Schibell-Tomaine |

| 105. | Richard James Kirk, Individually, and as Personal Representative of the Estate of Helen Marie Kirk; and Thomas Edward Kirk, Individually, and as Personal Representative of the Estate of Helen Marie Kirk |
|------|------|
| 106. | Robert M. Brown, Jr. as Administrator of the Estate of Robert M. Brown, Sr. |
| 107. | Romeo Ralph |
| 108. | Rosemarie Bucciarelli, on behalf of the Estate of Joseph Bucciarelli |
| 109. | Russell Barnes, on behalf of Carrie Barnes |
| 110. | Samantha Ritter, on behalf of the Estate of Michelle M. Coquet |
| 111. | Scott Wabals, on behalf of the Estate of Sally Martin |
| 112. | Sharifah Bell and Joel Belcher as Co-Guardians of Antoinette Bell |
| 113. | Stephanie Claudio, as Power of Attorney for Cheryl Kulis |
| 114. | Steven S. Tucker and Amir L. Tucker, as Administrators of the Estate of Steven Seals |
| 115. | Sylvester McElhaney |
| 116. | Tammy Riemenschnitter, on behalf of Heinrich Riemenschnitter |
| 117. | Teresa Fowler, as Administratrix of the Estate of Reva L. Buckbee |
| 118. | Teresa Thompson, as Personal Representative of the Estate of Orencle Barlow, deceased |
| 119. | Tiffany Diane Wiggins, as Personal Representative of the Estate of Diane McDonald Wiggins |
| 120. | Tommy Wayne White, Personal Representative of the Estate of Pauline White |
| 121. | Valerie Bess, Administrator of the Estate of Mark Bess, Deceased |
| 122. | Vicki Ann Miller, individually and as Personal Representative of the Estate of Brian Michael Miller, Joshua Miller, Nicolas Miller, and Analisa Miller |
| 123. | William Brown, Individually |
| 124. | William Chadwell, as Next Friend and Power of Attorney of Patsy Chadwell |
| 125. | William P. Watson, on behalf of the Estate of Joanne M. Watson |
| 126. | William Chadwell, as Next Friend and Power of Attorney of Patsy Chadwell |

| 127. | Odette Brown, Individually and as Administratrix of the Estate of John Labruce Brown |
| 128. | Stacy Tyler, Individually and as Special Administrator of the Estate of Gary Tyler |
| 129. | Riley Schaffer as Personal Representative of the Estate of Rachael Schaffer |
| 130. | Barbara Law |
| 131. | Mark F. Bush, as Administrator of the Estate of Joel D. Busch |
| 132. | Carol Ann Guthrie |
| 133. | Glen Ray Hodge, as Administrator of the Estate of Mary Evelyn Hodge |
| 134. | Crystal Lawrence, as Administratrix of the Estate of Kenneth White Sr. |
| 135. | Carolyn Woehl, as representative of the Estate of Louis Woehl, Deceased |
| 136. | Marguerite Brooks |
| 137. | Kathy Williams |
| 138. | Neil H. Gomillion and Lanita Gomillion |
| 139. | Darla Adolini |
| 140. | David Alison |
| 141. | Marlin Kyle Allen |
| 142. | Katherine Aranda |
| 143. | Dorothy Atkinson |
| 144. | Paul Auman |
| 145. | Clyde Baker |
| 146. | Jonathan Baldwin |
| 147. | Barbara Barron |
| 148. | Sharly Battle |
| 149. | Tammy Beatty |
| 150. | Barry Beaudoin |
| 151. | Pedro Benavidez |

| 152. | Bonnie Blanton |
|------|----------------|
| 153. | David Bohr |
| 154. | Karen Brant |
| 155. | Naomi Brown |
| 156. | Lorraine Brown |
| 157. | Nancy Burkert |
| 158. | Robert Butera |
| 159. | Helen Byers |
| 160. | Louise Byers |
| 161. | James Caldwell |
| 162. | Kathleen Camara |
| 163. | Allen Camp |
| 164. | William Campbell |
| 165. | Tammy Carita |
| 166. | Priscilla Carr |
| 167. | Raymond Carrillo |
| 168. | Marjorie Carroll |
| 169. | Macario Chavez |
| 170. | Virginia Clibbens |
| 171. | Mary Conte |
| 172. | Lana Couzzens-Heywood |
| 173. | Darlene Davies |
| 174. | Grace Kelly Davis |
| 175. | Ana Luz de Fernandez |
| 176. | Diana DeRosato |
| 177. | Johnnie Mae Devlin |

