J. Frasher Murphy (TX 24013214)
Martha Wyrick (TX 24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood St., Suite 2300
Dallas, TX 75201
Telephone: 214.651.5000
Facsimile:  214.651.5940
Email: frasher.murphy@haynesboone.com
Email: martha.wyrick@haynesboone.com

**COUNSEL FOR
BLACK MOUNTAIN PEAK HEALTHCARE LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | § | Case No. 25-80185 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**LIMITED OBJECTION OF BLACK MOUNTAIN PEAK HEALTHCARE LLC TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**
**[Related to Docket Nos. 17 and 57]**

Black Mountain Peak Healthcare LLC ("Black Mountain") on behalf of the New Operators (defined below), hereby files this limited objection (the "Limited Objection") to the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a*

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/case/genesis/info. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

*Final Hearing, and (V) Granting Related Relief* [Docket No. 17] (the "DIP Motion") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In support of the Limited Objection, Black Mountain respectfully represent as follows:

## Background

**A.     The New Operators have a valid, perfected, and enforceable security interest in certain Medicare payments received by the Existing Operators**

1.     On June 5, 2024, certain Debtors and one-non debtor affiliate (collectively, the "Existing Operators")[2] and Black Mountain subsidiaries (collectively, the "New Operators")[3] entered into the Operations Transfer Agreement (as amended from time-to-time, the "OTA"). Pursuant to the OTA, the Existing Operators transferred to the New Operators operations of certain skilled nursing facilities located in New Hampshire (the "Facilities"), as follows:

| Facility Name | Facility Address | Number of Beds | Existing Operator | New Operator |
|---|---|---|---|---|
| Wolfeboro Care and Rehabilitation Center | 39 Clipper Drive, Wolfeboro, NH 03820 | 104 SNF | Sunbridge Clipper Home of Wolfeboro, LLC | Wolfeboro SNF OPCO LLC |
| Mineral Springs of North Conway Care and Rehabilitation | 1251 White Mountain Highway, North Conway, NH 03860 | 87 SNF | Sunbridge Clipper Home of North Conway, LLC | North Conway SNF OPCO LLC |
| Langdon Place of Nashua Retirement and Rehabilitation | 319 East Dunstable Road, Nashua, NH 03062 | 105 SNF | 319 East Dunstable Road Operations LLC | Nashua SNF OPCO LLC |
| Bedford Hills Care and Rehabilitation Center | 30 Colby Court, Bedford, NH 03110 | 147 SNF | Harborside New Hampshire Limited Partnership | Bedford Hills SNF OPCO LLC |
| The Elms Care and Rehabilitation Center | 71 Elm Street, Milford, NH 03055 | 52 SNF | Harborside New Hampshire Limited Partnership | Milford SNF OPCO LLC |
| Langdon Place of Dover Retirement and Rehabilitation Center | 60 Middle Road, Dover, NH 03820 | 30 SNF; 126 SRCF | Sunbridge Healthcare, LLC | Dover SNF OPCO LLC |
| Langdon Place of Keene Retirement and Rehabilitation Center | 136A Arch Street, Keene, NH 03431 | 25 SNF; 156 SRCF | Sunbridge Healthcare, LLC | Keene SNF OPCO LLC |
| Langdon Place of Exeter Retirement and Rehabilitation Center | 17 Hampton Road, Exeter, NH 03820 | 114 SNF | Sunbridge Healthcare, LLC | Exeter SNF OPCO LLC |

---

[2] The Existing Operators include non-debtor, 319 East Dunstable Road Operations LLC, and Debtors, Harborside New Hampshire Limited Partnership, SunBridge Clipper Home of North Conway, LLC, SunBridge Clipper Home of Wolfeboro, LLC, and SunBridge Healthcare LLC.

[3] The New Operators include Bedford Hills SNF OPCO LLC, Keene SNF OPCO LLC, Dover SNF OPCO LLC, Exeter SNF OPCO LLC, Nashua SNF OPCO LLC, North Conway SNF OPCO LLC, Wolfeboro SNF OPCO LLC, Milford SNF OPCO LLC.

