**STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, PC**
Sander L. Esserman
State Bar No. 06671500
Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201-2689
Telephone: (214) 969-4900
Facsimile: (214) 969-4999
Email: esserman@sbep-law.com
dapice@sbep-law.com

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice forthcoming*)
Eric R. Goodman (*pro hac vice forthcoming*)
Gerard T. Cicero (*pro hac vice forthcoming*)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnik.com
egoodman@brownrudnick.com
gcicero@brownrudnick.com

**MARKS, BALETTE, YOUNG & MOSS PLLC**
Jacques G. Balette (*pro hac vice forthcoming*)
7521 Westview Dr.
Houston, Texas 77055
Telephone: (713) 681-4830
Facsimile: (713) 681-2811
Email: jacquesb@marksfirm.com

*Counsel to Certain Holders of Personal
Injury and Wrongful Death Claims*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTCARE, INC., *et al.*,[1] | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |

**MOTION OF CERTAIN HOLDERS OF PERSONAL INJURY AND
WRONGFUL DEATH CLAIMS FOR RELIEF FROM THE AUTOMATIC
STAY TO PURSUE CLAIMS AGAINST NON-DEBTOR DEFENDANTS**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND
IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU**

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 291 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

**MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGED, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 24, 2025 AT 9:30 AM AT THE EARLE CABEL FEDERAL BUILDING, 1100 COMMERCE STREET, 14TH FLOOR, COURTROOM 1, DALLAS, TEXAS 75242. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1-650-479-3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE JERNIGAN'S HOME PAGE. THE MEETING CODE IS 2304 154 2638. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOU APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JERNIGAN'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Twenty-seven tort claimants, each of whom holds a personal injury tort or wrongful death claim against the Debtors within the meaning of 28 U.S.C. § 157(b)(2)(B) (collectively, and as identified on **Exhibit A** hereto, the "Claimants"), by and through their undersigned counsel, hereby move (the "Motion") for relief from the automatic stay (to the extent applicable) to take one or more of the actions set forth on the proposed order attached hereto as **Exhibit B** (the "Proposed Order"), including commencing and prosecuting claims against non-debtor defendants in the civil justice system. In support of this Motion, the Claimants respectfully state as follows.

## JURISDICTION AND VENUE

1.     On or about July 9, 2025 (the "Petition Date"), Genesis Healthcare, Inc. ("Genesis")

and certain of its affiliates and subsidiaries, (collectively, the "Debtors") filed voluntary petitions

for relief in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

(the "Court") under chapter 11 of the Bankruptcy Code.

2.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334. This is

a core proceeding as defined by 28 U.S.C. § 157(b)(2)(G). The statutory basis for the relief sought

herein is 11 U.S.C. § 362.

## BACKGROUND

3.     Each of the Claimants holds a personal injury tort or wrongful death claim against

the Debtors within the meaning of 28 U.S.C. § 157(b)(2)(B). These Claimants also have the right

under state law to seek recovery from non-debtor entities and individuals under various legal

doctrines and theories of liability, including fraud and the doctrines of alter ego and veil piercing.

Alter ego and veil piercing theories are not independent causes of action.[2] They are legal doctrines

---

[2]   *Peacock v. Thomas*, 516 U.S. 349, 866 (1996) ("Piercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'") (quoting 1 C. Keating & G. O'Gradney, FLETCHER CYCLOPEDIA OF LAW OF PRIVATE CORPORATIONS § 41, p. 603 (perm. ed. 1990)); *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 644 (Pa. 2018) ("A request to pierce the corporate veil is not an independent cause of action, but rather is a means of imposing liability in an underlying cause of action"); *Comm'r of Env't Prot. v. State Five Indus. Park, Inc.*, 37 A.3d 724, 733 (Conn. 2012) ("[C]orporate veil piercing is an equitable remedy."); *Wurtzebach v. Flooring Depot FTL, Inc.*, 384 So. 3d 251, 255 (Fla. Dist. Ct. App. 2024) ("[p]iercing the corporate veil is not itself a cause of action"); *Villnave Constr. Servs., Inc. v. Crossgate Mall Gen. Co. Newco, LLC*, 201 A.D.3d 1183, 1187-88 (N.Y. Sup. Ct. 2022) ("Properly understood, an attempt to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners"); *A.L. Dougherty Real Estate Mgmt. Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504, 515 (Ill. App. Ct. 2017) ("Piercing the corporate veil is not a separate cause of action but instead is a means for imposing liability in an underlying cause of action"); *Gallagher v. Persha*, 891 N.W.2d 505, 509 (Mich. Ct. App. 2016) (piercing the corporate veil is a remedy and not a separate cause of action); *Secrest v. Gibbs*, 2015-Ohio-42 (Ohio App. Ct. 2015) ("claims based upon either alter ego or veil piercing" are not "causes of action"); *Paulus, Sokolowski & Sartor, LLC v. Darden*, No. A-4004-13T2, 2015 WL 6456124, at *6 (N.J. Super. Ct. Oct. 27, 2015) ("veil piercing is

that impose that liability for an underlying tort claim on the company's owners, beneficial owners, or those in control of the company when certain factors are present. Whatever rights are afforded to the Claimants under state law to seek a recovery from highly solvent non-debtor insiders and affiliates are rights that the Claimants are free to exercise outside of bankruptcy and should be free to exercise while these chapter 11 cases are pending.

4. This is a civil rights issue. One of the 27 Claimants that is seeking relief from this Court, was a resident of the Genesis nursing home, Clovis Healthcare and Rehabilitation Center, in Clovis, New Mexico, from September 17, 2017, until her death on January 21, 2023. Due to dangerously low staffing levels, unqualified care personnel, and a complete failure to provide proper and necessary care and rehabilitative services, she suffered avoidable injuries, including multiple necrotic and infected Stage IV pressure sores that eroded to the bone and smelled like a rotting dead animal. Because of the profound neglect caused by critically low and unqualified staff, her joints were frozen and contracted into a fetal position and she was frequently left in bed soaking in her urine, suffered unplanned weight loss, dehydration, falls, significant pain and suffering, mental anguish, and violations of her dignity. This is how she spent the last period of her life before she died.

