**MCDERMOTT WILL & SCHULTE LLP**
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         mhelt@mwe.com
               jhaake@mwe.com

**MCDERMOTT WILL & SCHULTE LLP**
Alexander H. Southwell (*pro hac vice* forthcoming)
Jerry L. Hall (admitted *pro hac vice*)
Cris W. Ray (*pro hac vice* forthcoming)
One Vanderbilt Avenue
New York, NY 10011
Telephone:     (212) 547-5400
Facsimile:     (212) 547-5444
Email:         asouthwell@mwe.com
               jerryhall@mwe.com
               cray@mwe.com

**MCDERMOTT WILL & SCHULTE LLP**
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Catherine T. Lee (admitted *pro hac vice*)
Landon W. Foody (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:         dsimon@mwe.com
               ekeil@mwe.com
               wguerrieri@mwe.com
               clee@mwe.com
               lfoody@mwe.com

*Counsel for the Debtors and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) Case No. 25-80185 (SGJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Related to Docket No. 577** |

# DEBTORS' OBJECTION TO MOTION OF CERTAIN HOLDERS OF PERSONAL INJURY AND WRONGFUL DEATH CLAIMS FOR RELIEF FROM THE AUTOMATIC STAY TO PURSUE CLAIMS AGAINST NON-DEBTOR DEFENDANTS

---

[1]     The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/case/genesis/info. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

*Balette Exhibit 2*

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file this Objection (the "Objection") to the *Motion of Certain Holders of Personal Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against Non-Debtor Defendants* [Docket No. 577] (the "Motion").  In support of the Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.    Several individuals who allege personal injury and wrongful death claims against certain Debtors (the "Movants") ask this Court to determine that theoretical claims against specified and unspecified non-debtors—apparently stemming from alter ego or other veil piercing theories of liability—are not property of the Debtors' estate.  But Fifth Circuit law is clear that such claims *are* property of the Debtors' estate, and the automatic stay therefore prohibits Movants from pursuing their claims.

2.    The automatic stay protects the Debtors' assets from precisely the type of interference Movants seek.  The stay also (a) stops creditors from rushing to deplete the Debtors' estate and (b) maximizes creditors' pro rata share of the estate.  Allowing these Movants to pursue speculative and unsupported alter ego-based claims against the non-debtors would violate each of these principles.  For these reasons, the Fifth Circuit has held for decades that claims based on alter ego or veil piercing theories of liability belong to a debtors' estate.

3.    Movants advance fanciful and meritless arguments that the Fifth Circuit's precedent is not controlling.  In doing so, Movants invite the Court to commit error by not following well-established binding authority.  Movants' supposed constitutional concerns about due process and jury trial rights, and the constitutional challenges to aspects of the Bankruptcy Code, are simply not implicated by this Motion or the current situation.

4.      In addition to Movants' substantive failure to carry their burden by showing that their theoretical claims in fact belong to the estate, the Court should deny the Motion on procedural grounds.  Movants have completely failed to provide the necessary information to support the relief they seek.  Among other deficiencies, Movants have failed to: (a) provide any proposed complaint against a single potential non-debtor; (b) specify where these cases will be brought or which state alter ego law will apply; (c) identify all the non-debtors they intend to sue under an alter ego theory; or (d) provide any factual basis for asserting that any non-debtor is an alter ego of the Debtors.  As such, Movants' request is, at best, premature, and this Court lacks jurisdiction to decide the Motion for lack of ripeness.

5.      At bottom, Movants improperly seek to use this Court as a forum, and these Debtors as a tool, to try overturning well-established precedent in the Fifth Circuit and throughout the country.  Yet Movant's arguments as to why such precedent is not controlling, or why these facts are somehow distinguishable from the numerous times these theories were tested previously, are lacking and unpersuasive.  What is clear, however, is that these Movants—either through frivolous appeals[2] or continuing motion practice—will stop at nothing to inflict additional and unnecessary administrative burdens onto the Debtors' estates.  The Motion should be denied.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.  This matter

---

[2]     *See Notice of Appeal* [Docket No. 862] and *Notice of Appeal* [Docket No. 863] (noticing appeal of the Final DIP Order [Docket No. 677] and Bidding Procedures Order [Docket No. 685] approved on August 28, 2025).

is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Objection in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

## **BACKGROUND**

7.      Beginning on July 9, 2025 (the "Petition Date"), Genesis Healthcare, Inc. and 298

of its affiliates and subsidiaries each filed voluntary petitions for relief under chapter 11 of title 11

of the United States Code (the "Bankruptcy Code"), commencing the chapter 11 cases that are

being jointly administered under Case No. 25-80185 (SGJ).

8.      The Debtors filed for chapter 11 relief due to liquidity challenges they faced in the

wake of the COVID-19 pandemic, insufficient reimbursement rates, limited borrowing

availability, and the financial strains of defending general and professional liability claims.

*Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petitions and First Day Pleadings*

¶¶ 84-115 [Docket No. 18] (the "First Day Declaration").

9.      On August 21, 2025, a final hearing was held on the Debtors' DIP financing motion

[Docket No. 17]. At the hearing, Movants' counsel questioned Louis E. Robichaux IV, the

Debtors' Co-Chief Restructuring Officer, about the release of claims against non-debtor parties

based on alter ego theories of liability. *Transcript Regarding Hearing Held August 21, 2025* at

128:12-22 [Docket No. 724]. The very next day, on August 22, 2025, Movants filed the Motion.

Ultimately, the Court approved the Debtors' DIP financing, which had been modified to remove

liens in favor of the DIP lenders on avoidance actions and other causes of action held by the

Debtors.

