| United States Bankruptcy Court for the North District of Texas | | |
|---|---|---|
| | | **For Court Use Only** |
| **Name of Debtor:** Genesis Healthcare, Inc. | | Claim Number:   0000011071 |
| **Case Number:**   25-80185 | | File Date:   09/25/2025 13:37:24 |

# Proof of Claim (Official Form 410)

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.  With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**
**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.
A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.  18 U.S.C. §§ 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed.  That date is on the notice of bankruptcy (Form 309) that you received.**

**04/25**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1.    Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim): _____ Arrington, Don _____

Other names the creditor used with the debtor: _____

**2.    Has this claim been acquired from someone else?**    ☑ No   ☐ Yes.   From whom? _____

**3.    Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name   Arrington, Don | Name   _____ |
| Address   Jacques G. Balette | Address   _____ |
|   7521 Westview Drive | _____ |
| _____ | _____ |
| _____ | _____ |
| City   Houston | City   _____ |
| State   TX       ZIP Code  77055 | State   _____   ZIP Code _____ |
| Country (if International): _____ | Country (if International): _____ |
| Phone:   7136834830 | Phone:   _____ |
| Email:   jacquesb@marksfirm.com | Email:   _____ |
| Uniform claim identifier (if you use one): _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | 5. Do you know if anyone else has filed a proof of claim for this claim? |
|---|---|
| ☑ No | ☑ No |
| ☐ Yes. | ☐ Yes. |
| Claim number on court claims register (if known) _____ |     Who made the earlier filing? |
| Filed on _____ | _____ |
| MM / DD / YYYY | |

**6.  Do you have any number you use to identify the debtor?**

☐ No

☑ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:

4755

**7.  How much is the claim?**

$ undetermined

**Does this amount include interest or other charges?**

☐ No

☐ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.  What is the basis of the claim?**

Examples:  Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).  Limit disclosing information that is entitled to privacy, such as health care information.

Personal Injury/Workers Comp

**9.  Is all or part of the claim secured?**

☑ No

☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other.  Describe:

_____

**Basis for perfection:**

_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                     $_____

Amount of the claim that is secured:     $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

**Annual Interest Rate** (when case was filed)   _____%
                              ☐ Fixed  ☐ Variable

**10.  Is this claim based on a lease?**

☑ No

☐ Yes.  **Amount necessary to cure any default as of the date of petition.**

$_____

**11.  Is this claim subject to a right of setoff?**

☑ No

☐ Yes.  Identify the property:

_____

**12.  Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other.  Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.

*  Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

**13.  Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes.  **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9):** $_____

**Part 3:** Sign Below

The person completing this proof of claim must sign and date it.  FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Jacques Balette*                                                            09/25/2025 13:37:24
Signature                                                                        Date

**Provide the name and contact information of the person completing and signing this claim:**

Name        Jacques G. Balette

Address     Marks Balette Young & Moss, PLLC

            7521 Westview Dr.

City        Houston

State       TX                                                    Zip    77055

Country (in international)    United States of America

Phone       713-683-4830

Email       jacquesb@marksfirm.com

**Fill in this information to identify the case:**

Debtor 1 ___Genesis Healthcare, Inc._____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: Northern District of Texas

Case number ___25-80185 (SGT)_____

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

John Day, as Personal Representative of the Wrongful Death Estate of Don Arrington
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  Don Arrington

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jacques G. Balette
Name

7521 Westview Drive
Number     Street

Houston         TX      77055
City          State    ZIP Code

Contact phone  713.683.4830

Contact email  jacquesb@marksfirm.com

Uniform claim identifier (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City          State    ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
             MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  4  7  5  5 |

7. **How much is the claim?**    *An amount to be determined in accordance with law but no less than*

$ _____ . **Does this amount include interest or other charges?**    *$250,000*

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Personal injury and wrongful death. See attached Complaint.

9. **Is all or part of the claim secured?**

☑ No
☐ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**    _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____
**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

### Part 3:    Sign Below

| **The person completing this proof of claim must sign and date it.** FRBP 9011(b). | *Check the appropriate box:* |
|---|---|
| | ☐ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is. | ☑ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157, and 3571. | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date   09/24/2025
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jacques G. Balette | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Marks Balette Young & Moss, PLLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7521 Westview Dr. | | |
| | Number        Street | | |
| | Houston | TX | 77055 |
| | City | State | ZIP Code |
| Contact phone | 713.683.4830 | Email | jacquesb@marksfirm.com |

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/17/2025 1:11 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leah D Herrera

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

JOHN DAY, AS PERSONAL REPRESENTATIVE )
OF THE WRONGFUL DEATH ESTATE OF )
DON ARRINGTON, )
                             )
         Plaintiff, )
                             )
v. ) No. D-101-CV-2025-00148
                             )
3514 FOWLER AVENUE OPERATIONS, LLC d/b/a )     Case assigned to Ellenwood, Kathleen Mc
SILVER CITY CARE CENTER; )
GENESIS ADMINISTRATIVE SERVICES, LLC; )
FC-GEN OPERATIONS INVESTMENT, LLC; )
GEN OPERATIONS I, LLC )
GEN OPERATIONS II, LLC )
GENESIS HEALTHCARE, INC.; )
GENESIS HEALTHCARE, LLC; )
GENESIS HOLDINGS, LLC; )
GHC HOLDINGS, LLC; )
GENESIS OMG OPERATIONS, LLC )
HCCF MANAGEMENT GROUP XI, LLC; )
SENIOR CARE GENESIS, LLC; )
SENIOR CARE HOLDINGS, LLC; )
SUN HEALTHCARE GROUP, INC.; )
SUNDANCE REHABILITATION HOLDCO, INC.; )
ZAC PROPERTIES XI, LLC; AND )
REBECCA SINGLETON, )
                             )
         Defendants )

## COMPLAINT FOR WRONGFUL DEATH, NEGLIGENCE, JOINT AND SEVERAL LIABILITY, AND PUNITIVE DAMAGES

       John Day, Esq., as the Personal Representative of the Wrongful Death Estate of Don

Arrington, by through undersigned counsel, states and alleges as follows:

### PARTIES

       1.     DON ARRINGTON was a resident of Dona Ana County, New Mexico when he

died on June 14, 2023.

Arrington Complaint – Page 1

2.      Plaintiff JOHN DAY resides in Santa Fe, Santa Fe County, New Mexico and is the

duly appointed Personal Representative for the purpose of filing a Wrongful Death claim on behalf

of DON ARRINGTON and his beneficiaries under the New Mexico Wrongful Death Act, NMSA

1978, §42-2-3, and by Order of the Santa Fe County District Court, Case No. D-101-cv-2024-

00258.

3.      3514 Fowler Avenue Operations, LLC, doing business as Silver City Care Center,

(hereinafter, "3514 Fowler Avenue Operations, LLC") is a domestic limited liability company

engaged in the business of owning, operating, managing, administrating, supervising, and/or

maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all

times material to this lawsuit. Upon further information and belief, at all times material, 3514

Fowler Avenue Operations, LLC owned, operated, supervised, funded, managed, administered,

and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New

Mexico 88061. The causes of action that are the basis of this suit arise out of such business

conducted by said Defendant in the ownership, operation, management, administration,

supervision, and/or control of Silver City Care Center. Upon information and belief, all times

material hereto, 3514 Fowler Avenue Operations, LLC and/or its employees, representatives,

consultants, agents, ostensible agents, and/or servants provided Don Arrington with care,

treatment, and/or services at the nursing home, nursing facility and/or skilled nursing facility

located at 3514 Fowler Avenue, Silver City, New Mexico 88061. At all times material, 3514

Fowler Avenue Operations, LLC is directly liable for its own negligent acts, as well as the

negligent acts of its officers and/or directors acting on 3514 Fowler Avenue Operations, LLC's

behalf. Further, 3514 Fowler Avenue Operations, LLC is vicariously liable for the negligent acts

of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those

who 3514 Fowler Avenue Operations, LLC controlled or had the right and power to control,

including contractors. Defendant, 3514 Fowler Avenue Operations, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 110 E. Broadway St., Hobbs, New Mexico 88240.

