| United States Bankruptcy Court for the North District of Texas | | |
|---|---|---|
| **Name of Debtor:** Genesis Healthcare, Inc. | **For Court Use Only** | |
| | Claim Number: | 0000011072 |
| **Case Number:** 25-80185 | File Date: | 09/25/2025 13:41:46 |

# Proof of Claim (Official Form 410)

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.  With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**
**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.
A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.  18 U.S.C. §§ 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed.  That date is on the notice of bankruptcy (Form 309) that you received.**

04/25

## Part 1:    Identify the Claim

**1.    Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim):    Medina, Eloy

Other names the creditor used with the debtor: _____

**2.    Has this claim been acquired from someone else?**    ☑ No   ☐ Yes.   From whom? _____

**3.    Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name    Medina, Eloy | Name _____ |
| Address    Jacques G. Balette | Address _____ |
|     7521 Westview Drive | _____ |
| | _____ |
| City    Houston | City _____ |
| State    TX        ZIP Code  77055 | State _____    ZIP Code _____ |
| Country (if International): _____ | Country (if International): _____ |
| Phone:    7136834830 | Phone: _____ |
| Email:    jacquesb@marksfirm.com | Email: _____ |
| Uniform claim identifier (if you use one): _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | 5. Do you know if anyone else has filed a proof of claim for this claim? |
|---|---|
| ☑ No | ☑ No |
| ☐ Yes. | ☐ Yes. |
| Claim number on court claims register (if known) _____ | Who made the earlier filing? |
| Filed on _____<br> MM / DD / YYYY | _____ |

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:

4755

**7. How much is the claim?**

$ undetermined

**Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Personal Injury/Workers Comp

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:

_____

**Basis for perfection:**

_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                         $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed  ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of petition.**

$_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property:

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

---

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9):** $_____

| | |
|---|---|
| **Part 3:** | **Sign Below** |

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Jacques Balette*                                    09/25/2025 13:41:46

Signature                                              Date

**Provide the name and contact information of the person completing and signing this claim:**

Name        Jacques G. Balette

Address     Marks Balette Young & Moss, PLLC

            7521 Westview Dr.

City         Houston

State        TX                                    Zip    77055

Country (in international)    United States of America

Phone        713-683-4830

Email        jacquesb@marksfirm.com

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
</table>

Debtor 1    Genesis Healthcare, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern District of Texas

Case number   25-80185 (SGT)

## Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

John Day, as Personal Representative of the Wrongful Death Estate of Eloy Medina
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   Eloy Medina

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jacques G. Balette
Name

7521 Westview Drive
Number   Street

Houston     TX     77055
City     State     ZIP Code

Contact phone   713.683.4830

Contact email   jacquesb@marksfirm.com

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Where should payments to the creditor be sent? (if different)

Name

Number   Street

City     State     ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____
Filed on ___ / ___ / _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __4__ __7__ __5__ __5__

**7. How much is the claim?**

$ _An amount to be determined in accordance with law but no less than $1,000,000_ . Does this amount include interest or other charges?

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Personal injury and wrongful death. See attached Complaint.

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|---|
| | | ☐ **Yes.** *Check one:* | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/24/2025
                  MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| Name | Jacques G. Balette | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Marks Balette Young & Moss, PLLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7521 Westview Dr. | | |
| | Number     Street | | |
| | Houston | TX | 77055 |
| | City | State | ZIP Code |
| Contact phone | 713.683.4830 | Email | jacquesb@marksfirm.com |

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
5/15/2024 3:56 PM
KATHLEEN VIGIL CLERK OF THE COURT
Latisha B Garcia Trujillo

