| | |
|---|---|
| **GIBSON, DUNN & CRUTCHER LLP** | **GIBSON, DUNN & CRUTCHER LLP** |
| John T. Cox III, Esq. (TX 24003722) | Jeffrey C. Krause, Esq. (admitted *pro hac vice*) |
| 2001 Ross Avenue, Ste. 2100 | Michael G. Farag, Esq. (admitted *pro hac vice*) |
| Dallas, TX 75201-2923 | 333 South Grand Avenue |
| Telephone:   (214) 698-3100 | Los Angeles, CA 90071-3197 |
| Facsimile:   (214) 571-2900 | Telephone:   (213) 229-7000 |
| E-mail:      tcox@gibsondunn.com | Facsimile:   (213) 229-7520 |
| | E-mail:      jkrause@gibsondunn.com |
| | mfarag@gibsondunn.com |

*Counsel to Welltower OP LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket No. 1102** |

**WELLTOWER OP, LLC'S OPPOSITION TO DEBTORS' MOTION
FOR ENTRY OF FINAL ORDER AUTHORIZING DIP FACILITY**

Welltower OP LLC ("***Welltower***"),[2] through its undersigned counsel, files this opposition (the "***Opposition***") to the *Emergency Motion of the Statutory Unsecured Claimholders' Committee for Entry of an Order Compelling Welltower OP LLC to Produce Responsive Documents*") filed by the Official Committee of Unsecured Creditors (the "***Committee***"). Welltower respectfully represents as follows:

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

[2] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Motion to Compel (each as defined herein), as applicable.

**PRELIMINARY STATEMENT**

1. As set forth in more detail below, the "emergency" motion is without merit, and the alleged "emergency" to even have this issue decided is one of the Committee's own making. The Committee's substantial delay in serving any requests at all on Welltower was inexcusable. Although the Committee could have served document requests as early as July 30, 2025, they waited until September 12. The Committee's attempt to excuse its delay rings hollow. Specifically, the Committee claims that it waited almost six weeks after the Court's final ruling on the DIP motion to serve its requests so that it could see what was produced by the Debtors before it sought a narrower set of documents from Welltower. But the Committee did not wait to obtain or review the document production from the Debtors before serving Welltower with requests, and it did not serve narrow requests on Welltower. Welltower met and conferred with counsel for the Committee before any requests were even served, and expressly asked the Committee to tell Welltower what specifically it was looking for so Welltower could get started on a review that would enable Welltower to produce documents in the short time frame remaining for the Committee to complete discovery, which, Welltower pointed out at the time, was caused by the Committee's delay in even contacting Welltower.[3] The Committee did not state what it was looking for either during the meet-and-confer or after,[4] and when it finally served written requests the next afternoon, it served requests intentionally drafted so broadly that it would be impossible to timely comply even if the requests called for only relevant information—and these clearly called for mostly irrelevant

---

[3] Dkt. 1102, Ex. 10 at 7.

[4] *Id.*

2

information.[5] Compounding the issue, the Committee expressly demanded that Welltower start producing documents in seven calendar days and complete its production within 14 calendar days.[6]

2.  As explained below, a further meet-and-confer took place on September 18, and once again the Committee failed to explain what exactly it was looking for and did not narrow its requests or offer any proposed search terms.[7] Even so, Welltower had already taken it upon itself to review and produce potentially relevant documents, including closing documents from transactions referenced in the Committee's document requests (even though they were not transactions between Welltower and Genesis), and internal and external communications with and/or about the Debtors.[8] The Committee finally identified search terms for the first time on September 19, the day of the Committee's first production deadline, and seven days before the Committee's final production deadline.[9] After negotiating with the Committee Welltower voluntarily agreed to adopt well over 60% of the proposed search terms, and produced documents, including internal communications, using those search terms on the production deadline unilaterally set by the Committee.[10] The Committee now mischaracterizes the process Welltower went through to collect documents for review, Welltower's production, and the parties' meet-and-confer efforts.

3.  There is no reason for the Committee to have filed this motion, let alone on the day Yom Kippur starts. The Committee knew that counsel for Welltower are observant, as they had

---

[5] *See* Krause Decl., ¶ 5.

[6] *Id.*

[7] Krause Decl., ¶ 6.

[8] *Id.*, ¶ 4.

[9] Id., ¶ 8.

