# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) ) | CHAPTER 11 |
| GENESIS HEALTHCARE, INC., *ET AL.*,[1] | ) ) ) | CASE NO. 25-80185 (SGJ) |
| DEBTORS. | ) ) ) ) | (JOINTLY ADMINISTERED) |
| | ) | **RELATED TO DOCKET NO. 1102** |

## DECLARATION OF JEFFREY C. KRAUSE IN SUPPORT OF WELLTOWER'S OPPOSITION TO EMERGENCY MOTION TO COMPEL

I, Jeffrey C. Krause, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am an attorney at the law firm of Gibson, Dunn & Crutcher LLP and counsel to Welltower OP LLC ("Welltower") in the above-captioned action. I am licensed to practice law in the State of California. I have been admitted *pro hac vice* to this Court.

2. I submit this declaration in support of Welltower's Opposition to the Emergency Motion of the Statutory Unsecured Claimholders' Committee for Entry of an Order Compelling Welltower OP LLC to Produce Responsive Documents, Dkt. 1102.

3. The Statutory Unsecured Claimholders' Committee (the "Committee") could have subpoenaed Welltower as early as July 31, 2025, but only contacted Welltower for the first time on September 10, 2025, seeking to confer about a forthcoming document request, to which Welltower promptly agreed. I briefly spoke with Committee counsel on September 11, and the

---

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

1

Committee informed Welltower that its document requests were drafted broadly but that it would cooperate with Welltower to target searches appropriately given the compressed timeline, including by proposing tailored search terms.

4. Around that time, in order to best position ourselves to meet what we expected to be short production deadlines, I understand that Welltower initiated an email collection from two Welltower custodians. I understand that Welltower needed to reduce the volume of email dated between January 1, 2021, and September 2025 that it intended to export (and then process for review) by using search terms ("collection terms") in order to be in a position to make a meaningful production of emails on the Committee's proposed timeframe. Based on the Committee's filings in this matter to date, we selected the following broad terms: (Genesis OR gen OR regen OR MAO OR MAO22322 OR wax OR aurora OR altira OR apex OR "peace capital" OR cindat OR integra OR promedica OR shg OR "FC-GEN" OR Omega OR Guardian OR Joel OR Landau).

5. On September 12, Welltower received a subpoena to produce documents from the Committee. It contained twenty-eight broad document requests, including (for example) requests for "*[a]ll* documents discussing, determining, or evidencing the tax treatment of funds associate [sic] with **any transaction, transfer, or other business deal** involving **any** of the Debtors or their affiliates[,]" and "*[a]ll* documents related to Welltower's interest in the joint venture 'CINDAT Best Years Welltower JV LCC'" without any limitation as to time period. Requests for Production Nos. 11, 23 (emphases added). [Dkt. 1102, Ex. 8] The Subpoena demanded an initial production within one week of serving its subpoena, by September 19, and a final production one week after that, by September 26. [*Id.*] The Committee did not reach out to assist Welltower in targeting its collection until September 16. [*Id.*, Ex. 10 at 8.]

6. I, along with my colleague Brooke Wallace, met and conferred with counsel for the Committee on Thursday, September 18 (one day before the first production deadline) concerning the breadth of the document requests. [*See* Dkt. 1102, Ex. 10 at 5] During that call, we clearly informed the Committee that Welltower would *not* produce communications with Mr. Landau that did not relate to the Debtors because they would be irrelevant to the proceedings. Such unrelated documents would also include confidential information about business transactions that have no relationship to the Debtors. We also reiterated a request we had already made in writing [*see id.* at 6-7] that the Committee propose targeted search terms and narrow its requests to an appropriately reasonable scope.

7. The next day, on Friday, September 19, Welltower made its first initial production comprising more than 60,000 pages of deal documents and (as the Committee concedes) 575 emails from the files of Welltower's custodians.

