James H. Billingsley, P.C.
State Bar No. 00787084
DUANE MORRIS LLP
200 Crescent Court, Suite 900
Dallas, Texas 75201-1514
Phone: (214) 257-7242
JBillingsley@duanemorris.com

Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Phone: (215) 979-1547
wmsimkulak@duanemorris.com

Brad Lenox (admitted *pro hac vice)*
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
Phone: (215) 979-1595
blenox@duanemorris.com

*Counsel for the Chubb Companies*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>GENESIS HEALTHCARE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25- 80185 (SGJ)<br><br>Jointly Administered<br><br>Re: Docket No. 3101 |

**THE CHUBB COMPANIES'**
**LIMITED OBJECTION TO THE DEBTORS' AMENDED JOINT CHAPTER 11**
**PLAN OF GENESIS HEALTHCARE, INC. AND ITS DEBTOR AFFILIATES**

ACE American Insurance Company, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, ACE Fire Underwriters Insurance Company, Illinois Union

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/case/genesis/info. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, and each of their respective U.S.-based affiliates, predecessors, and successors (collectively, and solely in their capacities as insurers of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to confirmation of the *Debtors' Amended Joint Chapter 11 Plan of Genesis Healthcare, Inc. and its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Plan")[2] [Doc. No. 3101] and respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. Beginning on July 9, 2025 (the "Petition Date"), each Debtor commenced a case (collectively, the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Divion (the "Court").

2. On July 30, 2026, the Debtors filed the Plan.

### B. The Insurance Programs

3. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

4. Prior to the Petition Date, the Chubb Companies and certain of the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended,

[2] Capitalized terms used but not otherwise defined in this Limited Objection shall have the meanings ascribed to such terms in the Plan.

modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

5. Pursuant to certain Policies and Insurance Agreements (collectively, the "ACE Insurance Program"), ACE American Insurance Company, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, ACE Fire Underwriters Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, and/or certain of their U.S.-based affiliates provide, *inter alia*, certain environmental, businessowners, umbrella, excess, directors' and officers' liability, employment practices liability, workers' compensation, property, fiduciary liability, facilities, fire, general liability, professional liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

6. Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company and/or certain of their U.S.-based affiliates provide, *inter alia*, certain accident, environmental, fiduciary liability, directors' and officers' liability, kidnap, ransom and extortion liability, employment practices liability, package, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions,

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Federal Insurance Program (collectively the "Federal Program Obligations," and together with the ACE Program Obligations, the "Obligations").[4]

7. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

8. Certain of the Obligations are secured by certain collateral, including letters of credit, a paid loss deposit fund, and cash collateral, and the Obligations may also be secured by other letters of credit, paid loss deposit funds, trust, escrows, other surety bonds, other cash collateral, credits or other amounts (collectively, the "Collateral").

**C. The Plan**

9. The Plan contemplates a sale of certain of the Debtors' assets to the Buyer (the "Sale Transaction"), with certain other estate assets being transferred to either the Liquidation Trust or the Wind-Down Trust. *See, e.g.*, Plan Art. IV.C.

10. If the APA is terminated and the Sale Transaction is not consummated, the Plan provides for a "toggle" to a "Restructuring Transaction," pursuant to which the Post-Restructuring Debtors will reorganize and continue to operate the Debtors' business as a going concern. *See, e.g.*, Plan Art. IV.D.

---

[4] For the avoidance of doubt, the Obligations shall include any non-monetary obligations that the insureds, including one or more of the Debtors, may have. The Chubb Companies specifically reserve and preserve all rights with respect to such non-monetary obligations.

11. As of the filing of this Objection, the Debtors have not filed a Restructuring Transaction Toggle Notice indicating that the Debtors will pursue consummation of a Restructuring Transaction. *See id.*

12. The Plan defines a "D&O Liability Insurance Policy" as "each directors' and officers' liability insurance policy, including, without limitation, any 'tail policy,' and all agreements, binders, documents, or instruments related thereto issued or providing coverage at any time to the Debtors in effect as of the Petition Date." Plan Art. I.A.70.

13. The Plan defines "Insurance Policies" as "any and all insurance policies (including the D&O Liability Insurance Policies), insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or instruments relating to the provisions of insurance entered into by or issued to, or for the benefit of, at any time, the Debtors, or their respective predecessors and employees or directors of the Genesis Board, including, without limitation, any such policies, agreements, or other documents that have been paid in full." Plan Art. I.A.1.133.