| 178. | Jeffrey Dietz |
|------|---------------|
| 179. | Willis Ordney Dillon |
| 180. | Kirk Dixon |
| 181. | Shirleen Doorly |
| 182. | Barbara Edwards |
| 183. | Maria Escajeda |
| 184. | Ray Fegley |
| 185. | Rafael Fernandez |
| 186. | Gayle Fincher |
| 187. | Vernetta Floyd |
| 188. | La'Toya Gaither |
| 189. | Deborah Gallagher |
| 190. | Josefina Garcia |
| 191. | Shealynn Garnenez |
| 192. | Roger Gendreau |
| 193. | June Giancaterino |
| 194. | Marianne Gilgore |
| 195. | Alfred Giombetti |
| 196. | Ronald Gochenauer |
| 197. | Emmajane Goudarzi |
| 198. | Joan Anne Haniebnick |
| 199. | Elizabeth Harkins |
| 200. | Wallace Hayden Jr. |
| 201. | Marcy Henderson |
| 202. | Mabel Hill |
| 203. | Lucille Hopson |

| 204. | Antolino Jacquez |
|------|------------------|
| 205. | Joyce Kajmo |
| 206. | Patricia Kelly |
| 207. | Vera Kenney |
| 208. | Michael Lawley |
| 209. | Joanne Leiss |
| 210. | Alan Levine |
| 211. | Linda Lopez |
| 212. | Sonia Lynagh |
| 213. | Marlena Mack |
| 214. | Matthew May |
| 215. | Lois McCabe |
| 216. | Jacqueline McManus |
| 217. | Manuel Medina |
| 218. | Janet Messier |
| 219. | Carolyn Mitchell |
| 220. | Edwin Moulton |
| 221. | Ana Oriz |
| 222. | Joseph Overend |
| 223. | Robert Parker |
| 224. | Nancy Parker |
| 225. | Frances Parker |
| 226. | Jerry Pickeral |
| 227. | Arthur Pomerleau |
| 228. | Roberta Quinn |
| 229. | Mary Ramos |

| | |
|---|---|
| 230. | Shirley L. Refile |
| 231. | Kathryn Reveille |
| 232. | Dorothy Rice |
| 233. | Thomas Rozier |
| 234. | Patricia Russo |
| 235. | Christopher Sanchez |
| 236. | Harold Sanders |
| 237. | Susana Santos |
| 238. | Sally Scanlon |
| 239. | Linda Schoene |
| 240. | Neil Shotton |
| 241. | James Shreve |
| 242. | Patricia Smith |
| 243. | Gwendolyn Smith |
| 244. | Vicki Staller |
| 245. | Cleo Stewart |
| 246. | Timothy Stubbs |
| 247. | Honorata Szypulski |
| 248. | Magnolia Terry |
| 249. | Anna Thomas |
| 250. | Kathryn Thomas |
| 251. | Donald Thomas Sr. |
| 252. | Geraldine Thompson |
| 253. | Donald/Shernita Thornton |
| 254. | Barbara Tinch |
| 255. | Karen Toto |

| 256. | Donald Treimann |
|------|-----------------|
| 257. | Susan Udinsky |
| 258. | Darlene Umbrell |
| 259. | George Velez |
| 260. | Margaret/John/James Vogel |
| 261. | Inez Wallace |
| 262. | Audrey Walton |
| 263. | Martha Watson |
| 264. | Frank Whiteside |
| 265. | Hugh Williams |
| 266. | Doreen Wind |
| 267. | Arthur Wlodarski |
| 268. | Kathleen Wolff |
| 269. | Edward Wormley |
| 270. | Michael Wulstein |
| 271. | Donna Wyant |
| 272. | Sharon Yaple |
| 273. | Michael Zonfrillo |