2.     The transactions contemplated under the OTA closed on September 1, 2024 (the "Closing Date").  The OTA includes, *inter alia*, provisions to facilitate an orderly transition of services being performed at the Facilities.  Among other things, the OTA establishes a process for the billing and collection of Medicare payments on and after the Closing Date.  Under this process, the Existing Operators agreed the New Operators could bill for services performed on and following the Closing Date under the Existing Operators' Medicare numbers pending the New Operators' receipt of their "tie in" notices from the Centers for Medicare & Medicaid Services in connection with the change in ownership of the Facilities.

3.     The Existing Operators acknowledged that, for a period of time following the Closing Date, they may come into possession of collections on accounts, accounts receivable, and/or payment intangibles arising from the New Operators' provision of services or sale of goods on or after the Closing Date (collectively, "Accounts") that are the property of the New Operators pursuant to the terms and conditions of the OTA (such collections, the "New Operator Amounts").  The Existing Operators agreed to hold any such New Operator Amounts in trust, remit such amounts to the New Operators, and provide an accounting for all such amounts received on a monthly basis.

4.     On September 1, 2024, Debtor, Harborside New Hampshire Limited Partnership, and one of the New Operators, Milford SNF OPCO LLC, entered into that certain Security Agreement, and on the same day, the remaining Existing Operators and the remaining New Operators also entered into a Security Agreement (together, the "Securities Agreements").  The Security Agreements are substantially similar.

5.     Pursuant to the Security Agreements, the Existing Operators granted the New Operators a security interest in various collateral (the "New Operators' Collateral"), including:

3

(i) All Accounts (as defined in the Uniform Commercial Code) arising from the provision of services or sale of goods by such New Operator on and after 12:01 a.m. on September 1, 2024 ("Facility Accounts"), including, without limitation, any Facility Accounts that constitute accounts receivable (whether in the form of payments for services rendered or goods sold, rents, license fees or otherwise) of such New Operator, any Facility Accounts that constitute "health-care-insurance receivables" (as defined in the UCC) of such New Operator, and any Facility Accounts of such New Operator that are generated in the Existing Operator's name, or under the Existing Operator's Medicare provider number or provider agreement;

(ii) All of the books and records and recorded data or computer software to the extent necessary for the billing and collection of such Facility Accounts (regardless of the medium of recording or storage), and in the case of all of the foregoing, whether now existing or hereafter acquired; and

(iii) All proceeds of all of the foregoing.

*See* Security Agreements, § 4.

6. On September 3, 2024, the New Operators perfected their interest in the Collateral by filing UCC-1 financing statements (the "New Operators' Security Interest").

**B. The Prepetition ABL Agent released their liens on the New Operators' Collateral**

7. In connection with the OTA, White Oak Healthcare Finance, LLC (in such capacity, the "Prepetition ABL Agent"), the Existing Operators, and the New Operators entered into that certain Facility Accounts Transition Agreement dated September 1, 2024 (as may have been amended from time-to-time, the "ATA").

8. Under the ATA, the Prepetition ABL Agent "agrees and acknowledges that New Operator Amounts (a) do not constitute Agent's or Lenders' collateral under its Credit Agreement, (b) are the property of New Operators pursuant to the terms and conditions of the OTA, and (c) are to be held in trust by Existing Operators for the benefit of New Operators." ATA § 2. The Prepetition ABL Agent also acknowledged that it had no interest or lien on the

4

Transferee A/R or the Transferee Assets, "whether or not such Transferee A/R is received by Existing Operators or deposited in Existing Operators' deposit accounts."[4] ATA § 7.

9. Moreover, the Prepetition ABL Agent released "its Liens on all of the Transferee Assets, including without limitation, Transferee A/R," each of which constitute the New Operators' Collateral. *Id.* Pursuant to the ATA, on September 13, 2024, the New Operators filed and recorded UCC-3 amendments to reflect the release of the Prepetition ABL Agent's liens on the Transferred A/R and the Transferred Assets.

### C. The DIP Motion and Interim DIP Order[5]

10. On July 9, 2025 (the "Petition Date"), the Debtors filed the DIP Motion. On July 11, 2025, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 57] (the "Interim DIP Order"). A hearing to consider final approval of the DIP Motion is scheduled for August 21, 2025. Pursuant to the

---

[4] As defined in the OTA, "Transferee A/R" means:
> (i) all present and future Accounts (as defined in the Uniform Commercial Code) arising from the provision of services or sale of goods by New Operator on and after the Closing Date (the "Facility Accounts"); (ii) all of the books and records and recorded data or computer software, to the extent necessary for the billing and collection of Accounts (regardless of the medium of recording or storage), and in the case of all of the foregoing, whether now existing or hereafter acquired; and (iii) all proceeds of all of the foregoing.