5. Each of the Claimants here have the right to appear in Court, to be heard, and to seek justice compensation for their injuries in the civil justice system. "The right to sue and defend

---

not a separate cause of action"); *Ferro Fabricators, Inc. v. 1807-1811 Park Ave. Dev. Corp.*, 127 A.D.3d 479, 480 (1st Dep't 2015) ("alter-ego liability is not an independent cause of action"); *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. Aug. 3, 2006) ("Veil piercing is an equitable remedy"); *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 158 (Tex. App. 2010) (holding that alter ego and veil piercing theories of liability are not a substantive cause of action but "[r]ather, they are a means of imposing on an individual a corporation's liability for an underlying cause of action."); *In re Texas Am. Exp., Inc.*, 190 S.W.3d 720, 725 (Tex. App. 2005) ("The doctrines that support piercing the corporate veil do not create substantive causes of action."); *Turner Murphy Co. v. Specialty Constructors*, 659 So. 2d 1242, 1245 (Fla. Dist. Ct. App. 1995) ("Piercing a corporate veil is not itself a cause of action any more than the doctrine of respondeat superior is.").

in the courts … lies at the foundation of orderly government." *Chamber v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907). "It is one of the highest and most essential privileges of citizenship," particularly when the lawsuit involves bodily injuries. *Id.*

6. Multiple non-debtor parties are co-liable with the Debtors for the personal injury and wrongful death claims at issue here. The Bankruptcy Code does not afford a Bankruptcy Court with the power to grant these non-debtor parties a discharge or to release the Claimants' claims against them on an involuntary and non-consensual basis.[3]

7. Yet, the Debtors here assert that they have the power to encumber, sell, or settle the Claimants' claims as if such claims are somehow characterized as the *Debtors'* property. The Debtors believe that they and non-debtors can create estate property and therefore, collateral, by causing Claimants to suffer and die. When broken down into those terms, the Debtors' position is unmasked as a fantasy that this Court should not endorse.

8. The Claimants here disagree with the Debtors' position, which they believe lays at the heart of the Debtors' and non-debtors' strategy in filing these cases. But there is an immediate and unworkable situation that the Court must address now, created by this estate property fiction.

---

[3] *See Harrington v. Purdue Pharma, L.P.* 603 U.S. 204, 207 (2024) (stating that the Bankruptcy Code does not "authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."); *In re Highland Cap. Mgmt., L.P.*, No. 23-10534, 2025 WL 841189, at *4 (5th Cir. Mar. 18, 2025) ("Notably, any bankruptcy court action must square with the Bankruptcy Code's edict that 'discharge of a debt of the debtor does not affect the liability of any other entity on…such debt'") (citations omitted); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) ("this court has held that Section 524(e) only releases the debtor, not co-liable third parties."); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) ("Section 524 prohibits the discharge of debts of nondebtors"); *In re Coho Res., Inc.*, 345 F.3d 338, 342 (5th Cir. 2003) ("The discharge and injunction, however, are expressly designed to protect only the debtor, and do 'not affect the liability of any other entity' for the debt"); *Matter of Edgeworth*, 993 F.2d 51, 53–54 (5th Cir. 1993) ("Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable").

9. Section 108(c) extends the period under "applicable nonbankruptcy law" for a claimant to commence or continue a civil action "on a claim against the debtor" until the later of "such period" or "30 days" after the termination of the stay. 11 U.S.C. § 108(c).

10. Section 108(c) does not automatically toll, and the Court may not have jurisdiction to otherwise toll, the period for commencing a civil action by a non-debtor against a non-debtor. Section 108(c) comports with section 524(e)'s prohibition against granting a discharge in favor of a non-debtor, and like section 524(e), goes no further. But, under the Debtors' theory of what is an estate claim, Claimants cannot commence or continue civil actions against non-debtors under the alter ego or veil piercing doctrines while section 362(a)'s automatic stay is in place because doing so would offend section 362(a)(3)'s prohibition against acts to "exercise control over property of the estate." 11 U.S.C. § 362(a).

11. This means that while the Debtors' bankruptcy is pending, the Debtors can threaten plaintiffs with a stay violation if they commence or continue action against non-debtors or seek discovery in those actions to obtain and preserve evidence of misconduct. But if the Debtors' cases are dismissed following a sale transaction or the case is otherwise disposed of with or without a discharge, then non-debtor defendants can take the position that section 108(c) did not extend the period for commencing lawsuits against them. Congress could not have intended to remove civil rights in this manner—if frankly renders the Debtors' view of section 362(a)'s breadth as absurd.

12. Claimants could argue for equitable tolling under state law, but that is untested, not guaranteed and will open the door to conflicting rulings in state courts around the country benefiting and prejudicing various claimants. The point remains that if a claimant's claim (based on a particularized injury suffered by the claimant) against a non-debtor was intended to become

(or be treated as) estate property, then section 108(c)'s extension would apply more broadly to both the claimant's claim against the debtor and against a non-debtor (to the extent stayed during the bankruptcy proceeding). But that is plainly not what section 108(c) provides. The Debtors' theory of what is estate property, therefore, is un-workable and creates a situation where a non-debtor defendant could obtain a release by using the automatic stay to run out the clock.

13.     The Claimants here have a compelling interest in moving forward with litigation against non-debtor defendants beyond filing lawsuits before statutes of limitations expire. The Claimants here may not receive any recovery, or a de minimis recovery, on account of their claims against the Debtors' estates. Recovering from co-liable non-debtor entities and individuals is likely their only path to a full and meaningful recovery. Litigation against these non-debtor parties should not be delayed and should be permitted to proceed free and clear of any argument that exercising the legal rights and remedies afforded to victims under state law is impaired or abrogated in any respect by these chapter 11 proceedings. This includes litigations against non-Debtors ReGen Healthcare, LLC, Career Staff and GEC Rehabilitation Services, as well as certain individuals, including Joel Landau, David Gefner, David Harrington, and John Randazzo.

14.     The twin objectives of bankruptcy are "preserving going concerns and maximizing property available to satisfy creditors." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc*., 554 U.S. 33, 50 (2008) (quoting 203 North LaSalle, 526 U.S. at 453 (1999)). The Claimants here are not objecting to a legitimate sale of the Debtors' operating assets or the Debtors' efforts to preserve their operating business. But treating the Claimants' personal injury and wrongful death claims as estate property that can be sold to satisfy ***other*** creditors (like the scheme the UCC attempted in *Tehum*) or attempting to release and settle such claims so that tort victims will not have access to the civil justice system is not a valid bankruptcy purpose.

15. Creditor recoveries are maximized when individual creditors are permitted to vindicate their rights and seek recovery from highly solvent non-debtors that can be held liable under applicable state law. Granting the Motion and affording the Claimants a clear path forward to seek recovery from non-debtor entities is consistent with the Bankruptcy Code and the role that bankruptcy should serve within the context of the civil justice system.

## ARGUMENT

### I.    The Automatic Stay Does Not Protect Non-Debtor Parties

16. The automatic stay does not protect any party other than the debtor. *See Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) ("§ 362 does not operate as an automatic stay of claims against the co-defendants of [chapter 11 debtors]"); *In re Gronczewski*, 444 B.R. 526, 530 (Bankr. E.D. Pa. 2011) ("[It] is the black letter bankruptcy principle that § 362(a) does not create a general, automatic stay of a creditor's right to assert claims against related non-debtor parties."); *In re Pierce*, 272 B.R. 198, 211 (Bankr. S.D. Tex. 2001) ("[S]ection 362 stay does not protect any party other than the debtor and does not protect any property other than property of the estate").