10.     The Motion is brought by 27 individuals and estates (the "Movants") that allegedly

hold tort claims against the Debtors and certain non-debtor parties, for alleged negligence or other

torts that occurred inside the Debtors' facilities, and in the operation of the Debtors' business. *See*

Mot. Ex. A.

4

11.     The Motion asserts that each Movant "holds a personal injury tort or wrongful death claim against the Debtors" and that Movants "have the right under state law to seek recovery from non-debtor entities and individuals under various legal doctrines and theories of liability, including fraud and the doctrines of alter ego and veil piercing." *Id.* ¶ 3.

12.     Movants specifically identify seven non-debtors against whom they declare they may bring personal injury or wrongful death claims based on alter ego theories of liability. *Id.* ¶ 13. Movants describe the "co-liable non-debtor" parties as ReGen Healthcare, LLC, Career Staff and GEC Rehabilitation Services,[3] as well as "certain individuals, including Joel Landau, David Gefner, David Harrington, and John Randazzo" (collectively, the "Non-Debtor Defendants").

13.     The Motion is completely devoid of detail about Movants' purported claims against the Non-Debtor Defendants, which detail is necessary for adjudication. Movants merely advance unsupported conclusions and their fatal factual deficiencies are critical and numerous, including:

- No details on any specific causes of action the "Claimants" seek to bring;

- No facts supporting, or explaining in any way, any of these alleged claims;

- No details on the relationship between the Non-Debtor Defendants and the "Claimants";

- No details on the relationship between the Non-Debtor Defendants and the Debtors;

- No details on whether there are any indemnity agreements between any of the Debtors and the Non-Debtor Defendants;

- No details on which state or court the "Claimants" plan to file their claims;

- No details on the law "Claimants" believe would apply to their claims;

- No details on the applicable statute of limitations on any of the alleged claims; and

---

[3]     Movants list "GEC Rehabilitation Services" as a purported "co-liable" non-debtor defendant. In line with the lack of factual detail in the Motion, counsel was unable to ascertain the identity of this purported entity, despite researching both internal and external sources.

- No details on whether any of the "Claimants" previously filed causes of action against Debtors or any of the Non-Debtor Defendants and if they did, the procedural history of those cases.

14.     Movants seek relief from the automatic stay imposed by 11 U.S.C. § 362 insofar as it applies to prevent Movants from bringing or continuing litigation against non-debtor parties. *Id.* at 2, Ex. B (Proposed Order).

## ARGUMENT

15.     Movants fail to outline even the most basic facts necessary to resolve this Motion and are thus requesting an impermissible advisory opinion. Even assuming this Court has jurisdiction to entertain the Motion, any claims they allege against non-debtors are property of the estate under well established and long-standing precedent. The Motion must be rejected.

## I.      MOVANTS SEEK AN IMPERMISSIBLE ADVISORY OPINION

16.     Movants essentially ask the Court for a declaratory judgment concerning relief from the automatic stay to theoretical claims they have not filed but might pursue at some point in the future, against an unknown universe of non-debtor defendants that is not a Debtor,[4] in some other court. Movants want this Court to allow them to pursue these claims free of the stay, to rule that these claims are not property of the estate, and to hold that preventing them from bringing theoretical claims would violate their rights under the Fifth and Seventh Amendments. Because Movants have not filed any complaint against these non-debtors or presented any factual basis for the underlying claims or legal arguments, these issues are not fit for judicial consideration. And because Movants would suffer no hardship if the Court were to withhold decision until an appropriate time, this Court lacks jurisdiction to rule on the Motion because it does not present a

---

[4]     Movants attached a proposed order that goes far beyond the relief Movants actually seek in the Motion, which further demonstrates that Movants are seeking an advisory opinion on issues that are not ripe for judicial consideration. *See Motion of Certain Holders of Personal Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against Non-Debtor Defendants* [Docket No. 577], Ex. B (proposed order granting the requested relief).

justiciable controversy to the Court. The theoretical questions raised by Movants can only be litigated when they are real and concrete in the context of a filed case, not by the Motion.

### A. The Issues Raised in the Motion Are Not Fit for Judicial Decision

17.     Movants' motion lacks basic details and is rife with speculation, making their request for judicial action improper. "[I]t is well settled that the federal courts have no jurisdiction over claims that 'rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Camsoft Data Sys., Inc. v. S. Electronics Supply, Inc.*, 756 F.3d 327, 336 (5th Cir. 2014) (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998)) (cleaned up). "The ripeness doctrine is a justiciability doctrine derived from Article III's 'case' or "controversy' requirement and from 'prudential reasons for refusing to exercise jurisdiction.'" *In re Moody Nat'l SHS Houston H, LLC,* 426 B.R. 667, 679 (Bankr. S.D. Tex. 2010) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 809 (2003)). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *In re TIC United Corp.*, 2008 WL 2437868, at *11 (Bankr. N.D. Tex. 2008) (quoting *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000)). If a court finds a claim "abstract or hypothetical" it should dismiss the case for lack of ripeness. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833* F.2d 583, 586-87 (5th Cir. 1987)).