4.       Upon information and belief, 3514 Fowler Avenue Operations, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, 3514 Fowler Avenue Operations, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, 3514 Fowler Avenue Operations, LLC is liable for the negligence, actions, and/or omissions of Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton and for the injuries and damages caused by agents of 3514 Fowler Avenue

Operations, LLC under the doctrine of ostensible authority.

5.      Genesis Administrative Services, LLC is a foreign limited liability company

engaged in the business of owning, operating, managing, administering, supervising, and/or

maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all

times material to this lawsuit. Upon further information and belief, at all times material, Genesis

Administrative Services, LLC owned, operated, supervised, funded, managed, administered,

and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New

Mexico 88061. The causes of action that are the basis of this suit arise out of such business

conducted by said Defendant in the ownership, operation, management, administration,

supervision, and/or control of Silver City Care Center. At all times material, Genesis

Administrative Services, LLC is directly liable for its own negligent acts, as well as the negligent

acts of its officers and/or directors acting on Genesis Administrative Services, LLC's behalf.

Further, Genesis Administrative Services, LLC is vicariously liable for the negligent acts of its

employees, representative, consultants, agents, ostensible agents, and/or servants and those who

Genesis Administrative Services, LLC controlled or had the right and power to control, including

contractors. Defendant, Genesis Administrative Services, LLC, may be served with process by

serving its registered agent, Corporation Service Company, located at 110 E. Broadway St., Hobbs,

New Mexico 88240.

6.      Upon information and belief, Genesis Administrative Services, LLC is not only

individually liable for the claims detailed herein, but is also liable on the theory of corporate

relationship to, control of, direct participant liability and/or successor liability for, including but

not limited to 3514 Fowler Avenue Operations, LLC, FC-GEN Operations Investment, LLC, Gen

Arrington Complaint – Page 4

Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Genesis Administrative Services, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is subject of this case,  Genesis Administrative Services, LLC is liable for the negligence, actions, and/or omissions of  3514 Fowler Avenue Operations, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Genesis Administrative Services, LLC under the doctrine of ostensible authority

7.      FC-GEN Operations Investment, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administering, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, FC-GEN

Operations Investment, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material, FC-GEN Operations Investment, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on FC-GEN Operations Investment, LLC's behalf. Further, FC-GEN Operations Investment, LLC is vicariously liable for the negligent acts of its employees, representative, consultants, agents, ostensible agents, and/or servants and those who FC-GEN Operations Investment, LLC controlled or had the right and power to control, including contractors. Defendant, FC-GEN Operations Investment, LLC, may be served with process by serving its registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

8.      Upon information and belief, FC-GEN Operations Investment, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, FC-GEN Operations Investment, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, Gen

Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is subject of this case, FC-GEN Operations Investment, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of FC-GEN Operations Investment, LLC under the doctrine of ostensible authority.

9. Gen Operations I, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administering, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Gen Operations I, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material, Gen Operations I, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Gen Operations I, LLC's behalf. Further, Gen Operations I, LLC is vicariously liable for the negligent acts of its employees, representatives,

consultants, agents, ostensible agents, and /or servants and those who Gen Operations I, LLC controlled or had the right and power to control, including contractors. Defendant, Gen Operations I, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

10.     Upon information and belief, Gen Operations I, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Gen Operations I, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Gen Operations I, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Gen Operations I, LLC under the doctrine of ostensible authority.

11.     Gen Operations II, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administering, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Gen Operations II, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation. Management, administration, supervision, and/or control of Silver City Care Center. At all times material, Gen Operations II, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Gen Operations II, LLC's behalf. Further, Gen Operations II, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Gen Operations II, LLC controlled or had the rights and power to control, including contractors. Defendant, Gen Operations II, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

12.     Upon information and belief, Gen Operations II, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC,

Arrington Complaint – Page 9

Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Gen Operations II, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Gen Operations II, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Gen Operations II, LLC under the doctrine of ostensible authority.

13.     Genesis Healthcare, Inc. is a foreign limited liability company engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Genesis Healthcare, Inc. owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care

Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material, Genesis Healthcare, Inc. is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Genesis Healthcare, Inc.'s behalf. Further, Genesis Healthcare, Inc. is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Genesis Healthcare, Inc. controlled or had the right and power to control, including contractors. Defendant, Genesis Healthcare, Inc., may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

14.     Upon information and belief, Genesis Healthcare, Inc. is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Genesis Healthcare, Inc. is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the

subject of this case, Genesis Healthcare, Inc. is liable for the negligence, actions, and/or omissions

of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, LLC, Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton and for the injuries and damages caused by agents of Genesis Healthcare, Inc.

under the doctrine of ostensible authority.

15.     Genesis Healthcare LLC is a foreign limited liability company engaged in the

business of owning, operating, managing, administrating, supervising, and/or maintaining nursing

homes and/or skilled nursing facilities and related healthcare facilities at all times material to this

lawsuit. Upon further information and belief, at all times material, Genesis Healthcare LLC owned,

operated, supervised, funded, managed, administered, and/or did business as Silver City Care

Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that

are the basis of this suit arise out of such business conducted by said Defendant in the ownership,

operation, management, administration, supervision, and/or control of Silver City Care Center. At

all times material, Genesis Healthcare LLC is directly liable for its own negligent acts, as well as

the negligent acts of its officers and/or directors acting on Genesis Healthcare LLC's behalf.

Further, Genesis Healthcare LLC is vicariously liable for the negligent acts of its employees,

representatives, consultants, agents, ostensible agents, and/or servants and those who Genesis

Healthcare LLC controlled or had the right and power to control, including contractors. Defendant,

Genesis Healthcare LLC, may be served with process by serving its registered agent, Corporation

Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

16.    Upon information and belief, Genesis Healthcare LLC is not only individually

liable for the claims detailed herein, but is also liable on the theory of corporate relationship to,

control of, direct participant liability and/or successor liability for, including but not limited to

3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon further information and belief, Genesis Healthcare, LLC is liable on the

theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to

3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the

subject of this case, Genesis Healthcare, Inc. is liable for the negligence, actions, and/or omissions

of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Holdings, LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Arrington Complaint – Page 13

Rebecca Singleton and for the injuries and damages caused by agents of Genesis Healthcare, LLC under the doctrine of ostensible authority.

17.     Genesis Holdings, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administering, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Genesis Holdings, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material, Genesis Holdings, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Genesis Holdings, LLC's behalf. Further, Genesis Holdings, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Genesis Holdings, LLC controlled or had the right and power to control, including contractors. Defendant, Genesis Holdings, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

18.     Upon information and belief, Genesis Holdings, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Arrington Complaint – Page 14

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon further information and belief, Genesis Holdings, LLC is liable on the

theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to

3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Healthcare LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the

subject of this case, Genesis Holdings, LLC is liable for the negligence, actions, and/or omissions

of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Healthcare LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC,

HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton and for the injuries and damages caused by agents of Genesis Holdings, LLC

under the doctrine of ostensible authority.

19.     GHC Holdings, LLC is a foreign limited liability company engaged in the business

of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes

and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit.