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

Case assigned to Wilson, Matthew Justin

No. D-101-CV-2024-01209

| | |
|---|---|
| **JOHN DAY, AS PERSONAL REPRESENTATIVE** | ) |
| **OF THE WRONGFUL DEATH ESTATE OF** | ) |
| **ELOY MEDINA, DECEASED,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ST. CATHERINE HEALTHCARE AND** | ) |
| **REHABILITATION CENTER, LLC D/B/A** | ) |
| **BEAR CANYON REHABILITATION CENTER;** | ) |
| **GENESIS HEALTH CARE, LLC;** | ) |
| **GENESIS HEALTHCARE, LLC** | ) |
| **GENESIS HEALTHCARE, INC.** | ) |
| **SUMMIT CARE, LLC;** | ) |
| **FC-GEN OPERATIONS INVESTMENT, INC;** | ) |
| **GEN OPERATIONS I, LLC;** | ) |
| **GEN OPERATIONS II, LLC;** | ) |
| **HCCF MANAGEMENT GROUP XI, LLC;** | ) |
| **SKILLED HEALTHCARE, LLC;** | ) |
| **SUMMIT CARE PARENT, LLC;** | ) |
| **SUN HEALTHCARE GROUP, INC.;** | ) |
| **SUNDANCE REHABILITATION HOLDCO, INC.;** | ) |
| **WELLTOWER, INC.;** | ) |
| **ZAC PROPERTIES XI, LLC; AND** | ) |
| **EBONY LAMPKIN, DIRECTOR OF NURSING,** | ) |
| | ) |
| **Defendants.** | ) |

**ORIGINAL COMPLAINT FOR NEGLIGENCE,**
**WRONGFUL DEATH AND PUNITIVE DAMAGES**

COMES NOW JOHN DAY, AS PERSONAL REPRESENTATIVE OF THE
WRONGFUL DEATH ESTATE OF ELOY MEDINA, DECEASED, hereinafter "Plaintiff," by
and through his attorneys, and files this Original Complaint against the Defendants herein for the
wrongful death of Eloy Medina arising out of neglect at ST. CATHERINE HEALTHCARE AND

REHABILITATION CENTER, LLC d/b/a BEAR CANYON REHABILITATION CENTER which took his life on June 5, 2021. As grounds for this Complaint, Plaintiff states the following:

## I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, JOHN DAY, AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE OF ELOY MEDINA, DECEASED, is a resident of Santa Fe County, New Mexico.

2.      Defendant, ST. CATHERINE HEALTHCARE AND REHABILITATION CENTER, LLC d/b/a BEAR CANYON REHABILITATION CENTER, is a foreign limited liability company doing business in New Mexico and may be served with process by serving its registered agent for service, Corporation Service Company, 110 East Broadway St., Hobbs, NM 88240.

3.      Defendant, GENESIS HEALTH CARE, LLC, is a domestic limited liability company and may be served with process by serving its registered agent for service, Steve Sandy, 6001 San Mateo Blvd, Bldg E2, Ste. 180, Albuquerque, NM 87109.

4.      Defendant, GENESIS HEALTHCARE, LLC, is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving GENESIS HEALTHCARE, LLC's registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

5.      Defendant, GENESIS HEALTHCARE, INC., is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving GENESIS HEALTHCARE, INC.'s registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

6.      Defendant, SUMMIT CARE, LLC, is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving SUMMIT CARE, LLCS's registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

7.      Defendant, FC-GEN OPERATIONS INVESTMENT, INC. is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving FC-GEN OPERATIONS INVESTMENT, LLC'S registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

8.      Defendant, GEN OPERATIONS I, INC. is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving GEN OPERATIONS I, LLC'S registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

9.      Defendant, GEN OPERATIONS II, INC. is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving GEN OPERATIONS II, LLC'S registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

10.      Defendant, HCCF MANAGEMENT GROUP XI, LLC is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving HCCF MANAGEMENT GROUP XI, LLC'S registered agent for service: Corporation Service Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

11.     Defendant SKILLED HEALTHCARE, LLC is a foreign limited liability company doing business in New Mexico and may be served with process by serving its registered agent for service, CSC of Lea County, Inc., 110 East Broadway St., Hobbs, NM 88240.

12.     Defendant SUMMIT CARE PARENT, LLC is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving SUMMIT CARE PARENT, LLC'S registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

13.     Defendant SUN HEALTHCARE GROUP, INC. is a foreign limited liability company doing business in New Mexico and may be served with process by serving its registered agent for service, CSC of Lea County, Inc., 1819 N. Turner St., Ste. G, Hobbs, NM 88240.

14.     Defendant SUNDANCE REHABILITATION HOLDCO, INC. is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving SUNDANCE REHABILITATION HOLDCO, INC.'s registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

15.     Defendant WELLTOWER, INC. is a foreign limited liability company doing business in New Mexico and may be served with process by serving its registered agent for service, Corporation Service Company, 110 East Broadway St., Hobbs, NM 88240.