[10] *Id.*, ¶¶ 9-14.

explained as much in written correspondence on September 22.[11] Knowing that, the Committee chose to wait until the day Yom Kippur started to file this motion without any advance notice to Welltower, forcing the separation of families and interfering with the observance of the holiday. This is particularly galling because the Committee has known Welltower's position on Mr. Landau's communications for weeks, since Welltower told the Committee during their meet and confer on September 18 that Welltower did not intend to produce communications with Mr. Landau that did not relate to the Debtors.[12] Moreover, taking a step back, the only transaction that Welltower entered into with Debtors in the past few years was a Lease Amendment that *lowered* the amount of rent Debtors owed. The Committee has no genuine challenge to assert against Welltower, and its filing of this motion against Welltower, on the eve of the challenge deadline, is designed solely to unfairly smear Welltower and to justify seeking more time to conduct discovery because the Committee has found nothing to date on which to base any such challenge. If the Committee believes it has a challenge, it should file a motion for standing to pursue any such challenge and then seek additional discovery. No more discovery is owed now.

4. The overbroad nature of the Committee's discovery requests is exemplified by its demand for every document that includes Joel's email, whether or not that document has any connection with any transaction involving the Debtors. Welltower and entities in which Joel Landau has an interest have engaged in transactions that in no way involve Genesis or any property leased to the Debtors.[13] These unrelated transactions have no bearing on the Debtors or these cases and include confidential and proprietary documents related to transactions wholly unrelated to Debtors that the Committee seeks by way of this improper motion.

---

[11] Dkt. 1102, Ex. 9 at 14.

[12] Krause Decl., ¶ 6.

[13] *Id.,* ¶ 16.

4

**OPPOSITION**

5.      Welltower, one of the primary constituents in the negotiations of the DIP Facility (which the Court has now approved), is affiliated with a publicly-traded real estate investment trust (Welltower, Inc.), and is *not* affiliated or related to the Debtors. Even so, from the beginning of these cases the Committee has sought to unfairly cast the Debtors' secured and unsecured lenders, including Welltower and others, as villains in the Committee's scorched-earth litigation approach in these Chapter 11 Cases. This narrative is wholly unsupported. Indeed, the Committee's motion to compel accuses Welltower of *discovery* malfeasance while implicitly conceding that it has yet to find any concrete evidence of *actual* malfeasance sufficient to support any allegation against Debtors or their lenders.[14]

6.      The Committee already has more than 570,000 pages of documents from the Debtor's and Welltower's files,[15] from which it could—if the evidence existed (which it does not)—make its initial challenge on the current schedule. To the extent the Committee believes it lacks such evidence, it is because such evidence does not exist, not because anyone deprived it of reasonable discovery to which it is entitled.

7.      Indeed, the Committee's motion seeks discovery to which it is clearly *not* entitled. Specifically, the Committee seeks to compel Welltower to produce all communications between two Welltower custodians (whom the Committee concedes are the "right" ones for their purposes[16]) and Mr. Landau, someone the Committee alleges is connected to or controls the "relevant entities in these bankruptcy cases,"[17] and who is a prominent figure in the skilled nursing

---

[14] Mot. at para. 3 (characterizing Welltower's production as containing "harmless documents")

[15] Krause Decl., Ex. 4, ¶ 14.

[16] Mot. at 5, n.4.

[17] Mot. at 38.

5

industry. *See Axcess Int'l, Inc. v. Baker Botts L.L.P.*, No. 3:10-CV-1383-F, 2011 WL 13128798, at *6 (N.D. Tex. Apr. 6, 2011) (describing requests seeking "[a]ll documents in any way related . . ." and seeking "[a]ll documents evidencing or relating to any communications" as overbroad and therefore improper); *Campos v. Webb Cnty., Tex.*, No. 5:12-CV-7, 2013 WL 12387157, at *3 (S.D. Tex. Oct. 25, 2013) ("Courts have held that 'a request for "any and all documents" relating to a particular subject,' such as the subpoena request at issue, 'is overbroad and amounts to little more than a fishing expedition.'"); *see also ReSea Project APS v. Restoring Integrity to the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2023 WL 3029268, at *3 (W.D. Tex. Apr. 20, 2023) ("While requesting all documents or communications may be problematic standing alone, the use of omnibus phrases, such as 'relating to' or 'pertaining to' in conjunction with such lack of specificity compounds the problem."). But the Committee is not entitled to all communications with or about Mr. Landau, most of which relate to wholly unrelated entities and transactions—transactions that not only were not with the Debtors but did not even relate to properties which Debtors leased. That the Committee seeks to engage in such improper "fishing" into such highly confidential and proprietary documents certainly does not support the motion. "The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014); *see also Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-CV-0178-P, 2014 WL 6603420, at *2 (N.D. Tex. Nov. 20, 2014) ("Although Plaintiff is not satisfied with this response, he fails to point to anything that suggests such reports actually exist. The Court cannot compel [defendant] to produce documents that do not exist."); *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 336