8. Also on Friday, September 19, the Committee sent Welltower its list of 17 search strings. [Dkt. 1102 at 3.] The search strings were unreasonably broad on their face, and included search terms like ((Genesis OR integra OR promedica OR landau OR altira OR gefner) AND (lease! OR sublease!)), and Joel Landau's email address (jlandau@pintapartners.com). [*Id.*]

9. I understand that Welltower immediately undertook the process of determining how many emails "hit" on the proposed search terms. Welltower provided those hit counts and communicated its acceptance of **_6 of 17 search strings_** as soon as reasonably practicable, the next business day, Monday, September 22. Attached hereto as **Exhibit 1** is a true and correct copy of that communication, which Welltower includes here because the version attached to the Committee's motion [Ex. 10 at 1-2] was cut-off. Notably, a number of the search terms proposed

3

by the Committee were indeed unduly broad. String #2 ("cindat best years welltower") returned over 6,600 hits (with families); String #8 [(Genesis OR integra OR promedica OR landau OR altira OR gefner) AND (lease! OR sublease!)] returned almost 60,000 hits (with families), and String #15 [jlandau@pintapartners.com] returned almost 17,000 hits (with families).

10.     I understand that by agreeing to 6 of the 17 search terms as proposed by the Committee, Welltower had agreed to complete its review of 8,000 documents in roughly 48 hours, so that it could make its final production to the Committee by the Committee's deadline (Friday, September 26). I understand that the document review must be completed approximately 48 hours in advance of the production to ensure sufficient time for quality control and production processing.

11.     When Welltower responded to the Committee's initial set of search terms on September 22, Welltower informed the Committee that it had used the collection terms identified above "given the volume of data involved and the compressed timeline here." [Dkt. 1102, Ex. 10 at 1.] In addition, although Welltower had already agreed to review roughly 8,000 hits, Welltower told the Committee that "if there are a small handful of *significantly* narrowed strings you would like us to use instead of or in addition to the ones we've accepted below, we will consider it." [*Id.*]

12.     Hours after Welltower told the Committee that it would accept certain of the search terms [Krause Ex. 1], the Committee responded to tell Welltower not to start its review: "We do not agree that the next best steps is for you to arbitrarily pick a subset of search terms you are willing to complete" based on their understanding that the "use of search terms is an iterative process," and the "potential that some terms would have a high hit count is something that would be expected[.]" [Krause Ex. 2 at 3.] Attached hereto as **Exhibit 2** is a true and correct

4

copy of the emails we exchanged with Committee on this issue, as the version the Committee included with its motion was cutoff. Welltower immediately informed the Committee that it could not delay: "Given the timeframe and our deadline to respond to your document requests, we have to complete our review in short order. We cannot wait for you to finally narrow the requests that should have been narrowed long ago, or wait for you to finally offer narrowed search terms, which should have been done long ago." [*Id.* at 2.]

13. The Committee sent Welltower its revised search terms on September 23, three days before its unilateral production deadline (and even revised some of the strings Welltower had already accepted and was reviewing), and withdrew 3 of the strings (including String #2 and 8) completely. Attached hereto as **Exhibit 3** is a true and correct copy of the Committee's transmission of the revised and withdrawn search terms. Again, Welltower responded as soon as reasonably practicable, and accepted 4 of the strings as revised. [Krause Ex. 2 at 1] In total, Welltower agreed to 9 of the 14 final proposed search strings, or over 60% of the Committee's requested search terms. Of the terms Welltower rejected, three were untethered to the Debtors or the proceedings here (String #9, 15, 18-19), and one had high hits and was better suited for Debtor discovery (String #12).

14. On September 22, 2025, Welltower made its final production on the UCC's deadline. In total, I understand that Welltower's production comprised 5,138 documents including 1,672 emails, comprising 116,802 pages. I understand that Welltower has produced 135 non-privileged emails involving the two Welltower custodians and Mr. Landau.

15. Attached hereto as **Exhibit 4** is a true and correct copy of the latest production email from Debtor indicating that Debtor's production to date comprises approximately 460,000 pages of documents.

5

16. Welltower and entities in which Joel Landau has an interest have engaged in transactions that in no way involve Genesis or any property leased to the Debtors.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 1, 2025, in Long Beach, CA.

Dated:  October 1, 2025

By: ___/s Jeffrey C. Krause_____
      Jeffrey C. Krause