14. Following consummation of the Sale Transaction, the Plan provides that, among other things:

> All Insurance Policies to which any Debtor is a party or beneficiary as of the Effective Date, including the D&O Liability Insurance Policies, shall be transferred as Assets of the Estates to the Liquidation Trust by the applicable Debtor effective as of the Effective Date and shall continue in full force and effect thereafter in accordance with their respective terms. Nothing in the Plan or the Confirmation Order, including the transfer of the Insurance Policies to the Liquidation Trust, shall alter the rights and obligations of the Insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions. Nothing in the Plan or the Confirmation Order shall cause the

> invalidation of the Insurance Policies or result in the loss of applicable coverage.

Plan Art. V.E.1.a.

15. In other words, following a Sale Transaction, all Insurance Policies are transferred to the Liquidation Trust.

16. Following consummation of the Restructuring Transaction, the Plan provides that, among other things:

> All Insurance Policies to which any Debtor is a party or beneficiary as of the Effective Date, other than the D&O Liability Insurance Policies, shall be deemed an Executory Contract and shall be automatically assumed by the applicable Debtor, effective as of the Effective Date, pursuant to Bankruptcy Code sections 365 and 1123 of the Bankruptcy Code. Nothing in the Plan or the Confirmation Order shall alter the rights and obligations of the Insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions. Nothing in the Plan or the Confirmation Order shall cause the invalidation of the Insurance Policies or result in the loss of applicable coverage.

Plan Art. V.E.2.a.

17. With respect to the D&O Liability Insurance Policies, the Plan provides that, among other things:

> The D&O Liability Insurance Policies shall be transferred as Assets of the Estates to the Liquidation Trust by the applicable Debtor effective as of the Effective Date and shall continue in full force and effect thereafter in accordance with their respective terms. Nothing in the Plan or the Confirmation Order shall cause the invalidation of the Insurance Policies, including the D&O Liability Insurance Policies, or result in the loss of applicable coverage. Confirmation of the Plan shall not discharge, impair, or otherwise modify any defense or indemnity obligations assumed by the transfer of the D&O Liability Insurance Policies to the Liquidation Trust. For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall amend, modify, or otherwise alter any rights of any current or former officers or directors of the Debtors with respect to the D&O

> Liability Insurance Policies. Prior to and following the transfer of the D&O Liability Insurance Policies to the Liquidation Trust, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals insured thereunder, including, but not limited to, all directors (including the Independent Directors), managers, officers (including the Co-CROs), and employees who served in such capacity at any time prior to the Effective Date.

Plan Art. V.E.2.b.

18. In other words, following a Restructuring Transaction, all Insurance Policies other than D&O Liability Insurance Policies are assumed by the applicable Debtor and continue as assets of the applicable Post-Restructuring Debtor; only D&O Liability Insurance Policies will be transferred to the Liquidation Trust.

19. The Plan also provides that, following either a Sale Transaction or a Restructuring Transaction, the Debtors' assets shall vest in either the Liquidation Trust or the respective Post-Restructuring Debtors free and clear of all liens, claims, and other encumbrances. *See* Plan Art. IV.F.2; IV.I.1.a, b.

**LIMITED OBJECTION**

20. The Chubb Companies object to the Plan on the bases that: (I) while it appears that the Debtors' successors seek to retain the benefits of the Insurance Programs, the Plan fails to adequately address the fact that, in order to do so, the Debtors' successors must remain liable for the Obligations under either of the Insurance Programs; (II) the terms of either of the Insurance Programs cannot be altered through the Plan; (III) either of the Insurance Programs cannot be assigned or otherwise transferred without the prior written consent of the Chubb Companies, which has not been sought or given; and (IV) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course.

**I. The Debtors' Successors Cannot Continue to Receive the Benefits of Either of the Insurance Programs Without Remaining Liable for the Obligations Thereunder.**

21. As of the filing of this Limited Objection, the Chubb Companies are not able to determine with certainty whether a Sale Transaction or a Restructuring Transaction will be consummated.

22. Under either a Sale Transaction or the Restructuring Transaction scenario, either the Liquidation Trust or Post-Restructuring Debtors appear to seek to retain the benefits of the Insurance Programs. *See, e.g.*, Plan Arts. V.E.1.a.; V.E.2.a.; V.E.2.b.

23. The Plan, however, fails to adequately address the Obligations arising under the Insurance Programs. Indeed, to the contrary, the Plan provides that the Insurance Programs would vest in either the Liquidation Trust or the Post-Restructuring Debtors free and clear of all liens, claims, and other encumbrances. *See* Plan Art. IV.F.2; IV.I.1.a, b.

24. It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely

on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.,* 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

25. Moreover, each of the Insurance Programs is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-

severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

26. Accordingly, the Plan must be clarified to provide that, to the extent that the Debtors or their successors seek to retain the benefits of any portion of either of the Insurance Programs, the entirety of that Insurance Program shall be assumed by the Debtors' successors, and the Debtors' successors shall remain liable in full for all of the Obligations arising thereunder.