As defined in the OTA, "Transferee Assets" means:
> the Assets (as defined in the OTA) (excluding the Excluded Assets (as defined in the OTA), including without limitation, all of Existing Operators' bank accounts, cash, cash equivalents, securities and accounts, general intangibles (including third party settlements), prepaid accounts, deposit accounts, deposits, real estate and insurance escrows, inter-company accounts and utility deposits, and all proceeds thereof).

[5] Capitalized terms used herein but not otherwise defined have the meaning given to such terms in the DIP Motion or the Interim DIP Order, as applicable.

DIP Motion, the Debtors seek to obtain, on a final basis, approval to grant the DIP Liens and provide adequate protection to various parties.

11. The DIP Liens are proposed to be fully-perfected, first priority liens upon "all property of the DIP Loan Parties . . . that is not subject to valid, perfected and non-avoidable liens." Interim DIP Order § 6(a)(1). Moreover, the DIP Liens are proposed to be "senior to any and all other liens and security interests in the DIP Collateral," subject to the Permitted Liens. *Id.* at § 6(a)(2). The Permitted Liens are narrowly defined to include, among other things, the Carve Out, the ABL Obligations, landlord liens, and the ABL Adequate Protection. *Id.*

12. The Debtors seek to provide various Prepetition Secured Parties with Adequate Protection Liens. As an example, the Interim Order grants the Prepetition HUD ABL Secured Parties with the HUD ABL Adequate Protection Liens that are "subordinate only to the Carve Out and any other prepetition Permitted Lien expressly permitted to be senior in priority to the Prepetition HUD ABL Liens on the Petition Date pursuant to the Prepetition HUD ABL Documents." *Id.* at § 10(a)(1). The Debtors also seek to provide the Non-HUD ABL Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens, and various landlords with adequate protection liens.

D. **As of the Petition Date, the Existing Operators held at least $950,993.74 of the New Operators' Collateral and may accrue additional remittances**

13. Prior to the Petition Date, in the ordinary course of businesses under the OTA and ATA's terms, the Existing Operators remitted the New Operator Amounts to the New Operator pursuant to the terms of the OTA. As of the Petition Date, however, the Existing Operators held

at least $950,993.74 of New Operator Amounts (the "<u>Unremitted New Operator Amounts</u>").[6] The Unremitted New Operator Amounts are the New Operators' Collateral and are subject to the valid, binding, enforceable, and perfected New Operators' Security Interest.

14. On a post-petition basis, it is possible that the Debtors have received or will receive additional New Operator Amounts. Any such New Operator Amounts are also the New Operators' Collateral and subject to the valid, binding, enforceable, and perfected New Operators' Security Interest.

## **Limited Objection**

15. Black Mountain, on behalf of the New Operators, files this limited objection to ensure that the DIP Liens and the Adequate Protection Liens do not prime New Operators' Security Interest in the New Operators' Collateral. Black Mountain seeks only to maintain the status quo under the OTA, the ATA, and any related transaction documents as such terms were in place prior to the Petition Date.

16. While the New Operator Amounts are not property of the estate, such amounts may currently be held in the Debtors' accounts controlled by the Prepetition ABL Lender. Accordingly, the definition of "DIP Collateral" could be construed broadly to capture the New Operators' Collateral. Moreover, the definition of "Permitted Lien" is narrow and does not account for the New Operators' Security Interest, exposing the New Operators to the risk of being improperly primed by the DIP Liens.

17. The Adequate Protection Liens are also broadly defined and subject to the same concerns with respect to the definition of "Permitted Liens." As proposed in the Interim DIP

---

[6] Black Mountain and the New Operators reserve all rights to the determination and calculation of the Unremitted New Operator Amounts.

Order, the New Operators are exposed to the risk of being improperly primed by the Adequate Protection Liens.

18. Moreover, Black Mountain's limited objections are consistent with the interim order granting the cash management motion, which authorized the Debtors to "maintain the Divested Facilities Accounts and remit accounts receivable arising on or after the applicable operations transfer date of the Divested Facility from the applicable Divested Facilities Account to the Third-Party Operators in the ordinary course of business." Docket No. 65 ¶ 5.