17. Here, the Claimants are seeking to commence (to avoid a statute of limitations defense) or continue litigation against non-debtor parties. Whatever rights are afforded to the Claimants under state law to seek a recovery from highly solvent non-debtor parties are rights that the Claimants should be free to exercise while these chapter 11 cases are pending. The automatic stay imposed by section 362(a) does not enjoin such litigation.

### I.    The Claimants' Claims Are Not Property of the Debtors' Estates

18. In order to circumvent the fact that 362(a) does not create a general, automatic stay of a creditor's right to assert claims against related non-debtor parties, the Debtors here will likely take the position that the Claimants' claims based on injuries that they suffered are property of the

8

Debtors' estates such that the commencement or continuation of litigation by the Claimants against non-debtor defendants would offend section 362(a)(3)'s prohibition against acts to "exercise control over property of the estate." 11 U.S.C. § 362(a). But the Claimants' claims against related non-debtor parties are not property of the Debtors' estates.

19.     When a debtor files for bankruptcy, its estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A survey of Fifth Circuit case law, as well as case law outside the Fifth Circuit, shows that whether a cause of action is property of a debtor's estate is informed by three factors: [1] which party suffered the injury; [2] whether the debtor could have asserted the cause of action under state law prior to the commencement of the case; and [3] whose conduct is alleged to have caused the injury.

### A.     The Party Who Suffered the Injury Owns the Cause of Action

20.     The first factor is which party suffered the injury that gives rise to the cause of action. *See Matter of Buccaneer Res., L.L.C.,* 912 F.3d 291 (5th Cir. 2019); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008); *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). *Buccaneer*, *Seven Seas* and *Educations Group* illustrate this point.

21.     In *Buccaneer*, the former CEO of a chapter 11 debtor filed a state court action against a secured lender to recover on a tortious interference theory for using its influence over the debtor to persuade the debtor to fire the CEO. 912 F.3d at 292. The issue before the Court was whether the tortious interference claim belonged to the former CEO or whether the claim belonged to the debtor and, therefore, was property of the debtor's estate.

22.     To resolve this issue, the Fifth Circuit found that whether a creditor can pursue a claim against third parties depends on whether "the creditor has suffered a direct injury or one that is derivative of an injury to the debtor." *Id.* at 293. "If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate."

*Id.* But if "the claim does not involve any harm to the debtor" then the claim "cannot be part of the estate" and clearly belongs to the creditor. *Id.* And, if the conduct at issue harms both the debtor and the creditor, then "the estate" and the "creditor" each "have separate claims against" the "third party arising out of the same events." *Id*.

23. Applying this framework, the Fifth Circuit held that since "the tortious interference claim" was "based on an injury" suffered by the former CEO—namely, the loss of employment— and not the debtor, the claim belonged to him and was not property of the estate. *Id.* at 296.

24. The Fifth Circuit reached a similar conclusion in *Seven Seas*. In *Seven Seas*, bondholders that held unsecured notes issued by a chapter 11 debtor brought a state-court action for conspiracy to defraud and aiding and abetting fraud against a secured creditor of the debtor. 522 F.3d at 587. The issue was whether the claims belong to the claimants or the estate.

25. The Fifth Circuit found that the claims belonged to the bondholders because they were based "on the damages that *they* suffered as a result of *their* reliance on" the secured creditors' misrepresentations. *Id.* at 585 (emphasis in original). The Fifth Circuit held that "the existence of common parties and shared facts" does not give rise to an estate claim because "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Id.*

26. The Fifth Circuit reached a similar conclusion in *Educators Group*. In *Educators Group*, an entity named Educators Group Health Trust ("EGHT") that was established to provide health benefits to teachers in local school districts filed for chapter 7 relief. 25 F.3d at 1283. The school districts filed a lawsuit in state court against EGHT's third party administrator asserting claims for mismanagement and fraud to recover damages that they suffered. *Id.* The chapter 7 trustee intervened in this action and alleged that these claims belonged to EGHT's estate.

27.     The school districts argued that the claims did not belong to EGHT's estate because they did not "alleged that the debtor suffered any injury or harm." *Id.* at 1284.  The Fifth Circuit disagreed and found that several "of the causes of action alleged direct injury to the debtor, from which an injury to the plaintiff school districts is derived." *Id.*

28.     However, the fact that some of the claims were derivative, did not mean that all the claims were derivative.  *Id.* at 1285.  The Fifth Circuit held that the claims that alleged that the defendants had intentionally made misrepresentations to the school districts alleged "a direct injury," and that these claims belonged "to the plaintiff school districts and not the estate." *Id.*

29.     This Fifth Circuit's analysis in *Buccaneer*, *Seven Seas* and *Educations Group* accords with Article III standing requirements.  The Supreme Court has recognized that to have Article III standing, a plaintiff must show that he or she suffered an injury.[4]

30.     And, as the Supreme Court held in *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434 (1972) a trustee (or debtor in possession) lacks standing to sue third parties on behalf of the estate's creditors.  *Id*.  If a claim involves an injury that is specific to a creditor, it is a legal or equitable interest of the creditor who suffered the injury.  *Id*.

31.     In *Caplin*, a bankruptcy trustee brought a lawsuit against a third-party indenture trustee for the debtor's debentures based on the indenture trustee's alleged failure to fulfill its obligations under the indenture.  The holders of the debentures, who comprised a subset of the debtor's creditors, held claims against the indenture trustee that could have been asserted by them outside of bankruptcy based on the indenture trustee's alleged misconduct.

---

[4]     *California v. Texas*, 593 U.S. 659, 668 (2021) (holding that a plaintiff has Article III standing only if he can allege personal injury); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is … concrete and particularized").

32.     The debtor was engaged in real estate activities.  To facilitate these activities, the debtor issued approximately $8.6 million in debentures.  A provision in the indenture required the company to maintain an asset-liability ratio of 2:1 to ensure a cushion against losses the company might suffer.  The company suffered massive losses.  An investigation later showed that the company's asset-liability ratio was 2:9.

33.     This led parties to concluded that the indenture trustee had willfully or negligently failed to fulfill its obligations under the indenture.  Specifically, it was alleged that the indenture trustee should have known that the company was engaging in transactions that its asset-liability ratio forbade.  Thus, the debenture holders held breach of contract claims against the indenture trustee based on losses that they suffered because of the indenture trustee's alleged misconduct.