18.     To determine jurisdiction, the ripeness doctrine "requires courts to consider both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *In re Moody* 426 B.R. at 679 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)). Courts routinely find issues "not fit for decision" when "further factual development is required" or if the issues depend on "contingent future events that may not occur as anticipated, or . . . at all.'" *In re Burr Wolff, LP*, 2007 WL 2964835, *3 (S.D. Tex. 2007) (quoting *Monk v.*

*Houston,* 340 F.3d 279, 282 & n. 2 (5th Cir. 2003)) (cleaned up). Lack of fitness alone is sufficient
to make a case unripe, but courts also assess the potential harm dismissing a case for lack of
ripeness will cause. *Id.* at 5. Movants' motion completely lacks any factual development and rests
entirely on speculative future events, in addition to the fact that Movants will suffer no harm by
the Court's denial, leading to the unavoidable conclusion that the Court should dismiss the Motion
due to the lack of ripeness.

19. Although Movants provide no details about the factual background of the
"Claimants" or any suits they filed, of the twenty-seven "Claimants" alleged to have claims against
non-debtors, only ten have actually filed complaints against the Debtors.[5] These complaints
generally allege causes of action for negligence and wrongful death against various entities and
individuals, all of which relate to care provided by the Debtors and their employees. Notably, *none*
of the complaints list as defendants *any* of the purportedly "co-liable" Non-Debtor Defendants,
nor do they allege any facts that would otherwise give rise to such remedies. In short, Movants
are plainly trying an impermissible end-run around the automatic stay of their claims against
Debtors. And by providing no facts regarding roles the Non-Debtor Defendants supposedly played

---

[5] *See Estate of Stella Lucero v. 3514 Fowler Ave. Operations, LLC et. al.*, No. D-101-CV-2023-00518 (N.M. 1st
Jud. Dist. Ct. Mar. 7, 2023) (notice of settlement filed on Feb. 12, 2025); *Estate of Manuel Salaiz v. 3514 Fowler
Ave. Operations, LLC et. al.*, No. D-101-CV-2024-01833 (N.M. 1st Jud. Dist. Ct. Aug. 1, 2024) (notice of
settlement filed on Feb. 13, 2025); *Estate of Lorna Charles v. 1526 Lombard St. SNF Operations II, LLC et. al.*,
No. 240702133 (Pa. Ct. Com. Pl. Phila. Cnty. July 22, 2024) (case stayed due to bankruptcy filing); *Estate of
Alma Brown v. Clovis Healthcare & Rehabilitation Ctr., LLC et. al.,* No. D-101-CV-2023-02447 (N.M. 1st Jud.
Dist. Ct. Oct. 4, 2023) (notice of settlement filed on Feb. 12, 2025, subsequent litigation re settlement issues up
until bankruptcy notice filed on July 10, 2025); *Estate of Johnny Chewiwi v. Canyon Transitional Rehabilitation
Center, LLC, et al.*, No. D-101-CV-2024-00380 (N.M. 1st Jud. Dist. Ct. Feb. 14, 2024) (notice of settlement filed
on Feb. 12, 2025); *Estate of Janet Copsy v. 3514 Fowler Avenue Operations, LLC, et al.*, No. D-101-CV-2024-
00441 (N.M. 1st Jud. Dist. Ct. Feb. 20, 2024) (notice of settlement filed on Feb. 12, 2025); *Estate of James Chavis
v. SunBridge Retirement Care Associates, LLC, et al.*, No. 24CVS3564 (N.C. Super. Ct., Robeson Cnty. Mar. 9,
2024); *Estate of Eloy Medina v. St. Catherine Healthcare & Rehabilitation Center, LLC, et al.*, No. D-101-CV-
2024-01209 (N.M. 1st Jud. Dist. Ct. May 15, 2024) (notice of settlement filed on Feb. 18, 2025); *Estate of Gloria
Quintana v. 3514 Fowler Avenue Operations, LLC, et al.*, No. D-101-CV-2024-01827 (N.M. 1st Jud. Dist. Ct.
Aug. 1, 2024) (notice of settlement filed on Feb. 12, 2025); and *Estate of Don Arrington v. Fowler Avenue
Operations LLC et al.*, No. D-101-CV-2025-00148 (N.M. Dist. Ct. Jan. 17, 2025) (unresolved prior to notice of
bankruptcy filed July 16, 2025).

in harms for which Movants seek redress, the connections between the Non-Debtor Defendants and the Debtors or potential plaintiffs, or any facts supporting any cause of action, it is simply premature to consider the relief Movants seek.

20.     Texas courts have rejected jurisdiction to decide automatic stay issues due to lack of ripeness in cases lacking a developed factual record.  In *Wolff*, the district court overturned the bankruptcy court's decision regarding whether a disputed insurance policy was property of the estate, and disposition of those proceeds was therefore protected by the automatic stay, due to ripeness issues.  *See Wolff*, 2007 WL 2964835, at *3.  The court explained that whether the underlying assets "are property of the estate is not an issue that is presently fit for review because the facts that underlie that determination are not known." *Id*.  It found that too many hypothetical factors precluded determination of application of the automatic stay, including whether there would in fact be any proceeds available for disposition, or if these proceeds would exceed the relevant policy limit. *Id*. at 3-5.  The court also concluded that there was no harm from withholding consideration of the question because the automatic stay would protect the interests of all parties involved. *Id*. at 5.