Upon further information and belief, at all times material, GHC Holdings, LLC owned, operated,

supervised, funded, managed, administered, and/or did business as Silver City Care Center, located

at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis

of this suit arise out of such business conducted by said Defendant in the ownership, operation,

management, administration, supervision, and/or control of Silver City Care Center. At all times

material, GHC Holdings, LLC is directly liable for its own negligent acts, as well as the negligent

acts of its officers and/or directors acting on GHC Holdings, LLC's behalf. Further, GHC

Holdings, LLC is vicariously liable for the negligent acts of its employees, representatives,

consultants, agents, ostensible agents, and/or servants and those who GHC Holdings, LLC

controlled or had the right and power to control, including contractors. Defendant, GHC Holdings,

LLC, may be served with process by serving its registered agent, Corporation Service Company,

located at 251 Little Falls Drive, Wilmington, DE 19808.

20.     Upon information and belief, GHC Holdings, LLC is not only individually liable

for the claims detailed herein, but is also liable on the theory of corporate relationship to, control

of, direct participant liability and/or successor liability for, including but not limited to 3514

Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations

Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc.,

Genesis Healthcare LLC, Genesis Holdings, LLC, Genesis OMG Operations, LLC, HCCF

Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun

Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon further information and belief, GHC Holdings LLC is liable on the

theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to

3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings, LLC, Genesis OMG Operations,

LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings,

LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC,

and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is

the subject of this case, GHC Holdings, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of GHC Holdings, LLC under the doctrine of ostensible authority.

21.    Genesis OMG Operations, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Genesis OMG Operations, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material Genesis OMG Operations, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Genesis OMG Operations, LLC's behalf. Further, Genesis OMG Operations, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Genesis OMG Operations, LLC controlled or had the right and power to control, including contractors. Defendant, Genesis OMG Operations, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

Arrington Complaint – Page 17

22.    Upon information and belief, Genesis OMG Operations, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Genesis OMG Operations, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Genesis OMG Operations, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Genesis OMG Operations, LLC under the doctrine of ostensible authority.

23.     HCCF Management Group XI, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, HCCF Management Group XI, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material HCCF Management Group XI, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on HCCF Management Group XI, LLC's behalf. Further, HCCF Management Group XI, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who HCCF Management Group XI, LLC controlled or had the right and power to control, including contractors. Defendant, HCCF Management Group XI, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

24.     Upon information and belief, HCCF Management Group XI, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca

Arrington Complaint – Page 19

Singleton. Upon further information and belief, HCCF Management Group XI, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon. Upon information and belief, at all times relevant to the incident that is the subject of this case, HCCF Management Group XI, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon and for the injuries and damages caused by agents of HCCF Management Group XI, LLC under the doctrine of ostensible authority.

25.     Senior Care Genesis, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Senior Care Genesis, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care

Center. At all times material Senior Care Genesis, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Senior Care Genesis, LLC's behalf. Further, Senior Care Genesis, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Senior Care Genesis, LLC controlled or had the right and power to control, including contractors. Defendant, Senior Care Genesis, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

26.     Upon information and belief, Senior Care Genesis, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Senior Care Genesis, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Senior Care Genesis, LLC is liable for the negligence, actions, and/or

Arrington Complaint – Page 21

omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Senior Care Genesis, LLC under the doctrine of ostensible authority.

27.    Senior Care Holdings, LLC is a foreign limited liability company engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Senior Care Holdings, LLC owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material Senior Care Holdings, LLC is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Senior Care Holdings, LLC's behalf. Further, Senior Care Holdings, LLC is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Senior Care Holdings, LLC controlled or had the right and power to control, including contractors. Defendant, Senior Care Holdings, LLC, may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

28.    Upon information and belief, Senior Care Holdings, LLC is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to,

control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Senior Care Holdings, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Senior Care Holdings, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Senior Care Holdings, LLC under the doctrine of ostensible authority.

29.    Sun Healthcare Group, Inc. is a foreign corporation engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes

and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit.

Upon further information and belief, at all times material, Sun Healthcare Group, Inc. owned,

operated, supervised, funded, managed, administered, and/or did business as Silver City Care

Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that

are the basis of this suit arise out of such business conducted by said Defendant in the ownership,

operation, management, administration, supervision, and/or control of Silver City Care Center. At

all times material, Sun Healthcare Group, Inc. is directly liable for its own negligent acts as well

as the negligent acts of its officers and/or directors acting on Sun Healthcare Group, Inc.'s behalf.

Further, Sun Healthcare Group, Inc. is vicariously liable for the negligent acts of its employees,

representatives, consultants, agents, ostensible agents, and/or servants and those who Sun

Healthcare Group, Inc. controlled or had the right and power to control, including contractors.

Defendant, Sun Healthcare Group, Inc. may be served with process by serving its registered agent,

Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DW 19808.

30.     Upon information and belief, Sun Healthcare Group, Inc. is not only individually

liable for the claims detailed herein, but is also liable on the theory of corporate relationships to,

control of, direct participant liability and/or successor liability for, including but not limited to

3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis

OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior

Care Holdings, LLC, Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or

Rebecca Singleton. Upon further information and belief, Sun Healthcare Group, Inc. is liable on

the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited

to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN

Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton.  Upon information and belief, at all times relevant to the incident that is the subject of this case, Sun Healthcare Group, Inc. is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton and for the injuries and damages caused by agents of Sun Healthcare Group, Inc. under the doctrine of ostensible authority.

31.    Sundance Rehabilitation Holdco, Inc. is a foreign corporation engaged in the business of owning, operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further information and belief, at all times material, Sundance Rehabilitation Holdco, Inc. owned, operated, supervised, funded, managed, administered, and/or did business as Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, administration, supervision, and/or control of Silver City Care Center. At all times material, Sundance Rehabilitation Holdco, Inc. is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on Sundance Rehabilitation Holdco, Inc.'s behalf. Further, Sundance Rehabilitation Holdco, Inc.

is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who Sundance Rehabilitation Holdco, Inc. controlled or had the right and power to control, including contractors. Defendant, Sundance Rehabilitation Holdco, Inc., may be served with process by serving its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

32.    Upon information and belief, Sundance Rehabilitation Holdco, Inc. is not only individually liable for the claims detailed herein, but is also liable for the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon further information and belief, Sundance Rehabilitation Holdco, Inc. is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Sundance Rehabilitation Holdco, Inc. is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis

Arrington Complaint – Page 26

Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis

OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior

Care Holdings, LLC, Sun Healthcare Group, Inc., Zac Properties XI, LLC, and/or Rebecca

Singleton and for the injuries and damages caused by agents of Sundance Rehabilitation Holdco,

Inc. under the doctrine of ostensible authority.

33.     Zac Properties XI, LLC is a foreign corporation engaged in the business of owning,

operating, managing, administrating, supervising, and/or maintaining nursing homes and/or skilled

nursing facilities and related healthcare facilities at all times material to this lawsuit. Upon further

information and belief, at all times material, Zac Properties XI, LLC owned, operated, supervised,

funded, managed, administered, and/or did business as Silver City Care Center, located at 3514

Fowler Avenue, Silver City, New Mexico 88061. The causes of action that are the basis of this

suit arise out of such business conducted by said Defendant in the ownership, operation,

management, administration, supervision, and/or control of Silver City Care Center. At all times

material, Zac Properties XI, LLC is directly liable for its own negligent acts, as well as the

negligent acts of its officers and/or directors acting on Zac Properties XI, LLC's behalf. Further,

Zac Properties XI, LLC is vicariously liable for the negligent acts of its employees, representatives,

consultants, agents, ostensible agents, and/or servants and those who Zac Properties XI, LLC

controlled or had the right and power to control, including contractors. Defendant, Zac Properties

XI, LLC, may be served with process by serving its registered agent, Corporation Service

Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

34.     Upon information and belief, Zac Properties XI, LLC is not only individually liable

for the claims detailed herein, but is also liable for the theory of corporate relationship to, control

of, direct participant liability and/or successor liability for, including but not limited to 3514

Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations

Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., and/or Rebecca Singleton. Upon further information and belief, Zac Properties XI, LLC is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., and/or Rebecca Singleton. Upon information and belief, at all times relevant to the incident that is the subject of this case, Zac Properties XI, LLC is liable for the negligence, actions, and/or omissions of 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, Genesis OMG Operations, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., and/or Rebecca Singleton and for the injuries and damages caused by agents of Zac Properties XI, LLC under the doctrine of ostensible authority.