16.     Defendant ZAC PROPERTIES XI, LLC is a Delaware limited liability company, duly organized and existing pursuant to law. This Defendant has transacted business in the State of New Mexico at all times relevant hereto, but has failed to designate an agent for service of process. Pursuant to NMSA, Section 38-1-6, service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving ZAC PROPERTIES XI, LLC's registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

17.     Upon information and belief, Defendant EBONY LAMPKIN was, at times material, the Director of Nursing of BEAR CANYON REHABILITATION CENTER. This Defendant may be served at her last known address: 6400 Freemont Hills Loop NE, Rio Rancho, New Mexico.

18.     Upon information and belief, Defendants controlled the operation, planning, management, budget, and quality control of BEAR CANYON REHABILITATION CENTER ("hereinafter referred to as "BEAR CANYON REHABILITATION CENTER"). The authority exercised by Defendants over the nursing facility included but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by the nursing facilities in New Mexico, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

19.     This Court has personal jurisdiction over this cause because the Defendants conduct business within the State of New Mexico and have sufficient contacts to warrant the exercise of jurisdiction in New Mexico.

20.     Venue is proper in this Court pursuant to NMSA 1978, Section 38-3-1(A) because Plaintiff John Day resides in Santa Fe County.

21.     All conditions precedent to filing suit have occurred.

## II.  FACTUAL ALLEGATIONS

### A.     Summary Statement of the Case.

22.     This is a case about a nursing home (BEAR CANYON REHABILITATION CENTER) that was required and directed by its parent company, owners, and managers, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; ZAC PROPERTIES XI, LLC; AND EBONY LAMPKIN, DIRECTOR OF NURSING to increase occupancy rates by targeting and recruiting high acuity, high rate of pay patients, whose needs were well beyond the care capabilities of the nursing home's staff.

23.     Unsatisfied with profits at BEAR CANYON REHABILITATION CENTER, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE

GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; AND

ZAC PROPERTIES XI, LLC directly participated in, controlled, and dominated the operations of

BEAR CANYON REHABILITATION CENTER, mandating in reckless disregard for the health

and safety of its residents the following dangerous policies and practices: (a) the aggressive

recruitment and admission of high acuity patients and increase in resident census when Defendants

knew that BEAR CANYON REHABILITATION CENTER did not have staff sufficient in

number, qualification of competency to provide the care required by state law, regulations and

minimum standards; (b) retention of residents whose needs exceeded the qualification and care

capability of the nursing home staff; and (c) continuing suppression, concealment, and cover-up

of ongoing negligence and violation of state law, regulations and minimum standards.

24.     Compounding the danger, GENESIS HEALTH CARE, LLC; GENESIS

HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN

OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II,

LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT

CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION

HOLDCO, INC.; WELLTOWER, INC.; ZAC PROPERTIES XI, LLC; AND EBONY

LAMPKIN, DIRECTOR OF NURSING refused to implement safety policies, procedures and

systems to ensure that: (a) the acuity levels and needs of residents were consistent with the numbers

and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was

provided in accordance with state laws and professional standards.

25.     Accordingly, , GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE,

LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS

INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF

MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; ZAC PROPERTIES XI, LLC; AND EBONY LAMPKIN, DIRECTOR OF NURSING in order to satisfy their desire to grow profits, directly participated in creating dangerous conditions that caused harm to residents, superseding and disregarding the duties which the state of New Mexico imposed upon BEAR CANYON REHABILITATION CENTER. One such resident who was admitted to Defendants' nursing homes was Eloy Medina. As a direct result of Defendants' routine practices, Eloy Medina suffered catastrophic injuries, including respiratory failure and hypoxia, unnecessary pain and suffering and an untimely death.

26.    Defendant EBONY LAMPKIN was, at times material, the Director of Nursing of BEAR CANYON REHABILITATION CENTER. As the Director of Nursing, Ms. Lampkin oversaw the nursing department and provision of nursing services to BEAR CANYON REHABILITATION CENTER residents. As such, she was responsible for ensuring that BEAR CANYON REHABILITATION CENTER residents received necessary and appropriate care in accordance with applicable standards of care, laws, and regulations.