6

(D. Minn. 2013) ("[A] mere belief, without any evidence, that a party has not produced documents or information in its possession, is insufficient to support a motion to compel.").

8. Welltower has already produced 135 non-privileged emails involving the two Welltower custodians and Mr. Landau; these emails were found using the very search terms the Committee wrongly asserts were intentionally designed to avoid finding such documents.[18] The Committee also mischaracterizes Welltower's collection of the documents from which these emails were produced. The Committee falsely contends that the collection itself, before the review, was too narrow because of allegedly narrower search terms used to create the review database. Nonsense. The Committee does not even identify the search terms used to collect the documents from which the production review took place. And there is good reason for that. The actual search terms used for purposes of collecting documents for purposes of the subsequent relevance review were extremely broad—the opposite of what the Committee falsely contends. The collection terms even included the words "Joel" or "Landau." Welltower's collection was designed to include any email that hit on any of the following extremely broad terms:

> Genesis OR gen OR regen OR MAO OR MAO22322 OR wax OR aurora OR altira OR apex OR "peace capital" OR cindat OR integra OR promedica OR shg OR "FC-GEN" OR Omega OR Guardian[19]

The fact that so many documents were collected using these broad search terms, however, does not mean that all such documents should be produced. Collection for review is not the same as review for production, which requires determination of relevance, responsiveness, privilege and confidentiality. Most documents have nothing to do with the Debtors, so they clearly need not be

---

[18] Krause Decl., ¶ 14.

[19] *Id.*, ¶ 4. "Guardian" was a codename used by Welltower for the 2021 Genesis debt restructuring.

produced. The Committee has not even attempted to justify the production of documents from transactions that did not involve Debtors.

9. The Committee also moves to compel Welltower's production of communications relating to "three large transactions" relating to the Debtors' secured and unsecured loans even though Welltower has already produced relevant documents and communications relating to these very transactions and did so within the Committee's 14-day production deadline. Indeed, within seven days of receiving the Committee's belated document requests on September 12, Welltower had performed a reasonable search for and produced such deal documents,[20] and (as the Committee concedes) approximately 575 emails relating to these deals.[21]

10. To the extent there is an "emergency" here, it is of the Committee's own making. The Committee delayed serving document requests on Welltower until September 12, more than six weeks after its appointment and after its unsuccessful scorched earth litigation in connection with the DIP motion and bidding procedures motion. Then, although they knew they were going to demand Welltower make an initial production in seven days and finish its production in 14 days, the Committee served extraordinarily broad discovery requests that demanded Welltower produce "all documents and communications" about at least 5 major transactions spanning 14 years. The Committee also complains that Welltower did not agree to search for documents that hit on every single one of its incredibly broad search terms. But 100% agreement is not the discovery standard, and Welltower was more than reasonable in agreeing to more than 60% of the Committee's additional search terms, even though the Committee was so late in providing such proposals. The

---

[20] The Committee alleges Welltower produced a "handpicked subset of transaction documents." (Mot. at 5.) This is the first that the Committee has identified any substantive issue with Welltower's production of deal documents, and the Committee does not explain what it means in its motion.

[21] Krause Decl., ¶7.

8

only search terms that Welltower refused to add to its initial set of terms either had incredibly high hit counts[22] or were not limited in scope to the transactions with the Debtors (or both[23]).

11. Indeed, Welltower was only able to meet the Committee's 14-day document production deadline and make a meaningful production of approximately 5,000 documents, including 1,600 emails, comprising 100,000 pages of materials, *because* Welltower took proactive steps to collect emails from two custodians *before* they received the document requests. Now the Committee complains about the very steps Welltower voluntarily took to enable it to meet the Committee's unilateral production deadline, including the use of search terms to streamline the collection of what would have otherwise been significant volume of email, while never explaining why those steps allegedly deprived them of discovery to which they are entitled. The Committee does not provide an explanation because there is no explanation.