## II. The Plan Should Clearly Provide That Nothing Modifies, Alters or Impairs the Insurance Programs.

27. Neither the Debtors nor this Court can rewrite the Insurance Programs, but rather, the Insurance Programs must be enforced as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation"); *In*

*re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

28. However, as noted above, the Plan provides that, following either a Sale Transaction or a Restructuring Transaction, the Debtors' assets shall vest in either the Liquidation Trust or the Post-Restructuring Debtors free and clear of all liens, claims, and other encumbrances. *See* Plan Art. IV.F.2; IV.I.1.a, b.

29. The Plan must therefore clarify that nothing in the Plan, the Plan Supplement, the Sale Transaction Documents, the Confirmation Order, or any other document related to the foregoing, including but not limited to, those provisions identified above, shall modify, alter or impair either of the Insurance Programs, including the rights and obligations of the Chubb Companies and the Debtors thereunder.

30. Accordingly, the Chubb Companies further object to the plan on this basis.

**III. The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.**

31. To the extent that the Debtors seek to assign or otherwise transfer any portion of either Insurance Program (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors) in connection with the Plan, such assignment cannot occur without the express written consent of the Chubb Companies.

32. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

33. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

34. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

35. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does not consent to assignment.").

36. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200

RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

37. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g).

assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, any portion of either Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

38. Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of either Insurance Program (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors), the Debtors and the assignee would be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. These agreements have not yet been negotiated, let alone executed.

39. Accordingly, because the Chubb Companies have not consented to any proposed assignment of any portion of either Insurance Program (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors), the Chubb Companies object to any such assignment or transfer.

## IV. The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue in the Ordinary Course.

40. The Plan does not provide for the handling of workers' compensation claims or direct action claims against the Debtors' insurers.

41. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

42. Accordingly, the Plan cannot prevent workers' compensation claims and direct action claims from going forward.

43. The Insurance Programs include Policies that may provide workers' compensation insurance to the Debtors, and certain of the Debtors' Obligations with respect to such Policies may secured by the Collateral. Any workers' compensation claims against the Debtors potentially covered by these Policies must be able to proceed, and the Chubb Companies, in turn, must be able to handle and administer such claims, including applying the Collateral to the Debtors' Obligations with respect thereto in accordance with the terms and conditions of the Insurance Programs.

44. Any plan provision that purports to prevent the Chubb Companies from handling workers' compensation claims against the Debtors and/or from applying the Collateral to the Debtors' Obligations for such claims are impermissible, and the Chubb Companies further object to the Plan on this basis.

45. The Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, that the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims, including drawing on and/or applying the Collateral in connection therewith, in the ordinary course and pursuant to the terms of the Insurance Programs and applicable non-bankruptcy law.

**RESERVATION OF RIGHTS**

The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan and any documents related thereto.

WHEREFORE, the Chubb Companies respectfully request that this Court (a) either (i) deny confirmation of the Plan or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein and (b) grant such other relief as the Court deems appropriate.

Dated: September 23, 2026

Respectfully submitted,

**DUANE MORRIS LLP**

*<u>/s/ James H. Billingsley</u>*
James H. Billingsley, P.C.
State Bar No. 00787084
200 Crescent Court, Suite 900
Dallas, Texas 75201-1514
Telephone: (214) 257-7242
JBillingsley@duanemorris.com

Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Phone: (215) 979-1547
Email: wmsimkulak@duanemorris.com

Brad Lenox (admitted *pro hac vice)*
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
Phone: (215) 979-1595
Email: blenox@duanemorris.com

*Counsel for the Chubb Companies*

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas as permitted by Bankruptcy Rule 9036 and on the parties listed on **Exhibit A** attached hereto by electronic mail.

*/s/ James H. Billingsley*
James H. Billingsley, P.C.

**Exhibit A**

Louis E. Robichaux IV
Russell A. Perry
Genesis Healthcare, Inc., c/o Ankura Consulting Group, LLC
2021 McKinney Ave. Suite 340
Dallas, TX 75201
louis.robichaux@ankura.com
russell.perry@ankura.com

Charles R. Gibbs
McDermott Will & Schulte LLP
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
crgibbs@mcdermottlaw.com

Daniel M. Simon
1180 Peachtree St. NE, Suite 3350
Atlanta, GA 30309
dsimon@mwe.com

Emily C. Keil
William A. Guerrieri
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
ekeil@mwe.com
wguerrieri@mwe.com

Meredyth A. Kippes
Office Of The United States Trustee
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX 75242
Meredyth.Kippes@usdoj.gov

Nicholas Zluticky
Zachary Hemenway
STINSON LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

Brian S. Rosen
Ehud Barak
Daniel Desatnik
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com