19. Haynes Boone was retained after the July 29 deadline to object to approval of the DIP Motion on a final basis (which was only 19 days after the DIP Motion was filed). Given the complexity of these cases and the benefit to the estate from the New Hampshire transactions described herein, Black Mountain respectfully requests that the Court consider this Limited Objection notwithstanding it is filed after the objection deadline.

## Reservation of Rights

20. Nothing contained herein shall be deemed to constitute a waiver of any rights, claims, defenses, or remedies that Black Mountain or the New Operators may have under applicable law or agreement, including, without limitation, the right to (i) supplement or amend this Limited Objection or (ii) assert any claims or causes of action against the DIP Lender, the Prepetition ABL Agent, the Debtors, or any other party in interest based on the OTA, ATA, or the related transaction documents.

[*Remainder of page left intentionally blank.*]

**Conclusion**

Black Mountain respectfully requests any final order approving the DIP Motion expressly provide that the New Operator Amounts, the New Operators' Collateral, the Transferee A/R, the Transferee Assets, and the Unremitted New Operator Amounts are not subject to or subordinate to any post-petition liens or super-priority claims granted therein.

RESPECTFULLY SUBMITTED this 15th day of August 2025.

By: */s/ Martha Wyrick*
J. Frasher Murphy (TX 24013214)
Martha Wyrick (TX 24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: 214.651.5000
Email:frasher.murphy@haynesboone.com
Email: martha.wyrick@haynesboone.com

**COUNSEL FOR BLACK MOUNTAIN PEAK HEALTHCARE LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (i) by email (where indicated) upon the parties listed below, and (ii) by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in these cases on August 15, 2025:

**Debtors**
Genesis Healthcare, Inc.
c/o Ankura Consulting Group, LLC
2021 McKinney Ave. Suite 340
Dallas, TX 75201
Attn: Louis E. Robichaux IV Email:
louis.robichaux@ankura.com

**Proposed Counsel for Debtors**
McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Attn: Marcus A. Helt
Email: mhelt@mwe.com
Jack G. Haake
Email: jhaake@mwe.com

McDermott Will & Emery LLP
1180 Peachtree St. NE, Suite 3350
Atlanta, GA 30309
Attn: Daniel M. Simon
Email: dsimon@mwe.com

McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Attn: William A. Guerrieri
Email: wguerrieri@mwe.com
Attn: Emily C. Keil
Email: ekeil@mwe.com

**Counsel to Welltower**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Attn: John T. Cox III
Email: tcox@gibsondunn.com

Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Attn: Jeffrey C. Krause
Email: jkrause@gibsondunn.com
Michael G. Farag
Email: mfarag@gibsondunn.com

**Counsel to Omega**
Goodwin Proctor LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Attn: Robert J. Lemons
Email: rlemons@goodwinlaw.com

Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Attn: Leighton Aiken
Email: laiken@fbfk.law

**Counsel to Debtors' Prepetition ABL Secured Parties**
Blank Rome LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Attn: Kenneth J. Ottaviano
Email: ken.ottaviano@blankrome.com
Attn: Paige Tinkham
Email: paige.tinkham@blankrome.com

**Counsel to DIP Lenders**
DLA Piper LLP
1900 N. Pearl St., Suite 2200
Dallas, TX 75201
Attn: James Muenker
Email: james.muenker@us.dlapiper.com

**U.S. Trustee**
Office of the United States Trustee
Attn: Meredith A. Kippes
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: meredyth.kippes@usdoj.gov

**Proposed Counsel for Unsecured Creditors' Committee**
Stinson LLP
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Attn: Nicholas Zluticky
Email: nicholas.zluticky@stinson.com
Attn: Zachary Hemenway
Email: zachary.hemenway@stinson.com
Attn: Miranda Swift
Email: miranda.swift@stinson.com
Attn: W. Grant DuBois
Email: grant.dubois@stinson.com

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Attn: Brian S. Rosen
Email: brosen@proskauer.com
Attn: Ehud Barak
Email: ebarak@proskauer.com
Attn: Timothy Q. Karcher
Email: tkarcher@proskauer.com
Attn: Daniel S. Desatnik
Email: ddesatnik@proskauer.com

Proskauer Rose LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Attn: Paul V. Possinger
Email: ppossinger@proskauer.com

*/s/ Martha Wyrick*
Martha Wyrick