34.     After the company filed for bankruptcy, the bankruptcy trustee (acting by and through the company) commenced a lawsuit against the indenture trustee.  The bankruptcy trustee brought claims of misconduct against the indenture trustee on behalf of the debenture holders.  The District Court held that the bankruptcy trustee lacked standing to assert these claims, and the Court of Appeals affirmed that decision.  The Supreme Court affirmed the Court of Appeal's decision.

35.     **First**, the Supreme Court found that the Bankruptcy Act did not give a bankruptcy trustee the right to "collect money not owed to the estate."  *Id.* at 428.  The breach of contract claim gave rise to a claim *by* the debenture holders *against* the indenture trustee.  This did not give rise to a situation where money was owed by the indenture trustee to the company.

36.     **Second**, the Supreme Court found that the bankruptcy trustee could not "make any claim" against the indenture trustee. *Id.* at 429.  Whatever "damage the debenture holders suffered" was as much the "fault" of the company that engaged in the transactions as it was the indenture trustee who failed to notice what was happening.  *Id.* at 430.  The debtor and the indenture trustee

were "in pari delicto." *Id.* The debtor was a party that caused harm and not a party that was harmed by the alleged misconduct.

37. **Third**, the Supreme Court found that a suit by the bankruptcy trustee would be "inconsistent with any independent actions" that could be brought by the debenture holders themselves. *Id.* at 431. This could lead to a "proliferation of litigation" by multiple petitioners seek to recover on essentially the same claim. *Id.* at 432. For these reasons, the Supreme Court held that the bankruptcy trustee did not have "standing to sue an indenture trustee on behalf of debenture holders." *Id.* at 434.

38. Just as the debtor in *Buccaneer* did not lose its job, and just as the debtors *Seven Seas* and *Educators Group* were not intentionally misled, the Debtors here did not suffer personal injuries or die due the Debtors' misconduct. The Claimants suffered an injury.

39. The Debtors were not left in bed soaking in their own urine. The Debtors did not suffer unplanned weight loss, dehydration, falls, significant pain and suffering, mental anguish, or violations of their personal dignity. The Debtors did not go to the hospital for treatment. The Debtors do not experience mental or emotional distress. They do not see the anguish in their family members' eyes as they suffered and eventually die. **No**—this is pain experienced by the Claimants. Under *Caplin*, the Debtors cannot stand in the Claimants' shoes and proclaims that the Claimants' claims against non-debtor parties are property of their estates.

**B.    State Law Determines Whether a Cause of Action Is Property of the Estate**

40. The second factor is whether the debtor could have asserted the cause of action under state law as of the commencement of the bankruptcy case. *See Educators Grp.* 25 F.3d at 1284 ("Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case.").

41.     It is well established that whether a cause of action is property of the estate depends on state law.[5]  A cause of action that does not belong to a debtor prior to the commencement of its bankruptcy case does not become estate property merely by reason of the happenstance of bankruptcy.[6]  It is axiomatic that state law is determined by rulings made by state courts (and not federal Bankruptcy, District, or Circuit Courts).[7]

42.     Under state law, the Debtors could not have asserted causes of action against non-debtor defendants under the alter ego or veil piercing doctrine[8] or under any other theory of liability based on such non-debtor defendants' own, independent conduct.

43.     The United States Supreme Court has held without exception that alter ego and veiling piercing is an equitable remedy and not an independent cause of action.[9]  Some Federal Circuit Courts, including the Fifth Circuit, that have considered whether claims based on the alter ego or veil piercing doctrines are estate claims have held that such claims are estate claims under section 541(a).  *See, e.g.*, *In re Tronox Inc.*, 855 F.3d 84, 99-104 (2d Cir. 2017); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704-05 (2d Cir. 1989); *Koch Refining v. Farms*

---

[5]     *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case.").

[6]     *Butner*, 440 U.S. at 55 ("Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'") (quoting *Lewis v. Mfrs. Nat'l Bank of Detroit*, 364 U.S. 603, 609 (1961)).

[7]     *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) (only a state, whether through its legislature or its supreme court, has the authority to declare state law).

[8]     *See supra* at fn. 2.

[9]     *Peacock*, 516 U.S. at 866 ("Piercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'").

*Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1346 (7th Cir. 1987); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987).

44.     But in each of these cases, the Circuit Court held that for a cause of action to be property of a debtor's estate under section 541(a), the cause of action must be one that the debtor could have asserted on its own behalf under state law.[10]  These Courts did not purport to disregard the Supreme Court's holdings in *Butner* or *Erie*.  Rather, each of these Courts performed an *Erie* guess as to how the state appellate courts would rule on this issue.

45.     However, *after* these Federal Circuit Courts ruled that the debtor/corporation could assert a claimant's cause of action against a non-debtor third party based on the alter ego or veil piercing doctrines under applicable state law, state appellate courts ruled that these doctrines do not create substantive causes of action but merely expand the scope of potential sources of relief available to claimants.[11]  ***Today***, under *Golden Gate*, *A.L. Dougherty*, *Texas American Express*, and *Secrest*, companies like the debtors in *Tronox*, *St. Paul Fire*, *Koch Refining*, and *S.I. Acquisition* could not assert a cause of action (to recover damages suffered by claimants) against non-debtor third parties based on the alter ego or veil piercing doctrines under applicable state law.

---

[10]   *See Tronox*, 855 F.3d at 104 (considering Pennsylvania law); *St. Paul*, 884 F.2d at 700 ("Whether the rights belong to the debtor or the individual creditors is a question of state law"); *Koch Refining*, 831 F.2d at 1344 ("State law determines whether property is an asset of the debtor. … To determine whether this alter ego action is property of the debtor or of the appellants, therefore, we must turn to the law of the state in which legal or equitable title to the cause of action is asserted."); *S.I. Acquisition*, 817 F.2d at 1153 (considering Texas law).

[11]   *Compare Tronox*, 855 F.3d at 99-104 (finding veil piercing cause of action is cognizable under **Pennsylvania** law); *St. Paul Fire*, 884 F.2d at 703 (finding veil piercing cause of action is cognizable under **Ohio** law); *Koch Refining*, 831 F.2d at 1346 (finding veil piercing cause of action is cognizable under **Illinois** law); *S.I. Acquisition*, 817 F.2d at 1153 (finding veil piercing cause of action is cognizable under **Texas** law); *with Golden Gate*, 648 Pa. at 644 (finding veil piercing is **not** a cause of action under **Pennsylvania** law); *A.L. Dougherty*, 98 N.E.3d at 515 (finding veil piercing is **not** a cause of action under **Illinois** law); *Texas Am. Exp.*, 190 S.W.3d at 725-26 (finding veil piercing is **not** a cause of action under **Texas** law); *Secrest*, 2015-Ohio-42 (finding veil piercing is **not** a cause of action under **Ohio** law).