21.     Like *Wolff*, Movants' motion "is not an issue that is presently fit for review because the facts that underlie that determination are not known."  *Id*. at 3.  Resolution of the Motion requires, among many other things, concrete information about Movants' specific legal theories, identification of the exact Non-Debtor Defendants that Movants intend to sue, description of the precise causes of action Movants intend to press against each Non-Debtor Defendant, identification of the purported applicable law, specific factual assertions about the Non-Debtor Defendants connection to each of the purported Plaintiffs, and allegations concerning the relationship of each Non-Debtor Defendant to the Debtors.  Without this information, it is

impossible to know which claims fit into the Fifth Circuit's framework for determining when third-party causes of action belong to the estate and thus whether the automatic stay applies. If, as the Movants claim, there are claims against non-debtors that are not barred by the automatic stay and are not property of the estate, and if Movants think they can actually bring these claims without running afoul of Federal Rule of Civil Procedure 11, Movants should develop those claims in the record, not try to advance speculative and unidentified claims they "might" be able to bring against the Non-Debtors Defendants. "[O]nce the issue ripens into an actual case or controversy, [Movants] will be free to request from the bankruptcy court whatever relief the facts and the law allow." *Wolff*, 2007 WL 2964835, at *5. Until then, these questions are theoretical and inappropriate for judicial resolution.

> **B. There Will Be No Hardship to Movants If the Court Withholds Consideration, While There Will Be Significant Hardship to the Debtors If the Court Allows These Cases to Proceed**

22. Movants argue that relief from the automatic stay is necessary "to avoid a statute of limitations defense" to their state law claims. Mot. ¶ 17. But Movants do not explain the nature of any specific claims they seek to bring, the applicable law, when the statute of limitations runs for these claims, and if so, whether such claims might be subject to any relevant tolling doctrines. The best Movants offer is that they "have the right under state law to seek recovery from non-debtor entities and individuals under various legal doctrines and theories of liability" related to personal injury and wrongful death claims. *Id.* ¶ 3. Movants fail to explain which statutes they intend to bring these claims under or which non-debtors they aim to bring these claims against.

23. Moreover, in the event the Court decides to impose the automatic stay as to the Non-Debtor Defendants for now, and later determines that Movants' claims are personal claims that belong to Movants, Movants may be afforded 30 days after the automatic stay is lifted to file their state claims even if the limitations period for those claims had otherwise expired during the

pendency of this Chapter 11 case. *See* 11 U.S.C. § 108(c); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 549 (Tex. Ct. App. 2009) ("If the automatic stay bars a creditor from proceeding against a nondebtor in a particular case, it would be irrational and unjust not to extend the benefit of § 108(c) to that creditor."). Despite Movants' contentions about what *could* happen, Movants are incorrect that the 30-day extension under § 108(c) would not be available if the Court decides that the claims at issue in the motion are arguably estate property such that the automatic stay applies for now. *See Brashear*, 302 S.W.3d at 549 (holding that plaintiff was "entitled to the benefit of § 108(c) with respect to her claims against [non-debtors] if the automatic stay barred her from proceeding on those claims").

24.     Thus, Movants overstate the threat of potential statute of limitations defenses; in truth, Movants have multiple pathways to preserve their supposed claims from limitations defenses. The automatic stay presents no true hardship to Movants at present, and their unsupported concerns about claims being time-barred do not warrant the broad and improper relief they seek. Conversely, relieving Movants of the automatic stay and allowing them to bring their claims without challenge would significantly hamper the Debtors' streamlined plan to efficiently reorganize by forcing the Debtors to spend time, resources, and attention on state law claims that implicate important aspects of the Debtors' reorganization efforts. Thus, given the minimal harm Movants face, the Court should dismiss the Motion as unripe for adjudication.

## II.     THE CAUSES OF ACTION MOVANTS DO IDENTIFY ARE INDISPUTABLY PROPERTY OF THE ESTATE

25.     Movants are essentially asking the Court to lift the automatic stay for claims they might bring against the Non-Debtor Defendants, but Movants have failed to carry their burden. The automatic stay extends to claims that are even arguably property of the estate. *See In re Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005) (finding that automatic stay applied at start of

bankruptcy even though a final determination as to whether property belonged to the estate had not yet been fully litigated). "Under § 362(d)(1), a creditor can obtain a lifting of the stay 'for cause.' The term 'cause' is not defined in the Code. Whether cause exists is a fact-intensive inquiry that must be determined on a case-by-case basis." *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (citations omitted). "[T]he burden of proof on a motion to lift the automatic stay is a shifting one: section 362(d)(1) requires an initial showing of cause by the movant; then, with the exception of the debtor's equity in the property (which is not at issue on a motion under section 362(d)(1), like this one), section 362(g) places the burden of proof on the debtor for all other issues." *Id.* (quoting *In re Syndicom Corp.*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001)). Because Movants are challenging the Debtors' interest in their claims against the Non-Debtor Defendants, Movants also bear the burden of proving that the Debtors have no interest in these claims.

26. Movants cannot meet their burden. As explained more fully below, it is impossible to tell at this point whether *all* causes of action Movants intend to pursue are property of the estate due to the Motion's lack of specifics on factual allegations or legal bases for their claims. But to the extent the Motion describes claims based on alter ego and veil piercing theories of liability, the automatic stay applies to Movants' alter ego claims under Fifth Circuit precedent that has been settled for decades. Therefore, as a matter of law, the Court cannot provide Movants with the relief they seek. Moreover, the reasons Movants provide for ignoring controlling Fifth Circuit authority do not pass muster. Movants' basis for distinguishing this authority—that alter ego is a remedy, not a cause of action—is not persuasive because the Fifth Circuit took this fact into consideration in its cases on this issue. Further, as explained more fully below, Movants' constitutional concerns are meritless and are not implicated by the automatic stay.