35.    Upon information and belief, Rebecca Singleton was the Center Executive Director, Nursing Home Administrator, administrator, manager, supervisor and/or director of Silver City Care Center, located at 3514 Fowler Avenue, Silver City, New Mexico 88061, during periods of Don Arrington's residency. Rebecca Singleton was one of the individuals primarily in

charge of administrations, operations, finance, quality control, budget, staffing, and staffing levels, training and education, supervising and monitoring its facilities, caregivers, and Silver City Care Center's staff and employees, as well as enforcing corporate policies and procedures for staff and employees and ensuring that standards of care and state and federal regulations were enforced and followed during the residency at issue in this case. At all relevant times, Rebecca Singleton was a resident of Grant County in the State of New Mexico. Defendant, Rebecca Singleton, may be served at her place of employment, 3514 Fowler Avenue, Silver City, New Mexico 88061.

36.     Upon information and belief, Defendants controlled the operation, planning, management, budget, and quality control of SILVER CITY CARE CENTER. The authority exercised by Defendants over the nursing facility included but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by the nursing facilities in New Mexico, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, financial, tax and accounting control through fiscal policies established by Defendants.

## DEFINITIONS

37.     Whenever the term "Defendants" or "Silver City Care Center" is utilized within this suit, such term collectively refers to and/or includes the following named Defendants in this lawsuit: 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton.

## JOINT VENTURE/ENTERPRISE

Arrington Complaint – Page 29

38.     Defendants 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Zac Properties XI, LLC, and/or Rebecca Singleton were engaged in a joint venture/enterprise during DON ARRINGTON'S residency.

39.     Each of these Defendants had a shared community of interest in the object and purpose of the undertaking for which the nursing home known as SILVER CITY CARE CENTER was being operated/used.

40.     Each of these Defendants had an equal right to share in the control of the administration, management and operation of the nursing home during DON ARRINGTON'S residency regardless of whether such right was actually exercised.

41.     These Defendants controlled the administration, operation, planning, management, and quality control of the nursing home. The authority exercised by these Defendants over the nursing home included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policy and procedure manuals used by the nursing home, Medicare and/or Medicaid reimbursement, quality care assessment and compliance, compliance with state and federal regulations and standard of care, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

42.     These Defendants operated as a joint venture/enterprise for the purpose of increasing profitability and furthering their similar business interests and collectively controlled SILVER CITY CARE CENTER.

43.     At all relevant times mentioned herein, these Defendants owned, operated, administered, and/or controlled, either directly or through the agency of each other and/or other diverse subalterns, agents, subsidiaries, servants, or employees in the operation of SILVER CITY CARE CENTER.

44.     Because these Defendants were engaged in a joint venture/enterprise before and throughout DON ARRINGTON'S residency, the acts and omissions of each participant in the joint venture/enterprise are imputable to all other participants. The actions of these Defendants and each of its servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

## JURISDICTION AND VENUE

45.     Plaintiff incorporates the aforementioned allegations as if the same were incorporated herein. *See* Rule 1-010(C) NMRA.

46.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, Section 38-1-16. Defendant Rebecca Singleton is a New Mexico resident subject to the jurisdiction of New Mexico's courts. Defendants 3514 Fowler Avenue Operations, LLC and Genesis Administrative Services, LLC consented to jurisdiction in New Mexico's courts through their corporate registration pursuant to New Mexico law. In addition, this Court has specific jurisdiction over Defendants 3514 Fowler Avenue Operations, LLC, Genesis Administrative Services, LLC, FC-GEN Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare LLC, Genesis Holdings LLC, GHC Holdings, LLC, HCCF Management Group XI, LLC, Senior Care Genesis, LLC, Senior Care Holdings, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., and/or Zac Properties XI, LLC based on their contacts with and conduct directed toward New Mexico and through the torts

Arrington Complaint – Page 31

committed by these Defendants in New Mexico. Based on this conduct, Defendants conducted and directed activities in and toward New Mexico and Plaintiff's claims arise out of this conduct which led to Plaintiff's injuries and damages set forth herein.

47.     Venue is proper in this Court pursuant to NMSA 1978, Section 38-3-1(A) because Plaintiff John Day resides in Santa Fe County.

## FACTUAL ALLEGATIONS

### A.     Summary Statement of the Case

48.     This is a case about a nursing home (SILVER CITY CARE CENTER) that was required and directed by its parent company and owners (GENESIS HEALTHCARE, INC., GENESIS HEALTHCARE, LLC and GENESIS ADMINSITRATIVE SERVICES, LLC) to increase occupancy rates by targeting and recruiting high acuity, high rate of pay patients, whose needs were well beyond the care capabilities of the nursing home's staff.

49.     Defendants dominated the operations of SILVER CITY CARE CENTER in reckless disregard for the health and safety of its residents by implementing the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients and increase in resident census when Defendants knew that SILVER CITY CARE CENTER did not have staff sufficient in number, qualification of competency to provide the care required by state law, regulations and minimum standards; (b) retention of residents whose needs exceeded the qualification and care capability of the nursing home staff; and (c) continuing suppression, concealment, and cover-up of ongoing negligence and violation of state law, regulations and minimum standards.

50.     Compounding the danger, Defendants refused to implement safety policies, procedures and systems to ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a

physician was provided in accordance with state laws and professional standards.

51.     In order to satisfy their desire to grow profits, Defendants directly participated in creating dangerous conditions that caused harm to residents, superseding and disregarding the duties which the state of New Mexico imposed upon SILVER CITY CARE CENTER. One such resident who was affected by these business practices was DON ARRINGTON. As a direct result of Defendants' routine practices, DON ARRINGTON suffered catastrophic injuries, including wound infections, transmetatarsal amputation, urinary tract infections, significant pain and suffering, and an untimely death.

**B.    <u>The Neglect of DON ARRINGTON at SILVER CITY CARE CENTER</u>**

52.     DON ARRINGTON was admitted to Silver City Care Center on or about June 9, 2019. Defendants were well aware that DON ARRINGTON was dependent upon SILVER CITY CARE CENTER for twenty-four (24) hour nursing care which included, at a minimum, the following essential care services:

    a.    Proper and standard care to prevent infections;

    b.    Timely notifying DON ARRINGTON'S attending physician and family of any significant change in condition, need to alter treatment, or threat to DON ARRINGTON'S health;

    c.    Creating and implementing an individualized care plan of the daily nursing care required by DON ARRINGTON based on his specific condition and needs, which was updated and revised when he experienced a significant change in condition or if care planned measures were ineffective;

    d.    Administering all medications treatments in accordance with physician's orders;

    e.    Timely and appropriate assessments;

    f.    Appropriate catheter care;

    g.    Monitoring DON ARRINGTON for any signs and symptoms of pain, performing a systematic pain assessment and implementing an appropriate pain management program when indicated; and

h.      Timely sending DON ARRINGTON out to hospital when he required a higher level of care.