**B.    The Neglect of Eloy Medina at BEAR CANYON REHABILITATION CENTER**

27.    Eloy Medina was admitted to BEAR CANYON REHABILITATION CENTER on June 3, 2021. As a resident, Mr. Medina was dependent upon BEAR CANYON REHABILITATION CENTER' staff for his activities of daily living, including eating and drinking. Defendants were well aware that Eloy Medina depended upon BEAR CANYON

REHABILITATION CENTER for twenty-four (24) hour nursing care which included, at a minimum, the following essential care services:

a.  Creating and implementing an individualized care plan of the daily nursing care required by Eloy Medina based on his specific conditions and needs, which was updated and revised when he experienced a significant change in condition or if care planned measures were ineffective;

b.  Care in accordance with Eloy Medina's individualized care plan;

c.  Care in accordance with Eloy Medina's physician orders;

d.  Timely notifying Eloy Medina's attending physician and family of any significant change in condition, need to alter treatment or threat to Eloy Medina's health;

e.  Providing Eloy Medina with adequate hydration and nutrition, appropriate assistance with eating and drinking;

f.  Monitoring Eloy Medina's respiratory status;

g.  Appropriate assistance with BiPAP; and

h.  Monitoring Eloy Medina for any signs and symptoms of pain, performing a systematic pain assessment and implementing an appropriate pain management program when indicated.

28.  By reason of Eloy Medina's needs and his degree of dependency upon the nursing home staff, Defendants fully understood the consequences of failing to provide such routine services in accordance with fundamental standard of care.

29.  Moreover, by reason of Defendants' experience and background in nursing home care, Defendants were acutely aware that the routine failure to provide the kind of basic care required by Eloy Medina could jeopardize the health and life of such a resident, cause injuries, pain and suffering, and death.

30.  Due to Defendants' ongoing and routine indifference for Eloy Medina's basic care and needs, he suffered avoidable injuries, including, but not limited to

a.  Respiratory failure and hypoxia;

b.      Significant pain that was not treated or relieved appropriately;

c.      Accelerated deterioration of his health;

d.      Violations of his dignity; and

e.      An untimely death.

31.     Eloy Medina died at BEAR CANYON REHABILITATION CENTER on June 5, 2021.

32.     The above catastrophic injuries and death of Eloy Medina were caused by Defendants' profound neglect, violations of the Resident Abuse and Neglect Act, and reckless, willful, wanton and oppressive disregard for Eloy Medina's safety.

33.     The New Mexico Department of Health investigated Defendants' care and treatment of Eloy Medina and cited them with deficiencies.

**C.      The Nature of Defendants' Business and Participation in Operations**

34.     At all times material to this lawsuit, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; ZAC PROPERTIES XI, LLC; AND EBONY LAMPKIN, DIRECTOR OF NURSING were fully aware that the delivery of essential care services in its nursing homes hinged upon three fundamental fiscal and operational decisions: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the nursing home; and, (3) payor mix. GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-

GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS

II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT

CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION

HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC determined, controlled,

and enforced each of these critical decisions at every nursing home within their chain of nursing

homes, including BEAR CANYON REHABILITATION CENTER despite the fact that GENESIS

HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.;

SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I,

LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED

HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.;

SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC

PROPERTIES XI, LLC were neither licensed as a nursing home nor as health care providers within

the State of New Mexico

     35.    Further, at all times material, critical operational decisions having impact on BEAR

CANYON REHABILITATION CENTER'S revenues and expenditures were centrally made and

controlled at a corporate level by GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE,

LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS

INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF

MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE

PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION

HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC determined and

controlled:  the numbers of staff allowed to work in its chain of nursing homes; the expenditures

for staffing at the nursing home; the revenue targets for each nursing home; the payor mix; and,

census targets for each nursing home, as well as the patient recruitment programs and discharge practices at each nursing home. In sum, at times material hereto, all cash management functions, revenues and expenditure decisions at the nursing home level, including at BEAR CANYON REHABILITATION CENTER, were tightly controlled at the corporate level by GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC.

36.    The census edicts, aggressive marketing and admission practices, and resident discharge policies emanated from the top of this Defendants' corporate structure and were emphasized down the chain of command on a continual basis. The above policies were mandatory and BEAR CANYON REHABILITATION CENTER acted in accordance within them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level that GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC deemed appropriate.