12. Finally, the Committee takes issue with Welltower's participation in the meet-and-confer process, claiming that Welltower fought "tooth and nail" to avoid producing documents.[24] This is simply not true. Welltower participated in multiple meet-and-confer meetings in good faith, and it was the Committee that waited so long to ask for such meetings and who showed up so unprepared that it could not even tell Welltower what it really wanted. In all instances, Welltower has acted reasonably, including initiating the review of documents before even receiving the requests to make sure the Committee would timely receive documents. The Committee acted in such a way that it appears it wanted Welltower to miss the artificial deadlines the Committee set.

---

[22] For example, Welltower refused the following search string proposed by the Committee because it returned more than 30,000 hits: (Genesis OR integra OR promedica OR landau OR altira OR gefner) AND (lease* OR sublease*). Krause Decl., ¶ 9.

[23] For example, Welltower refused the following search term proposed by the Committee because it was untethered to the proceedings and returned more than 8,500 hits: jlandau@pintapartners.com. Krause Decl., ¶ 9.

[24] Mot. at 4.

Why else would it wait so long to even propose search terms? Why propose search terms that were so broad as to ensure the production could not be completed within the deadline the Committee set? Producing 100,000 pages of materials within 14 days—the very deadline set—should be commended, but in no event does it justify this motion.

13. The Committee waited seven days after serving its document requests—on the day it set for Welltower's initial production deadline—to even propose search terms. And the terms it proposed were far too broad, not in any way designed to narrow review to relevant materials. After Welltower made its initial production of more than 60,000 pages of documents, Welltower analyzed hit counts using the Committee's last-minute proposal of search terms the very next business day (September 22).[25] Welltower then accepted 6 of 17 proposed search strings, thus agreeing to complete the review of 8,000 documents in 48-hours so it could meet the Committee's September 26 production deadline.[26] Moreover, in the spirit of compromise, Welltower offered to consider using alternative, significantly narrowed, search strings.[27] The Committee, however, actually told Welltower *not to conduct a review* until they could propose still more search terms.[28] Such a request made no sense; how could Welltower meet the required production deadline if it halted its review? Again, this is evidence that the Committee was trying to make it impossible to meet the deadline to rationalize a request for more time to field a standing motion. As Welltower explained, Welltower could not delay the initiation of its document review while the Committee considered other search term proposals (that should have been proposed weeks before) and still

---

[25] Krause Decl., ¶13.

[26] *Id.*, ¶10.

[27] *Id.*, ¶11.

[28] *Id.*, ¶12.

meet the Committee's production deadline.[29] The Committee provided revised proposed search strings only on Thursday, September 23—*the day before the Committee's identified production deadline*—yet Welltower still agreed to an additional 5 search strings and timely completed its review and production the next day.[30]

14. Welltower includes the search terms proposed by the Committee on September 19 (again, the same day as Welltower's first production deadline) below, Welltower's response on September 22, the Committee's response on September 23 (three days before Welltower's final production deadline), and Welltower's response to the Committee's counter-proposal on September 24.[31] As shown, Welltower's conduct was more than reasonable given the seven-day turnaround between the first proposal of search terms and the final production deadline.

|   | Term (Proposed 9/19/25) | Welltower Response (9/22/25) | UCC Response (9/23/25) | Welltower Response (9/24/25) |
|---|---|---|---|---|
| 1 | "$880 million" OR ("144,000" w/3 bed) | **Accepted** | Agreed | n/a |
| 2 | "cindat best years welltower" | Rejected | **Withdrawn** | n/a |
| 3 | ("wax" OR "mao") AND (assign OR reassign OR assignment OR reassignment OR recharacterize OR "backrent" OR "back rent") | Rejected | Run against body of emails | **Accepted as revised** |
| 4 | ("wax" OR "mao") and (facility OR facilities OR snf) | Rejected | Run against body of emails | **Accepted as revised** |
| 5 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) AND ((facility OR snf OR facilities) w/5 (valuation* OR apprais*)) | **Accepted** | Run against body of emails | **Accepted as originally proposed** |
| 6 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) AND ((loan* | **Accepted** | Run against body of emails | **Accepted as revised** |

---

[29] Krause Decl., ¶12.