46. Thus, if a Bankruptcy Court **today** adheres to the **holdings** in *Tronox*, *St. Paul Fire*, *Koch Refining*, and *S.I. Acquisition* (*i.e.*, for a cause of action to constitute estate property it must be one that the debtor could have asserted on its own behalf under state law), it could not reach the same **conclusions** reached in *Tronox*, *St. Paul Fire*, *Koch Refining*, and *S.I. Acquisition* about whether the causes of action at issue are property of the estate under section 541(a).

47. To hold today that the Claimants' causes of action against non-debtor defendants under the alter ego or veil piercing doctrines are property of the Debtors' estates under section 541(a), a Court would have to create federal common law that supplants state law.

48. But the Debtors cannot point to any compelling federal interest for adopting a federal common law rule here that deprives claimants of the legal, equitable, and Constitutional rights that they enjoy against non-debtor third parties outside of bankruptcy under state law. The Supreme Court has made it clear that state law (not federal common law) governs the substance of claims in bankruptcy.[12] The analysis under section 541(a) begins and ends with state law.

49. Further, not all claims that the Claimants seek to assert here involve the doctrines of alter ego or veil piercing. Causes of action asserted by tort claimants against non-debtor parties based on their own, independent conduct cannot be considered estate property under even the most expansive view of section 541(a) of the Bankruptcy Code. *See, e.g.*, *In re Port Neches Fuels, LLC*, 660 B.R. 177 (D. Del. 2024). Thus, even if the Court were to create federal common law and find that the Debtors can assert a cause of action based on the doctrines of alter ego or veil piercing to

---

[12] *See Rodriguez v. FDIC*, 589 U.S. 132, 136-137 (2020) (holding federal courts should rely on the law of the relevant state, and not federal common law, when determine what is property of the estate); *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (stating that the basic rule "in bankruptcy is that state law governs the substance of claims...."); *Barnhill v. Johnson*, 503 U.S. 393, 397–98 (1992) (concluding that "in the absence of any controlling federal law, 'property' and 'interest[s] in property' are creatures of state law.") (quoting *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 370, (1945)); *Butner*, 440 U.S. at 54 ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

recover damages based on injuries suffered by claimants (and not the Debtors), the automatic stay still would not enjoin all litigation against non-debtor parties.

### C.    The Debtors and/or Their Related Parties Caused the Injuries

50.    The third factor is whose conduct is alleged to have caused the injury.  This is a corollary of the first factor: if the Debtors' or their related parties' conduct caused the Claimants to suffer injuries, the resulting causes of action are not estate claims.  A Bankruptcy Court does not have the authority to discharge or release a non-debtor third party for liability arising from its own conduct.  *See* 11 U.S.C. § 524(e).

51.    Treating the Claimants' claims against non-debtor parties as estate property is also contrary to the Supreme Court's holding in *Purdue*.  To justify the discharge demanded by the Sackler family as a condition to funding the proposed settlement in *Purdue*, the debtors argued, among other things, that the settlement could be justified, in part, as a settlement of estate claims. The Supreme Court knocked down this argument in one sentence:  "nothing in § 1123(b) suggests [that the claims against the Sacklers] can be bargained away without the consent of those affected, as if the claims were somehow Purdue's own property."  603 U.S. at 220.

52.    The Debtors' position that they can encumber, sell, or settle the Claimants' claims against co-liable non-debtor parties is a greater afront to our civil justice system than the plan proposed in *Purdue*.  In *Purdue*, the debtors' contended that the claimants' claims against the Sacklers could be released as part of a plan that enjoyed the overwhelming support of the claimants.  Here, the Debtors are attempting to secure the same result by "encumbering" and "selling" the Claimants' claims ***without a vote or the confirmation of a chapter 11 plan***.  The nonconsensual third-party release in *Purdue* at least enjoyed broad claimant support, whereas the nonconsensual third-party release that Debtors are attempting to secure do not.

17

### D. Section 541(a) Violates the Fifth Amendment If It Means that the Claimants' Claims Are Now Property of the Debtors' Estates

53.     Assuming, *arguendo*, that this Court finds that section 541(a) can be used to treat the Claimants' personal injury and wrongful death claims and rights to seek recovery from non-debtor parties as property of the Debtors' estates, then section 541(a) violates the Fifth Amendment and should be declared unconstitutional.

54.     The Bankruptcy Code, like other federal statutes, should not be interpreted in a manner that renders the Bankruptcy Code unconstitutional.[13]  The Fifth Amendment provides that "[n]o person" shall be "deprived" of "property" without "due process of law" and "without just compensation."  U.S. Const. amend. V.[14]  A cause of action is a property right protected by the Fifth Amendment and the Fourteenth Amendment.[15]

---

[13]  *See Blanchette v. Connecticut Gen. Ins. Corp.*, 419 U.S. 102, 134 (1974) ("[W]hen a statute is ambiguous, construction should go in the direction of constitutional policy.") (quotation omitted).

[14]  The Fourteenth Amendment also provides that "[n]o state" shall "deprive any person" of "property[]" without due process of law." *Id.* at amend. XIV.

[15]  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807, 813 (1985) (a "chose in action is a constitutionally recognized property interest possessed by each of the plaintiffs"); *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 868, n.9 (5th Cir. 1971) ("A 'cause of action' is an asset or a property right of the individual to whom it belongs."); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.") (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); Adam J. Levitin, *The Constitutional Problem of Nondebtor Releases in Bankruptcy*, 91 FORDHAM L. REV. 429, 440 (2022) ("Nonconsensual nondebtor releases are inconsistent with … due process requirements.  Creditors who have direct claims against nondebtors have property interests:  their direct claims are 'choses in action.'  Like other types of property interests, these choses in action are protected by the Due Process Clause.").

18

55.     Indeed, to protect the right to sue, every citizen of the United States is entitled to free access to its judicial tribunals in every State of the Union."[16]  This makes sense because no right, whether a property right or liberty right, has meaning if it cannot be judicially enforced.[17]

56.     It follows that a cause of action asserted by a claimant against a defendant to recover damages for the personal injury and/or wrongful death (*i.e.*, the ultimate deprivation of liberty) suffered by her constitutes a property right protected by the Fifth Amendment that includes the right to access our judicial tribunals, appear and be heard therein, and seek appropriate relief.

57.     Under the Debtors' theory of what constitutes estate property, the Claimants' claims against non-debtor parties were taken from them on the petition date.  This fact exposes a flaw in the Debtors' theory.  The Debtors' theory depends on section 541(a) causing the plaintiffs' claims against non-debtor parties to become estate property.  But the estate created under section 541(a) is created upon the "commencement" of a bankruptcy case.  11 U.S.C. § 541(a). And there was no notice provided to the Claimants here prior to the petition date.