A.      **Fifth Circuit Law is Settled That Claims Based on Alter Ego Theories of Liability are Property of the Estate.**

27.     The very few details Movants do provide about their potential lawsuits are that the Non-Debtor Defendants will include "ReGen Healthcare, LLC, Career Staff[,] and GEC Rehabilitation Services, as well as certain individuals, including Joel Landau, David Gefner, David Harrington, and John Randazzo." Mot. ¶ 13. And the Movants' "various legal doctrines and theories of liability" "to seek recovery from [these] non-debtor entities and individuals" apparently include "fraud and the doctrines of alter ego and veil piercing." *Id.* ¶ 3. Finally, based on the descriptions in the Background section of the Motion, the torts underlying these "legal doctrines and theories of liability" appear to include negligence, medical malpractice, personal injury, and wrongful death. *See id.* ¶ 4.

28.     It has been black letter law in the Fifth Circuit (and many other circuits) for decades that claims seeking to hold alter egos or control persons liable for the debts of the debtor belong to the estate. *In re Schimmelpenninck*, 183 F.3d 347, 360 (5th Cir. 1999); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987).[6] When claims against a non-debtor are property of the estate, only the debtor has standing to pursue them and the pursuit of such claims by a non-debtor is a violation of 11 U.S.C. § 362(a)(3). *See In re S.I. Acquisition, Inc.*, 817 F.2d at 1150 ("[A] section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor [or] that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor."); *In re Educators Grp. Health Tr.*, 25 F.3d

---

[6]     Multiple other Courts of Appeals have found that claims based on alter ego or veil piercing theories of liability involving the debtor are property of the debtor's estate. *E.g.*, *In re Ontos, Inc.*, 478 F.3d 427, 433 (1st Cir. 2007) (Delaware law); *In re Nordlicht*, 115 F.4th 90, 109 (2d Cir. 2024) (New York law); *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) (Virginia law); *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1346 (7th Cir. 1987) (Illinois and Indiana law); *Baillie Lumber Co., LP v. Thompson*, 413 F.3d 1293, 1295 (11th Cir. 2005) (construing Georgia law and finding that claim based on alter ego is subject to automatic stay as property of the estate).

1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive

standing to assert the claim."). This is true even if outside the bankruptcy proceeding, a non-debtor

was otherwise entitled to assert such claims. *See In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010)

("[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by

a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a

bankruptcy is under way." (citation omitted)); *see also In re HSM Kennewick, L.P.*, 347 B.R. 569,

571 (Bankr. N.D. Tex. 2006) ("Section 362(a)(3) implements a stay of any action, whether against

the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor.").

29.     The Fifth Circuit has explained time and again that a claim against a non-debtor is

property of the estate when the liability of the non-debtor is premised solely on alter ego or veil

piercing theories of liability. The Fifth Circuit set out the following framework to determine when

the automatic stay applies to claims against third parties under Bankruptcy Code section 362(a)(3):

> (1) the automatic stay applies to a cause of action that under state (or federal) law belongs to the debtor, or
>
> (2) the automatic stay applies to a cause of action that seeks to recover property of the estate when the property is held or controlled by a person or entity other than the debtor, and
>
> (3) in applying the above rules, a court must keep in mind the general bankruptcy policies of securing and preserving the debtor's property and ensuring equal distribution of the debtor's assets to similarly-situated creditors.

*Schimmelpenninck*, 183 F.3d at 355 (citing *S.I. Acquisition*, 817 F.2d at 1150). Movants fail to

specify exactly which type of alter ego or veil piercing theories of liability they intend to pursue,

and they provide no information about which state law will apply to which cases. But the analyses

of Texas alter ego law in *S.I. Acquisition* and *Schimmelpenninck* conclusively establish why these

theories of liability are property of the estate and as such are subject to the automatic stay.

30.     *First*, Texas law claims based on alter ego theories belong to the debtor corporation because the debtor corporation can pierce its own corporate veil to get at the assets of its parent or control persons *or* its subsidiaries or other entities it controls.  "[T]he predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation's obligations." *S.I. Acquisition*, 817 F.2d at 1152.  Consistent with this policy, "a corporation may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations." *Id.*  And while the holding in *Schimmelpenninck* was not based on the "belongs to" prong of the *S.I. Acquisition* framework, the Court agreed that there was nothing in Texas law prohibiting "reverse piercing" its own corporate veil to get at the assets of its subsidiaries or other entities under its control.  *Schimmelpenninck*, 183 F.3d at 357-58.  Again, because of the scant details Movants provided in the Motion, it is difficult to know exactly what their theories of liability against the Non-Debtor Defendants will be.  But either way, Fifth Circuit and Texas law are clear that both direct and reverse veil piercing theories were available to the Debtors prior to the Petition Date, and therefore are property of the estate.

31.     *Second*, by definition, an alter ego theory of liability is one in which a creditor attempts to obtain property of the estate that is held by a non-debtor.  Under a veil piercing theory, "[i]f the entities are proved to exist as one, whether for failure to observe corporate formalities or as undercapitalized shell corporations, the assets and liabilities of the entities should be amalgamated for the benefit of all creditors, not [a single creditor] alone." *Id.* at 361.  In other words, the assets and liabilities of the non-debtors are in reality property of the debtor *because* the debtor or the non-debtors were using the corporate form to fraudulently prevent the creditors from obtaining assets that actually belonged to the debtor.  That is what Movants are trying to do here.

Their medical malpractice and tort claims are based entirely on their interactions with one or more

of the Debtors. But they seek to pierce those Debtors' corporate veils to obtain assets of the Non-

Debtor Defendants, which, through their veil-piercing theories, actually belong to the Debtors.

Thus, the claims Movants have described clearly fall into the second factor of the *S.I. Acquisition*

framework.