53.     By reason of DON ARRINGTON'S needs and his degree of dependency upon the nursing home staff, Defendants fully understood the consequences of failing to provide such routine services in accordance with fundamental standard of care.

54.     Moreover, by reason of Defendants' experience and background in nursing home care, Defendants were acutely aware that the routine failure to provide the kind of basic care required by DON ARRINGTON could jeopardize the health and life of such a resident, cause infections, lead to deleterious effects of infections, and result in significant pain and suffering.

55.     Due to Defendants' ongoing and routine indifference for DON ARRINGTON'S basic care and needs, he suffered avoidable injuries, including, but not limited to:

a.      Wound infections;

b.      Transmetatarsal amputation;

c.      Urinary tract infections;

d.      Significant pain that was not treated or relieved appropriately;

e.      Accelerated deterioration of his health;

f.      Violations of his dignity; and

g.      An untimely death.

56.     DON ARRINGTON was discharged for the final time from SILVER CITY CARE CENTER on February 22, 2022. DON ARRINGTON died on June 14, 2023 as a result of the injuries that he sustained at SILVER CITY CARE CENTER.

57.     The above catastrophic injuries and death of DON ARRINGTON were caused by Defendants' profound neglect, violations of the Resident Abuse and Neglect Act, and reckless, willful, wanton and oppressive disregard for DON ARRINGTON'S safety.

Arrington Complaint – Page 34

C.    **The Nature of SILVER CITY CARE CENTER AND GENESIS' Business and
Participation in Operations**

58.    At all times material to this lawsuit, Defendants were fully aware that the delivery
of essential care services in its nursing homes hinged upon three fundamental fiscal and operational
decisions: (1) the determination of the numbers and expenditures on staffing levels; (2) the
determination of the census levels within the nursing home; and (3) payor mix. GENESIS
HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE
SERVICES, LLC determined, controlled and enforced each of these critical decisions at every
nursing home within their chain of nursing homes, including SILVER CITY CARE CENTER.

59.    Further, at all times material, critical operational decisions having impact on
SILVER CITY CARE CENTER's revenues and expenditures were centrally made and controlled
at a corporate level by GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND
GENESIS ADMINISTRATIVE SERVICES, LLC. More particularly, GENESIS HEALTHCARE
INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC
determined and controlled: the numbers of staff allowed to work in its chain of nursing homes; the
expenditures for staffing at the nursing home; the revenue targets for each nursing home; the payor
mix; and, census targets for each nursing home, as well as the patient recruitment programs and
discharge practices at each nursing home. In sum, at times material hereto, all cash management
functions, revenues and expenditure decisions at the nursing home level, including at SILVER
CITY CARE CENTER, were tightly controlled at the corporate level by GENESIS
HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE
SERVICES, LLC.

60.    The census edicts, aggressive marketing and admission practices, and resident
discharge policies emanated from the top of this Defendants' corporate structure and were

emphasized down the chain of command on a continual basis. The above policies were mandatory and SILVER CITY CARE CENTER acted in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level that GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC deemed appropriate.

61.     The tight control exercised by GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC over financial decisions that determined the delivery of care rendered at SILVER CITY CARE CENTER and its other nursing homes grew out of its financial motivation and intent to increase revenues while restricting and/or reducing expenses.

62.     Accordingly, decisions by GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC as to staffing and census were determined by the financial needs of the company as opposed to the acuity levels and needs of the residents.

63.     GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC, therefore, directly participated in a continuing course of negligent conduct, requiring SILVER CITY CARE CENTER to recruit and retain heavier care, higher pay residents to the facilities, when the needs of the resident population exceeded the capacity of staff, while at the same time creating, implementing and enforcing dangerous operational budgets at SILVER CITY CARE CENTER which deprived residents of adequate staffing, and caused widespread neglect. In so doing, Defendants disregarded, superseded, and violated the duties and responsibilities imposed on SILVER CITY CARE CENTER, a nursing home licensed by the State of New Mexico.

Arrington Complaint – Page 36

**D.**      <u>**Notice, Motive, and Routine Practices**</u>

64.     DON ARRINGTON'S neglect was foreseeable. SILVER CITY CARE CENTER, GENESIS HEALTHCARE INC., GENESIS HEALTHCARE LLC, AND GENESIS ADMINISTRATIVE SERVICES, LLC were placed on notice of the dangerous nature of their conduct before DON ARRINGTON'S final discharge and on an ongoing basis by virtue of:

a.      Complaints by staff, residents and the families of residents growing out of the dangerous routine practices at SILVER CITY CARE CENTER which form the basis of this lawsuit;

b.      State deficiencies found by state and federal nursing home surveyors; and

c.      The widespread extent of ongoing dangerous care practices and neglect occurring in SILVER CITY CARE CENTER.

65.     Further, Plaintiff has reason to believe that during and after DON ARRINGTON'S residency, Defendants engaged in ongoing and routine practices that constituted a continuing course of negligence, "neglect" as such term is defined by law, and fraud at SILVER CITY CARE CENTER arising out of:

a.      The dangerous and continuing practice of failing to have sufficient nursing personnel, including nurse aides, on duty to meet the care needs of resident population as determined by medical orders and individualized care plans;

b.      The relentless practice of recruiting heavier care residents for which the nursing home received higher reimbursements when SILVER CITY CARE CENTER did not have sufficient numbers of nursing personnel to provide the amount and kind of nursing care, personal care and supervision required to meet the needs of each resident, including DON ARRINGTON; and

c.      The ongoing practice of admitting, retaining and failing to discharge residents, in violation of the law, whose nursing care and treatment needs could not be met because SILVER CITY CARE CENTER staff did not have sufficient time, qualifications or training to provide the required nursing care, necessary health related services, personal care, and ordered treatments, in accordance with state law, regulations and professional standards.

66.     These dangerous and routine practices arose out of Defendants' financial motives described above. Moreover, they were ongoing in nature and continued after his discharge. Such

routine practices caused significant injury to not only DON ARRINGTON, but also to other similarly-situated residents who were subjected to substantially similar conditions. Accordingly, Plaintiff would show that: a) the neglect of DON ARRINGTON grew out of an ongoing and "routine practice of an organization"; and (b) Defendants were repeatedly warned and placed on notice of these dangerous and routine practices.

67.     At all times material, SILVER CITY CARE CENTER, located at 3514 Fowler Avenue, Silver City, New Mexico 88061, was a skilled nursing facility and/or nursing home within the meaning of federal and New Mexico law, statutes, regulations, and codes.

68.     At all times material, SILVER CITY CARE CENTER was subject to state law, licensing and regulatory statues, administrative codes, and rules applicable to skilled nursing facilities and/or nursing homes.

69.     At all times material, Defendants held themselves out as specialists in the operation, administration, and management of skilled nursing facilities and/or nursing homes, with the expertise necessary to provide a safe environment, prompt, necessary, and adequate care, treatment and assistance, and maintaining the health and safety of residents.

70.     At all times material, while DON ARRINGTON was a resident of SILVER CITY CARE CENTER, it had a duty and promised to provide DON ARRINGTON with a safe environment and with prompt, adequate, and appropriate individualized treatment, assistance, health care, and related services, including, but not limited to, supervision, monitoring, assessment, rehabilitation, physical, occupational, and/or speech and language pathology therapy services, nourishment, nutrition and dietary services, wound care, and treatment with courtesy, dignity and respect by Defendants and/or employees, representatives, consultants, agents, officers, and/or servants to attain and maintain the highest physical, mental, and psychosocial well-being, level of function and safety for DON ARRINGTON.

Arrington Complaint – Page 38

71.     At all times material, Defendants accepted the duty and responsibility for the safety and supervision of DON ARRINGTON and stood in a special relationship with DON ARRINGTON for the purposes of his protection.