37.    The tight control exercised by GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN

OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC over financial decisions that determined the delivery of care rendered at BEAR CANYON REHABILITATION CENTER and its other nursing homes grew out of its financial motivation and intent to increase revenues while restricting and/or reducing expenses.

38.     Accordingly, decisions by GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC as to staffing and census were determined by the financial needs of the company as opposed to the acuity levels and needs of the residents.

39.     GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC, therefore, directly participated in a continuing course of negligent conduct, requiring BEAR CANYON REHABILITATION CENTER to recruit and retain heavier care, higher pay residents to the facilities, when the needs

14

of the resident population exceeded the capacity of staff, while at the same time creating, implementing and enforcing dangerous operational budgets at BEAR CANYON REHABILITATION CENTER which deprived residents of adequate staffing, and caused widespread neglect. In so doing, Defendants disregarded, superseded, and violated the duties and responsibilities imposed on BEAR CANYON REHABILITATION CENTER, a nursing home licensed by the State of New Mexico.

40.     In addition to being legally responsible for the wrongful acts detailed above as a direct participant, Plaintiff pleads in the alternative that Defendants GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC are also indirectly and vicariously liable and responsible for each and every tort and cause of action stated within this Complaint and the resultant damages. More specifically, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC are vicariously liable and responsible for the wrongful conduct detailed above and below under the alternative legal theories:

a) **_Alter Ego_**: At times material to this lawsuit, Defendants were alter egos of one another. Furthermore, Defendant BEAR CANYON REHABILITATION CENTER was a subsidiary and the alter ego of GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC. Defendant BEAR CANYON REHABILITATION CENTER was a mere conduit through which GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC did business and the management and operations of BEAR CANYON REHABILITATION CENTER were so assimilated with GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC that BEAR CANYON

16

REHABILITATION CENTER was simply a name through which GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC conducted their business. Moreover, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC represented to the public that BEAR CANYON REHABILITATION CENTER was part of one single economic enterprise. GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC dominated and controlled the business affairs of BEAR CANYON REHABILITATION CENTER such that BEAR CANYON REHABILITATION CENTER was organized and operated as a mere tool of GENESIS

17

HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC. Assertions by these Defendants that each was a separate corporate fiction with an independent and separate existence is nothing more than a sham and part of a scheme to perpetrate fraud, promote injustice, and evade existing legal and fiduciary obligations.

b) *Agency*: At times material to this lawsuit, Defendants GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC acted as agents for one another and ratified or authorized the acts or omissions of one another. GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.;

WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC also held themselves out as being one unified enterprise.

c) **_Joint Enterprise_**: In the alternative, to the extent that BEAR CANYON REHABILITATION CENTER; GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC are found to be separate corporate entities, GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC each remain liable for the acts and omissions of each other because GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC engaged in a joint venture and enterprise to act in concert in

19

the operation, management, and maintenance of the nursing home. GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC agreed to a common purpose of operating, managing, and maintaining the nursing home. GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC had equal rights to control their venture as a whole, as well as to control the operation and management of the nursing home.

**D.  Notice, Motive, and Routine Practice**

41.     Eloy Medina's neglect was foreseeable. BEAR CANYON REHABILITATION CENTER; GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.;

WELLTOWER, INC.; ZAC PROPERTIES XI, LLC; AND EBONY LAMPKIN, DIRECTOR OF

NURSING were repeatedly placed on notice of the dangerous nature of their conduct before Eloy

Medina's residency and on an ongoing basis by virtue of:

a.   Complaints by staff, residents and the families of residents growing out of the dangerous routine practices at BEAR CANYON REHABILITATION CENTER which form the basis of this lawsuit;

b.   State deficiencies found by state and federal nursing home surveyors; and

d.   The widespread extent of ongoing dangerous care practices and neglect occurring in BEAR CANYON REHABILITATION CENTER.