[30] *Id.*, ¶13.

[31] Id., Exs. 1-3.

11

| | Term (Proposed 9/19/25) | Welltower Response (9/22/25) | UCC Response (9/23/25) | Welltower Response (9/24/25) |
|---|---|---|---|---|
| | OR debt*) AND (forgive OR forgiveness)) | | | |
| 7 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) AND (avoidance OR fiduciary OR transfer OR insider) | Rejected | Email only | (Genesis OR integra OR promedica OR landau OR altira OR gefner) w/10 (avoidance OR fiduciary OR insider) | **Accepted as revised** |
| 8 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) AND (lease* OR sublease*) | Rejected | **Withdrawn** | n/a |
| 9 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) w/10 (renegotiate* OR assign* OR recharacterize OR recharacterization or subordination or subordinate) | Rejected | Email Only | (Genesis OR integra OR promedica OR landau OR altira OR gefner) w/10 (recharacterize OR recharacterization or subordination or subordinate) | Rejected |
| 10 | (Genesis OR integra OR promedica OR landau OR altira OR gefner) w/20 (divest OR divested OR divestiture OR termination OR terminate OR terminates) | Rejected | **Withdrawn** | n/a |
| 11 | (Genesis OR landau OR gefner) AND ("stalking horse") | **Accepted** | Email Only | **Accepted as originally proposed** |
| 12 | (Genesis OR landau OR gefner) AND (claim* OR release* OR waiv* OR bankruptcy OR "dip" or (debtor w/5 possession)) | Rejected | Email Only | (Genesis OR landau OR gefner) AND (release* OR bankruptcy OR "BK" OR "insider" OR (debtor w/5 possession)) | Rejected |
| 13 | Dashdoc44@hotmail.com | **Accepted** | Dashdoc44@gmail.com | **Accepted as revised** |
| 14 | il@perigrove.com | **Accepted** | Accepted | n/a |
| 15 | jlandau@pintapartners.com | Rejected | Email only | limit to June 1, 2024 to Present, February 1, 2021-April 1, 2021, and August 1, 2022 - May 31, 2023 | Rejected |
| 16 | Pinta AND (consult OR consulting OR investor OR transfer OR affiliate OR insider OR related OR genesis) | **Accepted** | Accepted | n/a |

12

|  | Term (Proposed 9/19/25) | Welltower Response (9/22/25) | UCC Response (9/23/25) | Welltower Response (9/24/25) |
|---|---|---|---|---|
| 17 | "Cindat" | Rejected | Withdrawn | n/a |
| 18 | "mao" | Rejected | Email Only \| date range 3/1/2024-present | Rejected |
| 19 | "wax" | Rejected | Email Only \| date range 3/1/2024-present | Rejected |

15. At every stage of the bankruptcy proceedings, including with respect to obtaining limited discovery from Welltower, the Committee has ignored the reality of the situation—both with respect to the utter lack of any evidence to support the Committee's baseless allegations (which the Committee's motion essentially concedes) and with respect to the inherent limitations of obtaining document discovery on a compressed two-week timeframe.

## RESERVATION OF RIGHTS

16. For the avoidance of doubt, Welltower reserves its right to supplement this Opposition to the extent the Committee asserts additional arguments or presents evidence at or before the hearing on the Motion.

[*Remainder of page intentionally left blank*]

**WHEREFORE,** Welltower respectfully requests that the Court enter an order denying the Motion and granting such other relief as is just and proper.

Dated: October 1, 2025  
Long Beach, CA

Respectfully submitted,

By: */s/ Jeffrey C. Krause*
**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III, Esq. (TX 24003722)
2001 Ross Avenue, Ste. 2100
Dallas, TX 75201-2923
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
E-mail: tcox@gibsondunn.com

- and -

Jeffrey C. Krause, Esq. (admitted *pro hac vice*)
Michael G. Farag, Esq. (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
E-mail: jkrause@gibsondunn.com
mfarag@gibsondunn.com

*Counsel to Welltower OP LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 1, 2025, I had a true and correct copy of the foregoing document served by the Court's CM/ECF system on all counsel of record registered in the above-captioned chapter 11 cases through CM/ECF.

*/s/ Jeffrey C. Krause*
Jeffrey C. Krause