58.     Under the Debtors' theory, one moment, pre-petition, the tort claimants held personal injury and wrongful death claims against various non-debtor defendants that they could assert on their own behalf under state law.  But, the next moment, upon the petition date, those *same* claims became estate property.  Under the Debtors' view of section 541(a), the claimants

---

[16]    *Slaughter-House Cases*, 83 U.S. 36, 79 (1873) (Every citizen "has the right of free access to … courts of justice in the several States."); *Crandall v. Nevada*, 73 U.S. 35, 48 (1867) ("[E]very citizen of the United States … is entitled to free access … to its judicial tribunals."); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he [or she] has not been made a party by service of process …, it being 'our deeply-rooted historic tradition that everyone should have his [or her] own day in court.'") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) and *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

[17]    *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("[I]t is settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress.").

were divested of their claims against non-debtor entities on the petition date without notice and without any due process.

59.     But, under the Fifth Amendment, due process must be afforded **before** a plaintiff's property can be taken.[18]  That a Court may subsequently analyze whether a settlement of estate claims meets the Rule 9019 standard, or that notice of plan confirmation, or the settlement, may be provided to creditors after the petition date does not solve the problem.

60.     If section 541(a) operates to take the Claimants' claims (arising from injuries that they suffered) and transfer them to a debtor, it must do so on the petition date—*i.e.*, as of the "commencement of the case"—without due process or notice.  11 U.S.C. § 541(a).  This offends the Fifth Amendment.

61.     When the Supreme Court has considered the issue of what constitutes property of the estate under section 541(a), it has been very careful to make it clear that if a claim is specific to a creditor, it is a personal claim and is a legal or equitable interest only of the creditor that suffered the injury and not the debtor.  *See Caplin*, 406 U.S. at 434.[19]  Removing this guardrail creates a Fifth Amendment issue because the creation of bankruptcy estate occurs **before** claimants receive any form of notice in a bankruptcy case.

62.     The due process violation goes beyond inadequate notice.  Due process in bankruptcy requires that when a party receives a discharge of its liabilities, that party's assets must be distributed in a manner that is "consonant with a **fair**, **reasonable**, and **equitable** distribution of

---

[18]     *See Logan*, 455 U.S. at 433 (it is a "truism" that "some form of hearing" is required "before" a "protected property interest" is taken); *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594–95 (5th Cir. 2003) ("Parties in interest must receive notice and an opportunity to be heard before their interests may be adversely affected.").

[19]     *See also In re Bernard L. Madoff Inv. Securities LLC*, 721 F.3d 54, 67 (2d Cir. 2013) ("'[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties' on behalf of creditors.") (quoting *Caplin*, 406 U.S. at 428).

those assets."[20]  Our bankruptcy laws have never allowed a party to receive a discharge unless

creditors receive the *full* value of the debtor-estate's non-exempt assets, and they share that value

on a *fair* basis.[21]  Providing a co-liable and solvent non-debtor with a release, while Claimants are

effectively paid nothing on account of their injuries is not an "equitable distribution."

63.    If section 541(a) permits such an unlawful taking of property rights, then that

section is unconstitutional.  Again, interpretations of statutes that render them unconstitutional

should be disfavored.  This Court need only follow Supreme Court and Fifth Circuit case law to

find that the Claimants' causes of action against non-debtors are not estate property.

64.    But if section 541(a) does permit an unlawful taking here, it is section 541(a) that

must yield.  The United States has a "deep-rooted historic tradition that everyone should have his

own day in court."  *Martin*, 490 U.S. at 762.  Fundamental rights are protected in bankruptcy.

*Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902) (Congress may "prescribe … regulations

concerning discharge in bankruptcy" that are compatible with "fundamental law").

65.    "The right to sue and defend in the courts … lies at the foundation of orderly

government."  *Chamber v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907).  "It is one of the

highest and most essential privileges of citizenship," particularly when the lawsuit involves bodily

injuries.  *Id*.  This is not a right that Congress has the power to take away.

---

[20]    *Kuehner v. Irving Tr. Co.*, 299 U.S. 445, 452 (1937) (emphasis added); *see R.F.C. v. Denver & R.G.W.R. Co.*, 328 U.S. 495, 533 (1946) ("[T]he provisions for confirmation by the courts over the creditors' objection are within the bankruptcy powers of Congress … so long as the creditor gets all the value of his lien and his share of any free assets.").

[21]    *See Purdue*, 144 S.Ct. at 2086 ("Every bankruptcy law … from 1800 until 1978 [has] generally reserved the benefits of discharge to the debtor who offered a 'fair and full surrender of [its] property.") (quoting *Sturges v. Crowninshield*, 4 Wheat. 122, 176 (1819), and citing *Central Va. Community College v. Katz*, 546 U. S. 356, 363–364 (2006); Bankruptcy Act of 1800, §5, 2 Stat. 23 (repealed 1803); Act of Aug. 19, 1841, §3, 5 Stat. 442–443 (repealed 1843); Act of Mar. 2, 1867, §§11, 29, 14 Stat. 521, 531–532 (repealed 1878); Bankruptcy Act of 1898, §§7, 14, 30 Stat. 548, 550 (repealed 1978)).

### E. Section 541(a) Violates the Seventh Amendment and Title 28 If It Means that the Claimants' Claims Can Be Treated as Estate Property

66.     Assuming, *arguendo*, that this Court finds that section 541(a) can be used to treat the Claimants' claims and rights to seek recovery from non-debtors as estate property, then section 541(a) also violates Seventh Amendment and 28 U.S.C. § 1411.

67.     The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."  Const. amd. 7.

68.     "If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 (1989).  28 U.S.C. § 1411 provides: "Except as provided in subsection (b) of this section, this chapter and title 11 ***do not affect*** any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a ***personal injury or wrongful death tort claim***."  28 U.S.C. § 1411 (emphasis added).

69.     A "right" that cannot be exercised is no right at all.  As Justice Scalia wrote in *McConnell v. Federal Election Commission*, 540 U.S. 93, 252 (2003): "What good is the right to print books without a right to buy works from authors?  Or the right to publish newspapers without the right to pay deliverymen?  The right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise."  *Id.*

70.     Likewise, what good is a victim's right to a trial by jury in personal injury or wrongful death claim if the victim would be enjoined from pursuing a recovery from a non-debtor defendant and recovering the amount awarded by the jury?

71.     Under the Debtors' scheme, if a claimant were to attempt to exercise his or her right to a jury trial in litigation against a non-debtor, he or she could be brought before the Court and could be found to be in contempt of this Court's order approving a sale.

72.     Instead of asserting a claim against a non-debtor and collecting on the award from such party, the claimant would be told that he or she has no right to even seek payment from the non-debtor.  The legal rights that would follow from a trial by jury in a personal injury and wrongful death claim against the non-debtor party that existed immediately prior to the commencement of these cases under state law would ***not*** be available to claimants.  The right to a jury trial would not only be ***affected***, but such right would be abrogated entirely.