32. *Finally*, it is precisely for this reason that staying alter ego claims against Non-

Debtor Defendants furthers the policies of the Bankruptcy Code's automatic stay. As *S.I.*

*Acquisition* and *Schimmelpenninck* both explained, "the Code's general policies of securing and

preserving the debtor's property and ensuring equal distribution of that property to similarly

situated creditors should remain a paramount concern. *Id.* at 359 (citing *S.I. Acquisition*, 817 F.2d

at 1152).

> If [Movant's] action based upon alter ego may proceed completely outside of
> bankruptcy, then any creditor of [the Debtors] may do likewise. The result is the
> multi-jurisdictional rush to judgement that we [have] stated . . . cuts against the
> fundamental policies of the Bankruptcy Code. We would also be promoting a
> potential conflict in judgments such that one creditor may convince a court or jury
> that [Non-Debtor Defendants and the Debtors] are all one in the same, while
> another creditor may not. Problems of collateral estoppel and unfair distribution of
> debtor assets would clearly abound.

*S.I. Acquisition*, 817 F.2d at 1154; *see also Schimmelpenninck*, 183 F.3d at 361.

33. This rationale for finding that claims based on alter ego theories are estate property

does not depend on the underlying tort. Instead, the "focus [is] *not on the nature of the injury*, but

on the '*theory of liability*.'" *In re Whittaker Clark & Daniels Inc*, No. 24-2210, 2025 WL 2611753,

at *10 (3d Cir. Sept. 10, 2025) (quoting *In re Wilton Armetale, Inc.*, 968 F.3d 273, 282 (3d Cir.

2020)) (emphasis added). In *In re Emoral Corp.*, 740 F.3d 875 (3d Cir. 2014), a group of plaintiffs

had personal injury claims for exposure to diacetyl against Emoral Corp., which had sold certain

of its assets and transferred some of its liabilities to Aaroma Holdings LLC. *Id.* at 877. The asset

purchase agreement specifically excluded Emoral's liabilities for diacetyl exposure from the transaction. *Id.* After Emoral filed for bankruptcy, these plaintiffs filed personal injury and product liability claims against Aaroma in New Jersey Superior Court, arguing that Aaroma was liable for Emoral's torts as a "mere continuation" of Emoral. *Id.* Analogizing the plaintiff's mere continuation theory of liability to veil piercing theories of liability, the Third Circuit rejected the plaintiffs' emphasis "on the individualized nature *of their personal injury claims against Emoral*" because "their only theory of liability as against *Aaroma* . . . is that, as a matter of state law, Aaroma constitutes a 'mere continuation' of Emoral such that it has also succeeded to all of Emoral's liabilities." *Id.* at 879. This decision was further buttressed only days ago by the Third Circuit's opinion in *In re Whittaker Clark & Daniels.* 2025 WL 2611753, at *11 (finding that creditors' personal injury and wrongful death claims based on a successor liability theory were property of the estate based on the "the [creditors'] theory of liability" and the facts on which it relies, rather than on the nature of creditors' injuries).[7]

34.     The same is true here. Movants do not suggest that the Non-Debtor Defendants identified in the Motion caused personal injury, wrongful death, or committed medical practice; instead, "their only theory of liability as against" the Non-Debtor Defendants is that, as a matter of state law, the Non-Debtor Defendants are alter egos of one or more of the Debtors such that they are liable for the Debtors' torts. Further, it is worth nothing that a significant number of the

---

[7]     For this reason, Movants' extended discussion of whether their *medical malpractice and negligence* claims are property of the estate is entirely beside the point. *See* Mot. ¶¶ 18-52. The *Whittaker Clark & Daniels* creditors also argued their claims were not general because they involved "specific claims exclusively belonging to victims injured by defective products, and they ar[o]se from harms unique to those victims based on conduct of the successor entity." *Whittaker Clark & Daniels Inc*, 2025 WL 2611753, at *10 (quotation marks and alterations omitted). The Third Circuit rejected that argument out of hand, explaining that the correct analysis requires evaluation of "whether the facts necessary to establish liability under [the creditors' successor liability theory] are generally available to any creditor. *Id.* (quoting *Emoral*, 740 F.3d at 881). The critical aspects of the Fifth Circuit's holdings on these issues likewise were that *any creditor* could assert *any* claim based on alter ego liability; the *debtor* could assert any claim based on alter ego liability; and doing so successfully would increase the pro rata share of the estate for *all creditors*. *See, e.g.*, *Schimmelpenninck*, 183 F.3d at 353-61.

Debtors' creditors also hold medical malpractice or negligence claims against various Debtors.[8]

Thus, by seeking to separately pursue their alter ego claims against the Non-Debtor Defendants,

Movants here are attempting precisely "the multi-jurisdictional rush to judgement that [the Fifth

Circuit has] stated . . . cuts against the fundamental policies of the Bankruptcy Code." *S.I.

Acquisition*, 817 F.2d at 1154.

35.     It is axiomatic that this Court should follow established Fifth Circuit law,

particularly when such law has been settled for decades.  The scant information Movants do

provide about the claims they intend to bring establishes that their claims based on alter ego

theories of liability are indisputably property of the estate and, therefore, subject to the automatic

stay.[9]

**B.      Movants Have Not Provided Compelling Reasons for This Court to Ignore
         Well-Settled Fifth Circuit Law**

36.     Movants' efforts to get the Court to sidestep decades of controlling precedent do

not dictate a different result.  Movants' arguments that alter ego theories are remedies and not

---

[8]     *See, e.g.*, First Day Decl. ¶¶ 84-85 (noting that outstanding estimated reserve for litigation claims, "including
medical-malpractice, wrongful-death or other tort causes of action," is approximately $259 million); *Transcript
Regarding Hearing Held August 21, 2025* at 14:10-12 [Docket No. 724] (counsel for various tort claimants stating
that he "represent[s] 273 claimants who have healthcare negligence claims in connection with this bankruptcy
case").