72.     At all times material, Defendants had a duty of reasonable care owed to DON ARRINGTON and other SILVER CITY CARE CENTER residents, to protect them from all foreseeable harm.

73.     At all times material, it was policy, procedure and practice of Defendants to educate, train, orient and teach management, supervisors and staff to provide care, assistance, and services to residents according to their needs and disabilities.

74.     Upon information and belief, at all times material, Defendants knew or should have known that DON ARRINGTON necessitated adequate and competent staff to supervise, monitor, assist, protect and keep its residents, including DON ARRINGTON, safe.

75.     At all times material, it was the duty and responsibility of Defendants' management, supervisors and staff to act reasonably to prevent residents, including DON ARRINGTON, from harm.

76.     At all times material, Defendants knew or should have known that DON ARRINGTON necessitated adequate and competent staff for all treatments, assistance, care, and services, including but not limited to supervision, monitoring, assessment, catheter care, wound care, proper care to prevent infections, rehabilitation, therapy services, monitoring, updating, implementing, and/or developing treatments, care plans, plans of care, services, and/or interventions appropriate to DON ARRINGTON'S needs, risks, and/or compliance with his physicians' orders.

77.     At all times material, Defendants through their employees, representatives, consultants, agents, and/or servants had developed a plan of care for DON ARRINGTON, and had developed and implemented practices, policies, and procedures to carry out his plan of care.

78.     At all times material, Defendants had a duty to update DON ARRINGTON'S Plan of Care, to address changes in his condition, and to assess and evaluate its continued ability to meet DON ARRINGTON'S needs.

79.     Upon information and belief, at all times material, Defendants failed to develop, update and/or implement adequate and/or necessary Plans of Care and/or Care Plans, services, treatment, and/or interventions to address DON ARRINGTON'S needs and/or risks, failed to properly arrange for, manage, and/or administer DON ARRINGTON'S physician orders, failed to address DON ARRINGTON'S changes in condition, failed to properly assess DON ARRINGTON, failed to provide appropriate catheter care, failed to properly assess and/or evaluate Defendants' continued ability to meet DON ARRINGTON'S needs, failed to properly assess, monitor, and treat DON ARRINGTON'S wound, failed to use proper care and treatment to prevent infection, failed to use proper wound care measures, failed to implement necessary interventions, treatment, and/or services to reduce DON ARRINGTON'S risks for wound infections, urinary tract infections, weight loss, and/or harm, and/or failed to prevent DON ARRINGTON from harm while he was a resident of SILVER CITY CARE CENTER.

80.     As a result of Defendants' disregard for DON ARRINGTON'S safety, its choices and negligence including, but not limited to, the failure to develop, update, implement, and/or comply with a comprehensive Plan of Care to meet DON ARRINGTON'S needs, risks, and/or changes in condition, provide adequate monitoring, supervision, care, assistance, and/or services to maintain DON ARRINGTON'S wellbeing, including wound care, infection control, nutrition, and hydration,  notify and/or educate DON ARRINGTON'S family and/or legal representative of

significant changes in DON ARRINGTON'S health condition, significant changes in his status, treatment, and/or diet orders, and/or provide DON ARRINGTON care in accordance with his individual care needs, DON ARRINGTON suffered wound infections, transmetatarsal amputation, urinary tract infections, significant pain that was not treated or relieved appropriately, and untimely death.

81.     Upon information and belief, Defendants failed to provide DON ARRINGTON with prompt and/or necessary assessments, treatments, interventions, services, assistance, monitoring, and/or supervision required to prevent wound infections, transmetatarsal amputation, urinary tract infections, significant pain and suffering, harm and/or death.

82.     As a result of the Defendants' actions and omissions, Defendants' failure to assess, monitor, prevent, recognize and/or treat DON ARRINGTON resulted in DON ARRINGTON'S prolonged suffering and death.

83.     While in Defendants' care, DON ARRINGTON suffered injuries and harm including, but not limited to, the following:

a.   Wound infection;

b.   Metatarsal amputation;

c.   Urinary tract infections;

d.   Physical pain and suffering;

e.   Mental anguish;

f.   Humiliation and indignity;

g.   The value of DON ARRINGTON'S life apart from his earning capacity;

h.   Wrongful death.

84.     As a result of the Defendants' actions and omissions, and as a direct result of his avoidable and preventable infections, transmetatarsal amputation, pain, and as a result of the

injuries he suffered, DON ARRINGTON required medical attention, hospitalization, and his overall health deteriorated causing his death on June 14, 2023.

85.     The injuries, abuse and damages inflicted upon DON ARRINGTON were of a continuing nature, and he suffered from these injuries and indignities on a day-to-day basis throughout the course of his residency at SILVER CITY CARE CENTER and thereafter. The negligent conduct which caused these injuries to occur on a daily basis is attributable to each Defendant.

## COUNT I
## WRONGFUL DEATH

86.     Plaintiff incorporates the aforementioned allegations as if the same were incorporated herein. *See* Rule 1-010(C) NMRA.

87.     The acts and omissions of Defendants, and each of them, individually and through their agents and employees, were wrongful and negligent and were the direct and proximate cause of DON ARRINGTON'S death.

88.     Plaintiff is entitled to recover all damages legally available under the New Mexico Wrongful Death Act, NMSA § 41-2-1 and § 41-2-3, including the loss of enjoyment of life, the monetary worth of his extreme pain and suffering, the reasonable expenses of necessary medical care and treatment, and of funeral and burial, together with all other damages that are fair and just.

89.     The actions of Defendants, individually and through their agents or employees, were malicious, willful, reckless, and/or done with wanton disregard for DON ARRINGTON, giving rise to punitive damages against these Defendants.

## COUNT II
## NEGLIGENCE and NEGLIGENCE *PER SE*

90.     Plaintiff incorporates the aforementioned allegations as if the same were incorporated herein. *See* Rule 1-010(C) NMRA.

Arrington Complaint – Page 42

91.     Defendants owed a duty to their residents, including DON ARRINGTON, to provide care, treatment, and services within accepted standards of care of nursing homes and/or skilled nursing facilities.

92.     Defendants owed a duty to their residents, including DON ARRINGTON, to hire, train and supervise employees to deliver care and services to residents in a safe and appropriate manner.

93.     Defendants breached the duty owed to their residents, including DON ARRINGTON, and were negligent in their care and treatment of DON ARRINGTON, through their acts or omissions, which include, but are not limited to, the following:

    a.    Failure to provide appropriate care and treatment to prevent and/or protect DON ARRINGTON from suffering wound infections, transmetatarsal amputation, urinary tract infections, pain, suffering, anxiety, mental anguish, humiliation, indignity, injuries, harm and/or death;

    b.    Failure to adequately train, educate, assess, evaluate, and supervise nursing and/or therapy personnel so as to ensure that DON ARRINGTON received appropriate care, in accordance with the standard of care, professional standards of practice, Defendants' policies and procedures, and/or state and federal laws and regulations;

    c.    Failure to provide DON ARRINGTON with basic and necessary care, treatment and supervision including, but not limited to:

        i.    assessing, developing, updating, and/or implementing appropriate care plans, individualized care plans, and/or treatment interventions to reduce DON ARRINGTON'S risk and/or prevent DON ARRINGTON from infections, injury, and harm;

        ii.    developing and/or implementing appropriate policies and procedures; and/or

        iii.    assessing, developing, updating, supervising, monitoring, documenting, and/or implementing safe, appropriate, and/or necessary care, services, interventions, therapies, and/or treatments required to attain or maintain highest practicable physical, mental, and/or psychosocial level of well-being for DON ARRINGTON, and/or to prevent injury, harm, and/or death.