42.   Further, Plaintiff has reason to believe that before, during and after Eloy Medina's

residency, Defendants engaged in ongoing and routine practices that constituted a continuing course

of negligence, "neglect" as such term is defined by law, and fraud at BEAR CANYON

REHABILITATION CENTER arising out of:

a.   The dangerous and continuing practice of failing to have sufficient nursing personnel, including nurse aides, on duty to meet the care needs of resident population as determined by medical orders and individualized care plans;

b.   The relentless practice of recruiting heavier care residents for which the nursing home received higher reimbursements when BEAR CANYON REHABILITATION CENTER did not have sufficient numbers of nursing personnel and nurse aides to provide the amount and kind of nursing care, personal care and supervision required to meet the needs of each resident, including Eloy Medina; and

c.   The ongoing practice of admitting, retaining and failing to discharge residents, in violation of the law, whose nursing care and treatment needs could not be met because BEAR CANYON REHABILITATION CENTER staff did not have sufficient time, qualifications or training to provide the required nursing care, necessary health related services, personal care, and ordered treatments, in accordance with state law, regulations and professional standards.

43.     These dangerous and routine practices arose out of Defendants' financial motives described above. Moreover, they were ongoing in nature beginning long before Eloy Medina was admitted to the nursing home and continuing after his discharge. Such routine practices caused significant injury to not only Eloy Medina, but also to other similarly-situated residents who were subjected to substantially similar conditions. Accordingly, Plaintiff would show that: a) the neglect of Eloy Medina grew out of an ongoing and "routine practice of an organization"; and, (b) Defendants were repeatedly warned and placed on notice of these dangerous and routine practices.

## COUNT I

### NEGLIGENCE, NEGLIGENCE PER SE, AND WRONGFUL DEATH

44.     Plaintiff realleges the allegations contained in the previous paragraphs.

45.     Plaintiff would show that during the course of Mr. Medina' residency at BEAR CANYON REHABILITATION CENTER, and while he was under the medical and/or nursing care and treatment of the agents, servants, representatives and/or employees of Defendants herein, said agents, servants, representatives and/or employees committed certain acts and/or omissions that constituted negligence in the care and treatment of ELOY MEDINA.

46.     At the time of his residency, Defendants owed a duty to provide care and services to ELOY MEDINA.

47.     Plaintiff would show that Defendants were negligent, acting as corporations and acting by and through their agents, servants, representatives, and/or employees.

48.     As a direct and proximate result of the negligent care and treatment by Defendants, their agents, servants, representatives and/or employees, Mr. Medina suffered injuries, including but not limited to respiratory failure and hypoxia, significant pain that was not treated or relieved appropriately, and an untimely death.

49.     The negligence of the Defendants and their agents, servants, representatives, and/or employees, include, but are not limited to the following:

    a.   Failure to properly monitor, observe and assess the Plaintiff, ELOY MEDINA;

    b.   Failure to hire and train appropriate personnel to monitor, supervise and/or treat the Plaintiff, ELOY MEDINA;

    c.   Failure to provide sufficient numbers of staff to meet said patient's fundamental care needs;

    d.   Failure to properly and timely treat the Plaintiff, ELOY MEDINA'S condition;

    e.   Failure to recognize significant changes in condition of Plaintiff, ELOY MEDINA, and respond to the same; and

    f.   Failure to ensure that ELOY MEDINA received adequate nutrition and hydration.

50.     One or more of the aforementioned acts constitutes negligence and falls below the appropriate standard of care and was a cause of the injuries, damages, and death suffered by ELOY MEDINA.

51.     One or more of the aforementioned acts constituted negligence per se in that the aforementioned acts violate certain sections of the Resident Abuse and Neglect Act, NM Stat. Ann. Section 30-47-1 *et seq.* (1995), NMAC 7.9.2.1 *et. seq.*, and/or USC §1395i-e *et seq.* Such violations were a cause of the injuries and damages suffered by Decedent herein.

52.     As a direct and proximate result of Defendants' wrongful acts or failures to act, JOHN DAY, AS WRONGFUL DEATH PERSONAL REPRESENTATIVE OF THE ESTATE OF ELOY MEDINA, DECEASED, should recover compensation for the following:

    a.   Permanent impairments;

    b.   Pain and suffering damages;

    c.   Punitive damages;

    d.   Loss of enjoyment of life; and

    e.   Such further relief as this Court may deem appropriate.

53.    The death of ELOY MEDINA was caused by the wrongful act, neglect or default of another, and Plaintiff is entitled, pursuant to §41-2-1 NMSA 1978, to recover damages against the Defendants, the sum to be distributed according to the New Mexico Wrongful Death Act.