## III.   Causes Exists to Grant Relief from the Automatic Stay

73.     To the extent that the automatic stay applies, cause exists to grant relief from the automatic stay to permit the Claimants to pursue their claims against non-debtor parties in the civil justice system.  The Court may grant relief from the stay "for cause."  11 U.S.C. § 362(d)(1).

74.     While the Bankruptcy Code does not specify what constitutes "cause" to grant relief from the stay other than "lack of adequate protection," the legislative history to the provision provides some guidance:

> Subsection (d) requires the court, on request of a party in interest, to grant relief from the stay, such as by terminating, annulling, modifying, or conditioning the stay, for cause.  The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief but is not the only cause…. [A] a desire to permit an action to proceed to completion in another tribunal may provide another cause. … The facts of each request will determine whether relief is appropriate under the circumstances.  H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-44 (1977).

Quoted in *In re Fowler*, 259 B.R. 856,858 (E.D. Tex. 2001).

75.     The granting of relief from the automatic stay is left to the discretion of this Court to decide on a case-by-case basis. *Fowler*, 259 B.R. at 858; *In re Xenon Anesthesia of Texas, PLLC*,

23

510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). "Cause" is a broad concept that is intentionally flexible so that courts may respond to different or unique circumstances.[22]

76.     The easiest ground for determining that 'cause' exists in favor of an unsecured creditor is when the creditor seeks to recover from a source outside of the estate.[23] The automatic stay does not apply to actions against a co-liable party like a guarantor.[24] Here, the Claimants are seeking to recover in full on their claims by seeking judgments against and collection from non-debtor defendants. There is no material risk of harm to the Debtors' estates.

77.     To the contrary, any amounts collected by the Claimants from non-debtor defendants will potentially offset the amount owed to them by the Debtors. By comparison, the Claimants will be prejudiced if they are prevented from pursuing their claims against the non-debtor defendants, who may be taking steps to shield or dissipate assets to avoid future judgments.

---

[22]     *Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) (quoting *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)).

[23]     *See Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982) (affirming bankruptcy court's lifting of the stay to allow a personal injury suit against the debtor and defended by insurance to proceed to judgment but prohibiting claimant from attempting to collect any judgment against the debtor); *In re Terry*, 12 B.R. 578, 583 (Bankr. E.D. Wis. 1981) (finding that no damage would result to the debtor from lifting the stay because the claimant had stipulated it sought recovery only from the other co-defendants, not the debtor); *In re Honosky*, 6 B.R. 667, 669 (Bankr. S.D. W.Va. 1980) (lifting the stay to allow the civil suit to proceed where the debtor had liability insurance, the insurance would absorb the costs of his defense, the continuation of the suit would not result in great prejudice to the debtor or the estate, and where not lifting the stay would effectively preclude plaintiff from any recovery for her alleged injuries); *see also In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (finding that lifting the stay would not interfere with the administration of the debtor's estate, have an impact on any property of the estate, result in no prejudice to the debtor or the estate, or compromise the trustee's powers).

[24]     *See Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012) (automatic stay does not apply to actions against guarantors); *Browning Seed, Inc. v. Bayles*, 812 F.2d 999, 1003 (5th Cir. 1987) ("Bankruptcy law … permits a guarantor to be sued in state court while pending bankruptcy proceedings against the principal debtor preclude suit in state court against the debtor").

## IV.    The Debtors Have Not Sought an Extension of the Automatic Stay

78.    Finally, it bears noting that the Debtors have not sought an extension of the automatic stay to protect co-liable non-debtor defendants from litigation.  *See*, *e.g.*, *In re Red River Talc, LLC*, Case No. 24-90505 (CML), Adv. Pro. No. 24-03194 (Bankr. S.D. Tex.).

79.    To obtain such relief, the Debtors would have to satisfy the Fifth Circuit's standard for obtaining injunctive relief.  To date, the Debtors have not initiated any adversary proceedings involving a request that the stay be extended to protect non-debtor parties.  If the Debtors took such actions, it is doubtful that they could show, *inter alia*, that they would suffer irreparable harm.

80.    The parties who suffered irreparable harm are the Claimants.  Preventing or delaying them from seeking justice would not serve the public interest.  Permitting solvent, co-defendants to escape liability and hide behind the automatic stay would disserve the public interest.  The equities here do not favor the Debtors or their related parties.  They favor the dead and those who seek justice on their behalf.

### NOTICE

81.    Notice of this Motion has been served on:  (a) the U.S. Trustee; (b) counsel to the Debtors; and (c) all persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002.  Considering the nature of the relief requested herein, the Committee respectfully submits that no other or further notice need be provided.

### NO PRIOR REQUEST

82.    No prior request for the relief sought in this Motion has been made to this or any other court in connection with this case.

### CONCLUSION

83.    WHEREFORE, for the reasons set forth above, the Motion should be granted.

Dated: August 22, 2025

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC**

/s/ Sander L. Esserman
Sander L. Esserman
State Bar No. 06671500
Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201-2689
Telephone:     (214) 969-4900
Facsimile:     (214) 969-4999
Email: esserman@sbep-law.com
          dapice@sbep-law.com

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice forthcoming*)
Eric R. Goodman (*pro hac vice forthcoming*)
Gerard T. Cicero (*pro hac vice forthcoming*)
Seven Times Square
New York, New York 10036
Telephone:     (212) 209-4800
Facsimile:     (212) 209-4801
Email: dmolton@brownrudnik.com
          egoodman@brownrudnick.com
          gcicero@brownrudnick.com

**MARKS, BALETTE, YOUNG & MOSS PLLC**
Jacques G. Balette (*pro hac vice forthcoming*)
7521 Westview Dr.
Houston, Texas 77055
Telephone:     (713) 681-4830
Facsimile:     (713) 681-2811
Email: jacquesb@marksfirm.com

*Counsel to Certain Holders of Personal Injury and Wrongful Death Claims*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in this bankruptcy case on August 22, 2025.

/s/ Peter C. D'Apice
Peter C. D'Apice

## CERTIFICATE OF CONFERENCE

Pursuant to Local Bankruptcy Rule 4001-1, counsel for Movants conferred with Debtors' counsel to discuss the foregoing Motion and attempt to reach an agreement on the requested relief on August 22, 2025, and Debtors are opposed to the relief sought in this Motion.