[9]     Movants heavily rely on *Matter of Buccaneer Res., L.L.C.*, 912 F.3d 291 (5th Cir. 2019); *In re Seven Seas
Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008); *Matter of Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th
Cir. 1994), but these cases are readily distinguishable. *Buccaneer* involved a creditor's direct tortious interference
claim against a third party. 912 F.3d at 292. The claim did not depend on an alter ego (or any other veil piercing)
theory of liability, and the *Buccaneer* court reiterated *Schimmelpenninck*'s holding that "an alter ego suit that
attempted to pierce the corporate veil and recover assets improperly moved through the corporate structure
belonged only to the estate." *Id.* at 294 (citing *Schimmelpenninck*, 183 F.3d at 358). The *Seven Seas* case involved
direct claims of unsecured bondholders alleging that third parties conspired with and aided and abetted the
debtor's fraudulent activity that harmed the unsecured bondholders. 522 F.3d at 581. These claims also did not
depend on any veil piercing theory of liability, and the court *also* distinguished *Schimmelpenninck*, noting that
*Schimmelpenninck*'s holding did not rely on whether the debtor could have brought the claims but instead was
based on the attempts of "individual creditors [to] annex[] assets of the estate to gain an advantage." *Id.* at 588-
89 (quoting *Schimmelpenninck*, 183 F.3d at 360).  Finally, *Educators Group* involved a mix of several school
districts' claims against a third-party health plan administrator, some of which alleged direct harm to the school
districts and some of which alleged direct harm to the debtor. 25 F.3d at 1284-85. None of the claims alleging
direct harm to creditors involved a veil piercing theory of liability. *See id.* at 1286.

causes of action are beside the point because controlling Fifth Circuit cases recognized this distinction and therefore did not depend upon it in any way. Additionally, Movants' constitutional arguments about due process and jury trial rights also do not require a different result, and the claim that Section 541 of the Bankruptcy Code constitutes an unconstitutional taking is also mistaken. Movants have been afforded all the due process they are entitled to concerning application of the automatic stay, and application of the automatic stay does not implicate jury trial rights under these circumstances.

37. While unclear at times, Movants seem to argue that cases like *S.I. Acquisition* and *Schimmelpenninck* assumed that alter ego and/or veil piercing were *causes of action* under Texas law, and because Texas courts supposedly have since clarified that they are *remedies*, these cases would have come out differently. *See* Mot. ¶¶ 43-47. But that contention is flatly incorrect. Both *S.I. Acquisition* and *Schimmelpenninck* specifically acknowledged that alter ego and/or veil piercing are *remedies* or *theories of liability*, and neither case's holding depended on an incorrect assumption that they were causes of action. *See S.I. Acquisition*, 817 F.2d at 1152 n.11 ("Under Texas law it is proper to refer to an alter ego claim as a remedy rather than a cause of action because the fact that a corporation may be an alter ego of a control entity does not create a substantive cause of action against either the corporation or control entity." (citation omitted)); *Schimmelpenninck*, 183 F.3d at 356 ("An alter ego remedy is available when there is an identity or unity between a corporation and either a natural person or an affiliated entity such that all separateness between the parties has ceased (or never existed) and failure to disregard the corporate form would be unjust."). Thus, there is nothing to change about these cases' holdings since the Texas courts decided the cases Movants cite. *See* Mot. ¶¶ 3, 45 & nn.2, 11.[10]

---

[10] The diacetyl plaintiffs in *Emoral* attempted to "draw[] a distinction between, on one hand, a successor liability claim as a *primary cause of action,* and, on the other hand, successor liability as an *equitable remedy* to satisfy an

38.     Next, Movants inexplicably argue that adhering to controlling Fifth Circuit precedent would violate Movants' right to a jury trial under the Seventh Amendment.  *See* Mot. ¶¶ 66-72.  Movants do not cite a single case in support of this wild contention, and in any event, this argument is a red herring.  Adjudication of the stay relief motion will simply result in a temporary stay while these chapter 11 cases proceed.  *Herlihy v. DBMP LLC*, No. 3:24-CV-00558-KDB, 2024 WL 4589795, at *5 (W.D.N.C. Oct. 28, 2024) ("Appellants also contend that enforcing the automatic stay provision will deny them their constitutional and statutory rights to a jury trial. However, while the application of the automatic stay may well *delay* a jury trial on their claims, it does not preclude a jury trial in accordance with the applicable law."); *see Ward v. Cross Keys Bank*, No. 3:20-CV-01467, 2021 WL 1724868, at *8 (W.D. La. Apr. 29, 2021) ("[T]he Automatic Stay extends to property that is even arguably property of the estate, though a final determination on whether or not such property is or is not property of the estate has yet to be finally adjudicated.").  As explained below with respect to Movants' due process arguments, if Movants' theory were correct, every application of the automatic stay any time a creditor brought a claim that was property of the estate would violate the Seventh Amendment, which is not the law.  *See In re Saint Vincents Cath. Med. Ctrs. of N.Y.*, 449 B.R. 209, 214 (S.D.N.Y. 2011) (upholding order enforcing automatic stay against non-debtor housing agency, and rejecting due process arguments, when creditor sought documents relevant to claims that were "in the exclusive province of the debtor").  Thus, a temporary stay of these proceedings will not deprive Movants of a jury trial.[11]

---

individual damage claim."  740 F.3d at 882.  The Third Circuit rejected this argument, stating, "We are not aware of any applicable legal authority drawing such a distinction and, indeed, we note that any cause of action asserting successor liability necessarily contemplates some underlying damage or liability for which the claimant is seeking recourse from a third party."  *Id.*  For the same reason, whether alter ego is a remedy or cause of action has no bearing on the analysis here.