    d.    Failure to protect DON ARRINGTON from abuse or neglect;

    e.    Failure to treat DON ARRINGTON with dignity, kindness and respect;

f.      Failure to properly notify DON ARRINGTON'S family, legal representative, and/or physician of significant changes in DON ARRINGTON'S health condition, significant changes in his physical, mental, or psychosocial status, a need to alter DON ARRINGTON'S treatment, and/or an injury and/or condition that had the potential for requiring physician intervention;

g.      Making false, misleading and deceptive representations as to the quality of care, treatment and services provided by Defendants to their residents, including DON ARRINGTON;

h.      The failure to adopt adequate guidelines, standards, policies and procedures for documentation, maintaining records and files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by Defendants' employees, irrespective of whether such complaint derived from a state or federal survey agency, a resident of said facilities, an employee of said facilities or any interested person;

i.      Failure of high managerial agents and corporate offers to adequately hire, train, educate and/or supervise the administrator, director of nurses, assistant director of nursing and MDS Coordinator so as to assure that DON ARRINGTON received care in accordance with the Defendants' policies and procedures, state and federal laws and regulations and standard of care;

j.      Failure to adequately hire, train, educate, supervise and/or retain a sufficient amount of competent and qualified personnel in said facility to assure that DON ARRINGTON received care, treatment, and services in accordance with Defendants' policies and procedures, state and federal laws and regulations, the standard of care, and/or professional standards of practice;

k.      The failure to provide a sufficient number of qualified nursing personnel at SILVER CITY CARE CENTER to ensure that DON ARRINGTON and other residents received and/or were provided with:

         i.      timely, thorough and accurate assessments;
         ii.      accurate and updated plans of care;
         iii.      proper care to prevent and treat infections;
         iv.      prescribed treatment, medication and/or diet;
         v.      necessary supervision; and/or
         vi.      timely nursing and medical intervention.

l.      The failure to provide staff and/or personnel sufficient in number to provide timely, thorough, and accurate assessments, prepare and implement appropriate plans of care and provide proper treatment to protect DON ARRINGTON from physical harm, wound infections, transmetatarsal amputation, urinary tract infections, pain, suffering, anxiety, mental anguish, humiliation, indignity, injuries, harm and/or death;

m.    The failure to provide staff and/or personnel sufficient in number to ensure that DON ARRINGTON attained and maintained his highest level of physical, mental and psychosocial well-being;

n.    The failure to maintain medical and nursing records for DON ARRINGTON in accordance with accepted professional standards and practices that are complete, accurately documented, and readily accessible, and systematically organized with respect to:

    i.    the diagnosis of DON ARRINGTON

    ii.    the comprehensive plan of care, treatments, and/or services provided to DON ARRINGTON

    iii.    a record of DON ARRINGTON'S assessments and the results of any preadmission screening, resident review evaluations, and/or determinations conducted by the State;

    iv.    Physician's, nurses', and other licensed professional's progress notes; and/or

    v.    Laboratory, radiology, and other diagnostic services reports as required under state and federal laws and regulations;

o.    The failure by the members of the governing body of the facility to discharge its legal and lawful obligation by:

    i.    ensuring that the rules and regulations designed to protect the health and safety of the residents, such as DON ARRINGTON, as promulgated in the New Mexico Nursing Home Residents Rights Act 7.9.2.22 NMAC (2005), by the New Mexico Health Facility Licensing and Certification Bureau, state and federal laws and regulations, were consistently complied with on an ongoing basis;

    ii.    ensuring that the resident care policies and procedures for the facility were consistently complied with on an ongoing basis; and/or

    iii.    responsibly ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care; and/or

p.    The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care.

94.    DON ARRINGTON'S care was under the exclusive control and management of Defendants.

95.    DON ARRINGTON'S injuries were of a kind which does not ordinarily occur in the absence of negligence of Defendants' part.

96.     The injuries and wrongful death of DON ARRINGTON are a proximate result of the acts or omissions set forth above, singularly or in combination.

97.     At all relevant times, Defendants were subject to state and federal laws and regulations regarding long-term care facilities and nursing homes, including but not limited to the following:

a.      "[C]are for its residents in such a manner and in such an environment as well promote maintenance or enhancement of the quality of life of each resident;"

b.      Provide "nursing services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident;"

c.      Provide "dietary services that assure that the meals meet the daily nutritional needs of each resident;"

d.      "[P]rovide 24-hour licensed nursing service… sufficient to meet nursing needs of its residents;"

e.      "[O]perate and provide services in compliance with all applicable Federal, State and local laws and regulations… and with accepted professional standards and principles which apply to professionals providing services in such a facility;"

f.      Not abuse or allow abuse or harm to come to its residents, pursuant to NMSA 1978 §30-47-4, which criminalizes conduct constituting "abuse" of a resident in a care facility. "Abuse" is "any act or failure to act performed intentionally, knowingly, or recklessly that causes or is likely to cause harm to a resident, including… medically inappropriate conduct that causes or is likely to cause physical harm to a resident;"

g.      Not to neglect its residents, pursuant to NMSA 1978 §30-47-5, which criminalizes conduct constituting "neglect" of a resident in a care facility. "Neglect" includes any grossly negligent:

i.      "failure to provide any treatment, service, care, medication or items that are necessary to maintain the health or safety of a resident;"

ii.     "failure to take any reasonable precaution that is necessary to prevent damage to the health or safety of a resident;" and

iii.    "failure to carry out a duty to supervise properly or control the provision of any treatment, care, good, service or medication necessary to maintain the health or safety of a resident;"

h.      Immediately notify the resident, resident's physicians, or an interested family member when there was:

       i.      "an accident involving the resident which results in injury and has the potential for requiring physician intervention;"

      ii.     "a significant change in … physical, mental, or psychosocial status,"; and

    iii.     "a need to alter treatment significantly;"

i.    "[T]reat each resident with respect and dignity and care for each resident in a manner and in an environment that promotes maintenance or enhancement of his or her quality of life;"

j.    "[H]have sufficient nursing staff with the appropriate competencies and skill sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;"

k.    Develop a comprehensive care plan for each resident, consistent with the resident rights set for at §483.10(c)(2) and §483.10(c)(3), and/or that includes "measurable objectives and timeframes to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment;"

l.    "[P]rovide the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;"

m.    Ensure that the residents are provided with "the necessary care and services to ensure that a resident's abilities in activities of daily living do not diminish unless circumstances of the individual's clinical condition demonstrate that such diminution was unavoidable;"

n.    Ensure that if that facility does not employ a qualified professional person to furnish a specific service to be provided by the facility, the facility must have that service furnished to residents by a person or agency outside the facility under an arrangement described in section 1861(w) of the Act or an agreement as described in 42 CFR §483.70 (g)(2);

o.    Ensure that arrangements as described in section 1861(w) of the Act or agreements pertaining to services furnished by outside resources must specify in writing that the facility assumes responsibility for:

       i.     "Obtaining services that meet professional standards and principles that apply to professionals providing services in such a facility;"

      ii.     "The timeliness of the services."