54.    The actions of Defendants were malicious, willful, reckless, or done with wanton disregard for ELOY MEDINA, giving rise to punitive damages against Defendants, for the purpose of punishing defendants for their conduct and deterring them from similar conduct in the future.

## COUNT II

## **RESPONDEAT SUPERIOR**

55.    Plaintiff realleges the allegations contained in the previous paragraphs.

56.    Plaintiff believes and alleges that at all times material herein, Defendants GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC acting by and through their agents, servants, representatives and/or employees, including but not limited to BEAR CANYON REHABILITATION CENTER, committed negligent acts and/or omissions in the care and treatment of ELOY MEDINA which caused injury, damages, and death to ELOY MEDINA, DECEASED and therefore, Defendants

are liable to Plaintiff under the doctrine of *respondeat superior* for the negligent acts and/or omissions of its agents, servants, representatives and/or employees.

57.    As a direct and proximate result of the negligent acts and/or omissions of Defendants GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC acting by and through their agents, servants, representatives and/or employees, including but not limited to BEAR CANYON REHABILITATION CENTER, ELOY MEDINA, DECEASED suffered severe physical pain and suffering, mental anguish, and death.

58.    Plaintiff believes and alleges that at all times material herein, Defendants GENESIS HEALTH CARE, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; SUMMIT CARE, LLC; FC-GEN OPERATIONS INVESTMENT, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; HCCF MANAGEMENT GROUP XI, LLC; SKILLED HEALTHCARE, LLC; SUMMIT CARE PARENT, LLC; SUN HEALTHCARE GROUP, INC.; SUNDANCE REHABILITATION HOLDCO, INC.; WELLTOWER, INC.; and ZAC PROPERTIES XI, LLC, acting by and through their agents, servants, representatives and/or employees, committed negligent acts and/or omissions in the care and treatment of ELOY MEDINA which caused injury, damages and death to ELOY MEDINA, DECEASED and therefore, Defendants are liable to Plaintiff under the doctrine of *respondeat superior* for the negligent acts and/or omissions of its agents, servants, representatives and/or employees

59.     As a direct and proximate result of Defendants' agents, servants, representatives, and/or employees' wrongful acts and/or failures to act, ELOY MEDINA, DECEASED suffered severe physical pain and suffering, mental anguish, and death.

60.     As a direct and proximate result of Defendants agents, servants, representatives and/or employees' wrongful acts and/or failures to act, JOHN DAY AS WRONGFUL DEATH PERSONAL REPRESENTATIVE OF THE ESTATE OF ELOY MEDINA, DECEASED should recover compensation for the following:

    a.    conscious physical and mental pain and suffering, emotional distress, impairment and death;

    b.    reasonable and necessary medical, hospital and funeral expenses; and

    c.    the aggravating circumstances attending the wrongful act, neglect or default.

WHEREFORE, Plaintiff prays for relief as follows:

a.   For a trial by jury.

b.   That JOHN DAY AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE OF ELOY MEDINA, DECEASED recover for conscious physical pain and suffering, mental pain and suffering, permanent impairment, and death;

c.   That JOHN DAY AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE OF ELOY MEDINA, DECEASED recover for the value of ELOY MEDINA'S life apart from its earning capacity;

d.   That JOHN DAY AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE OF ELOY MEDINA, DECEASED recover a judgment for the aggravating circumstances attending the wrongful act, neglect, or default;

e.   That Plaintiff recovers a judgment for all compensatory damages allowable under New Mexico law;

f.   That Plaintiff recovers prejudgment and post-judgment interest as allowed by NMSA 1978, section 56-8-4 (1993);

26

g. That Plaintiff recovers punitive damages; and

h. That Plaintiff recovers such other relief and further relief to which he may be entitled under New Mexico law.

Respectfully submitted,

**MARKS, BALETTE, GIESSEL & YOUNG, PLLC**

*/s/ Jacques G. Balette*
Jacques G. Balette
7521 Westview Dr.
Houston, Texas 77055
Telephone: 713.681.3070
jacquesb@marksfirm.com

Justin R. Kaufman
Rosalind B. Bienvenu
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com

*Attorneys for Plaintiff*