/s/ Jacques G. Balette
Jacques G. Balette

**EXHIBIT A**

1.      Estate of Alma Brown
2.      Estate of Stella Lucero
3.      Yvonne Tellez-Ramirez
4.      Estate of Janet Copsy
5.      Estate of Manuel Salaiz
6.      Estate of Gloria Quintana
7.      Estate of Eshter Monje
8.      Estate of Don Arrington
9.      Estate of Eloy Medina
10.     Georgia Romero
11.     Estate of Linda Medlock
12.     Estate of Ruben Montoya
13.     Estate of Faustina Tinkham
14.     Adam Gomez
15.     Estate of Johnny Chewiwi
16.     Shelia Leakey-O'brien
17.     Estate of Jane Handley
18.     Estate of James Chavis
19.     Estate of Paul Baca
20.     Estate of Lorna Charles
21.     Estate of Shearron Mitchell
22.     Vikki Romo
23.     Estate of Jerry Jones
24.     Estate of Andrea Dominquez
25.     Delores Buckner
26.     Estate of Emden Syres
27.     Estate of Laura Dinkins

**EXHIBIT B**

**PROPOSED ORDER**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTCARE, INC., *et al.*,[1] | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |

ORDER GRANTING MOTION OF CERTAIN
HOLDERS OF PERSONAL INJURY AND WRONGFUL
DEATH CLAIMS FOR RELIEF FROM THE AUTOMATIC
STAY TO PURSUE CLAIMS AGAINST NON-DEBTOR DEFENDANTS

This matter, having come before the Court upon the *Motion of Certain Holders of Personal*

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 291 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

*Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against
Non-Debtor Defendants* (the "Motion"); and this Court having jurisdiction to consider the Motion
and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper
before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and
determined that notice of the Motion as provided to the parties listed therein is reasonable and
sufficient, and it appearing that no other or further notice needs to be provided; and this Court
having held a hearing on the Motion; and this Court having determined that the legal and factual
bases set forth in the Motion establish just cause for the relief granted therein; and it appearing that
the relief requested in the Motion is appropriate under section 362 of the Bankruptcy Code; and
upon all of the proceedings had before this Court and after due deliberation and sufficient cause
appearing therefor, it is hereby **ORDERD, ADJUDGED, AND DECREED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The automatic stay in the Debtors' chapter 11 cases (the "Chapter 11 Cases") either
does not enjoin the Claimants from taking, or is modified to permit the Claimants to take, the
following actions in respect of their personal injury and wrongful death claims:

> A.      Filing, commencing, continuing, or prosecuting any cause of action
> against a party that is not a debtor in the Chapter 11 Cases (a "Non-
> Debtor Cause of Action"), including, without limitation, ReGen
> Healthcare, LLC, Career Staff, GEC Rehabilitation Services, Joel
> Landau, David Gefner, David Harrington, and John Randazzo,
> based on the rights, remedies, theories of liability and legal doctrines
> available to the Claimants under applicable state law immediately
> prior to the commencement of the Chapter 11 Cases, including,
> without limitation, negligent undertaking, the doctrine of successor
> liability, and the doctrines of alter ego and veil piercing
> (collectively, the "Claimants' Rights and Remedies") .

> B.      Seeking discovery, including written discovery and depositions, in
> connection with any Non-Debtor Cause of Action, including in
> connection with any proceedings involved alleged fraud on a court.

      C.     Seeking to collect and actually recover and collect on account of any judgment or settlement from a party that is not a debtor in the Chapter 11 Cases on account of the Claimants' Rights and Remedies.

      D.     Seeking to sever the Debtors from any filed lawsuit against any non-debtor person or entity.

3.     Any judgment, settlement or recovery received by a Claimant on account of a Non-Debtor Cause of Action is not and shall not be deemed property of the Debtors' estates and is not subject to turnover to any Debtor or the estates, nor shall it be subject to any liens or other encumbrance on any of the Debtors' property or the estates whether or not created prior to or during these Bankruptcy Cases. The Debtors and the estates shall have no right to seek to recover on any judgment, settlement or recovery received by a Claimant on a Non-Debtor Cause of Action, *provided, however*, that the Debtors' and estates' rights to assert, if permissible under applicable law, that such recovery to by Claimant on a Non-Debtor Cause of Action may effect a judgment reduction for any Claim by the Claimant against any Debtor is preserved.

4.     The relief set forth in Paragraph 2 of this Order does not obligate any of the Claimants to take any of the foregoing actions. Further, and for the avoidance of doubt, the relief set forth in Paragraph 2 of this Order shall not permit the Claimants to take any of the following actions against the Debtors or their estates:

      A.     commence or continue, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Debtors that was or could have been commenced before the commencement of the Chapter 11 Cases, or to recover from the Debtors on account of a claim against the Debtors that arose before the commencement of the Chapter 11 Cases.

      B.     enforce against the Debtors or against property of the Debtors' estates a judgment obtained before the commencement of the Chapter 11 Cases.

      C.     obtain possession of property of the Debtors' estates or property from the Debtors' estates or exercise control over property of the

Debtors' estates, *provided*, *however*, that, and for the avoidance of doubt, the Claimants' Rights and Remedies shall not be considered property of the Debtors' estates.

D.    create, perfect, or enforce any lien against property of the Debtors' estates.

E.    collect, assess, or recover from the Debtors any claim against the Debtors that arose before the commencement of the Chapter 11 Cases.

F.    setoff of any debt owing to the Debtors that arose before the commencement of Chapter 11 Cases against any claim against the Debtors;

G.    commence or continue a proceeding before the United States Tax Court concerning a tax liability of the Debtors.

5.    This Order shall not permit any person or entity that is co-liable with the Debtors for any Non-Debtor Cause of Action to take any action that is inconsistent with sections 362, 502(e) or 509 of the Bankruptcy Code.

6.    The terms of this Order shall be immediately effective and enforceable upon its entry.

7.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # # END OF ORDER # # #

Presented and prepared by:

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC**

*/s/ Sander L. Esserman*
Sander L. Esserman
State Bar No. 06671500
Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201-2689
Telephone:     (214) 969-4900
Facsimile:     (214) 969-4999
Email: esserman@sbep-law.com
          dapice@sbep-law.com

- and –

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice forthcoming*)
Eric R. Goodman (*pro hac vice forthcoming*)
Gerard T. Cicero (*pro hac vice forthcoming*)
Seven Times Square
New York, New York 10036
Telephone:     (212) 209-4800
Facsimile:     (212) 209-4801
Email: dmolton@brownrudnik.com
          egoodman@brownrudnick.com
          gcicero@brownrudnick.com

- and –

**MARKS, BALETTE, YOUNG & MOSS PLLC**
Jacques G. Balette (*pro hac vice forthcoming*)
7521 Westview Dr.
Houston, Texas 77055
Telephone:     (713) 681-4830
Facsimile:     (713) 681-2811
Email: jacquesb@marksfirm.com

*Counsel to Certain Holders of Personal
Injury and Wrongful Death Claims*