[11]   For the same reason, Movants' reliance on *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), is misplaced. *See* Mot. ¶¶ 6, 55-51, 62 & nn.3, 21.  At issue in *Purdue* was "whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*."  *Purdue*, 603 U.S. at

39.     Movants also argue that adhering to controlling Fifth Circuit precedent and applying the automatic stay here would violate Movants' right to due process under the Fifth Amendment.  *See* Mot. ¶¶ 53-65.  If this argument were correct, "every stay of a judicial proceeding imposed by a Bankruptcy Court would violate the substantive due process rights of the litigants in that proceeding.  Clearly this is not the law." *Saint Vincents Cath. Med. Centers of New York*, 449 B.R. at 214; *see also Fid. Mortg. Invs. v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976) (construing former Bankruptcy Act and holding "there is no constitutional infirmity in [the automatic stay] since that rule itself gives the creditors an immediate opportunity to have the stay lifted or modified and since the policy considerations requiring such initial stays are not insignificant").

40.     In any event, due process to decide the automatic stay issue has been provided here. The Supreme Court has "determined that individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).  Movants brought this motion themselves and scheduled the hearing for September 24, 2025[12]—thus, Movants clearly are aware of the bankruptcy and the *possibility* that the automatic stay may apply to cases they might choose to bring, and Movants have had an opportunity to be heard as to why the automatic stay does not apply.  Movants have failed to identify any additional due process to which they are entitled before having their Motion decided.

---

215.  Application of the automatic stay is not relevant to whether claims against non-debtors can be discharged in bankruptcy.

[12]    In fact, the Debtors contacted counsel to Movants to seek to continue the hearing further, but this request was denied.

41.     Finally, Movants' argument that Section 541 of the Bankruptcy Code constitutes an unconstitutional taking is based on a misunderstanding. The Constitution does not create property interests; it protects property interests that are "determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The bankruptcy rules leave "the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Because, as explained above, it is well established under Fifth Circuit law that the claims Movants seek to bring belong to the Debtors' estate, nothing has been taken from them.[13]  Quite the opposite, if Movants seek to pursue these claims in violation of established Fifth Circuit precedent, it is the Movants (and not the Debtors) that have effectuated an unconstitutional taking.

42.     In short, neither Movants' arguments about intervening case law nor their constitutional concerns mandate a departure from settled and controlling Fifth Circuit on this Motion.  This Court is bound to follow *S.I. Acquisition* and *Schimmelpenninck* and determine that the claims identified in the Motion are property of the estate subject to the automatic stay.

*[Remainder of page intentionally left blank]*

---

[13]   Ruling in the Debtors' favor under well-established binding authority interpreting Section 541 also avoids an unnecessary ruling on constitutional issues.  *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575 (1988) (construing statute to "obviate" need to consider constitutional issues).

## CONCLUSION

WHEREFORE, Debtors respectfully request that the Court deny the Motion in its entirety.

Dated: September 15, 2025          **MCDERMOTT WILL & SCHULTE LLP**
       Dallas, Texas

                                   */s/ Marcus A. Helt*
                                   Marcus A. Helt (TX 24052187)
                                   Jack G. Haake (TX 24127704)
                                   2801 N. Harwood Street, Suite 2600
                                   Dallas, Texas 75201-1574
                                   Telephone:     (214) 295-8000
                                   Facsimile:     (972) 232-3098
                                   Email:         mhelt@mwe.com
                                                  jhaake@mwe.com

                                   - and -

                                   Daniel M. Simon (admitted *pro hac vice*)
                                   Emily C. Keil (admitted *pro hac vice*)
                                   William A. Guerrieri (admitted *pro hac vice*)
                                   Catherine T. Lee (*pro hac vice* pending)
                                   Landon W. Foody (*pro hac vice* pending)
                                   444 West Lake Street, Suite 4000
                                   Chicago, Illinois 60606
                                   Telephone:     (312) 372-2000
                                   Facsimile:     (312) 984-7700
                                   Email:         dsimon@mwe.com
                                                  ekeil@mwe.com
                                                  wguerrieri@mwe.com
                                                  clee@mwe.com
                                                  lfoody@mwe.com

                                   - and -

                                   Alexander H. Southwell (*pro hac vice* forthcoming)
                                   Jerry L. Hall (admitted *pro hac vice*)
                                   Cris W. Ray (*pro hac vice* forthcoming)
                                   One Vanderbilt Avenue
                                   New York, NY 10011
                                   Telephone:     (212) 547-5400
                                   Facsimile:     (212) 547-5444
                                   Email:         asouthwell@mwe.com
                                                  jerryhall@mwe.com
                                                  cray@mwe.com

                                   *Counsel for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Objection was served by the Court's CM/ECF system on all counsel of record registered in this Chapter 11 Case through CM/ECF.

Dated: September 15, 2025  
      Dallas, Texas

**MCDERMOTT WILL & SCHULTE LLP**

*/s/ Marcus A. Helt*  
Marcus A. Helt (TX 24052187)  
2801 N. Harwood Street, Suite 2600  
Dallas, Texas 75201-1574  
Telephone:    (214) 295-8000  
Facsimile:    (972) 232-3098  
Email:        mhelt@mwe.com

*Counsel for Debtors and Debtors-in-Possession*