p.    Provide "medically-related social services to attain or maintain the highest practicable physical, mental and psychological well-being of each resident;"

q.    ensure that residents are provided "with sufficient fluid intake to maintain proper hydration and health;"

r.     Ensure that "[a] resident's food and fluid intake and acceptance of diet shall be monitored and documented, and significant deviations from normal eating patterns shall be reported to the nurse and either the resident's physician or dietician as appropriate;"

s.     Ensure that each resident is provided with "a nourishing, palatable, well-balanced diet that meets his or her daily nutritional and special dietary needs, taking into consideration the preferences of each resident;"

t.     Ensure that the facility employs "sufficient staff with the appropriate competencies and skill sets to carry out the functions of the food and nutrition service, taking into consideration resident assessments individual plans of care and the number, acuity and diagnoses of the facility's resident population in accordance with the facility assessment required at §483.470(e);"

u.     Provide "sufficient support personnel to safely and effectively carry out the functions of the food and nutrition service;"

v.     Ensure that "suitable, nourishing, alternative meals and snacks must be provided to residents who want ot eat at non-traditional times or outside of scheduled meal service times, consistent with the resident plan of care;"

w.     Ensure each resident's medical record contains nursing service documentation, including but not limited to an "initial nursing care plan and any revisions", nursing documentation describing "the general physical and mental condition of the resident, including any unusual symptoms or actions" and food and fluid intake, when the monitoring of intake is necessary;

x.     Maintain clinical records on each resident in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, systematically organized and must contain:

     i.    "Sufficient information to identify the resident;"
     ii.   "A record of the resident's assessment;"
     iii.  "The comprehensive plan of care and services provided;"
     iv.  "The results of any preadmission screening and resident review evaluations and determinations conducted by the State;"
     v.   "Physician's, nurse's, and other licensed professional's progress notes"; and,
     vi.  "Laboratory, radiology and other diagnostic services reports as required under §483.50.;"

y.     Provide services for residents on a "continuing twenty-four (24) hour basis and shall maintain or improve physical, mental and psychosocial well-being;"

z.     Require all employees and providers to treat its residents with courtesy, respect and full recognition of one's dignity and individuality;

aa.  Allow its residents to receive adequate and appropriate care within the capacity of the facility;

bb.  Notify a designated family member of a significant adverse change in DON ARRINGTON'S condition; and/or

cc.  Require that there be "sufficient nursing service personnel assigned to care for the specific needs of each resident on each tour of duty."

98.  As a direct and proximate result of Defendants' actions and omissions in violation of state and federal laws and regulations and the standard of care, DON ARRINGTON and his statutory heirs under the Wrongful Death Act suffered the following damages: the reasonable expenses of his medical care and treatment; the reasonable expenses of his funeral and burial; the monetary worth of his pain and suffering; and the monetary worth of his life and loss of the value of his life.

99.  The neglect that resulted in DON ARRINGTON'S injuries and death was accompanied by aggravating circumstances for which the Plaintiff is entitled to additional damages.

100.  The statutes and regulations cited above set minimum standards the Defendants are required to meet in providing care to residents such as DON ARRINGTON.

101.  The statutes and regulations cited above were enacted for the benefit or protection of a class of the public, of which DON ARRINGTON was a member at all times material to this action.

102.  Defendants violated these statutes and regulations in care for DON ARRINGTON and other similarly situated residents AT SILVER CITY CARE CENTER.

103.  The actions of Defendants, through their agents or employees, were malicious, willful, reckless, and/or done with wanton disregard for DON ARRINGTON, giving rise to punitive damages against Defendants.

## COUNT III
## PUNITIVE DAMAGES

104.     Plaintiff incorporates the aforementioned allegations as if the same were incorporated herein. *See* Rule 1-010(C) NMRA.

105.     Defendants' acts and/or omissions described herein were malicious, willful, reckless, and/or wanton as those terms are defined by New Mexico law justifying an award of punitive damages.

106.     Defendants are directly and/or vicariously liable for punitive damages based on the conduct of their employees, agents, apparent agents, officers, principals, and vice-principals.

107.     A corporation may be held liable for punitive damages for the misconduct of its employees if: (1) employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of the employees demonstrates a culpable mental state warranting punitive damages. *Grassie v. Roswell Hospital Corporation*, 150 N.M. 283 (2010).

108.     Defendants' employees, agents, apparent agents, officers, principals and vice-principals were acting in the scope of their employment with Defendants and had sufficient discretionary or policy making authority to speak and act for it with regard to the conduct at issue, independent of higher authority.

109.     Defendants further authorized, participated in, or ratified the conduct of its agents, employees, officers, principals, and vice-principals.

110.     The actions of Defendants' employees, agents, apparent agents, officers, principals and vice-principals, viewed in the aggregate, determine that Defendants had the requisite culpable mental state because of the cumulative conduct of its employees.

Arrington Complaint – Page 50

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests relief from this Court as follows:

1. For all damages to be determine by the jury, in an amount to adequately compensate Plaintiff for all injuries and damages sustained;

2. For all general and special damages caused by the alleged conduct of Defendants;

3. For the costs of litigating this case;

4. For punitive damages sufficient to punish Defendants for their egregious conduct and to deter Defendants and others from repeating such conduct; and

5. For all other relief to which Plaintiff is entitled under New Mexico law.

Respectfully Submitted,

**MARKS, BALETTE, YOUNG & MOSS, PLLC**

By:  _/s/ Jacques G. Balette_____
        Jacques G. Balette
        7521 Westview Dr.
        Houston, Texas 77055
        (713) 681-3070
        (713) 681-2811 – facsimile
        jacquesb@marksfirm.com

        Justin R. Kaufman
        Rosalind B. Bienvenu
        **DURHAM, PITTARD & SPALDING, L.L.P.**
        505 Cerrillos Road, Suite A209
        Santa Fe, New Mexico 87501
        jkaufman@dpslawgroup.com
        rbienvenu@dpslawgroup.com

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/17/2025 3:24 PM
KATHLEEN VIGIL CLERK OF THE COURT
Mariah Gonzales

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

JOHN DAY, AS PERSONAL REPRESENTATIVE    )
OF THE WRONGFUL DEATH ESTATE OF    )
DON ARRINGTON,    )
    )
    Plaintiff,    )
    )
v.    ) No. D-101-CV-2025-00148
    )
3514 FOWLER AVENUE OPERATIONS, LLC d/b/a    )
SILVER CITY CARE CENTER;    )
GENESIS ADMINISTRATIVE SERVICES, LLC;    )
FC-GEN OPERATIONS INVESTMENT, LLC;    )
GEN OPERATIONS I, LLC    )
GEN OPERATIONS II, LLC    )
GENESIS HEALTHCARE, INC.;    )
GENESIS HEALTHCARE, LLC;    )
GENESIS HOLDINGS, LLC;    )
GHC HOLDINGS, LLC;    )
GENESIS OMG OPERATIONS, LLC    )
HCCF MANAGEMENT GROUP XI, LLC;    )
SENIOR CARE GENESIS, LLC;    )
SENIOR CARE HOLDINGS, LLC;    )
SUN HEALTHCARE GROUP, INC.;    )
SUNDANCE REHABILITATION HOLDCO, INC.;    )
ZAC PROPERTIES XI, LLC; AND    )
REBECCA SINGLETON,    )
    )
    Defendants    )

## **JURY DEMAND**

**COMES NOW** Plaintiff, by and through his attorneys of record, and hereby demands a

trial by a twelve (12) person jury in this cause of action and tenders the appropriate fee with the

filing of this application.

Respectfully Submitted,

**MARKS, BALETTE, YOUNG & MOSS, PLLC**

By: _/s/ Jacques G. Balette_____
      Jacques G. Balette
      7521 Westview Dr.
      Houston, Texas 77055
      (713) 681-3070
      (713) 681-2811 – facsimile
      jacquesb@marksfirm.com

      Justin R. Kaufman
      Rosalind B. Bienvenu
      **DURHAM, PITTARD & SPALDING, L.L.P.**
      505 Cerrillos Road, Suite A209
      Santa Fe, New Mexico 87501
      jkaufman@dpslawgroup.com
      rbienvenu@dpslawgroup.com

      ***Attorneys for Plaintiff***